IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN M. FRIEDBERG | : CIVIL ACTION |
| | : |
| Plaintiff, | : NO.  02-CV-3193 |
| | : |
| v. | : (Judge Yohn) |
| | : |
| MUTUAL HOLDINGS LTD., *et al.*, | : |
| | : |
| Defendants. | : |

**PLAINTIFF STEPHEN M. FRIEDBERG'S
OBJECTIONS TO THE COURT'S GRANTING
OF DEFENDANTS' MOTION TO DISMISS**

Pursuant to the Court's order of April 29, 2004, plaintiff Stephen M. Friedberg, by and through his attorneys, hereby submits this memorandum in response to defendants Mutual Holdings LTD., IPC Mutual Holdings LTD., Mutual Holdings (Bermuda) LTD., Mutual Indemnity LTD. and Mutual Indemnity (Bermuda) LTD.'s (hereinafter "Mutual") Notice of Supplemental Authority, in support of their motion to dismiss, filed with the Court on April 22, 2004.

Defendants' motion to dismiss should be denied for the reasons already briefed in plaintiff's opposition memorandum filed with the Court on November 27, 2002, and the temporary restraining order protecting the contested monies should remain in place.  Although the Mutual defendants do not point to any change in the circumstances that previously led this Court to issue the TRO, they nevertheless ask the Court to reinstate this action for the purpose of granting their motion to dismiss based on a waived and inapplicable forum selection clause.

However, there is no justification in law or in fact for the Mutual defendants' request. To the contrary, subsequent events have demonstrated even more clearly the necessity of continuing the Court's protection.

## BACKGROUND

As the Court may recall, Mr. Friedberg entered into several shareholder agreements with certain of the Mutual defendants pursuant to Rent-A-Captive insurance programs. For the first several years, Mr. Friedberg elected to allow certain of the Mutual defendants to retain as a convenience to Mr. Friedberg dividends declared by Mutual on preferred shares owned by Mr. Friedberg so that the dividends could, if he so chose, cover Mr. Friedberg's potential liability for future losses (in that captive insurance program) and also to enable premium payments on a separate insurance brokerage account between Mr. Friedberg and another member of the Mutual corporate family.

At Mr. Friedberg's direction, in 1996 the Mutual defendants transferred the dividends to investment accounts in Philadelphia and, ultimately, to accounts at Morgan Stanley. From the time the funds were first transferred to Philadelphia until entry of the TRO, the funds were invested pursuant to Mr. Friedberg's sole instructions and directions. The investment accounts remained nominally titled in the names of Mutual Indemnity (Bermuda) Ltd. and Mutual Indemnity Ltd., but no one other than Mr. Friedberg exercised any control over the funds or directed its investments. As the parties' agreements and course of conduct established, Mr. Friedberg has both legal and equitable ownership of the funds.

In May 2002, the Mutual defendants and related entities were facing severe financial distress.[1] Suddenly, for the first time the Mutual defendants asserted a right to direct the dividend monies at Morgan Stanley and attempted to seize a portion of those funds. On May 30, 2002, this Court entered a temporary restraining order to preserve the status quo and protect the funds from being dissipated or otherwise caught up in the financial difficulties of the Mutual defendants while the parties attempted to resolve their dispute in the Bermuda court system.

Since entry of the Court's order, in addition to continuing a dialogue with defendants on settlement, Mr. Friedberg made a statutory demand for his money under Bermuda law.[2] The Mutual defendants rejected the demand and Mr. Friedberg and two other similarly situated shareholders then instituted a winding-up proceeding in Bermuda in efforts to confirm his legal and equitable ownership of the monies as well as additional monies under other shareholder agreements. In fact, Mr. Friedberg's winding-up petition was granted by the trial court, which immediately led to an appeal by the Mutual defendants. During that time, the parties continued to discuss settlement.

---

[1] Indeed, within months, certain of them sought protection under the Bermuda bankruptcy laws.

[2] This, in fact, was the second statutory demand Mr. Friedberg made against the Mutual defendants involving shareholder agreements. Just one month prior to the filing of this lawsuit, Mr. Friedberg and another co-shareholder initiated a formal statutory demand claim against the Mutual defendants in Bermuda demanding a separate payment of $2 million from the shareholder accounts. In the face of that statutory demand, Mutual released for the benefit of the co-shareholder $2 million from various dividend accounts, thus bringing that dispute to a final resolution with respect only to the co-shareholder. Significantly, over half of the money paid to Mr. Friedberg's co-shareholder came from the funds held by Morgan Stanley here in Philadelphia prior to the TRO.

Meanwhile, the financial distress of the Mutual defendants still continues. Certain of them are in bankruptcy while the others are being monitored by the Bermuda authorities and are believed to be insolvent.

Mr. Friedberg's favorable ruling at the Bermuda trial court was recently overturned by a Bermuda appellate court on March 19, 2004, not because the court found Mr. Friedberg's claims lacking in merit but because the appellate court concluded that a winding-up petition was not the appropriate manner for Mr. Friedberg to pursue his claims where there was a "bona fide dispute" as to the amounts due. *In re Petition of Stephen Friedberg*, Nos. 17 & 18 of 2003 (Bermuda Ct. App. 2004). The Bermuda Appellate Court left open the opportunity for Mr. Friedberg and his co-plaintiffs to pursue a traditional civil proceeding against the Mutual defendants to recover the dividends that rightfully belong to him. And Mr. Friedberg is prepared to do just that, whether it means pursuing this action before the Court or commencing new litigation in Bermuda or another jurisdiction. Such efforts, however, will be pointless if the Court lifts its TRO, dismisses this action, and allows the financially strapped Mutual defendants to use Mr. Friedberg's Morgan Stanley funds to relieve their own situation, thereby leaving Mr. Friedberg with nothing to recover in whatever forum he vindicates his rights.

Significantly, throughout this time while the parties were litigating their claims and defenses in the Bermuda court system, the Mutual defendants had no objection to leaving the TRO in place. (*See* Friedberg's Mem. in Opp. To Defs.' Mot., at 7-9). Indeed, the parties had agreed to leave the TRO in place under this Court's jurisdiction pending the resolution of proceedings in Bermuda. Barely one month after entry of the TRO, the Mutual defendants' Bermuda counsel informed Mr. Friedberg's Bermuda counsel that "*our clients prefer to leave the TRO in place for the time being.*" (Letter from Conyers Dill & Pearman to Mr. Kawaley, dated

June 26, 2002 (emphasis added)) (attached as Exhibit M to Mr. Friedberg's Mem. in Opp. to Defs.' Mot. to Dismiss).

But now that the Bermuda Appellate Court has ruled that Mr. Friedberg's remedies lie outside the winding-up process, the Mutual defendants seek to reinstate their motion to dismiss and lift the TRO, which they have been perfectly content with over the past two years. However, the Bermuda Appellate Court did not rule on the merits of the dispute nor did it issue an opinion yielding a full and complete resolution to the matter. And, more importantly, the court did not rule that "all alleged debts … must be resolved in the Bermuda court," as Mutual's counsel would like this Court to believe. (*See* Letter from Mr. Quinn to the Court, dated April 22, 2004). Rather, the Bermuda Appellate Court's decision addressed only the appropriateness of a winding-up petition where bona fide disputes exist as to the amount in controversy. The court never touched upon the jurisdictional issues present here.

Accordingly, a live controversy still exists with respect to the ownership rights of the monies subject to the TRO, and nothing in the Bermuda court's ruling affects this Court's TRO or the continuing need to preserve the funds from irreparable loss while Mr. Friedberg pursues whatever litigation is necessary in this Court, the Bermuda courts, or elsewhere. Likewise, nothing in the supplemental authorities provided by the Mutual defendants undermines the basis of and continuing need for the temporary restraining order.

## **ARGUMENT**

A.  **Defendants' Motion To Dismiss Should Be Denied For The Reasons Briefed In Friedberg's Opposition Memorandum And Nothing In Defendants' Notice of Supplemental Authority Suggests Otherwise.**

Defendants' motion to dismiss should be denied for the reasons briefed in Mr. Friedberg's memorandum in opposition thereto and Mr. Friedberg will not burden the Court with a repetition of those arguments at length here. Briefly, the Mutual defendants waived their right to challenge this Court's jurisdiction and venue. (*See* Friedberg's Mem. in Opp. to Defs.' Mot., at 7-12). And, more importantly, the forum selection clauses in the Shareholder Agreements relied upon by defendants do not apply.

1.  **Defendants' supplemental authority reaffirms that they expressly waived their right to challenge this Court's jurisdiction and venue.**

The Mutual defendants cannot deny that they waived their objection to this Court's jurisdiction and venue over the monies, and the supplemental authority recently provided to the Court supports this position.

It is undeniable that the Mutual defendants expressly consented to this Court's jurisdiction just one month after Mr. Friedberg filed this lawsuit. Mr. Friedberg filed this lawsuit on May 23, 2002 and simultaneously sought a temporary restraining order over the res (*i.e.*, the Morgan Stanley accounts). This Court issued the TRO over the res less than one week later. Within a matter of weeks, while the parties were discussing a global settlement of this dispute and a corollary dispute in Bermuda (*see* note 2, *supra*), counsel for the Mutual defendants informed Mr. Friedberg's Bermuda counsel in no uncertain terms that "*our clients prefer to leave the TRO in place for the time being.*" (Letter from Conyers Dill & Pearman to Mr. Kawaley,

dated June 26, 2002 (emphasis added)). Significantly, the Mutual defendants' decision to leave the "TRO in place" came in response to Mr. Friedberg's offer to transfer this Court's TRO to a court of appropriate jurisdiction in Bermuda. The Mutual defendants declined that offer. (*See* June 26, 2002, letter).

Now, almost two years later, the Mutual defendants have completely reversed their position and seek the Court's assistance to transfer this matter to Bermuda. Mutual's motives for its change of heart are clear: in 2002, when they believed that Bermuda jurisdiction potentially was unfavorable for them, they outright rejected Mr. Friedberg's offer to transfer this matter to Bermuda; but today, mistakenly encouraged by their misinterpretation of the Bermuda Appellate Court opinion, they have changed fields and now seek to have this matter heard in Bermuda. They cannot have it both ways. Nor should they be permitted to shop for a forum based upon whichever court appears to be most favorably inclined at the moment – while they contest a multitude of lawsuits throughout the country – in their efforts to stave off complete financial collapse.

Without question, the Mutual defendants' conduct constitutes a waiver of any and all objections to this Court's jurisdiction and venue. Judge Posner's reasoning in *American Patriot Ins. Agency, Inc. v. Mutual Risk Management, Ltd.*, No. 03-1684, 2004 WL 816836 (7th Cir. Apr. 16, 2004), which defendants eagerly offer as authoritative, supports that this Court should find waiver did in fact occur. In that opinion, Judge Posner noted: "a right can be waived or forfeited. If the defendant tells the plaintiff that *he is content with venue* of the suit … then conventional principles of waiver or equitable estoppel come into play and if invoked by the

plaintiff block the challenge to venue." *Id.* at *2 (emphasis added) (citations omitted).[3]  That is exactly what happened in this case.  Two years ago, the Mutual defendants specifically rejected an offer that would have effectively yielded the same result they seek today.  In doing so, they expressly informed Mr. Friedberg in writing that their preference was to remain under this Court's jurisdiction.  In other words, as Judge Posner's decision explains, the Mutual defendants "told" Mr. Friedberg they were "content" with this Court's jurisdiction and venue and therefore waived any objections thereto.

Accordingly, the Mutual defendants' motion to dismiss should be denied because any objections to jurisdiction and venue have been expressly waived.

**2.    The forum selection clauses in the shareholder agreements do not apply to this case.**

This dispute is not subject to the forum selection clauses in the shareholder agreements.  The clauses relied upon by the Mutual defendants read: "This Agreement has been made and executed in Bermuda and shall be exclusively governed by and construed in accordance with the laws of Bermuda and any dispute concerning this Agreement shall be resolved by the courts of Bermuda."  (Exhibits A-C to Friedberg's Mem. in Opp.).  The matter now before the Court, however, is not a dispute "concerning" any of the terms of the shareholder agreements.

Rather, this dispute seeks to resolve who has legal and equitable title to dividends that have already been declared in accordance with the terms of the shareholder agreements.  Mr.

---

[3]    In *American Patriot*, unlike the circumstances before this Court, the Mutual defendants did not tell the plaintiffs that they "preferred" to leave jurisdiction with the Northern District of Illinois.

Friedberg does not here dispute the terms of the shareholder agreements; he does not allege here that the Mutual defendants breached any terms in the agreements; nor does he allege here that the Mutual defendants owe him additional money or that any of them under-declared his dividends pursuant to the agreements. This is a dispute sounding in equity where, based on the parties' course of conduct after dividends have already been declared, plaintiff seeks to vindicate his title to monies held on his behalf. There is simply no nexus between the terms of the shareholder agreements and the allegations in this complaint, and any connection linking one to the other is remote and tenuous at best.

Almost everything about *American Patriot* and *Pemaquid Underwriting Brokerage, Inc. v. Mutual Holdings, et al.*, 02-CV-4691 (unpublished) (D.N.J.) – the two cases offered by Mutual as supplemental authority – is different than this case before the Court. In both of those cases, the only connection between the plaintiffs and their selected venues was that the plaintiffs resided in the states where those federal lawsuits were filed. Here, however, not only does Mr. Friedberg reside in the Commonwealth of Pennsylvania but the res that is the subject of the complaint and the TRO is situated in this district. If Mr. Friedberg is forced to file suit in Bermuda, there is no guarantee that a Bermuda court will even entertain the matter if it concludes in the first instance that it has no jurisdictional power over a disputed res maintained in another country. Moreover, the custodian of the res – Morgan Stanley, an essential third party to this matter – conducts a significant amount of business in this federal district and, upon information and belief, the Morgan Stanley broker who managed the accounts is based out of the Philadelphia office. Clearly, neither of the two supplemental authorities cited by the Mutual defendants involved a res of already declared dividends situated in a jurisdiction outside of Bermuda and, therefore, those cases are of little significance to this matter.

Thus, the clause in the Shareholder Agreements relied upon by defendants does not apply to Mr. Friedberg's claims. Accordingly, defendants' motion should be denied.

### B. The Court Should Leave The TRO In Place Or Else The Mutual Defendants Will Empty Out The Accounts, Thus Rendering Any Vindication of Mr. Friedberg's Rights Pointless.

The need for keeping the temporary restraining order in place remains acute. Various members of the Mutual corporate family are insolvent and have sought, and still remain under, the protection of the Bermuda bankruptcy laws. Upon information and belief, other members of the Mutual family, including all of the Mutual defendants here, are still being closely monitored by the Bermuda authorities and are believed to be insolvent. Without the protection of this Court's order, there is every reason to believe that the Mutual defendants, hungry for any available monies, will seize the funds held at Morgan Stanley which will then be irreparably lost to Mr. Friedberg. Without the protection of the Court's order, Mr. Friedberg's vindication of his ownership rights will be an empty victory, regardless of the forum. Even though Mr. Friedberg is fully prepared to litigate the matter in this Court, precisely where he vindicates his ownership of the funds is not nearly as important as his already established need to have this Court preserve those monies during the ensuing litigation. Stated another way, it is imperative that the TRO remain in place and protect the monies that are the subject of the parties' dispute or else that money will disappear forever leaving Mr. Friedberg with no recourse. Therefore, defendants' motion should be denied and the Court should leave the TRO in place.

### C. The Bermuda Appellate Court Did Not Rule That This Dispute Must Be Litigated In Bermuda.

Contrary to the defendants' representations, the Bermuda Appellate Court's opinion of March 19, 2004, did not rule that the rights to the monies held in the Morgan Stanley

accounts must be resolved in Bermuda.  The opinion, which the Mutual defendants recently submitted to the Court, reached several conclusions – all of which dealt with the viability of Mr. Friedberg's winding-up petition in light of "bona fide defences [sic]" – but never once touched upon the jurisdictional issues underlying the present matter.  In their letter to the Court on April 22, 2004, the Mutual defendants' attorneys stated that "the Bermuda appellate court recently issued the enclosed opinion finding that the alleged debts are disputed and must be resolved in the Bermuda court." (Letter from Mr. Quinn to the Court, dated April 22, 2004).  Nowhere in its opinion did the Bermuda Appellate Court even remotely suggest such a conclusion.  In fact, the Bermuda Appellate Court did not address the forum selection clause nor did it discuss any jurisdictional issues whatsoever.  The Bermuda Appellate Court's opinion barely made reference to the present litigation and did so only to provide background for its own opinion.  *In re Petition of Stephen Friedberg*, Nos. 17 & 18 of 2003, ¶20(5).

Thus, the Bermuda Appellate Court's opinion of March 19, 2004, did not "decide[] that the forum selection clause mandated that the dispute between the parties must be resolved in the Bermuda courts."  In light of this, coupled with the arguments set forth above, defendants' motion to dismiss should be denied and the TRO should remain in place.

**CONCLUSION**

For all the foregoing reasons, plaintiff Stephen M. Friedberg respectfully requests that this Court deny defendants' motion to dismiss, leave the May 30, 2002 TRO in place, and enter an order in the form attached hereto.

Respectfully submitted,

/s/ Han Nguyen
David Smith (I.D. No. 21480)
Han Nguyen (I.D. No. 85860)
*Attorneys for Plaintiff,*
*Stephen M. Friedberg*

SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103-7286
(215) 751-2000

Of Counsel.

Dated: May 20, 2004

## CERTIFICATE OF SERVICE

I, Han Nguyen, hereby certify that a copy of the foregoing Plaintiff Stephen M. Friedberg's Objections To The Court's Granting Of Defendants' Motion To Dismiss was served by United States mail, first-class, postage prepaid upon the following on May 20, 2004.

John E. Quinn, Esq.
Reed Smith
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Margaret Manolakis, Esq.
Stradley Ronon Stevens & Young
Great Valley Corporate Center
30 Valley Stream Parkway
Malvern, Pennsylvania 19355-1481

/s/ Han Nguyen
Han Nguyen