

## SHAREHOLDER AGREEMENT

THIS AGREEMENT, made and entered into as of January 1, 1992 by and between MUTUAL

HOLDINGS LTD., a company organized and existing under the laws of the Islands of Bermuda

(hereinafter referred to as "MUTUAL") and MARK OUIMETTE (hereinafter referred to

individually or collectively as "SHAREHOLDER").

### WITNESSETH:

WHEREAS, SHAREHOLDER is desirous of purchasing One (1) non-voting preferred share of

MUTUAL designated Series "E11" preferred share (hereinafter "PREFERRED SHARE") for

the purchase price hereinafter set forth; and

WHEREAS, MUTUAL is desirous of repurchasing the PREFERRED SHARE on the redemption

date set forth in Appendix I attached hereto (hereinafter referred to as the "REDEMPTION

DATE") for the purchase price hereinafter set forth; and

NOW, THEREFORE, in consideration of the mutual promises and undertakings set forth herein

the parties do hereby agree as follows:

1.    SHAREHOLDER agrees to purchase the PREFERRED SHARE and agrees to pay to

MUTUAL the amount of One Thousand Dollars ($1,000.00). This amount shall be paid

within thirty (30) days of the execution of this Agreement.



2.  On the dates shown in Appendix I (hereinafter referred to as the "DIVIDEND DATE")
    MUTUAL agrees to cause a dividend to be declared to the owner of record on such date(s)
    of the PREFERRED SHARE in an amount equal to the sum of the following:

    The amount of investment income, if any, earned by MUTUAL during the 12 months
    ending 31 December immediately preceding such DIVIDEND DATE resulting from the
    investment of the cash funds received by MUTUAL as the purchase price of the
    PREFERRED SHARE as set forth in paragraph (1) hereof, less the applicable
    Administrative Fee as shown in Appendix I equal to a percentage per annum of the average
    amount of investment funds held by MUTUAL as a result of the purchase price of the
    PREFERRED SHARE.

3.  SHAREHOLDER hereby indemnifies and holds MUTUAL harmless against the
    cumulative sum of paragraph 2, minus the cumulative amount of dividends paid, being less
    than zero at any point in time.

    On receipt of each written demand by MUTUAL, SHAREHOLDER agrees to pay
    MUTUAL within 30 days, the amount by which the cumulative sum of the amounts
    calculated under paragraph 2, minus the cumulative amounts of dividends paid pursuant
    to this Agreement, are less than zero minus all previous payments under this paragraph.

4.     If on the REDEMPTION DATE, as defined in this Agreement, MUTUAL continues to hold funds and agrees to annually pay SHAREHOLDER on 28 February of each year as additional dividends the amount of investment income earned by MUTUAL during the preceding year resulting from the investment of such funds less an Administrative Fee as shown in Appendix I equal to a percentage per annum of the average amount of such funds until such time as the amount of funds held by MUTUAL is less than Five Thousand Dollars ($5,000) at which point liability under this paragraph shall cease.

5.     On the REDEMPTION DATE, MUTUAL agrees to repurchase from the SHAREHOLDER the PREFERRED SHARE upon presentation of the share certificate representing the PREFERRED SHARE duly endorsed for cancellation for the price of One Thousand Dollars ($1,000.00) by repaying the amount of cash paid by SHAREHOLDER as purchase price for the PREFERRED SHARE.

6.     It is agreed that the PREFERRED SHARE issued to SHAREHOLDER pursuant to this Agreement is being purchased by the SHAREHOLDER for purposes of investment only. The said PREFERRED SHARE has not been registered under the United States Securities Act of 1933, as amended. The said PREFERRED SHARE shall not be sold, transferred, hypothecated, pledged or otherwise assigned or encumbered and will bear the following legend:-

> "These securities have not been registered under the Securities Act of 1933, as amended. These Securities have been acquired for investment and may not be sold, transferred, hypothecated, pledged or otherwise assigned or encumbered."

7.    This Agreement may not be modified, amended or changed in any manner except in writing signed by all the parties hereto. It may, however, be terminated by written notice from either party to the other at least sixty (60) days prior to the proposed termination date. In such event all existing obligations from each party to the other or to third parties shall remain in force as of the time of termination.

8.    All notices, requests, demands or other communications provided for herein shall be in writing, shall be delivered by hand or by first-class mail, postage prepaid and shall be addressed to the parties hereto at their respective addresses listed below or to such other persons or addresses as the relevant party shall designate as to itself from time to time in a writing delivered in like manner:

If to MUTUAL HOLDINGS LTD., to it at:

> Barclays International Building
> 44 Church Street
> P.O. Box HM 2064
> Hamilton HM HX, Bermuda.

If the SHAREHOLDER, to it at:

> 4240 Greensburg Pike
> Pittsburg, PA 15221
> U.S.A.

9.    This Agreement has been made and executed in Bermuda and shall be exclusively governed by and construed in accordance with the laws of Bermuda and any dispute concerning this Agreement shall be resolved exclusively by the courts of Bermuda.

10.    All amounts referred to herein are expressed in United States Dollars and all payments shall be made in such dollars.

11.    The purchase of the PREFERRED SHARE by SHAREHOLDER and any subsequent transfers

of the PREFERRED SHARE are subject to the prior consent of the Bermuda Monetary

Authority (Foreign Exchange Control) which agency must approve all transfers of shares in

Bermuda companies.

IN WITNESS WHEREOF, the parties have set their hand.

At  _Hamilton, Bermuda_

on the 12 day of  _November_ , 1994.

MARK OUIMETTE

At  _Hamilton, Belmuda_

on the 15 day of  _Nov_  , 1994.

MUTUAL HOLDINGS LTD.

BY: _____

Paul Watson, President

G:SHAG-E11.GM/rn1/2-94

APPENDIX NO. I

PREFERRED SHARE SERIES "E11"

REDEMPTION DATE

Close of business on the 1st day of March, 2000.

DIVIDEND DATE

Commencing on the 28th day of February, 1995 and annually thereafter on the 28th day of February of each succeeding year up to and including the 28th day of February, 2000.

ADMINISTRATIVE FEE

During the term of the Underwriting Period 1.25% per annum

After expiration of the Underwriting Period 1.75% per annum

The administrative fee is calculated as a percentage of the average amount of funds held pursuant to Section 2 of the Agreement.

The Underwriting Period will be extended accordingly for each renewal.

MARK OUIMETTE

BY: _____

MUTUAL HOLDINGS LTD.

BY: _____
Paul Watson, President

G:SHAG-E11.GM/ras/2-94

RECEIVED
JAN 5 1996
LEECH & TISHMAN

## SHAREHOLDER AGREEMENT

THIS AGREEMENT, made and entered into as of January 1, 1992 by and between MUTUAL HOLDINGS LTD., a company organized and existing under the laws of the Islands of Bermuda (hereinafter referred to as "MUTUAL") and ADVANTAGE PARTNERS (hereinafter referred to individually or collectively as "SHAREHOLDER").

### WITNESSETH:

WHEREAS, SHAREHOLDER is desirous of purchasing One (1) non-voting preferred share of MUTUAL designated Series "E14" preferred share (hereinafter "PREFERRED SHARE") for the purchase price hereinafter set forth; and

WHEREAS, MUTUAL is desirous of repurchasing the PREFERRED SHARE on the redemption date set forth in Appendix I attached hereto (hereinafter referred to as the "REDEMPTION DATE") for the purchase price hereinafter set forth; and

WHEREAS, a subsidiary of MUTUAL, MUTUAL INDEMNITY LTD. (hereinafter referred to as "INDEMNITY") has entered into one or more Reinsurance Agreements (hereinafter referred to individually or collectively as the "TREATY") as shown in Appendix I with the insurance company(ies) as shown in Appendix I (hereinafter referred to individually or collectively as the "INSURANCE COMPANY") pursuant to which INDEMNITY has reinsured certain of the liability of INSURANCE COMPANY on policies of insurance issued to SHAREHOLDER and its affiliates.

EXHIBIT
B

NOW, THEREFORE, in consideration of the mutual promises and undertakings set forth herein the parties do hereby agree as follows:

1.   SHAREHOLDER agrees to purchase the PREFERRED SHARE and agrees to pay to MUTUAL the amount of One Thousand Dollars ($1,000.00). This amount shall be paid within thirty (30) days of the execution of this Agreement.

2.   On the dates shown in Appendix I (hereinafter referred to as the "DIVIDEND DATE") MUTUAL agrees to cause a dividend to be declared to the owner of record on such date(s) of the PREFERRED SHARE in an amount equal to the sum of the following:

(A)   The amount of investment income, if any, earned by MUTUAL during the 12 months ending 31 December immediately preceding such DIVIDEND DATE resulting from the investment of the cash funds received by MUTUAL as the purchase price of the PREFERRED SHARE as set forth in paragraph (1) hereof, less the applicable Administrative Fee as shown in Appendix I equal to a percentage per annum of the average amount of investment funds held by MUTUAL as a result of the purchase price of the PREFERRED SHARE.

(B)   Plus the amount of investment income earned by INDEMNITY during the 12 months ending 31 December preceding the DIVIDEND DATE, resulting from the investment of funds received by INDEMNITY under the TREATY with INSURANCE COMPANY less the applicable Administrative Fee as shown in

-2-

Appendix I equal to a percentage per annum of the average amount of such funds held by INDEMNITY during the preceding year. It is understood and agreed that such funds may be held by INDEMNITY as loss reserves and premium reserves and may be repaid to INSURANCE COMPANY pursuant to the terms of the TREATY.

(C)   Plus or minus the amount of underwriting gain or loss realized by INDEMNITY on the TREATY during the policy year preceding the DIVIDEND DATE. Underwriting gain shall be computed by the following formula:

Net Premium received by INDEMNITY after all deductions made by or paid to the INSURANCE COMPANY including ceding commissions, expenses and taxes (including the actual final cost of licenses, fees, assigned risk charges, guarantee funds etc.) as provided in the TREATY; minus all losses and loss expenses incurred including loss and loss expense reserves for unpaid reported losses and for losses incurred but not reported; minus the applicable Underwriting Fee as shown in Appendix I; minus the actual cost incurred by INDEMNITY in establishing and maintaining a letter of credit in favour of INSURANCE COMPANY as required by the TREATY.

3.(A)   SHAREHOLDER hereby indemnifies and holds MUTUAL and INDEMNITY harmless against the cumulative sum of paragraphs 2(A), 2(B) and 2(C) minus the cumulative amount of dividends paid, being less than zero at any point in time. On receipt of each written demand by MUTUAL or INDEMNITY, SHAREHOLDER agrees to pay MUTUAL or INDEMNITY within 30 days, the amount by which the cumulative sum of the amounts calculated under paragraphs

2(A), 2(B) and 2(C) minus the cumulative amounts of dividends paid pursuant to this Agreement, are less than zero minus all previous payments under this paragraph provided however that the definition of incurred losses and loss expenses in paragraph 2(C) shall for this purpose only include losses and loss expenses which have been paid or are likely to be paid within the following ninety (90) days.

(B)    As security for this obligation SHAREHOLDER hereby agrees to provide INDEMNITY, upon execution of this Agreement collateral (hereinafter referred to as the "SECURITY DEPOSIT") in the form of a clean irrevocable letter of credit in the amount as shown in Appendix I drawn on a bank acceptable to INDEMNITY or substitute cash collateral. Thereafter, SHAREHOLDER agrees, during the period of the Policy and for so long thereafter as INDEMNITY has any outstanding or potential liability to INSURANCE COMPANY under the terms of the TREATY to keep such letter of credit in force or to substitute cash collateral prior to the expiration of such letter of credit. If cash collateral is provided, interest earned on such collateral, less the applicable Administrative Fee as shown in Appendix I, will be included as a dividend pursuant to Sections 2 (B) and 4 hereof. The provisions of this paragraph (3) shall survive the redemption of the PREFERRED SHARE and the termination of this Agreement.

4.    If on the REDEMPTION DATE, as defined in this Agreement, INDEMNITY continues to hold funds pursuant to the TREATY with INSURANCE COMPANY, MUTUAL agrees to annually pay SHAREHOLDER on 28 February of each year as additional dividends the amount of investment income earned by INDEMNITY during the preceding year resulting from the investment of such funds less an Administrative Fee as shown in Appendix I equal to a percentage per

annum of the average amount of such funds plus or minus the amount of additional underwriting gain or loss realized by INDEMNITY on the TREATY calculated in accordance with paragraph 2(C) hereof until such time as the amount of funds held by INDEMNITY is less than Five Thousand Dollars ($5,000) at which point liability under this paragraph shall cease.

5.   On the REDEMPTION DATE, MUTUAL agrees to repurchase from the SHAREHOLDER the PREFERRED SHARE upon presentation of the share certificate representing the PREFERRED SHARE duly endorsed for cancellation for the price of One Thousand Dollars ($1,000.00) by repaying the amount of cash paid by SHAREHOLDER as purchase price for the PREFERRED SHARE.

6.   It is agreed that the PREFERRED SHARE issued to SHAREHOLDER pursuant to this Agreement is being purchased by the SHAREHOLDER for purposes of investment only. The said PREFERRED SHARE has not been registered under the United States Securities Act of 1933, as amended. The said PREFERRED SHARE shall not be sold, transferred, hypothecated, pledged or otherwise assigned or encumbered and will bear the following legend:-

> "These securities have not been registered under the Securities Act of 1933, as amended.   These Securities have been acquired for investment and may not be sold, transferred, hypothecated, pledged or otherwise assigned or encumbered."

7.   This Agreement may not be modified, amended or changed in any manner except in writing signed by all the parties hereto. It may, however, be terminated by written notice from either party to the other at least sixty (60) days prior to the proposed termination date. In such event all existing obligations from each party to the other or to third parties shall remain in force as of the time of termination.

8.   All notices, requests, demands or other communications provided for herein shall be in writing, shall be delivered by hand or by first-class mail, postage prepaid and shall be addressed to the parties hereto at their respective addresses listed below or to such other persons or addresses as the relevant party shall designate as to itself from time to time in a writing delivered in like manner:

If to MUTUAL HOLDINGS LTD., to it at:

> Barclays International Building
> 44 Church Street
> P.O. Box HM 2064
> Hamilton HM HX, Bermuda.

If the SHAREHOLDER, to it at:

> 4240 Greensburg Pike
> Pittsburg, PA 15221
> U.S.A.

9.   This Agreement has been made and executed in Bermuda and shall be exclusively governed by and construed in accordance with the laws of Bermuda and any dispute concerning this Agreement shall be resolved exclusively by the courts of Bermuda.

10.   All amounts referred to herein are expressed in United States Dollars and all payments shall be made in such dollars.

11.   The purchase of the PREFERRED SHARE by SHAREHOLDER and any subsequent transfers of the PREFERRED SHARE are subject to the prior consent of the Bermuda Monetary Authority (Foreign Exchange Control) which agency must approve all transfers of shares in Bermuda companies.

IN WITNESS WHEREOF, the parties have set their hand.

At _Hamilton, Bermuda_

on the _8_ day of _November_ , 1993.

COMP ADVANTAGE PARTNERS

BY: _____
    Mr. Dallas Krapf

BY: _____
    Mr. Steven Freidburg
    STEPHEN FRIEDBERG

BY: _____
    Mr. Mark Ouimette

BY: _____
    Mr. Dale Krapf

At _Hamilton Bermuda_

on the _17_ day of _Nov_ , 1993.

MUTUAL HOLDINGS LTD.

BY: _____
    Paul Watson, President

G:SHAG-E14.GM/rss/3-93

-7-

# APPENDIX NO. I

## PREFERRED SHARE SERIES "E14"

### REDEMPTION DATE

Close of business on the 1st day of March, 1998.

### DIVIDEND DATE

Commencing on the 28th day of February, 1993 and annually thereafter on the 28th day of February of each succeeding year up to and including the 28th day of February, 1998.

### TREATY

| Underwriting Period | Insurance Company |
|---|---|
| January 1, 1992 - December 31, 1992 | Legion Insurance Company |

### UNDERWRITING FEE

| Underwriting Period | Underwriting Fee |
|---|---|
| January 1, 1992 - December 31, 1992 | 3.5% |

The Underwriting Fee is expressed as a percentage of the gross premium written under the TREATY.

### ADMINISTRATIVE FEE

During the term of the Underwriting Period  1.25% per annum

After expiration of the Underwriting Period  1.75% per annum

The administrative fee is calculated as a percentage of the average amount of funds held pursuant to Section 2 of the Agreement.

The Underwriting Period will be extended accordingly for each renewal.

## SECURITY DEPOSIT

Two Hundred and Sixty-six Thousand United States Dollars ($266,000).

COMP ADVANTAGE PARTNERS

BY: _____
    Mr. Dallas Krapf

BY: _____
    Mr. ~~Steven Freidburg~~
      STEPHEN FRIEDBURG

BY: _____
    Mr. Mark Ouimette

BY: _____
    Mr. Dale Krapf

MUTUAL HOLDINGS LTD.

BY: _____
    Paul Watson, President

G:SHAG-E14.GM/rss/3-93

AMENDMENT No. 1
TO
SHAREHOLDER AGREEMENT
PREFERRED SHARE SERIES "E14"

This is Amendment No. 1, to a certain Shareholder Agreement made and entered into as of the 1st day of January, 1992 by and between MUTUAL HOLDINGS LTD., a company organised and existing under the laws of the Islands of Bermuda (hereinafter "MUTUAL") and ADVANTAGE PARTNERS (hereinafter "SHAREHOLDER") a corporation organised and existing under the laws of the State of Pennsylvania.

<u>WITNESSETH</u>

WHEREAS, both SHAREHOLDER and MUTUAL are desirous of amending this Agreement to provide for the renewal of the PROGRAM; and

WHEREAS, this AGREEMENT, the POLICY and the TREATY together constitute a single insurance program (hereinafter the "PROGRAM") which is a uniquely negotiated single contract and no part of the PROGRAM would have been entered into without the other parts being in force.

NOW, THEREFORE, in consideration of the mutual promises and undertakings set forth herein the parties do hereby agree as follows:

1.    The policies of insurance issued to SHAREHOLDER and affiliates by INSURANCE COMPANY shall hereinafter be referred to individually or collectively as the "POLICY".

-1-

2.   SHAREHOLDER agrees to pay all premium due to INSURANCE COMPANY promptly and in full. Any failure to pay such premium to INSURANCE COMPANY promptly when due shall consitute a material breach of this Agreement. In addition to all other remedies which MUTUAL and INSURANCE COMPANY may have from such non-payment or delay in payment, MUTUAL may, but shall not be required to, pay such premium to INSURANCE COMPANY on behalf of the SHAREHOLDER and if MUTUAL shall so elect then the full amount of such payment, plus interest, shall be deducted from any dividends due to SHAREHOLDER under this Agreement.

3.   Appendix No. I shall be deleted in its entirety and replaced with Appendix No. I-a attached hereto. All references to Appendix I-a in the Agreement shall now refer to Appendix I-a.

4.   All other terms and conditions shall remain unchanged.

5.   The effective date of this Amendment No. 1 shall be the 1st day of January, 1992.

IN WITNESS WHEREOF, the parties have set their hand.

AT _Hamilton Bermuda_

on the 8 day of November 1993.

COMP. ADVANTAGE

BY: _Dallas Krapf_
Mr. Dallas Krapf

BY: _Steven M Freidberg_
Mr. Steven Freidburg
STEVEN FRIEDBERG

BY: _Mark F._
Mr. Mark Ouimette

BY: _Dale N. Krapf_
Mr. Dale Krapf

AT _Hamilton, Bermuda_

on the 1 day of Nov, 1993.

MUTUAL HOLDINGS LTD.

BY: _Paul Watson_
Paul Watson, President

G:AMEN-E14.GM/rss/3-93

-3-

## APPENDIX NO. I-a
## PREFERRED SHARE SERIES "E14"

### REDEMPTION DATE

Close of business on the 1st day of March, 1999.

### DIVIDEND DATE

Commencing on the 28th day of February, 1994 and annually thereafter on the 28th day of February of each succeeding year up to and including the 28th day of February, 1999.

### TREATY

| Underwriting Period | Insurance Company |
|---|---|
| January 1, 1992 - December 31, 1992 | Legion Insurance Company |
| January 1, 1993 - December 31, 1993 | Legion Insurance Company |

### UNDERWRITING FEE

| Underwriting Period | Underwriting Fee |
|---|---|
| January 1, 1992 - December 31, 1992 | 3.5% |
| January 1, 1993 - December 31, 1993 | 3.5% |

The Underwriting Fee is expressed as a percentage of the gross premium written under the TREATY.

### ADMINISTRATIVE FEE

During the term of the Underwriting Period  1.25% per annum

After expiration of the Underwriting Period 1.75% per annum

The administrative fee is calculated as a percentage of the average amount of funds held pursuant to Section 2 of the Agreement.

The Underwriting Period will be extended accordingly for each renewal.

-4-

## SECURITY DEPOSIT

Four Hundred and Ninety-five Thousand Two Hundred and Thirty-seven United States Dollars ($495,237).

BY: _____
Mr. Dallas Krapf

BY: _____
Mr. Steven Freidburg
STEPHEN FRIEDBERG

BY: _____
Mr. Mark Ouimette

BY: _____
Mr. Dale Krapf

MUTUAL HOLDINGS LTD.

BY: _____
Paul Watson, President

-5-

AMENDMENT NO. 2

TO

SHAREHOLDER AGREEMENT

PREFERRED SHARE SERIES "E14"

This is Amendment No. 2 to a certain Shareholder Agreement made and entered into the 1st day of January 1992 by and between MUTUAL HOLDINGS LTD., a company organized and existing under the laws of the Islands of Bermuda (hereinafter "MUTUAL") and ADVANTAGE PARTNERS (hereinafter "SHAREHOLDER"), a corporation organized and existing under the laws of the Commonwealth of Pennsylvania.

WITNESSETH:

WHEREAS, SHAREHOLDER is desirous of obtaining a Performance Bond from Legion Insurance Company (hereinafter "LEGION") in the amount of $47,487; and

WHEREAS, LEGION is desirous of reinsuring the Performance Bond to INDEMNITY; and

WHEREAS, SHAREHOLDER is desirous of using the assets accruing to Preferred Share Series "E14" to pay any losses incurred under the Performance Bond.

NOW, THEREFORE, in consideration of the mutual promises and undertakings set forth herein, the parties do hereby agree as follows:

1.    TREATY shall hereinafter additionally include INDEMNITY'S reinsurance of LEGION relating to the Performance Bond.

-2-

2.    All other terms and conditions shall remain unchanged.

IN WITNESS WHEREOF, the parties have set their hand at _Hamilton_

_Bermuda_ on the _8_ day of _November_ , 1993.


MUTUAL HOLDINGS LTD.

By:_____          _____

                                      Paul Watson, President


Title:_____

AMENDMENT No. 3

TO

SHAREHOLDER AGREEMENT
PREFERRED SHARE SERIES "E14"

This is Amendment No. 3, to a certain Shareholder Agreement made and entered into as of the 1st day of January, 1992 by and between MUTUAL HOLDINGS LTD., a company organised and existing under the laws of the Islands of Bermuda (hereinafter "MUTUAL") and ADVANTAGE PARTNERS (hereinafter "SHAREHOLDER") a corporation organised and existing under the laws of the Commonwealth of Pennsylvania.

WITNESSETH

WHEREAS, both SHAREHOLDER and MUTUAL are desirous of amending this Agreement to provide for the renewal of the PROGRAM; and

WHEREAS, this AGREEMENT, the POLICY and the TREATY together constitute a single insurance program (hereinafter the "PROGRAM") which is a uniquely negotiated single contract and no part of the PROGRAM would have been entered into without the other parts being in force.

NOW, THEREFORE, in consideration of the mutual promises and undertakings set forth herein the parties do hereby agree as follows:

1. The policies of insurance issued to SHAREHOLDER and affiliates by INSURANCE COMPANY shall hereinafter be referred to individually or collectively as the "POLICY".

2. SHAREHOLDER agrees to pay all premium due to INSURANCE COMPANY promptly and in full. Any failure to pay such premium to INSURANCE COMPANY promptly when due shall consitute a material breach of this Agreement. In addition to all other remedies which MUTUAL and INSURANCE COMPANY may have from such non-payment or delay in payment, MUTUAL may, but shall not be required to, pay such premium to INSURANCE COMPANY on behalf of the SHAREHOLDER and if MUTUAL shall so elect then the full amount of such payment, plus interest, shall be deducted from any dividends due to SHAREHOLDER under this Agreement.

3. Appendix No. I-a shall be deleted in its entirety and replaced with Appendix No. I-b attached hereto. All references to Appendix I-a in the Agreement shall now refer to Appendix I-b.

4. All other terms and conditions shall remain unchanged.

5.  The effective date of this Amendment No. 3 shall be the 1st day of January, 1992.

IN WITNESS WHEREOF, the parties have set their hand.

AT_____

on the    day of                , 1994.

ADVANTAGE PARTNERS

BY: _Dallas F. Krapf_                At West Chester, Pennsylvania
    Mr. Dallas Krapf                 on April 14, 1995

BY: _____                 At Pittsburgh, PA
    Mr. Stephen Friedberg           on April 17, 1995

BY: _____                 At Pittsburgh, PA
    Mr. Mark Ouimette                on April 17, 1995

BY: _Dale N. Krapf_                 At West Chester, Pennsylvania
    Mr. Dale Krapf                   on April 14, 1995

AT _Hamilton Bermuda_

on the 8 day of _May_          , 1994.

MUTUAL HOLDINGS LTD.

BY: _____
    Paul Watson, President

G:AMEN3E14.GM/ns/1-94

APPENDIX NO. I-b
PREFERRED SHARE SERIES "E14"

## REDEMPTION DATE

Close of business on the 1st day of March, 2000.

## DIVIDEND DATE

Commencing on the 28th day of February, 1995 and annually thereafter on the 28th day of February of each succeeding year up to and including the 28th day of February, 2000.

## TREATY

| Underwriting Period | Insurance Company |
|---|---|
| January 1, 1992 - December 31, 1992 | Legion Insurance Company |
| January 1, 1993 - December 31, 1993 | Legion Insurance Company |
| January 1, 1994 - December 31, 1994 | Legion Insurance Company |

## UNDERWRITING FEE

| Underwriting Period | Underwriting Fee |
|---|---|
| January 1, 1992 - December 31, 1992 | 3.5% |
| January 1, 1993 - December 31, 1993 | 3.5% |
| January 1, 1994 - December 31, 1994 | 3.5% |

The Underwriting Fee is expressed as a percentage of the gross premium written under the TREATY.

## ADMINISTRATIVE FEE

During the term of the Underwriting Period · 1.25% per annum

After expiration of the Underwriting Period 1.75% per annum

The administrative fee is calculated as a percentage of the average amount of funds held pursuant to Section 2 of the Agreement.

The Underwriting Period will be extended accordingly for each renewal.

SECURITY DEPOSIT

No Security Deposit is currently required.

BY: _____
    Mr. Dallas Krapf

BY: _____
    Mr. Stephen Friedberg

BY: _____
    Mr. Mark Ouimette

BY: _____
    Mr. Dale Krapf

MUTUAL HOLDINGS LTD.

BY: _____
    Paul Watson, President

# MUTUAL INDEMNITY LTD.

### Preferred Share Series    "E14"
### Tax Statement
### For the Twelve Months Ended December 31, 1993

|  | US$ |
|---|---|
| NET INCOME (LOSS) FOR THE PERIOD | 81,060.42 |
| Change in Contingency Reserve | 310,153.29 |
| Change in Deferred Acquisition Cost | .00 |
| STATUTORY NET INCOME (LOSS) | 391,213.71 |
| TAX ADJUSTMENTS: | |
| Loss Reserve Discounting | 153,056.00 |
| 20% Change in Unearned Prem Reserve | .00 |
| ADJUSTED INCOME (LOSS) | 544,269.71 |
| PRO RATA SHARE OF R.P.I.I. | 462,315.20 |



MUTUAL INDEMNITY LTD.

Tax Statement

Preferred Share Series "E14"
(Unaudited)
For the Twelve Months Ended December 31, 1992

|                                          | US $       |
|------------------------------------------|-----------:|
| NET INCOME FOR THE PERIOD (LOSS)         | 20,414.98  |
| Change in Contingency Reserve            | 281,801.97 |
| Change in Deferred Acquisition Cost      | .00        |
| STATUTORY NET INCOME (LOSS)              | 302,216.95 |
| TAX ADJUSTMENTS:                         |            |
| Loss Reserve Discounting                 | 94,136.00  |
| 20% Change in Unearned Prem Reserve      | .00        |
| Opening Unearned Prem Res Recapture      | .00        |
| ADJUSTED INCOME (LOSS)                    | 396,352.95 |
| PRO RATA SHARE OF R.P.I.I.               | 264,929.84 |

RECEIVED

JAN 5  1996

LEECH & TISHMAN

AMENDMENT NO. 4 TO SHAREHOLDER AGREEMENT

PARTIAL REDEMPTION AND RELEASE AGREEMENT

This Agreement, effective as of the 1st day of January, 1992, between MUTUAL HOLDINGS LTD., a company organized under the laws of the Islands of Bermuda (hereinafter "Mutual") and DALE N. KRAPF ("DNK"), DALLAS L. KRAPF ("DLK"), STEPHEN FRIEDBERG ("SF") and MARK OUIMETTE ("MO") (hereinafter collectively referred to as the "Shareholders").

### BACKGROUND

WHEREAS, the Shareholders, under the name Comp Advantage Partners, jointly purchased one (1) non-voting preferred share of Mutual designated preferred share Series "E14" (the "Preferred Share"), and entered into a Shareholder Agreement effective January 1, 1992 (the "Shareholder Agreement");

WHEREAS, Mutual will declare a stock split of the Preferred Share on a four-for-one basis, the result of which will be that this date each Shareholder owns one (1) Preferred Share;

WHEREAS, each of DNK and DLK are desirous of cancelling and Mutual is desirous of redeeming one (1) Preferred Share owned by DNK and one (1) Preferred Share owned by DLK effective as of January 1, 1992;

WHEREAS, Mutual has agreed to redeem each Preferred Share as set forth in this Agreement; and

WHEREAS, after the redemption of the two (2) Preferred Shares as set forth herein, SF and MO shall each own one (1) Preferred Share, and shall be the sole shareholders of Series "E14";

NOW, THEREFORE, in consideration of the mutual promises contained herein, the parties agree as follows:

1.  <u>Stock Split</u>.  Mutual will declare a stock split of the Preferred Share on a four-for-one basis to be reflected on the shareholder books and records of Mutual, which will result in a distribution of three-quarters of one share to each of the Shareholders, which together with the one-quarter of the share theretofore owned, such shareholder records will reflect that each of the Shareholders owned one Preferred Share.

2.  <u>Redemption</u>.  Mutual agrees to redeem the one (1) Preferred Share of DNK and the one (1) Preferred Share of DLK (the "Redeemed Shares") as of the effective date of this Agreement in accordance with the terms and conditions hereof.

3. <u>Redemption Price</u>. The redemption price ("Redemption Price") for two (2) Redeemed Shares shall be $1,156,378, payable to as follows:.

(a) $543,189 each to DNK and DLK on or before April 15, 1995; and

(b) $70,000 shall be retained as a reserve (the "Krapf Reserve") provided in Paragraph 4 of this Agreement.

The Redemption Price includes all dividends heretofore declared but unpaid to DLK AND DNK.

4. <u>Review of Reserves</u>.

(a) At each December 31 for the years 1995 through 1999, the liabilities of Series E14 shall be reviewed to determine whether the reserve for outstanding losses, the reserve for IBNR losses, and any other reserves reasonably applicable to the business of E14 are adequate with respect to the premiums theretofore written by Series E14. To the extent that Mutual from time to time determines that the reserves are not adequate, Mutual shall be entitled to apply that portion or all of. the Krapf Reserve up to an amount equal to fifty percent (50%) of the reserve inadequacy.

(b) To the extent that the review of the reserves at each year end are determined to be in excess of those reasonably related to the premiums written by Series E14, an amount equal to fifty percent (50%) thereof, together with any of the Krapf Reserve previously applied by Mutual to reserves, shall be added to the Krapf Reserve.

(c) The amount of the Krapf Reserve remaining on December 31, 2000 or on any Termination Date (as hereinafter defined), plus the investment income earned thereon, shall be paid one-half to DLK and one-half to DNK. For the purposes hereof, the term "Termination Date" shall mean the date prior to December 31, 2000, if any, on which the business operations of Series E14 shall for any reason be terminated, or a date prior to December 31, 2000 when all of the Preferred Shares of Series E14 are no longer owned fifty percent (50%) by SF and fifty percent (50%) by MO.

5. <u>Amendment to Dividend Formula</u>. The parties hereto entered into a Shareholder Agreement dated as of January 1, 1992, as amended (the "Shareholder Agreement"). The dividend set forth in Paragraph 2 of the Shareholder Agreement shall be amended by adding the following provisions to Paragraph 2:

"(D) Minus $1,086,378.

(E) Minus any portion of the funds paid from the Krapf Reserve to Dale N. Krapf and Dallas L. Krapf on or about December 31, 2000 pursuant to the terms of the Redemption and Release Agreement dated January 1, 1992.

(F) Minus investment income earned on the Krapf Reserve."

- 2 -

6. <u>Consent</u>. SF and MO, jointly and severally, hereby consent and agree to the terms and conditions of this Agreement, including the redemption, the Redemption Price, the Krapf Reserve, and the amendment of the dividend formula.

7. <u>Representations and Indemnity</u>. DNK, DLS, SF and MO represent and warrant that they are the only parties holding any interest of any kind in and to Preferred Share Series E14, and that since January 1, 1992 none of DKN, DLK, SF and MO hereby agree to indemnify and hold Mutual harmless from any claim, loss, expense, damages or any cost whatsoever, including attorneys' fees, arising out of any claim by any person to any ownership interest in Preferred Share Series E14.

8. <u>Releases</u>.

(a) Mutual releases and agrees to defend and hold DNK and DLK harmless from any claim, expense, liability or cost of any liability under the Shareholder Agreement, except to the extent set forth herein.

(b) DNK and DLK hereby release Mutual from any claim for dividends, redemption, or other rights arising out of the Shareholder Agreement, except as may be set forth herein.

(c) SF and MO release Mutual from any claim for dividends, redemption or other rights arising out of the sums paid to DNK and DLK hereunder.

(d) Except as set forth herein, DNK, DLK, SF and MO hereby release each other from all liabilities, damages, claims or demands in any manner related to the ownership of a Preferred Share or the operation of Series E14, except as set forth in this Agreement.

9. <u>Effective Date</u>. This Agreement shall be effective as of January 1, 1992.

10. <u>Miscellaneous</u>.

(a) <u>Successors and Assigns</u>. The Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, administrators, successors and assigns.

(b) <u>Notice</u>. Any notices hereunder, if mailed, shall be deemed given and received 72 hours after mailing, and if sent by professional express service, notice shall be deemed given and received at the time of actual delivery. Notices shall be sent to the parties at the addresses set forth herein, or such other addresses as the parties shall designate in writing from time to time.

(c) <u>Records</u>. Mutual agrees that the business records of Series E14 shall be available for inspection by the parties hereto during normal business hours and upon reasonable notice. Further, Mutual agrees to

- 3 -

provide a copy to the parties hereto of the results of operation of Series E14 for each calendar year during which the Krapf Reserve is being maintained.

(d) <u>Shareholders' Agreement</u>. Except to the extent that the terms and conditions of this Agreement require otherwise, the Shareholder Agreement shall no longer be applicable to DNK and DLK, and neither shall have have any liability of any kind whatsoever thereunder. All other terms and conditions of the Shareholder Agreement shall remain unchanged as to the other parties.

(e) <u>Expenses</u>. Each party hereto shall pay its own expenses including, without limitation, legal and accounting fees and expenses, incident to the negotiation and preparation of this Agreement and to its performance and compliance with the provisions contained herein.

(f) <u>Entire Agreement; Amendments; and Waivers</u>. This Agreement constitutes the entire understanding and agreement among the parties hereto relative to the subject matter hereof. Any amendments to the Agreement must be in writing, signed by each party hereto. The failure of any party hereto to enforce at any time any provision of this Agreement shall not be construed to be a waiver of the provision, nor in any way to affect the validity of this Agreement or any part hereof or the right of such party thereafter to enforce each and every such provision. No waiver of any breach of this Agreement shall be held to constitute a waiver of any other or subsequent breach.

(g) <u>Partial Invalidity</u>. In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein, unless the deletion of the provision or provisions would result in such a material change as to cause completion of the transactions contemplated herein to be unreasonable.

(h) <u>Execution in Counterparts</u>. This Agreement may be executed by the parties hereto signing the same instrument, or by each party hereto signing a separate counterpart or counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

(i) <u>Titles and Headings</u>. Titles and headings to Paragraphs herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

(j) <u>Assignment</u>. This Agreement shall not be assignable by any party without the prior written consent of all parties.

IN WITNESS WHEREOF, the parties hereto have executed this Redemption and Release Agreement as of the date set forth above.

At West Chester, Pennsylvania

on April 14, 1995

_Dale N. Krapf_
Dale N. Krapf

At West Chester, Pennsylvania

on April 14, 1995

_Dallas L. Krapf_
Dallas L. Krapf

At Pittsburgh, Pennsylvania

on April 14, 1995

_Stephen Friedberg_
Stephen Friedberg

At Pittsburgh, Pennsylvania

on April 14, 1995

_Mark Ouimette_
Mark Ouimette

At Hamilton, Bermuda

on ___8  May___, 1995

MUTUAL HOLDINGS LTD.

By: _Paul Watson_
Paul Watson, President

## SHAREHOLDER AGREEMENT

RECEIVED
JAN 5 1996
LEECH & TISHMAN

THIS AGREEMENT, made and entered into as of March 1, 1994, by and between MUTUAL

HOLDINGS (BERMUDA) LTD., a company organized and existing under the laws of Bermuda

(hereinafter referred to as "MUTUAL") and MARK E. OUIMETTE (hereinafter referred to as

"SHAREHOLDER"), of 4240 Greensburg Pike, Pittsburgh, PA, 15221.



**EXHIBIT**
C

## WITNESSETH:

WHEREAS, SHAREHOLDER is desirous of purchasing One (1) non-voting preferred share

of MUTUAL designated Series "U21" preferred share (hereinafter "PREFERRED SHARE") for the

purchase price hereinafter set forth; and

WHEREAS, MUTUAL is desirous of repurchasing the PREFERRED SHARE on the

redemption date set forth in Appendix I attached hereto (hereinafter referred to as the "REDEMPTION

DATE") for the purchase price hereinafter set forth; and

WHEREAS, a subsidiary of MUTUAL, MUTUAL INDEMNITY (BERMUDA) LTD.

(hereinafter referred to as "INDEMNITY") entered into one or more Reinsurance Agreements

(hereinafter referred to individually or collectively as the "TREATY") with the insurance company

as shown in Appendix I (hereinafter referred to individually or collectively as the "INSURANCE

COMPANY"), all as set forth in Appendix I, pursuant to which INDEMNITY has reinsured certain

of the liability of INSURANCE COMPANY on policies of insurance (hereinafter referred to

individually or collectively as the "POLICY") issued to SHAREHOLDER and its affiliates.

WHEREAS,  ⅃ AGREEMENT, the POLICY and the T.  ⅃TY together constitute a single insurance program (hereinafter the "PROGRAM") which is a uniquely negotiated single contract and no part of the PROGRAM would have been entered into without the other parts being in force.

NOW, THEREFORE, in consideration of the mutual promises and undertakings set forth herein the parties do hereby agree as follows:

1.    SHAREHOLDER agrees to purchase the PREFERRED SHARE and agrees to pay to MUTUAL the amount of One Thousand Dollars ($1,000.00). This amount shall be paid within thirty (30) days of the execution of this Agreement.

2.    On the dates shown in Appendix I (hereinafter referred to as the "DIVIDEND DATE") MUTUAL agrees to cause a dividend to be declared to the owner of record on such date(s) of the PREFERRED SHARE in an amount equal to the sum of the following:

(A)    The amount of investment income, if any, earned by MUTUAL during the period ending March 31 immediately preceding such DIVIDEND DATE resulting from the investment of the cash funds received by MUTUAL as the purchase price of the PREFERRED SHARE as set forth in paragraph (1) hereof, less the applicable Administrative Fee as shown in Appendix I equal to a percentage per annum of the average amount of investment funds held by MUTUAL as a result of the purchase price of the PREFERRED SHARE.

(B)    Plus/(minus) the amount of investment income/(loss) earned by INDEMNITY during the period ending March 31 preceding the DIVIDEND DATE, resulting from the investment of funds received by INDEMNITY under the TREATY less the applicable Administrative Fee as shown in Appendix I equal to a percentage per annum of the average amount of such funds held by INDEMNITY during the preceding year. It is understood and agreed that such funds may be held by INDEMNITY as loss reserves and premium reserves and may be repaid to INSURANCE COMPANY pursuant to the terms of the TREATY.

(C)  Plus or min. the amount of underwriting gain or los. alized by INDEMNITY on the TREATY during the policy year preceding the DIVIDEND DATE. Underwriting gain shall be computed by the following formula:

Net Premium received by INDEMNITY after all deductions made by or paid to the INSURANCE COMPANY including ceding commissions, expenses and taxes (including the actual final cost of licenses, fees, assigned risk charges, guarantee funds etc. related to the POLICY) as provided in the TREATY; minus all losses and loss expenses incurred including loss and loss expense reserves for unpaid reported losses and for losses incurred but not reported; minus the applicable Underwriting Fee as shown in Appendix I; minus the actual cost incurred by INDEMNITY in establishing and maintaining a letter of credit in favor of INSURANCE COMPANY as required by the TREATY.

3.(A)  SHAREHOLDER hereby indemnifies and holds MUTUAL and INDEMNITY harmless against the cumulative sum of paragraphs 2(A), 2(B) and 2(C) minus the cumulative amount of dividends paid, being less than zero at any point in time.

On receipt of each written demand by MUTUAL or INDEMNITY, SHAREHOLDER agrees to pay MUTUAL or INDEMNITY within 30 days, the amount by which the cumulative sum of the amounts calculated under paragraphs 2(A), 2(B) and 2(C) minus the cumulative amounts of dividends paid pursuant to this Agreement, are less than zero minus all previous payments under this paragraph provided however that the definition of incurred losses and loss expenses in paragraph 2(C) shall for this purpose only include losses and loss expenses which have been paid or are likely to be paid within the following ninety (90) days.

(B)  As security for this obligation SHAREHOLDER hereby agrees to provide INDEMNITY, upon execution of this Agreement collateral (hereinafter referred to as the "SECURITY DEPOSIT") in the form of a clean irrevocable letter of credit in the amount as shown in Appendix I drawn on a bank acceptable to INDEMNITY or substitute cash collateral.    Thereafter, SHAREHOLDER agrees, during the period of the POLICY and for so long thereafter as

INDEMNIT. .as any outstanding or potential liability . .er the terms of the TREATY to keep such letter of credit in force or to substitute cash collateral prior to the expiration of such letter of credit. If cash collateral is provided, interest earned on such collateral, less the applicable Administrative Fee as shown in Appendix I, will be included as a dividend pursuant to Sections 2 (B) and 4 hereof.

The provisions of this paragraph (3) shall survive the redemption of the PREFERRED SHARE and the termination of this Agreement.

4.    SHAREHOLDER agrees to pay all premium due to INSURANCE COMPANY promptly and in full. Any failure to pay such premium to INSURANCE COMPANY promptly when due shall consitute a material breach of this Agreement. In addition to all other remedies which MUTUAL and INSURANCE COMPANY may have from such non-payment or delay in payment, MUTUAL may, but shall not be required to, pay such premium to INSURANCE COMPANY on behalf of the SHAREHOLDER and if MUTUAL shall so elect then the full amount of such payment, plus interest, shall be deducted from any dividends due to SHAREHOLDER under this Agreement.

5.    If on the REDEMPTION DATE, as defined in this Agreement; INDEMNITY continues to hold funds pursuant to the TREATY, MUTUAL agrees to annually pay SHAREHOLDER on May 31 of each year as additional dividends, the amount of investment income earned by INDEMNITY during the preceding year resulting from the investment of such funds, less an Administrative Fee as shown in Appendix I equal to a percentage per annum of the average amount of such funds, plus or minus the amount of additional underwriting gain or loss realized by INDEMNITY on the TREATY, calculated in accordance with paragraph 2(C) hereof, until such time as the amount of funds held by INDEMNITY is less than Five Thousand Dollars ($5,000), at which point liability under this paragraph shall cease.

6.   On the REL   .PTION DATE, MUTUAL agrees to rep.   .ase from the SHAREHOLDER the PREFERRED SHARE upon presentation of the share certificate representing the PREFERRED SHARE duly endorsed for cancellation for the price of One Thousand Dollars ($1,000.00) by repaying the amount of cash paid by SHAREHOLDER as purchase price for the PREFERRED SHARE.

7.   It is agreed that the PREFERRED SHARE issued to SHAREHOLDER pursuant to this Agreement is being purchased by the SHAREHOLDER for purposes of investment only. The said PREFERRED SHARE has not been registered under the United States Securities Act of 1933, as amended. The said PREFERRED SHARE shall not be sold, transferred, hypothecated, pledged or otherwise assigned or encumbered and will bear the following legend:-

> "These securities have not been registered under the Securities Act of 1933, as amended. These Securities have been acquired for investment and may not be sold, transferred, hypothecated, pledged or otherwise assigned or encumbered."

8.   This Agreement may not be modified, amended or changed in any manner except in writing signed by all the parties hereto. It may, however, be terminated by written notice from either party to the other at least sixty (60) days prior to the proposed termination date. In such event all existing obligations from each party to the other or to third parties shall remain in force as of the time of termination.

9.   All notices, requests, demands or other communications provided for herein shall be in writing, shall be delivered by hand or by first-class mail, postage prepaid and shall be addressed to the parties hereto at their respective addresses listed below or to such other persons or addresses as the relevant party shall designate as to itself from time-to-time in a writing delivered in like manner:

If to MUTU     , to it at:

>44 Church Street
>P.O. Box HM 2064
>Hamilton HM HX, Bermuda

>Attn: Paul D. Watson, President

If to SHAREHOLDER, to it at:

>The Franklin Centre
>4240 Greensburg Pike
>Pittsburgh, PA    15221
>U.S.A.

>Attn: Mark E. Ouimette

10.    This Agreement has been made and executed in Bermuda and shall be exclusively governed by and construed in accordance with the laws of Bermuda and any dispute concerning this Agreement shall be resolved exclusively by the courts of Bermuda.

11.    All amounts referred to herein are expressed in United States Dollars and all payments shall be made in such dollars.

12.    The purchase of the PREFERRED SHARE by SHAREHOLDER and any subsequent transfers of the PREFERRED SHARE are subject to the prior consent of the Bermuda Monetary Authority (Foreign Exchange Control), which agency must approve all transfers of shares in Bermuda companies.

IN WITNESS WHEREOF, the parties have set their hand.

At _____ 4:00 PM. _____

on the *12* day of *September* , 1994

MARK E. OUIMETTE

BY: _____

At _____ Hamilton Bermuda _____

on the *20* day of *Sept* · , 1994

MUTUAL HOLDINGS (BERMUDA) LTD.

BY: _____
    Paul Watson, President

PREFERRED SHARE SERIES    21"
APPENDIX NO. I

## REDEMPTION DATE

Close of business on the 1st day of June 2001.

## DIVIDEND DATE

Commencing on the 31st day of May 1996 and annually thereafter on the 31st day of May of each succeeding year up to and including the 31st day of May 2001.

## TREATY

Underwriting Period                           InsuranceCompany

February 21, 1994 to April 1, 1995            Credit General Insurance Company

## UNDERWRITING FEE

Underwriting Period                           Underwriting Fee

February 21, 1994 to April 1, 1995                    3.5%

The Underwriting Fee is expressed as a percentage of the net ceded premium under the POLICY.

## ADMINISTRATIVE FEE

During the term of the Underwriting Period   1.25% per annum

After expiration of the Underwriting Period 1.75% per annum

The administrative fee is calculated as a percentage of the average amount of funds held pursuant to Section 2 of the Agreement.

The Underwriting Period will be extended accordingly for each renewal.

SECURITY DEPOS

No security deposit is currently required.

MARK E. OUIMETTE

BY: _____

MUTUAL HOLDINGS (BERMUDA) LTD.

BY: _____
Paul Watson, President

G:\SHAG\SHAG-U21.SS\ss\6-94

-9-

U21

Shareholder

RECEIVED

JAN 5  1996

LEECH & TISHMAN

## AMENDMENT NO. 1
## TO
## SHAREHOLDER AGREEMENT
## PREFERRED SHARE SERIES "U21"

This is Amendment No. 1, to a certain Shareholder Agreement made and entered into as of the 1st

day of March, 1994 by and between  MUTUAL HOLDINGS (BERMUDA) LTD., a company organized

and existing under the laws of the Islands of Bermuda (hereinafter "MUTUAL") and  MARK E.

OUIMETTE  (hereinafter "SHAREHOLDER") of 4240 Greensburg Pike, Pittsburgh, PA  15221.

### WITNESSETH

WHEREAS, both SHAREHOLDER and MUTUAL are desirous of amending this Agreement

to provide for the renewal of the PROGRAM; and

WHEREAS, this AGREEMENT, the POLICY and the TREATY together constitute a single

insurance program (hereinafter the "PROGRAM") which is a uniquely negotiated single contract and no

part of the PROGRAM would have been entered into without the other parts being in force.

NOW, THEREFORE, in consideration of the mutual promises and undertakings set forth herein

the parties do hereby agree as follows:

1.      Appendix No. I shall be deleted in its entirety and replaced with Appendix No. I-a attached

        hereto. All references to Appendix I in the Agreement shall now refer to Appendix I-a.

2.      All other terms and conditions shall remain unchanged.

-1-

3.    The effective date of this Amendment No. 1 shall be the 1st day of March, 1994.

IN WITNESS WHEREOF, the parties have set their hand.

At    _Hamilton  BDA_

on the /7 day of   _Nov._    , 1995.

BY:    _____

MARK E. OUIMETTE

At    _Hamilton Bermuda_

on the 17 day of.   _Nov_    , 1995.

MUTUAL HOLDINGS (BERMUDA) LTD.

BY:    _____

Paul Watson, President

-2-

## APPENDIX NO. I-a
### PREFERRED SHARE SERIES "U21"

### REDEMPTION DATE

Close of business on the 1st day of June, 2002.

### DIVIDEND DATE

Commencing on the 31st day of May, 1996 and annually thereafter on the 31st day of May of each succeeding year up to and including the 31st day of May, 2002.

### TREATY

Underwriting Period                          Insurance Company

February 21, 1994 - April 1, 1995            Credit General Insurance Company
April 1, 1995 - April 1, 1996                Credit General Insurance Company

### UNDERWRITING FEE

Underwriting Period                          Underwriting Fee

February 21, 1994 - April 1, 1995                3.5%
April 1, 1995 - April 1, 1996                    3.5%

The Underwriting Fee is expressed as a percentage of the net ceded premium under the POLICY.

### ADMINISTRATIVE FEE

During the term of the Underwriting Period 1.25% per annum

After expiration of the Underwriting Period 1.75% per annum

The administrative fee is calculated as a percentage of the average amount of funds held pursuant to Section 2 of the Agreement.

The Underwriting Period will be extended accordingly for each renewal.

SECURITY DEPOSIT

No Security Deposit is presently required.

MARK E. OUIMETTE                    MUTUAL HOLDINGS (BERMUDA) LTD.

BY: _____      BY: _____
                                        Paul Watson, President

G:ADD-SHAG/AMEN-U21.NC/mpw/11.95

-4-