# EXHIBIT C

539353.1

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| M. DIANE KOKEN, acting in her official capacity as Insurance Commissioner of the Commonwealth of Pennsylvania and Statutory Liquidator of Legion Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>RESEARCH UNDERWRITERS, LLC, and FINANCIAL ASSOCIATES, INC., d/b/a RESEARCH UNDERWRITERS,<br><br>Defendants. | CIVIL ACTION<br><br>No. 70 MD 2004<br><br>**APPLICATION IN THE ALTERNATIVE FOR DETERMINATION OF FINALITY**<br><br>Filed on Behalf of:<br>Defendants and Additional Plaintiff<br><br>Counsel of Record for these Parties:<br><br>Patrick J. Rega<br>Pa. ID. #16790<br><br>Wendy E.D. Smith<br>Pa. ID. #33219<br><br>HERGENROEDER, REGA & SOMMER<br>650 Smithfield Street<br>Suite 1700<br>Pittsburgh, PA 15222<br>(412) 281–7724<br><br>Joseph E. Linehan<br>Pa. ID. #59983<br><br>Gary A. Kern<br>Pa. ID. #91166<br><br>MEYER, UNKOVIC & SCOTT LLP<br>Firm #199<br>1300 Oliver Building<br>Pittsburgh, PA 15222<br>(412) 456–2800 |

**JURY TRIAL DEMANDED**

539353.1

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| M. DIANE KOKEN, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 70 MD 2004 |
| RESEARCH UNDERWRITERS, LLC, *et al.*, | |
| Defendants. | |

## APPLICATION IN THE ALTERNATIVE FOR DETERMINATION OF FINALITY

Pursuant to Rule 341(c) of the Pennsylvania Rules of Appellate Procedure, Defendants Research Underwriters, LLC and Financial Associates, Inc., d/b/a Research Underwriters, (collectively, "Research Underwriters"[1]) and Additional Plaintiff Stephen M. Friedberg ("Mr. Friedberg") file the within Application in the Alternative for Determination of Finality ("the Application"). Research Underwriters and Mr. Friedberg file the Application to request alternative action by the Court should it deny the Motion for Reconsideration filed on February 3, 2005.

### A.    Introduction

1.    On January 20, 2005, the Court entered an Order ("the Order") and Memorandum Opinion ("the Opinion"), a true and correct copy of which is attached hereto as Exhibit "A."

2.    The Order sustained the preliminary objections filed by Plaintiff, M. Diane Koken, acting in her official capacity as Insurance Commissioner of the Commonwealth of

---

[1]  Although this Court's Opinion of January 20, 2005 refers to Research Underwriters, LLC and Financial Associates, Inc., d/b/a Research Underwriters collectively as "Research Underwriters," they are, in fact, separate entities. See Answer, New Matter and Counterclaim, ¶ 2. For ease of reference, Research Underwriters, LLC and Financial Associates, Inc., d/b/a Research Underwriters will adopt the Court's terminology. Of course, Research Underwriters, LLC and Financial Associates, Inc., d/b/a Research Underwriters do not adopt any implication that Research Underwriters, LLC and Financial Associates, Inc., d/b/a Research Underwriters are anything other than distinct and independent corporate entities.

539353.1

Pennsylvania and Statutory Liquidator of Legion Insurance Company ("Plaintiff" or "the Liquidator"). Order, ¶¶1 and 3.

3.    In sustaining the Liquidator's preliminary objections to Research Underwriters' New Matter and Counterclaim, the Court struck the following portions thereof: (A) Paragraphs 44 through 68 of the New Matter; (B) Paragraphs 72, 73, 75 and 76 of the New Matter; and (C) Paragraphs 83 to 122, which are under the heading "Counterclaim in the Nature of Equitable Recoupment," and comprise Counts I through XI of the Counterclaim.

4.    In striking these Paragraphs, the Court's Order at Paragraph 3 characterized Paragraphs 83 to 122 as "[t]he entire Counterclaim in Recoupment," and Paragraphs 44 through 68, 72, 73, 75 and 76 as the "New Matter that has been pled in support of the Counterclaim."

5.    The Order also stated that the Court had sustained the preliminary objections filed by Additional Defendants, Mutual Holdings, Ltd, Mutual Indemnity Ltd., IPC Mutual Holdings Ltd., Mutual Holdings (Bermuda) Ltd., and Mutual indemnity (Bermuda) Ltd. ("the Mutual Family"), to the Complaint Joining Additional Defendants and Additional Plaintiff ("Complaint to Join"). Order, ¶¶2 and 4.

6.    The Court ruled that it had no jurisdiction over the claims alleged in the Complaint to Join, and then proceeded to dismiss the Complaint to Join "with prejudice." Order, ¶4.

7.    Pursuant to Pa. R.App.P. 341(c), Research Underwriters and Mr. Friedberg respectfully request that the Court amend its January 20, 2005 Order to state that an immediate appeal of that Order in its entirety would facilitate resolution of the entire case.

539353.1

**B.    Procedural Background**

    **1.    The Liquidator's Preliminary Objections to the New Matter and Counterclaim**

    8.    On February 5, 2004, Plaintiff commenced this action to recover premiums, commissions, and other related amounts from Research Underwriters under a Brokerage Agreement dated January 1, 1992, between Plaintiff's predecessor, Legion Insurance Company and Financial Associates, Inc., d/b/a Research Underwriters ("FAI") ("the Brokerage Agreement").

    9.    The Complaint sets forth five counts, all of which are based upon the Brokerage Agreement. Count I is for "Breach of Contract."    (See Complaint, ¶ 22.) Count II is for "Breach of Fiduciary Duty" (See id., ¶¶25-26.) Count III is styled as "Enforcement of Liquidation Order," and derives from the Brokerage Agreement. Count IV asserts a negligence cause of a action on behalf of Legion. Count V consists of a "Demand for Accounting." Counts II through V are nothing more than recasting of the breach of contract action. The Complaint seeks "money damages in excess of $3 million due under the Brokerage Agreement." (Id., ¶ 43).

    10.    On April 8, 2004, Research Underwriters filed their Answer, New Matter and Counterclaim in which they denied all liability to the Liquidator. Research Underwriters' New Matter included various defenses and a counterclaim under the common law doctrine of equitable recoupment, as well as "material facts" (see Pa.R.Civ.P. 1030(a)) relating to these defenses and to the Counterclaim.

    11.    Over eight years prior to the commencement of this action, this Court held notwithstanding any general statutory limitation with respect to actions against the Liquidator (see, e.g., 40 P.S. §221.26 (a)), or counterclaims or setoffs with respect to claims brought by the Liquidator (see, e.g., 40 P.S. §221.32 (b)), that a counterclaim in the nature of equitable

-3-

539353.1

recoupment is authorized under Pennsylvania law.  *Kaiser v. Monitrend Investment Management, Inc.*, 672 A.2d 359 (Pa. Commw.Ct. 1996) ("*Monitrend*").

12.  On May 28, 2004, the Liquidator filed Plaintiff's Preliminary Objections in the Nature of a Demurrer to New Matter and Counterclaim in Recoupment.  In support of the demurrer, the Liquidator filed on July 23, 2004 Plaintiff's Memorandum of Law in Support of Preliminary Objections.

13.  On August 23, 2004, Research Underwriters filed Defendants' Memorandum of Law in Opposition to Preliminary Objections.

14.  On September 2, 2004, the Liquidator filed her Plaintiff's Reply Memorandum in Support of Preliminary Objections, a brief neither requested nor authorized by this Court.

15.  On September 23, 2004, Research Underwriters replied with Defendant's Sur-reply Memorandum of Law in Opposition to Preliminary Objections.

16.  On December 24, 2004, Plaintiff filed yet another "reply" brief in the form of Plaintiff's Reply Memorandum in Support of Preliminary Objections to Complaint Joining Additional Defendants and Additional Plaintiff, in which Plaintiff raised—for the first time—additional objections to the New Matter and Counterclaim.

17.  In response, Research Underwriters and Mr. Friedberg filed their Sur-reply to Liquidator's "Reply" Memorandum of Law in Support of Preliminary Objections on January 24, 2005. This brief crossed in the mail with the Order and Opinion dated January 20, 2005.

## 2.  The Preliminary Objections to the Complaint Joining Additional Defendants and Additional Plaintiff

18.  On July 19, 2004, Research Underwriters filed the Complaint to Join, which joined Mr. Friedberg as an Additional Plaintiff and the Mutual Family as Additional Defendants.

539353.1

19.   On August 5, 2004, the Liquidator filed Plaintiff's Preliminary Objections to Complaint Joining Additional Defendants and Additional Plaintiff. These preliminary objections were based on *lis pendens*, failure to conform to court rule (joinder of Additional Plaintiff), and failure to conform to court rule (joinder of Additional Defendants).

20.   On September 1, 2004, Research Underwriters and Mr. Friedberg filed their Answer to Plaintiff's Preliminary Objections to Complaint to Join.

21.   This Court did not issue a briefing schedule for this set of objections.

22.   Plaintiff nevertheless filed the Reply Memorandum in Support of Preliminary Objections to Complaint Joining Additional Defendants and Additional Plaintiff on December 27, 2004, in which Plaintiff raised—for the first time—additional objections to the Complaint to Join.

23.   In response, on January 24, 2005, Research Underwriters and Mr. Friedberg filed their Sur-reply to Liquidator's "Reply" Memorandum of Law in Support of Preliminary Objections.

24.   On October 1, 2004, the Mutual Family filed the Preliminary Objections of Defendants Mutual Holdings Ltd., Mutual Indemnity Ltd., IPC Mutual Holdings Ltd., Mutual Holdings (Bermuda) Ltd., and Mutual Indemnity (Bermuda) Ltd. to the Complaint Joining Additional Defendants and Additional Plaintiff. These preliminary objections were based on *lis pendens*, failure to conform to court rule (joinder of Additional Plaintiff), improper venue, and a demurrer.

25.   On October 29, 2004, Research Underwriters and Mr. Friedberg filed their Answer to Additional Defendants' Preliminary Objections to Complaint to Join.

539353.1

26.     On November 29, 2004, the Mutual Family filed their Memorandum of Law in Support of the Preliminary Objections of Defendants Mutual Holdings Ltd., Mutual Indemnity Ltd., IPC Mutual Holdings Ltd., Mutual Holdings (Bermuda) Ltd., and Mutual Indemnity (Bermuda) Ltd. to the Complaint Joining Additional Defendants and Additional Plaintiff.

27.     On December 27, 2004, Research Underwriters and Mr. Friedberg filed their Memorandum of Law in Opposition to Additional Defendants' Preliminary Objections to the Complaint Joining Additional Defendants and Additional Plaintiff.

**3.     The January 20, 2005 Order and Memorandum Opinion**

28.     On January 20, 2005, this Court issued an Order (and accompanying Opinion) in which this Court (A) sustained the Liquidator's preliminary objections to the New Matter and Counterclaim; (B) concluded that the Court did not have jurisdiction over the claims set forth in the Complaint to Join; and (C) dismissed the Complaint to Join "with prejudice."

29.     In sustaining the Liquidator's preliminary objections to the New Matter and Counterclaim, the Court struck (A) Paragraphs 44 through 68 of the New Matter; (B) Paragraphs 72, 73, 75 and 76 of the New Matter; and (C) Paragraphs 83 to 122, which are under the heading "Counterclaim in the Nature of Equitable Recoupment," and comprise Counts I through XI of the Counterclaim.

30.     In striking these Paragraphs, the Court's Order at Paragraph 3 characterized Paragraphs 83 to 122 as "[t]he entire Counterclaim in Recoupment," and Paragraphs 44 through 68, 72, 73, 75 and 76 as the "New Matter that has been pled in support of the Counterclaim." Order ¶3.

31.     The Order also sustained the preliminary objections filed with respect to the Mutual Family's Complaint to Join. Order, ¶¶2 and 4.

539353.1

32    The Court concluded that it did not have jurisdiction over the claims set forth in the Complaint to Join, and then dismissed the Complaint to Join "with prejudice."

33.    For the reasons set forth herein, Research Underwriters and Mr. Friedberg hereby request this Court to amend its January 20, 2005 Order to state that an immediate appeal of that Order in its entirety would facilitate resolution of the entire case.

**C.  Amendment of the January 20, 2005 Order pursuant to Pa. R.App.P. 341(c) is appropriate.**

**1.    The legal standard under Pa. R.App.P. 341(c)**

34.    The Court's January 20, 2005 Order and Opinion left as the remaining pleadings only Plaintiff's Complaint and Research Underwriters' Answer to that Complaint, and certain New Matter.

35.    Research Underwriters and Mr. Friedberg respectfully submit that an immediate appeal of the Court's rulings in its January 20, 2005 Order and Opinion will facilitate resolution of the entire case.  Such an appeal is also necessary to correct an injustice that otherwise could not be corrected by a later appeal.

36.    Pa. R. App.P. 341(c) provides in pertinent part:

> (c)  **Determination of Finality.**  When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, *the trial court or other governmental unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case.*  Such an order becomes appealable when entered.

(Emphasis added.)

37.    The Note to Pa.R.App.P. 341 states:

> Subdivision (c) permits an immediate appeal from an order dismissing less than all claims or parties from a case only upon an

539353.1

express determination that an immediate appeal would facilitate resolution of the entire case. Factors to be considered under Subdivision (c) include, but are not limited to:

(1)    whether there is a significant relationship between adjudicated and unadjudicated claims;

(2)    whether there is a possibility that an appeal would be mooted by further developments;

(3)    whether there is a possibility that the court or administrative agency will consider issues a second time;

(4)    whether an immediate appeal will enhance prospects of settlement.

38.    In addition, an appeal is appropriate under Rule 341(c) where the "failure to entertain a later appeal 'will result in an injustice that a later appeal could not correct.'" *Wisniski v. Brown & Brown Ins. Co. of Pa.*, 852 A.2d 1206, 1210, n.1 (Pa. Super Ct. 2004).

2.    **An immediate appeal would facilitate resolution of the entire case and, in fact, is necessary to correct an injustice that would not be corrected by a later appeal.**

a.    **An immediate appeal of the striking of the Counterclaim in the nature of recoupment and certain New Matter deemed by the Court to support the Counterclaim is appropriate under Pa.R.App.P. 341 (c).**

39.    *Monitrend* authorizes Research Underwriters' counterclaim in the nature of equitable recoupment.

40.    In *Monitrend*, this Court held that the Liquidation Act's prohibition against "setoff and counterclaim" in certain situations did not apply where the counterclaim was in the nature of equitable recoupment. Specifically, this court stated:

'The defense of recoupment, which arises out of the <u>same transaction</u> as plaintiff's claim, survives as long as the cause of action upon the claim exists. <u>It is a doctrine of intrinsically defensive nature founded upon an equitable reason, inhering in the same transaction, why the plaintiff's claim in equity and good conscience should be reduced.</u>'

-8-

539353.1

672 A.2d at 363 (quoting *Household Consumer Discount Co. v. Vespaziani*, 490 Pa. 209, 215, 415 A.2d 689, 694 (1980)) (Emphasis added.)

41.    As more fully set forth in Research Underwriters' memoranda of law in opposition to the Liquidator's preliminary objections, under Pennsylvania law, a counterclaim for equitable recoupment is proper if it arises out of "'*some feature of the transaction* upon which the plaintiff's action is grounded . . . . '". *Commonwealth v. Berks County*, 364 Pa. 447, 450, 72 A.2d 129 (1950) (quoting *Bull v. United States*, 295 U.S. 247, 262 (1935)) (Emphasis added.)

42.    Accordingly, the transaction which is the subject of the suit brought by a plaintiff must be "examined in all its aspects" and a judgment must be rendered "that does justice in view of the one transaction as a whole." *Stulz v. Boswell*, 307 Pa. Super 515, 453 A.2d 1006, 1008 (1992) (quoting *Provident National Bank v. United States*, 507 F.Supp. 1197 (E.D. Pa. 1981)) (Internal quotations omitted.)

43.    Notwithstanding these authorities and the procedural posture of the case, the Court struck the entirety of the Counterclaim in the nature of equitable recoupment on the basis that 40 P.S. § 221.26(a) prohibits such counterclaims. Opinion, pp.3-4.

44.    The Court did not permit the Counterclaim to move forward because the Court did not, as required when ruling upon a demurrer, *Commonwealth v. Percudani*, 825 A.2d 743, 745 (Pa. Commw. Ct. 2003), accept as true the factual averments made by Research Underwriters.

45.    For example, the Court's Opinion, in the section addressing the Mutual Family's objections to the Complaint to Join, states that "[the] shareholder agreement has nothing to do

-9-

539353.1

with the Liquidator's ... enforcement of Legion's contractual rights under a brokerage agreement with Research Underwriters." Opinion, p.5.

46.     Alternatively, to the extent the Court determined in issuing its January 20, 2005 Order, that even if equitable recoupment had been properly alleged under longstanding principles of Pennsylvania law, *Monitrend* nonetheless does not apply to this case, and therefore no counterclaim in recoupment is permitted, then the Court erred on that basis. This is because *Monitrend* clearly applies in this case and under Pennsylvania law the doctrine of equitable recoupment may properly serve as the basis for the Counterclaim of Research Underwriters in this action. Research Underwriters memoranda of law in opposition to Plaintiff's preliminary objections are incorporated by reference as if fully set forth herein. See supra, ¶¶ 13, 15, 17 and 23.

47.     Regardless of the basis for doing so, the Court's striking of the Counterclaim in the nature of equitable recoupment and the portions of the New Matter deemed to be "in support" thereof, eliminates a central aspect of Research Underwriters' defense to Plaintiff's claims.

48.     In the Complaint, Plaintiff excised a small part of the transaction at issue (the brokerage agreement) and attempted to isolate it from other aspects of the same transaction. In an effort to defend against this tactic, Research Underwriters invoked, pursuant to this Court's decision in *Monitrend*, the defense of equitable recoupment.

49.     Although this resort to equity is in accordance with Pennsylvania law and has been expressly authorized by this Court, this Court in its Order and Opinion of January 20, 2005 permits the Liquidator to shield herself from equity by focusing on this artificially excised and isolated part of the transaction, the Brokerage Agreement.

-10-

539353.1

50.    To compound matters, and contrary to Pennsylvania law governing demurrers, the Court determined *against* Research Underwriters, *the non-moving party,* factual issues, such as the relationship of the Brokerage Agreement to other aspects of the overall transaction.

51.    Thus, the Court has eliminated from this action central aspects of Research Underwriters' defense to Plaintiff's claims.

52.    It is noteworthy that agreements such as the Brokerage Agreement and shareholder agreements have been held by other courts to be components of a larger transaction. *American Patriot Ins. Agency Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884 (7th Cir. 2004) (Posner, J.).

53.    While *American Patriot* is not binding authority on this Court, its holding does indicate that Research Underwriters' position—that the brokerage and shareholder agreements were but portions of a larger transaction and that equitable recoupment is appropriate—is a reasonable position, and one which, Research Underwriters' believes, the Pennsylvania Supreme Court should and will adopt thus affirming Research Underwriters ability to assert as a defense in this action the Counterclaim in the nature of equitable recoupment.

54.    In the absence of an intervening appeal, this matter will proceed with additional pleadings, extensive discovery and motions practice, and, likely, a trial and subsequent proceedings. In light of the primacy of the defensive "counterclaim," as well as other stricken matters, an immediate appeal would greatly facilitate the resolution of the action by resolving once and for all the propriety of the Counterclaim and these other matters.

55.    An immediate appeal is appropriate also because it would potentially avoid "costly re-litigation" of matters which likely will occur if the Court does not permit an immediate appeal. *FDP v. Ferrara*, 804 A.2d 1221, 1227, n.1 (Pa. Super. 2002).

-11-

56.    For the foregoing reasons, as well as the reasons set forth in Section C 2 (c) hereof (relating to the four nonexclusive factors set forth in the official Note to Pa. R.App.P. 341(c)), it is respectfully requested that the Court amend its January 20, 2005 Order to state that an immediate appeal would facilitate the resolution of the entire case, pursuant to Pa. R.App.P. 341(c).

> b.    An immediate appeal of the dismissal "with prejudice" of the Complaint to Join is appropriate under Pa. R.App. P. 341(c).

57.    Although the Mutual Family never raised lack of jurisdiction, the Court concluded *sua sponte* that it lacked jurisdiction over the Complaint to Join.

58.    Research Underwriters and Mr. Friedberg respectfully submit that the Court's determination was in error for the reasons set forth in their memorandum of law (see supra ¶¶ 17 and 23) in reply to the Liquidator's unsolicited brief (see supra ¶¶ 16 and 22) on this issue, as well as for the reasons set forth in the Motion For Reconsideration and Brief in Support filed on February 3, 2005, all of which materials are incorporated by reference as if fully set forth herein.

59.    The Complaint to Join alleges, *inter alia*, that "[i]n consideration of and in reliance upon the [promises and representations of the Mutual Family, Legion, and Commonwealth Risk, Inc.] *and pursuant to the parties' oral agreements,* FAI entered into a brokerage agreement with Legion dated January 1, 1992." (Complaint to Join, ¶22) (Emphasis added.)

60.    The Complaint to Join alleges, *inter alia*, that "[i]n consideration of and in reliance upon the [promises and representations of the Mutual Family, Legion, and Commonwealth Risk, Inc.] *and pursuant to the parties' oral agreements*, Mr. Friedberg executed various shareholder agreements—including, but not limited to, an agency agreement, which is

539353.1

the subject of the underlying lawsuit—intended to provide a vehicle for accounting of profits." (Complaint to Join, ¶23) (Emphasis added.)

61.    As discussed above, under the procedural posture of this case, this Court was required to accept as true Research Underwriters' and Mr. Friedberg's allegations regarding the brokerage agreement and shareholder agreementand their roles as merely portions of a larger agreement and transaction.

62.    Nonetheless, the Court impermissibly and incorrectly resolved a factual issue contrary to the allegations of Research Underwriters and Mr. Friedberg when it concluded that "[the] shareholder agreement has nothing to do with the Liquidator's ... enforcement of Legion's contractual rights under a brokerage agreement with Research Underwriters." Opinion, p.5.

63.    Compounding matters, in addition to ruling that there was no jurisdiction over the claims raised in the Complaint to Join, the Court proceeded to comment on the preliminary objections raised by the Mutual Family.

64.    "Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is announcing the fact and dismissing the case." *Smiths Implements, Inc. v. Workmen's Compensation Appeal Board*, 673 A.2d 1039, 1043 n.7 (Pa. Commw. Ct. 1996).

65.    It was error for this Court to address the Mutual Family's objections after determining that jurisdiction was lacking. *Brown v. Taylor*, 494 A.2d 29, 32 (Pa. Commw. Ct. 1985); *Beluschok v. Peoples Natural Gas Co.*, 470 A.2d 196, 198 (Pa. Commw. Ct. 1984); *Witt v. Commonwealth, Dept. of Banking*, 387 A.2d 1310, 1311 (Pa. Commw. Ct. 1978).

66.    As the Court is aware from the documents filed in this case on behalf of all parties, and as is evident from the Court's Opinion (see pp. 5-6), there are other proceedings

-13-

539353.1

involving, *inter alia,* Research Underwriters, Mr. Friedberg, and/or various members of the Mutual Family.

67.     The Mutual Family will surely attempt to take the position in other actions that this Court's dismissal "with prejudice" of the Complaint to Join, as well as the Court's commentary on other matters, including those raised in the Mutual Family's preliminary objections, is somehow *res judicata* or otherwise preclusive against Research Underwriters and/or Mr. Friedberg as to the substance of certain claims and/or as to other issues.

68.     Any attempted preclusion of Research Underwriters and/or Mr. Friedberg as to any claim or issue based upon this Court's jurisdictional dismissal "with prejudice" of the Complaint to Join would work an unjust and unnecessary hardship and expense on Research Underwriters and/or Mr. Friedberg, as they take steps, whether in the United States District Court of the Eastern District of Pennsylvania or in Bermuda, to pursue claims against the Mutual Family, including without limitation efforts to protect the approximately $2.7 million dollars in "Philadelphia Funds" (see Answer, New Matter and Counterclaim, ¶56).

69.     This would be particularly unjust because, while this Court concluded that it did not have jurisdiction to reach the merits of the claims against the Mutual Family, the Court expressed its ruling in its Order in a manner (that is, the Complaint to Join "is dismissed with prejudice") that undoubtedly will be exploited, whether successfully or not, by the Mutual Family in an attempt to preclude Research Underwriters and Mr. Friedberg from pursuing against the Mutual Family remedies otherwise available at law or in equity.

70.     At the very least, if the Court's Order stands and is not subject to correction on appeal, Research Underwriters and Mr. Friedberg will incur substantial additional expenses in regard to what is already costly litigation.

539353.1

71.    For the foregoing reasons, as well as the reasons set forth immediately below in Section C 2 (c) hereof (relating to the four nonexclusive factors set forth in the official *Note* to Pa. R.App.P. 341(c)), this matter should be immediately appealable.

### c.    Each of the factors listed in the official Note to Pa. R.App. P. 341(c) supports the amendment of the January 20, 2005, Order to permit an immediate appeal.

72.    As quoted above in Paragraph 37 hereof, the Note to Pa. R.A.P. 341(c) and accompanying the 1992 amendment thereof listed four factors to be considered, although not exclusively, in determining whether an immediate appeal is appropriate under Rule 341(c).

73.    Application of each of the four factors compels the conclusion that an immediate appeal of the January 20, 2005 Order pursuant to Rule 341(c) is appropriate.

74.    The first factor listed in the Note to Rule 341(c) is "whether there is a significant relationship between adjudicated and unadjudicated claims."

75.    1 Darlington, McKeon, Schuckers and Brown, *Pennsylvania Appellate Practice,* §341:6 (2d ed. 2004), states in regard to this requirement:

> Undesirable tension is created where the trial court and the appeals court simultaneously consider similar factual or legal issues in the context of the same action.  Where adjudicated and unadjudicated claims are closely related, either factually or legally, certification normally should not be granted.

76.    The Court has stricken from the pleadings the entirety of the "Counterclaim in Recoupment...and New Matter that has been pled in support [thereof]," Order ¶3, and the entirety of the Complaint to Join.

77.    To the extent that there would not be a stay pending any immediate appeal, in light of the fact that all that remains in the case is Plaintiffs' five-count Complaint and Research

539353.1

Underwriters' answer and remaining defenses, it would appear that there is little potential for the "[u]ndesirable tension" referred to above.

78.    Any immediate appeal will focus on legal issues, such as, and by way of illustration only, whether this Court applied the appropriate standard to the demurrers to the Counterclaim and to the Complaint to Join, and whether the Court appropriately concluded that the Brokerage Agreement and the other aspects of the parties' transaction implicated in the Counterclaim were not part of the same transaction for the purpose of the applicability of equitable recoupment as a defense. In contrast, if the matter proceeds in the trial court pending any immediate appeal, this Court's focus very likely will be in large part upon the resolution of the factual issues raised by the pleadings, as currently constituted. Whether the Court was correct or incorrect as a matter of law with respect to the legal standard applied to the demurrers is entirely separate from any resolution of factual issues by the trial court pending appeal. Accordingly, there is little to no potential for the "[u]ndesirable tension" referenced with respect to the first factor set forth in the official Note to Pa.R.App.P. 341(c).

79.    The second factor listed in the Note to Rule 341(c) is "whether there is a possibility that an appeal would be mooted by further developments."

80.    1 Darlington, McKeon, Schuckers and Brown, *Pennsylvania Appellate Practice*, §341:7 (2d Ed. 2004), states in regard to this requirement:

> The trial court should consider whether the issue to be certified for appeal may be rendered moot by the disposition of related claims pending in the trial court. This situation most commonly arises with questions of indemnification.

81.    In light of the fact that the Court eliminated from consideration in the trial court *in toto* both the Counterclaim (and certain 'supporting' matters) and the Complaint to Join, there appears to be *no* possibility that the appeal would be mooted by further developments in the case.

-16-

539353.1

Certainly, indemnification is not an issue. Moreover, as noted in Paragraph 78, the legal issues to be dealt with by the Supreme Court in any immediate appeal are entirely separate from any resolution of factual issues by the trial court pending appeal. On the other hand, if the matter is permitted to proceed in the trial court without the central element of the defense, the Counterclaim in recoupment, the potential for costly re-litigation after any appeal is high. *FDP v. Ferrara*, 804 A. 2d 1221, 1227, n.6 (Pa. Super. 2002).

82.     The third factor listed in the Note to Rule 341(c) is "whether there is a possibility that the court...will consider issues a second time."

83.     1 Darlington, McKeon, Schuckers and Brown, *Pennsylvania Appellate Practice*, §341:8 (2d Ed. 2004), states in regard to this requirement:

> There is a possibility that the resolution of legal issues by the appellate court will aid the trial court in resolving the same legal issue in the same or other cases....[¶]The Superior Court has approved a Rule 341(c) determination of finality where it has found a significant risk of costly re-litigation that could be avoided by an immediate appeal.

84.     The resolution of legal issues raised by the striking of the Counterclaim in the nature of recoupment and by dismissal with prejudice of the Complaint to Join will aid the trial court in resolving issues relating thereto upon remand. These matters are central to the defense and resolution of the case and the transaction giving rise to the Liquidator's claims. To permit the matter to proceed with these central elements of the case removed poses a grave risk that the parties will be required to litigate twice issues that are central to the resolution of the claims at issue.

85.     Moreover, the structure of the FAI/Friedberg rent-a-captive programs is identical or similar to other programs established by other brokers and insureds under the Mutual Family and Legion's rent-a-captive-plan. Thus, there is a strong possibility that similar issues will be

-17-

539353.1

relitigated in other cases involving the Liquidator's attempts to recover premiums allegedly due from other brokers or insureds that participated in the Mutual Family and Legion's rent-a-captive-plan. See, e.g., *Koken v. Cory & Assoc., Inc.*, No. 04 C 0953 (N.D. Ill. 2004); *American Patriot Ins. Agency Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884 (7th Cir. 2004) (Posner, J.).

86. The fourth factor listed in the Note to Rule 341(c) is "whether an immediate appeal will enhance prospects of settlement."

87. An immediate appeal likely will place, one way or the other, the claims, defenses and issues between the parties more tightly into focus. This type of relative certainty will enhance the prospect of settlement of this case because the respective parties and their counsel will be better able to assess, with less uncertainty, the potential benefits and risks of proceeding with the litigation or settling the case.

88. On the other hand, if an immediate appeal is not permitted, then central issues such as the viability of the defense of equitable recoupment and the claims against the Mutual Family will remain uncertain pending resolution of the entire case and any subsequent appeal at that time. Under such a cloud of uncertainty, settlement becomes much more difficult, if not impossible, prior to the resolution of any appeal or appeals in this matter.

89. Thus, the goal of the enhancement of settlement compels the conclusion that an immediate appeal is not only appropriate, but also highly desirable in regard to the ultimate resolution of the case.

90. In sum, the four nonexclusive factors listed in the official Note to Pa. R.App.P. 341(c) support strongly the immediate appeal of the January 20, 2005 Order.

539353.1

**D.    Relief Requested**

91.    Research Underwriters and Mr. Friedberg file the within Application to request alternative action by the Court should it deny the Motion for Reconsideration filed on February 3, 2005.

92.    Research Underwriters and Mr. Friedberg request pursuant to Pa.R.App.P. 341(c) that the Court amend its January 20, 2005 Order and Opinion to state that an immediate appeal of the Order, including without limitation all rulings set forth therein, would facilitate resolution of the entire case.

93.    Without limiting the generality of the foregoing, Research Underwriters respectfully requests pursuant to Pa.R.App.P. 341(c) that the Court amend its January 20, 2005 Order and Opinion to state that an immediate appeal of the Order including without limitation Paragraphs 1 and 3 thereof (relating to the Counterclaim in the Nature of Recoupment and New Matter) would facilitate resolution of the entire case.

94.    Without limiting the foregoing, Research Underwriters and Mr. Friedberg respectfully request that pursuant to Pa.R.App.P. 341(c) the Court amend its January 20, 2005 Order and Opinion to state that an immediate appeal of the Order, including without limitation Paragraphs 1, 2, 4, and 5 thereof (that is, relating to the dismissal of the Complaint to Join) would facilitate resolution of the entire case.

WHEREFORE, it is respectfully requested that the Court enter an Order substantially in the form attached hereto and stating that an immediate appeal of all aspects of the January 20, 2005 Order and Opinion would facilitate the resolution of the entire case.

-19-

539353.1

Respectfully submitted,

HERGENROEDER, REGA & SOMMER

By: _Patrick J. Rega /tsr_
    Patrick J. Rega
    Wendy E. D. Smith

MEYER, UNKOVIC & SCOTT LLP

By: _Jos. E. Linehan_
    Joseph E. Linehan
    Gary A. Kern

ATTORNEYS FOR DEFENDANTS AND
ADDITIONAL PLAINTIFF

-20-

539353.1

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

M. DIANE KOKEN,

        Plaintiff,

    v.

RESEARCH UNDERWRITERS, LLC, et al.,

        Defendants.

CIVIL ACTION

No. 70 MD 2004

## ORDER

AND NOW, this _____ day of _____, 2005, upon consideration of the Application in the Alternative for Determination of Finality of Defendants and Additional Plaintiff, it is hereby ORDERED and DECREED that the Application in the Alternative for Determination of Finality is GRANTED and that the January 20, 2005 Order of this Court is hereby held to be a final order, appealable as of the entry this date of this Order granting the Application, and that the January 20, 2005 Order is hereby amended pursuant to Pa. R.App. P. 341(c) to include the following paragraph numbered "6":

"6.    An immediate appeal of all aspects of this Order would facilitate the resolution of the entire case. Accordingly, this is a final and appealable order."

BY THE COURT:

_____

MARY HANNAH LEAVITT, Judge

539353.1

## CERTIFICATE OF SERVICE

I hereby certify that I am this day serving the foregoing document upon the persons indicated

below *via* FedEx First Overnight, which service satisfies the requirements of Pa.R.A.P. 121(c):

Charlotte E. Thomas, Esquire
Wolf, Block, Schorr and Solis-Cohen LLP
1650 Arch Street, 22d Floor
Philadelphia, PA 19103-2097
(Counsel for M. Diane Koken, Insurance Commissioner of the
Commonwealth of Pennsylvania and Statutory Liquidator of
Legion Insurance Company)

Douglas Y. Christian
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 47th Floor
Philadelphia, PA 19103-7599
(Counsel for Mutual Holdings Ltd.; Mutual Indemnity Ltd.; IPC
Mutual Holdings Ltd; Mutual Indemnity (Bermuda) Ltd. and
Mutual Holdings (Bermuda) Ltd.

Commonwealth Risk Services, Inc.
One Logan Square, Suite 1500
Philadelphia, PA 19103

Date: February 10, 2005

By: _____
Joseph E. Linehan
Pa. ID. #59983
Meyer, Unkovic & Scott LLP
1300 Oliver Building
Pittsburgh, PA 15222
(412) 456-2800
Attorneys for Defendant Financial
Associates, Inc., d/b/a Research
Underwriters and Additional Plaintiff
Stephen M. Friedberg

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

M. Diane Koken, acting in her    :
official capacity as Insurance    :
Commissioner of the Commonwealth    :
of Pennsylvania and Statutory    :
Liquidator of Legion Insurance    :
Company,    :
             Plaintiff    :
   :
        v.    :   No. 70 M.D. 2004
   :
Research Underwriters, LLC and    :
Financial Associates, Inc., d/b/a    :
Research Underwriters,    :
            Defendants    :
   :
       and    :
   :
Stephen M. Friedberg,    :
            Additional Plaintiff    :
   :
        v.    :
   :
Mutual Holdings, Ltd.,    :
IPC Mutual Holdings Ltd.,    :
Mutual Holdings (Bermuda) Ltd.,    :
Mutual Indemnity Ltd.,    :
Mutual Indemnity (Bermuda) Ltd.,    :
Commonwealth Risk Services, Inc.,    :
            Additional Defendants    :

MEMORANDUM OPINION
BY JUDGE LEAVITT                   FILED: January 20, 2005

        On February 5, 2004, the Statutory Liquidator (Liquidator) of Legion

Insurance Company (In Liquidation) (Legion) initiated a lawsuit against Research

Underwriters LLC and Financial Associates, Inc. d/b/a/ Research Underwriters

EXHIBIT
A

(collectively Research Underwriters). The Liquidator filed this complaint in order to recover unearned premiums and commissions that Research Underwriters had collected but did not remit to Legion, which conduct, she asserts, violated Research Underwriters' contract obligations to Legion. In response, Research Underwriters filed an answer, new matter and a counterclaim, asserting, *inter alia*, a right to recoup funds from the Legion estate.

Thereafter, on July 16, 2004, Research Underwriters filed a complaint to join additional parties (Joinder Complaint) to the action instituted by the Liquidator. The Joinder Complaint sought to add Mutual Holdings Ltd., Mutual Indemnity Ltd., IPC Mutual Holdings Ltd., Mutual Holdings (Bermuda) Ltd., and Mutual Indemnity (Bermuda) Ltd. (collectively, the Mutual Companies) and Commonwealth Risk Services, Inc. as additional involuntary defendants. The Joinder Complaint also sought the involuntary joinder of an additional plaintiff, Stephen M. Friedberg. The Joinder Complaint generally alleges that the Mutual Companies have "seized and/or improperly retained funds," which Research Underwriters and Mr. Friedberg seek to recover.

In response to the new matter and counterclaim filed by Research Underwriters, the Liquidator filed preliminary objections in the nature of a demurrer. She asserts that the counterclaim violates the statutory stay of litigation against a liquidator. The Mutual Companies have also filed preliminary objections to the Joinder Complaint, asserting a lack of this Court's jurisdiction and failure of plaintiff to conform his pleading to the Pennsylvania Rules of Civil Procedure.

These various preliminary objections have been fully argued in the memoranda of law filed by the parties. The objections are sustained for the reasons that follow.

2

The Court considers, first, the Liquidator's demurrer to the counterclaim of Research Underwriters. Article V of The Insurance Department Act of 1921, Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S. §§211-221.63, (Article V) provides for the liquidation of insolvent insurers. Section 526(a) of Article V,[1] provides, in relevant part, that:

> Upon issuance of an order appointing the commissioner liquidator of a domestic insurer ... no action at law or equity shall be brought by or against the insurer, whether in this Commonwealth or elsewhere, nor shall any such existing actions be continued after issuance of such order.

40 P.S. §221.26(a).[2] It has been held expressly that a counterclaim is an "action at law or equity" the prosecution of which is prohibited by Section 526(a) of Article V. *Commonwealth, ex rel. Sheppard v. Central Penn National Bank*, 375 A.2d 874, 877-878 (Pa. Cmwlth. 1977).

Section 526(a) prohibits the prosecution of counterclaims in an action brought or continued by a liquidator because it would create a preference over the other creditors standing in line in the liquidation proceeding. *Id.*; *see also*, *G.C. Murphy Company v. Reserve Insurance Company*, 429 N.E. 2d 111 (N.Y. 1981); *Superintendent of Insurance of the State of New York v. International Equipment Leasing, Inc.*, 588 A.2d 883 (N.J. Super Ct. App. Div., 1991). In accord with *Sheppard*, this Court holds that Research Underwriters may not assert or litigate against Legion any of the counterclaim asserted in their responsive pleading. This

---

[1] Section 526(a) of Article V was added by the Act of December 14, 1977, P.L. 280.

[2] On July 25, 2003, this Court ordered Legion to be liquidated, which triggered the statutory stay of all litigation against Legion set forth in Section 526 (a) of Article V.

3

is without derogation to the right of Research Underwriters to present any available defenses to the Liquidator's claim against them.[3]

Next, the Court considers the preliminary objections of the Mutual Companies to the Joinder Complaint. They contend that neither the putative plaintiff, Stephen N. Friedberg, nor the putative defendants may be added to this proceeding by the procedural mechanism of joinder. Jurisdiction, they assert, also is lacking.

The narrow circumstances under which a party may be joined as an involuntary plaintiff are set forth in Pa. R.C.P. No. 2227(b), which states:

> (b)  If a person who must be joined as a plaintiff refuses to join, he or she shall, in a proper case, be made a defendant or an involuntary plaintiff when the substantive law permits such involuntary joinder.

Subsection (b) is not predicated upon a putative administrative benefit to be gained by joinder but upon the unity and identity of the interests of the co-owners who are to be joined. *Kelly v. Carborundum Co.*, 453 A.2d 624 (Pa.Super. 1982); 7 GOODRICH-AMRAM 2d §2227 (2000). It is applicable only where the substantive law provides that an interest is joint and the holder of such interest refuses to join. Involuntary joinder is necessary because without such joinder an indispensable party is missing and the action cannot proceed.

Here, the Joinder Complaint seeks a novel application of the rule. Mr. Friedberg has not refused to join the Liquidator in her complaint against Research

---

[3] To the extent Research Underwriters asserts a contractual affirmative defense, they may have a right to offset amounts it owes to the Legion estate pursuant to a Section 532 of Article V, 40 P.S. §221.32.

4

Underwriters;[4] rather, he seeks to initiate a wholly new complaint against different defendants. Pa. R.C.P. No. 2227(b) does not authorize the addition of Mr. Freidberg because the rule applies not to those who *volunteer* for the role of plaintiff in a pending or separate proceeding.[5] The joinder of Mr. Friedberg, a volunteer, is not authorized by Pa. R.C.P. No. 2227(b).

The attempt to join the Mutual Companies as defendants fails to satisfy Pa. R.C.P. No. 2252(a).[6] Joinder of additional defendants may be appropriate where, otherwise, the named defendant will be solely liable on plaintiff's cause of action. The Joinder Complaint raises claims that arise from a shareholder agreement between Mr. Friedberg and the Mutual Companies; this shareholder agreement has nothing to do with the Liquidator's cause of action, *i.e.*, enforcement of Legion's contractual rights under a brokerage agreement with Research Underwriters. Further, Mr. Friedberg and Research Underwriters do not assert any claims against Legion or the Liquidator in the Joinder Complaint. Involuntary joinder of the Mutual Companies cannot be authorized under Pa. R.C.P. No. 2252(a) in these circumstances.

The Mutual Companies also assert that the Joinder Complaint must be dismissed on jurisdictional grounds. The Court agrees. The matters complained of

---

[4] Mr. Friedberg asserts in the Joinder Complaint that he is a stockholder of Research Underwriters and serves in its managements.

[5] Pa. R.C.P. No. 2327 authorizes intervention but only where the entry of a judgment in the pending action would impose liability on the putative intervenor. The Liquidator's action arises from a brokerage agreement with Research Underwriters, not with Mr. Friedberg.

[6] Under Pa. R.C.P. No. 2252(a), a defendant can move to join an additional defendant who may be 1) solely liable on the plaintiff's cause of action; 2) liable over to the joining party on the plaintiff's cause of action; 3) jointly or severally liable on the plaintiff's cause of action; or 4) liable to the joining party on any cause of action arising out of the transaction or occurrence on which the plaintiff bases his cause of action.

5

in the Joinder Complaint are the subject of actions that have been brought by Mr. Friedberg in the United States District Court for the Eastern District of Pennsylvania and in the Supreme Court of Bermuda. The parties in each are the same, as are plaintiffs' theory of recovery and the relief requested; the goals of the Joinder Complaint cannot be distinguished from those of the actions pending in Federal court and in Bermuda. Under the doctrine of *lis pendens* alone, as embodied in Pa. R.C.P. No. 1028(a)(6), the Joinder Complaint must be dismissed. Further, because the Joinder Complaint has nothing to do with the liquidation of Legion, it is beyond this Court's jurisdiction.[7]

For these reasons, the Court sustains the preliminary objections filed by the Statutory Liquidator and by the Mutual Companies.

MARY HANNAH LEAVITT, Judge

---

[7] Section 761(a)(3) of the Judicial Code provides:
> The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:
>
> ***
>
> (3) Arising under Article V of the Act of May 17, 1921 (P.L. 789, No. 285), known as "The Insurance Department Act of 1921."

42 Pa. C.S. §761(a)(3). *See Koken v. Fidelity Mutual Life Insurance Company*, 803 A.2d 807 (Pa. Cmwlth. 2002) (jurisdiction lies with civil actions arising under Article V).

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

M. Diane Koken, acting in her                    :
official capacity as Insurance                   :
Commissioner of the Commonwealth                 :
of Pennsylvania and Statutory                    :
Liquidator of Legion Insurance                   :
Company,                                         :
        Plaintiff                        :

       v.                                :  No. 70 M.D. 2004
                                           :

Research Underwriters, LLC and                   :
Financial Associates, Inc., d/b/a                :
Research Underwriters,                           :
        Defendants                       :
                                           :

       and                              :

Stephen M. Friedberg,                            :
        Additional Plaintiff             :

       v.                                :

Mutual Holdings, Ltd.,                           :
IPC Mutual Holdings Ltd.,                        :
Mutual Holdings (Bermuda) Ltd.,                  :
Mutual Indemnity Ltd.,                           :
Mutual Indemnity (Bermuda) Ltd.,                 :
Commonwealth Risk Services, Inc.,                :
        Additional Defendants            :

## ORDER

      AND NOW, this 20th day of January, 2005, it is hereby ORDERED as

follows:

1.    The preliminary objections of the Statutory Liquidator of Legion Insurance Company (In Liquidation) are sustained.

2.    The preliminary objections of Mutual Holdings Ltd., Mutual Indemnity Ltd., IPC Mutual Holdings Ltd., Mutual Holdings (Bermuda) Ltd., and Mutual Indemnity (Bermuda) Ltd. are sustained.

3.    The entire Counterclaim in Recoupment (¶¶ 83 through 122) and New Matter that has been pled in support of the Counterclaim (¶¶ 44 through 68, 72, 73, 75, 76) are hereby stricken. The Liquidator shall have twenty days to respond to the remaining paragraphs in New Matter not stricken by this Order (¶ 69, 70, 71, 74, 77, 78, 79, 80, 81, 82).

4.    The Complaint Joining Additional Defendants and an Additional Plaintiff is dismissed with prejudice.

5.    The Chief Clerk is directed to amend the caption to:

> M. Diane Koken, acting in her
> Official capacity as Insurance
> Commissioner of the Commonwealth
> of Pennsylvania and Statutory
> Liquidator of Legion Insurance
> Company,
>
>                 Plaintiff
>
>       v.
>
> Research Underwriters, LLC and
> Financial Associates, Inc., d/b/a
> Research Underwriters,
>
>                 Defendants

Certified from the Record

JAN 2 0 2005

and Order Exit

_____

MARY HANNAH LEAVITT, Judge

539864.1

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| M. DIANE KOKEN, acting in her official capacity as Insurance Commissioner of the Commonwealth of Pennsylvania and Statutory Liquidator of Legion Insurance Company, | CIVIL ACTION |
| | No. 70 MD 2004 |
| Plaintiff, | **BRIEF IN SUPPORT OF APPLICATION IN THE ALTERNATIVE FOR DETERMINATION OF FINALITY** |
| v. | |
| RESEARCH UNDERWRITERS, LLC, and FINANCIAL ASSOCIATES, INC., d/b/a RESEARCH UNDERWRITERS, | Filed on Behalf of: Defendants and Additional Plaintiff |
| Defendants. | Counsel of Record for these Parties: |

Patrick J. Rega
Pa. ID. #16790

Wendy E.D. Smith
Pa. ID. #33219

HERGENROEDER, REGA & SOMMER
650 Smithfield Street
Suite 1700
Pittsburgh, PA 15222
(412) 281–7724

Joseph E. Linehan
Pa. ID. #59983

Gary A. Kern
Pa. ID. #91166

MEYER, UNKOVIC & SCOTT LLP
Firm #199
1300 Oliver Building
Pittsburgh, PA 15222
(412) 456–2800

**JURY TRIAL DEMANDED**

539864.1

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| M. DIANE KOKEN, | CIVIL ACTION |
| Plaintiff, | |
| | No. 70 MD 2004 |
| v. | |
| RESEARCH UNDERWRITERS, LLC, *et al.*, | |
| Defendants. | |

## BRIEF IN SUPPORT OF APPLICATION IN THE ALTERNATIVE FOR DETERMINATION OF FINALITY

Pursuant to Rule 341(c) of the Pennsylvania Rules of Appellate Procedure, Defendants Research Underwriters, LLC and Financial Associates, Inc., d/b/a Research Underwriters, (collectively, "Research Underwriters"[1]) and Additional Plaintiff Stephen M. Friedberg ("Mr. Friedberg") file the within Brief in Support of Application in the Alternative for Determination of Finality. Research Underwriters and Mr. Friedberg simultaneously herewith file the Application in the Alternative for Determination of Finality ("the Application") to request alternative action by the Court should it deny the Motion for Reconsideration filed on February 3, 2005.

---

[1]  Although this Court's Opinion of January 20, 2005 refers to Research Underwriters, LLC and Financial Associates, Inc., d/b/a Research Underwriters collectively as "Research Underwriters," they are, in fact, separate entities. See Answer, New Matter and Counterclaim, ¶ 2. For ease of reference, Research Underwriters, LLC and Financial Associates, Inc., d/b/a Research Underwriters will adopt the Court's terminology. Of course, Research Underwriters, LLC and Financial Associates, Inc., d/b/a Research Underwriters do not adopt any implication that Research Underwriters, LLC and Financial Associates, Inc., d/b/a Research Underwriters are anything other than distinct and independent corporate entities.

539864.1

### A. Introduction

On January 20, 2005, the Court entered an Order ("the Order") and Memorandum Opinion ("the Opinion"), a true and correct copy of which is attached to the accompanying Application as Exhibit "A." thereto. Pursuant to Pa. R.App.P. 341(c), Research Underwriters and Mr. Friedberg respectfully request that the Court amend its January 20, 2005 Order to state that an immediate appeal of that Order in its entirety would facilitate resolution of the entire case.

### B. Procedural Background[2]

#### 1. The Liquidator's Preliminary Objections to the New Matter and Counterclaim

On February 5, 2004, Plaintiff, M. Diane Koken, acting in her official capacity as Insurance Commissioner of the Commonwealth of Pennsylvania and Statutory Liquidator of Legion Insurance Company ("Plaintiff" or "the Liquidator") commenced this action to recover premiums, commissions and other related amounts from Research Underwriters under a Brokerage Agreement, dated January 1, 1992, ("the Brokerage Agreement") between Plaintiff's predecessor, Legion Insurance Company ("Legion") and Financial Associates, Inc., d/b/a Research Underwriters ("FAI").

The Complaint sets forth five counts, all of which are based upon the Brokerage Agreement. Count I is for "Breach of Contract." (See Complaint, ¶ 22.) Count II is for "Breach of Fiduciary Duty" (See id., ¶¶25-26.) Count III is styled as "Enforcement of Liquidation Order," and derives from the Brokerage Agreement. Count IV asserts a negligence cause of a action on behalf of Legion. Count V consists of a "Demand for Accounting." Counts

---

[2] Paragraphs 8 through 33 of the *Application in the Alternative for Determination of Finality* set forth in more detail the procedural background of the case, and will not be repeated here.

539864.1

II through V are nothing more than recasting of the breach of contract action. The Complaint seeks "money damages in excess of $3 million due under the Brokerage Agreement." (Id., ¶ 43).

On April 8, 2004, Research Underwriters filed their Answer, New Matter and Counterclaim in which they denied all liability to the Liquidator. Research Underwriters' New Matter included various defenses and a counterclaim under the common law doctrine of equitable recoupment, as well as "material facts" (see Pa.R.Civ.P. 1030(a)) relating to those defenses and to the Counterclaim.

On May 28, 2004, the Liquidator filed Plaintiff's Preliminary Objections in the Nature of a Demurrer to New Matter and Counterclaim in Recoupment. Over the next several months, Research Underwriters and the Liquidator briefed these Preliminary Objections.

### 2. The Preliminary Objections to the Complaint Joining Additional Defendants and Additional Plaintiff

On July 19, 2004, Research Underwriters filed the Complaint Joining Additional Defendants and Additional Plaintiff ("Complaint to Join"), which joined Mr. Friedberg as an Additional Plaintiff, and Mutual Holdings, Ltd., Mutual Indemnity Ltd., IPC Mutual Holdings Ltd., Mutual Holdings (Bermuda) Ltd., and Mutual Indemnity (Bermuda) Ltd. ("the Mutual Family") as Additional Defendants.

On August 5, 2004, the Liquidator filed Plaintiff's Preliminary Objections to Complaint Joining Additional Defendants and Additional Plaintiff. These preliminary objections were based on *lis pendens*, failure to conform to court rule (joinder of Additional Plaintiff), and failure to conform to court rule (joinder of Additional Defendants).

-3-

On September 1, 2004, Research Underwriters and Mr. Friedberg filed their Answer to Plaintiff's Preliminary Objections to Complaint to Join. This Court did not issue a briefing schedule for this set of objections. Plaintiff nevertheless filed the Reply Memorandum in Support of Preliminary Objections to Complaint Joining Additional Defendants and Additional Plaintiff on December 27, 2004, in which Plaintiff raised—for the first time—additional objections to the Complaint to Join. In response, on January 24, 2005, Research Underwriters and Mr. Friedberg filed their Sur-reply to Liquidator's "Reply" Memorandum of Law in Support of Preliminary Objections.

On October 1, 2004, the Mutual Family filed the Preliminary Objections of Defendants Mutual Holdings Ltd., Mutual Indemnity Ltd., IPC Mutual Holdings Ltd., Mutual Holdings (Bermuda) Ltd., and Mutual Indemnity (Bermuda) Ltd. to the Complaint Joining Additional Defendants and Additional Plaintiff. These preliminary objections were based on *lis pendens*, failure to conform to court rule (joinder of Additional Plaintiff), improper venue, and a demurrer. Over the following months, Research Underwriters, the Mutual Family, and the Liquidator briefed these Preliminary Objections.

### 3.    The January 20, 2005 Order and Memorandum Opinion

On January 20, 2005, this Court issued an Order (and accompanying Opinion) in which this Court (A) sustained the Liquidator's preliminary objections to the New Matter and Counterclaim; (B) concluded that the Court did not have jurisdiction over the claims set forth in the Complaint to Join; and (C) dismissed the Complaint to Join "with prejudice."

In sustaining the Liquidator's preliminary objections to the New Matter and Counterclaim, the Court struck (A) Paragraphs 44 through 68 of the New Matter; (B) Paragraphs 72, 73, 75 and 76 of the New Matter; and (C) Paragraphs 83 to 122, which are under the heading

-4-

539864.1

"Counterclaim in the Nature of Equitable Recoupment" and comprise Counts I through XI of the Counterclaim. In striking these Paragraphs, the Court's Order at Paragraph 3 characterized Paragraphs 83 to 122 as "[t]he entire Counterclaim in Recoupment," and Paragraphs 44 through 68, 72, 73, 75 and 76 as the "New Matter that has been pled in support of the Counterclaim." Order ¶3.

The Order also sustained the preliminary objections filed with respect to the Mutual Family's Complaint to Join. Order, ¶¶2 and 4. The Court concluded that it did not have jurisdiction over the claims set forth in the Complaint to Join, and then dismissed the Complaint to Join "with prejudice."

**C.    Amendment of the January 20, 2005 Order pursuant to Pa. R.App.P. 341(c) is appropriate.**

**1.    The legal standard under Pa. R.App.P. 341(c)**

Research Underwriters and Mr. Friedberg respectfully submit that an immediate appeal of the Court's rulings in its January 20, 2005 Order and Opinion will facilitate resolution of the entire case. Such an appeal is also necessary to correct an injustice that otherwise could not be corrected by a later appeal. *Wisniski v. Brown & Brown Ins. Co. of Pa.*, 852 A.2d 1206, 1210, n.6 (2004) (internal citations omitted) (an appeal is appropriate under Rule 341(c) where the "failure to entertain a later appeal will result in an injustice that a later appeal could not correct").

Pa. R. App.P. 341(c) provides in pertinent part:

> (c) **Determination of Finality.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, *the trial court or other governmental unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case.* Such an order becomes appealable when entered.

(Emphasis added.)

-5-

539864.1

The Note to Pa.R.App.P. 341 states:

> Subdivision (c) permits an immediate appeal from an order dismissing less than all claims or parties from a case only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Factors to be considered under Subdivision (c) include, but are not limited to:
>
> (1)   whether there is a significant relationship between adjudicated and unadjudicated claims;
>
> (2)   whether there is a possibility that an appeal would be mooted by further developments;
>
> (3)   whether there is a possibility that the court or administrative agency will consider issues a second time;
>
> (4)   whether an immediate appeal will enhance prospects of settlement.

As set forth below, the application of this legal standard to the instant case compels the conclusion that the Court should amend the January 20, 2005 Order to provide for an immediate appeal.

2.   **An immediate appeal would facilitate resolution of the entire case and is necessary to correct an injustice that would not be corrected by a later appeal.**

a.   **An immediate appeal of the striking of the Counterclaim in the nature of recoupment and certain New Matter deemed by the Court to support the Counterclaim is appropriate under Pa.R.App.P. 341 (c).**

This Court's decision in *Kaiser v. Monitrend Investment Management, Inc., 672 A.2d 350 (Pa.Commw. Ct. 1996)* authorizes Research Underwriters' counterclaim in the nature of equitable recoupment. In *Monitrend*, this Court held that the Liquidation Act's prohibition against "setoff and counterclaim" in certain situations did not apply where the counterclaim was in the nature of equitable recoupment. Specifically, this court stated:

-6-

539864.1

'The defense of recoupment, which arises out of the <u>same transaction</u> as plaintiff's claim, survives as long as the cause of action upon the claim exists. <u>It is a doctrine of intrinsically defensive nature founded upon an equitable reason, inhering in the same transaction, why the plaintiff's claim in equity and good conscience should be reduced.</u>'

672 A.2d at 363 (<u>quoting</u> *Household Consumer Discount Co. v. Vespaziani*, 490 Pa. 209, 215, 415 A.2d 689, 694 (1980)) (Emphasis added.)

Under Pennsylvania law, a counterclaim for equitable recoupment is proper if it arises out of "'*some feature of the transaction* upon which the plaintiff's action is grounded . . . .'". *Commonwealth v. Berks County*, 364 Pa. 447, 450, 72 A.2d 129 (1950) (<u>quoting</u> *Bull v. United States*, 295 U.S. 247, 262 (1935)) (Emphasis added.) Accordingly, the transaction which is the subject of the suit brought by a plaintiff must be "examined in all its aspects" and a judgment must be rendered "that does justice in view of the one transaction as a whole." *Stulz v. Boswell*, 307 Pa. Super 515, 453 A.2d 1006, 1008 (1992) (<u>quoting</u> *Provident National Bank v. United States*, 507 F.Supp. 1197 (E.D. Pa. 1981)) (Internal quotations omitted.)

Clearly, and also as more fully set forth in Research Underwriters' memoranda of law in opposition to the Liquidator's preliminary objections, the transactional requirement for equitable recoupment is clearly met and the application of the doctrine to Research Underwriters' Counterclaim is proper under Pennsylvania law. As alleged in the Answer, New Matter, and Counterclaim, pursuant to the parties' oral agreement, FAI and Legion, *inter alia*, entered into a Brokerage Agreement which, generally speaking, is the basis for Plaintiff's action. (<u>See, e.g.</u>, ¶¶50-53.) As also alleged in the Answer, the brokerage agreement is just one of many aspects of the transaction relating to the Rent-A Captive Plan, which involved Legion, FAI, and others. Certainly, the oral agreement pursuant to which the brokerage agreement was entered into, and the brokerage agreement itself, is part of the same transaction. Thus, an examination of the

539864.1

transaction giving rise to Plaintiff's claim in all aspects, as required by Pennsylvania law, makes it clear that the counterclaim arises not only from "some feature" of this transaction, but, in fact, from precisely the same transaction.

Notwithstanding these authorities and the procedural posture of the case, the Court struck the entirety of the Counterclaim in the nature of equitable recoupment on the basis that 40 P.S. § 221.26(a) prohibits such counterclaims. Opinion, pp. 3-4. Thus, the Court did not permit the Counterclaim to move forward because the Court did not, as required when ruling upon a demurrer, *Commonwealth v. Percudani*, 825 A.2d 743, 745 (Pa. Commw. Ct. 2003), accept as true the factual averments made by Research Underwriters. The Court's Opinion, in the section addressing the Mutual Family's objections to the Complaint to Join, states that "[the] shareholder agreement has nothing to do with the Liquidator's ... enforcement of Legion's contractual rights under a brokerage agreement with Research Underwriters." Opinion, p. 5. This statement and the Court's ruling as a whole demonstrate that the Court has rejected, contrary to Pennsylvania law, the well-pleaded allegations of the Answer, New Matter and Counterclaim.

Agreements such as the Brokerage Agreement and the shareholder agreements have been held by other courts to be components of a larger transaction. *American Patriot Ins. Agency Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884 (7th Cir. 2004) (Posner, J.). While *American Patriot* is not binding authority on this Court, its holding does indicate that Research Underwriters' position—that the brokerage and shareholder agreements were but portions of a larger transaction and that equitable recoupment is appropriate—is a reasonable position, and one which, Research Underwriters' believes, the Pennsylvania Supreme Court should and will adopt thus affirming Research Underwriters ability to assert as a defense in this action the Counterclaim in the nature of equitable recoupment.

-8-

539864.1

The only other reasonable explanation for the Court's striking of the *Counterclaim* and matters deemed by the Court to be in support thereof, is that the Court determined in issuing its January 20, 2005 Order, that even if equitable recoupment had been properly alleged under longstanding principles of Pennsylvania law, *Monitrend* nonetheless does not apply to this case, and therefore no counterclaim in recoupment is permitted. If this is the case, then the Court erred on that basis because *Monitrend* clearly applies in this case and under Pennsylvania law the doctrine of equitable recoupment may properly serve as the basis for the Counterclaim of Research Underwriters in this action. Research Underwriters memoranda of law in opposition to Plaintiff's preliminary objections are incorporated by reference as if fully set forth herein. See ,Application, ¶¶ 13, 15, 17 and 23.

Regardless of the basis for doing so, the Court's striking of the Counterclaim in the nature of equitable recoupment and the portions of the New Matter deemed to be "in support" thereof, eliminates a central aspect of Research Underwriters' defense to Plaintiff's claims. In the absence of an intervening appeal, this matter will proceed with additional pleadings, extensive discovery and motions practice, and, likely, a trial and subsequent proceedings. In light of the primacy of the defensive "counterclaim," as well as other stricken matters, an immediate appeal would greatly facilitate the resolution of the action by resolving once and for all the propriety of the Counterclaim and these other matters.

An immediate appeal is appropriate also because it would potentially avoid "costly re-litigation" of matters which likely will occur if the Court does not permit an immediate appeal. *FDP v. Ferrara*, 804 A.2d 1221, 1227, n.1 (Pa. Super. 2002). For the foregoing reasons, as well as the reasons set forth in Section C 2 (c) hereof (relating to the four nonexclusive factors set forth in the official Note to Pa. R.App.P. 341(c)), it is respectfully requested that the Court

-9-

539864.1

amend its January 20, 2005 Order to state that an immediate appeal would facilitate the

resolution of the entire case, pursuant to Pa. R.App.P. 341(c).

### b.    An immediate appeal of the dismissal "with prejudice" of the Complaint to Join is appropriate under Pa. R.App. P. 341(c).

Although the Mutual Family never raised lack of jurisdiction, the Court concluded *sua*

*sponte* that it lacked jurisdiction over the Complaint to Join.  Research Underwriters and Mr.

Friedberg respectfully submit that the Court's determination was in error for the reasons set forth

in their memorandum of law (see Application, ¶¶ 17 and 23) in reply to the Liquidator's

unsolicited brief (see Application, ¶¶ 16 and 22) on this issue, as well as for the reasons set forth

in the Motion For Reconsideration and Brief in Support filed on February 3, 2005, all of which

materials are incorporated by reference as if fully set forth herein.

The Complaint to Join alleges, *inter alia*, that "[i]n consideration of and in reliance upon

the [promises and representations of the Mutual Family, Legion, and Commonwealth Risk, Inc.]

*and pursuant to the parties' oral agreements*, FAI entered into a brokerage agreement with

Legion dated January 1, 1992." (Complaint to Join, ¶22) (Emphasis added.)  The Complaint to

Join also alleges, *inter alia*, that "[i]n consideration of and in reliance upon the [promises and

representations of the Mutual Family, Legion, and Commonwealth Risk, Inc.] *and pursuant to*

*the parties' oral agreements*, Mr. Friedberg executed various shareholder agreements—

including, but not limited to, an agency agreement, which is the subject of the underlying

lawsuit—intended to provide a vehicle for accounting of profits." (Complaint to Join, ¶23)

(Emphasis added.)

As discussed above, under the procedural posture of this case, this Court was required to

accept as true Research Underwriters' and Mr. Friedberg's allegations regarding the brokerage

agreement and shareholder agreement and their roles as merely portions of a larger agreement

539864.1

and transaction. Nonetheless, the Court impermissibly and incorrectly resolved a factual issue contrary to the allegations of Research Underwriters and Mr. Friedberg when it concluded that "[the] shareholder agreement has nothing to do with the Liquidator's ... enforcement of Legion's contractual rights under a brokerage agreement with Research Underwriters." Opinion, p.5.

Compounding matters, in addition to ruling that there was no jurisdiction over the claims raised in the Complaint to Join, the Court proceeded to comment on the preliminary objections raised by the Mutual Family. This was inappropriate. "Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is announcing the fact and dismissing the case." *Smiths Implements, Inc. v. Workmen's Compensation Appeal Board*, 673 A.2d 1039, 1043 n.7 (Pa. Commw. Ct. 1996). It was error for this Court to address the Mutual Family's objections after determining that jurisdiction was lacking. *Brown v. Taylor*, 494 A.2d 29, 32 (Pa. Commw. Ct. 1985); *Beluschok v. Peoples Natural Gas Co.*, 470 A.2d 196, 198 (Pa. Commw. Ct. 1984); *Witt v. Commonwealth, Dept. of Banking*, 387 A.2d 1310, 1311 (Pa. Commw. Ct. 1978).

As the Court is aware from the documents filed in this case on behalf of all parties, and as is evident from the Court's Opinion (see pp. 5-6), there are other proceedings involving, *inter alia*, Research Underwriters, Mr. Friedberg, and/or various members of the Mutual Family. The Mutual Family will surely attempt to take the position in other actions that this Court's dismissal "with prejudice" of the Complaint to Join, as well as the Court's commentary on other matters, including those raised in the Mutual Family's preliminary objections, is somehow *res judicata* or otherwise preclusive against Research Underwriters and/or Mr. Friedberg as to the substance of certain claims and/or as to other issues.

539864.1

Any attempted preclusion of Research Underwriters and/or Mr. Friedberg as to any claim or issue based upon this Court's jurisdictional dismissal "with prejudice" of the Complaint to Join would work an unjust and unnecessary hardship and expense on Research Underwriters and/or Mr. Friedberg, as they take steps, whether in the United States District Court of the Eastern District of Pennsylvania or in Bermuda, to pursue claims against the Mutual Family, including without limitation efforts to ·protect the approximately 2.7 million dollars in "Philadelphia Funds" (see Answer, New Matter and Counterclaim, ¶56). This would be particularly unjust because, while this Court concluded that it did not have jurisdiction to reach the merits of the claims against the Mutual Family, the Court expressed its ruling in its Order in a manner (that is, the Complaint to Join "is dismissed with prejudice") that undoubtedly will be exploited, whether successfully or not, by the Mutual Family in an attempt to preclude Research Underwriters and Mr. Friedberg from pursuing against the Mutual Family remedies otherwise available at law or in equity. At the very least, if the Court's Order stands and is not subject to correction on appeal, Research Underwriters and Mr. Friedberg will incur substantial additional expenses in regard to what is already costly litigation.

For the foregoing reasons, as well as the reasons set forth immediately below in Section C 2 (c) hereof (relating to the four nonexclusive factors set forth in the official Note to Pa. R.App.P. 341(c)), this matter should be immediately appealable.

> **c. Each of the factors listed in the official Note to Pa. R.App. P. 341(c) supports the amendment of the January 20, 2005, Order to permit an immediate appeal.**

As quoted above, the Note to Pa. R.A.P. 341(c) and accompanying the 1992 amendment thereof listed four factors to be considered, although not exclusively, in determining whether an immediate appeal is appropriate under Rule 341(c). Application of each of the four factors

-12-

539864.1

compels the conclusion that an immediate appeal of the January 20, 2005 Order pursuant to Rule 341(c) is appropriate.

The first factor listed in the Note to Rule 341(c) is "whether there is a significant relationship between adjudicated and unadjudicated claims." 1 Darlington, McKeon, Schuckers and Brown, *Pennsylvania Appellate Practice*, §341:6 (2d ed. 2004), states in regard to this requirement:

> Undesirable tension is created where the trial court and the appeals court simultaneously consider similar factual or legal issues in the context of the same action. Where adjudicated and unadjudicated claims are closely related, either factually or legally, certification normally should not be granted.

The Court has stricken from the pleadings the entirety of the "Counterclaim in Recoupment...and New Matter that has been pled in support [thereof]," Order ¶3, and the entirety of the Complaint to Join. To the extent that there would not be a stay pending any immediate appeal, in light of the fact that all that remains in the case is Plaintiffs' five-count Complaint and Research Underwriters' answer and remaining defenses, it would appear that there is little potential for the "[u]ndesirable tension" referred to above.

Any immediate appeal will focus on legal issues, such as, and by way of illustration only, whether this Court applied the appropriate standard to the demurrers to the Counterclaim and to the Complaint to Join, and whether the Court appropriately concluded that the Brokerage Agreement and the other aspects of the parties' transaction implicated in the Counterclaim were not part of the same transaction for the purpose of the applicability of equitable recoupment as a defense. In contrast, if the matter proceeds in the trial court pending any immediate appeal, this Court's focus very likely will be in large part upon the resolution of the factual issues raised by the pleadings, as currently constituted. Whether the Court was correct or incorrect as a matter of

539864.1

law with respect to the legal standard applied to the demurrers is entirely separate from any resolution of factual issues by the trial court pending appeal. Accordingly, there is little to no potential for the "[u]ndesirable tension" referenced with respect to the first factor set forth in the official Note to Pa.R.App.P. 341(c).

The second factor listed in the Note to Rule 341(c) is "whether there is a possibility that an appeal would be mooted by further developments." 1 Darlington, McKeon, Schuckers and Brown, *Pennsylvania Appellate Practice*, §341:7 (2d ed. 2004), states in regard to this requirement:

> The trial court should consider whether the issue to be certified for appeal may be rendered moot by the disposition of related claims pending in the trial court. This situation most commonly arises with questions of indemnification.

In light of the fact that the Court eliminated from consideration in the trial court *in toto* both the Counterclaim (and certain 'supporting' matters) and the Complaint to Join, there appears to be *no* possibility that the appeal would be mooted by further developments in the case. Certainly, indemnification is not an issue. Moreover, as noted immediately above, the legal issues to be dealt with by the Supreme Court in any immediate appeal are entirely separate from any resolution of factual issues by the trial court pending appeal. On the other hand, if the matter is permitted to proceed in the trial court without the central element of the defense, the Counterclaim in recoupment, the potential for costly re-litigation after any appeal is high. *FDP v. Ferrara*, 804 A. 2d 1221, 1227, n.6 (Pa. Super. 2002).

The third factor listed in the Note to Rule 341(c) is "whether there is a possibility that the court...will consider issues a second time." 1 Darlington, McKeon, Schuckers and Brown, *Pennsylvania Appellate Practice*, §341:8 (2d Ed. 2004), states in regard to this requirement:

-14-

539864.1

> There is a possibility that the resolution of legal issues by the
> appellate court will aid the trial court in resolving the same legal
> issue in the same or other cases....[¶]The Superior Court has
> approved a Rule 341(c) determination of finality where it has
> found a significant risk of costly re-litigation that could be avoided
> by an immediate appeal.

The resolution of legal issues raised by the striking of the Counterclaim in the nature of recoupment and by dismissal with prejudice of the Complaint to Join will aid the trial court in resolving issues relating thereto upon remand. These matters are central to the defense and resolution of the case and the transaction giving rise to the Liquidator's claims. To permit the matter to proceed with these central elements of the case removed poses a grave risk that the parties will be required to litigate twice issues that are central to the resolution of the claims at issue.

Moreover, the structure of the FAI/Friedberg rent-a-captive programs is identical or similar to other programs established by other brokers and insureds under the Mutual Family and Legion's rent-a-captive-plan. Thus, there is a strong possibility that similar issues will be relitigated in other cases involving the Liquidator's attempts to recover premiums allegedly due from other brokers or insureds that participated in the Mutual Family and Legion's rent-a-captive-plan. See, e.g., Koken v. Cory & Assoc., Inc., No. 04 C 0953 (N.D. Ill. 2004); American Patriot Ins. Agency Inc. v. Mutual Risk Management, Ltd., 364 F.3d 884 (7th Cir. 2004) (Posner, J.).

The fourth factor listed in the Note to Rule 341(c) is "whether an immediate appeal will enhance prospects of settlement." An immediate appeal likely will place, one way or the other, the claims, defenses and issues between the parties more tightly into focus. This relative certainty will enhance the prospect of settlement of this case because the respective parties and their counsel will be better able to assess, with less uncertainty, the potential benefits and risks of

-15-

539864.1

proceeding with the litigation or settling the case. On the other hand, if an immediate appeal is not permitted, then central issues such as the viability of the defense of equitable recoupment and the claims against the Mutual Family will remain uncertain pending resolution of the entire case and any subsequent appeal at that time. Under such a cloud of uncertainty, settlement becomes much more difficult, if not impossible, prior to the resolution of any appeal or appeals in this matter. Thus, the goal of the enhancement of settlement compels the conclusion that an immediate appeal is not only appropriate, but also highly desirable in regard to the ultimate resolution of the case.

In sum, the four nonexclusive factors listed in the official Note to Pa. R.App.P. 341(c) support strongly the immediate appeal of the January 20, 2005 Order.

**D.     Relief Requested**

Research Underwriters and Mr. Friedberg have filed the Application accompanying this Brief to request alternative action by the Court should it deny the Motion for Reconsideration filed on February 3, 2005. Research Underwriters and Mr. Friedberg request pursuant to Pa.R.App.P. 341(c) that the Court amend its January 20, 2005 Order and Opinion to state that an immediate appeal of the Order, including without limitation all rulings set forth therein, would facilitate resolution of the entire case.

Without limiting the generality of the foregoing, Research Underwriters respectfully requests pursuant to Pa.R.App.P. 341(c) that the Court amend its January 20, 2005 Order and Opinion to state that an immediate appeal of the Order including without limitation Paragraphs 1 and 3 thereof (relating to the Counterclaim in the Nature of Recoupment and New Matter) would facilitate resolution of the entire case.

-16-

539864.1

Without limiting the foregoing, Research Underwriters and Mr. Friedberg respectfully request that pursuant to Pa.R.App.P. 341(c) the Court amend its January 20, 2005 Order and Opinion to state that an immediate appeal of the Order, including without limitation Paragraphs 1, 2, 4, and 5 thereof (that is, relating to the dismissal of the Complaint to Join) would facilitate resolution of the entire case.

Respectfully submitted,

HERGENROEDER, REGA & SOMMER

By: _____
Patrick J. Rega
Wendy E. D. Smith

MEYER, UNKOVIC & SCOTT LLP

By: _____
Joseph E. Linehan
Gary A. Kern

ATTORNEYS FOR DEFENDANTS AND
ADDITIONAL PLAINTIFF

-17-

539864.1

## CERTIFICATE OF SERVICE

I hereby certify that I am this day serving the foregoing document upon the persons indicated

below *via* FedEx First Overnight, which service satisfies the requirements of Pa.R.A.P. 121(c):

Charlotte E. Thomas, Esquire
Wolf, Block, Schorr and Solis-Cohen LLP
1650 Arch Street, 22d Floor
Philadelphia, PA 19103-2097
(Counsel for M. Diane Koken, Insurance Commissioner of the
Commonwealth of Pennsylvania and Statutory Liquidator of
Legion Insurance Company)

Douglas Y. Christian
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 47th Floor
Philadelphia, PA 19103-7599
(Counsel for Mutual Holdings Ltd.; Mutual Indemnity Ltd.; IPC
Mutual Holdings Ltd; Mutual Indemnity (Bermuda) Ltd. and
Mutual Holdings (Bermuda) Ltd.

Commonwealth Risk Services, Inc.
One Logan Square, Suite 1500
Philadelphia, PA 19103

Date: February 10, 2005          By: _____
                                     Joseph E. Linehan
                                     Pa. ID. #59983
                                     Meyer, Unkovic & Scott LLP
                                     1300 Oliver Building
                                     Pittsburgh, PA 15222
                                     (412) 456-2800
                                     Attorneys for Defendant Financial
                                     Associates, Inc., d/b/a Research
                                     Underwriters and Additional Plaintiff
                                     Stephen M. Friedberg



**WolfBlock**

1650 Arch Street, 22nd Floor, Philadelphia, Pennsylvania 19103-2097
Tel: (215) 977-2000 ■ Fax: (215) 977-2740 ■ www.WolfBlock.com

# FACSIMILE TRANSMITTAL

| | | | |
|---|---|---|---|
| **Date:** | February 11, 2005 | **Number of Pages (including this cover):** | _5l_ |
| **To:** | Douglas Christian, Esquire | | |
| **Company** | Ballard Spahr | | |
| **Fax #:** | 215-864-9206 | | |
| **Phone #:** | | | |
| **From:** | Charlotte E. Thomas | | |
| **Phone #:** | (215) 977-2482 | | |
| **Sender's Personal Fax #:** | (215) 405-2582 | | |

*Special Message:*

☒ Original WILL NOT follow

Original WILL follow via:
☐ Regular Mail            ☐ First Class Mail
☐ E-mail                  ☐ Overnight Delivery
☐ Hand Delivery           ☐ Other

Client:   DEP025
Matter:   217049

**If you have problems receiving this transmission, please contact the sender at the number above.**

NOTE: The comments on and attachment to this cover sheet are intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original to us, at the above address, via the U.S. Postal Service. Thank you.

PHL:5081287.1/DEP025-217049

Cherry Hill, NJ ■ Harrisburg, PA ■ Newark, NJ ■ New York, NY ■ Norristown, PA ■ Philadelphia, PA ■ Wilmington, DE
Wolf, Block, Schorr and Solis-Cohen LLP
A Pennsylvania Limited Liability Partnership

# EXHIBIT D



Not Reported in F.Supp.2d
1999 WL 1081070 (E.D.Pa.), 140 Lab.Cas. P 58,874
**(Cite as: 1999 WL 1081070 (E.D.Pa.))**

Page 1

**H**

**Motions, Pleadings and Filings**

United States District Court, E.D. Pennsylvania.
Brian M. GALLAGHER
v.
BOROUGH OF DOWNINGTOWN, Linda M.
Baugher, Anthony S. Gambale, William Mason,
Heather Bruno, Michael Menna, Sr., Joseph
Mcgrath, Jack Francello, And Dennis
Walton.
**No. CIV. A. 98-3885.**

Nov. 29, 1999.

*MEMORANDUM AND ORDER*

HUTTON.

**\*1** Currently before the Court are Plaintiff's Motion for Leave to File Amended Complaint (Docket No. 10) and Defendants' response thereto. For the reasons stated below, Plaintiff's Motion is DENIED.

I. *BACKGROUND*

Brian M. Gallagher ("Plaintiff") filed on July 22, 1998, a multi-count Complaint against the Borough of Downingtown, Linda M. Baugher, Anthony S. Gambale, William Mason, Heather Bruno, Michael Menna, Sr., Joseph McGrath, Jack Francello, and Dennis Walton (collectively, the "Defendants"). Plaintiff's claim of arises out of his belief that the Defendants unlawfully terminated his employment.

On May 13, 1999, the Court entered an Order dismissing two of Plaintiff's causes of action, thereby leaving for adjudication only Plaintiff's claim that his due process rights under the Fourteenth Amendment were violated when his employment was terminated without prior notification of any specific and relevant charges for which he was being terminated. Plaintiff also alleges that he was not provided an opportunity to

be heard by or before the Defendants.

Plaintiff brings the instant Motion, requesting leave of this Court so that he may "amplify the original [C]omplaint's allegations" on his due process theory and to "allege that the method of the [P]laintiff's termination was also a violation of the Pennsylvania Sunshine Act." (*See* Pl.'s Brief in Supp. of Motion for Leave to File Amend. Compl. at 2).

II. *DISCUSSION*

A. *Legal Standard for Motion to Leave to Amend Complaint*

Federal Rule of Civil Procedure 15(a) provides as follows:
  Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed on the trial calendar, the party may also amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended complaint within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders.
Fed.R.Civ.P. 15(a). Motions to amend under Rule 15(a) may be filed to cure a defective pleading, to correct insufficiently stated claims, to amplify a previously alleged claim, to change the nature or theory of the case, to state additional claims, to increase the amount of damages sought, to elect different remedies, or to add, substitute or drop parties to the action. L. Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure:* Civil 2d § 1474 (1990). *See Goodman v. Mead Johnson & Co.,* 534 F .2d 566, 569 (3d Cir.1976) (district court improperly denied amendment to add claims and substitute parties),

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*cert. denied,* 429 U.S. 1038, 97 S.Ct. 732 (1977). It must be noted that in considering such a motion, Rule 15(a) expressly demands that "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).

**\*2** The Third Circuit stated, however, that the "potential for undue prejudice [to the non-moving party] is 'the touchstone for the denial of the leave to amend.' " *Coventry v. United States Steel Corp.,* 856 F.2d 514, 519 (3d Cir.1988) (quoting *Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n,* 573 F.2d 820, 823 (3d Cir.1978)); *Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208, 1212 (3d Cir.1984) (same). This is not to say, however, that courts infrequently grant such motions.

Leave to amend may be properly denied where there exists "undue delay, bad faith or dilatory motive on part of the movant ... undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment ...." *Foman v. Davis,* 371 U .S. 178, 182, 83 S.Ct. 227, 230 (1962) . The *Foman* Court warned, however, that is it an abuse of discretion if the district court refuses to grant leave to amend without providing a reason for its decision. *Id.,* 83 S.Ct. at 230.

Additionally, in appropriate circumstances, a district court must consider the "relation back" doctrine when deciding whether to grant a motion for leave to amend. Federal Rule of Civil Procedure 15 states that

    [a]n amendment of a pleading relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence, set forth or attempted to be set forth in the original pleading ....

Fed.R.Civ.P. 15(c)(1)-(2). The relation back doctrine, where applicable, allows a plaintiff to avoid the application of a statute of limitations where the claim asserted in the amended complaints arises out of the conduct, transaction, or occurrence set forth in the original pleading. As a general matter, amendments that restate or amplify the original pleading should relate back. *See, e.g., Wolfson v. Lewis,* 168 F.R.D. 530, 534

(E.D.Pa.1996); *Klitzner Indus., Inc. v. H.K. James & Co., Inc.,* 96 F.R.D. 614, 617 (E.D.Pa .1983); *Ratliffe v. Insurance Co. of N. Am.,* 482 F.Supp. 759, 762- 63 (E.D.Pa.1980). Courts routinely deny a motion for leave to amend on the basis of futility where the plaintiff fails to commence his or her action before the applicable statute of limitations tolls. *See Thomas v. Township of Cherry, Butler County,* 722 A.2d 1150, 1153 (Pa.Commw.Ct.1999) ; *Bologna v. St. Mary's Area Sch. Bd .,* 699 A.2d 831, 833 (Pa.Commw.Ct.1997); *Hain v. Board of Sch. Dir. of Reading Sch. Dist.,* 641 A.2d 661, 662 (Pa.Commw.Ct.1994). The Court now considers Plaintiff's Motion and Defendants' response thereto.

B. *Plaintiff's Motion for Leave to Amend Complaint*

Plaintiff seeks to amend his Complaint to allege a cause of action under the Pennsylvania Sunshine Act (the "Sunshine Act" or the "Act"), 65 Pa.Cons.Stat.Ann. § 701 *et seq.* (West 1999), alleging that the Sunshine Act only "came to [counsel's] attention upon reading *Thomas v. Township of Cherry,* 722 A.2d 1150 (Pa.Commw.Ct.1999)." (Pl.'s Brief in Supp. of Motion for Leave to File Amend. Compl. at 2). Plaintiff alleges that his requested amendment will "amplify the original [C]omplaint's allegations," (*see* Pl.'s Brief in Supp. of Motion for Leave to File Amend. Compl. at 2), but also states that "the *additional allegation* arises from the same transaction or occurrence set out or attempted to be set out in the original [C]omplaint." (Pl.'s Brief in Supp. of Motion for Leave to File Amend. Compl. at 3 (emphasis added)). Plaintiff finally asserts that leave to amend should be granted because, as precedent dictates, he is only attempting to amplify a previously alleged claim. (Pl.'s Brief in Supp. of Motion for Leave to File Amend. Compl. at 3).

**\*3** Defendants argue that Plaintiff's Motion should be denied because the Sunshine Act's statute of limitations renders futile the proposed amendment. Defendants argue that because Plaintiff did not make a timely challenge to the April 17, 1998, meeting at which his employment was terminated, Plaintiff's claim is expressly time-barred by the Sunshine Act. Defendants base their argument on the following provision of the Sunshine Act:

    A legal challenge under [the Sunshine Act] shall be filed within 30 days from the date of a meeting

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 1081070 (E.D.Pa.), 140 Lab.Cas. P 58,874
(Cite as: 1999 WL 1081070 (E.D.Pa.))

Page 3

which is open, or within 30 days from the discovery of any action that occurred at a meeting which was not open at which [the Sunshine Act] was violated, provided that, in the case of a meeting which was not open, no legal challenge may be commenced more than one year from the date of said meeting.

65 Pa.Cons.Stat.Ann. § 713 (West 1999). Section 713 raises two issues: (1) whether Plaintiff timely filed his original Complaint; and (2) if Plaintiff's original Complaint was timely filed, whether the relation back doctrine is applicable. [FN1]

> FN1. Both parties ignore Rule 15's relation back doctrine. For the sake of specificity and clarity, the Court considers, *sua sponte,* the applicability of the relation back doctrine.

The Court now considers whether Plaintiff timely filed his original Complaint such that he may maintain a cause of action under the Sunshine Act. Plaintiff's proposed Amended Complaint alleges that Defendant's decision to terminate Plaintiff's employment was neither made at an open meeting nor in an executive session. (*See* Pl's proposed Amend. Compl. at ¶ 19). Therefore, on the facts alleged by Plaintiff, a cognizable legal challenge could be brought pursuant to section 713 of the Sunshine Act "within 30 days from the discovery of an action that occurred at a meeting which was not open at which [the Act] was violated." 65 Pa.Cons.Stat.Ann. § 713 (West 1999). Given that Plaintiff learned of his termination on April 17, 1998, the Court treats said date as the first day of the Act's tolling period. Therefore, Plaintiff had 30 days from April 17, 1998, or until May 16, 1998, to commence an action under the Sunshine Act. Plaintiff filed his original Complaint on July 22, 1998, well-after the Act's express filing period had tolled. [FN2] It is well settled that the amendment of a complaint is futile if the amendment will not cure the deficiency in the original complaint. *Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 292 (3d Cir.1988) (citing *Massarky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348 (1983)). Plaintiff's proposed Amendment cannot be timely given that he filed his original Complaint after the Act's statute of limitations tolled. *See, e.g., Thomas v. Township of Cherry, Butler County,* 722 A.2d

1150, 1153 (Pa.Commw.Ct.1999) (action untimely under Sunshine Act); *Bologna v. St. Mary's Area Sch. Bd.,* 699 A.2d 831, 833 (Pa.Commw.Ct.1997) (action untimely under Sunshine Act); *Hain v. Board of Sch. Dir. of Reading Sch. Dist.,* 641 A.2d 661, 662 (Pa.Commw.Ct.1994) (action untimely under Sunshine Act). As Plaintiff's original claim was untimely, his proposed amendment is untimely and, therefore, futile. Accordingly, Plaintiff's Motion for Leave to Amend is denied.

> FN2. The relation back doctrine, if applicable, would allow Plaintiff to relate back his Sunshine Act claim to the date he filed his original Complaint. The relation back doctrine is inapplicable however, for Plaintiff filed his original Complaint after the Act's 30 day filing period tolled.

*4 An appropriate Order follows.

### ORDER
AND NOW, this --- 29th day of November, 1999, upon consideration of Plaintiff's Motion for Leave to File Amended Complaint (Docket No. 10) and Defendants's response thereto, IT IS HEREBY ORDERED that said motion is DENIED.

1999 WL 1081070 (E.D.Pa.), 140 Lab.Cas. P 58,874

**Motions, Pleadings and Filings (Back to top)**

. 2:98CV03885 (Docket)

(Jul. 24, 1998)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT E

Westlaw.

Slip Copy
2004 WL 2677175 (E.D.Pa.)
(Cite as: 2004 WL 2677175 (E.D.Pa.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Michael A. MARRONE
v.
MEECORP CAPITAL MARKETS, LLC
**No. Civ.A.04-3335.**

Nov. 19, 2004.

Jeffrey D. Servin, Servin & Associates, Philadelphia, PA, for Plaintiff.

Robert L. Ritter, Scschiffman, Berger, Abraham, et al., Hackensack, NJ, Wendi S. Meltzer, Hoyle, Fickler, Herschel & Mathes LLP, Philadelphia, PA, for Defendant.

*MEMORANDUM AND ORDER*

KAUFFMAN, J.

**\*1** Plaintiff Michael A. Marrone ("Plaintiff"), brings this diversity action against Defendant Meecorp Capital Markets, LLC ("Defendant"), alleging usury and requesting declaratory judgment. Now before the Court is Defendant's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6), 19(a) and the Federal Abstention Doctrine ("Motion to Dismiss"). For the following reasons, the Court will grant Defendant's Motion and dismiss both for failure to state a claim on which relief can be granted under Fed.R.Civ.P. 12(b)(6) and for failure to join an indispensable party under Fed.R.Civ.P. 19(a).

*I. Background*

According to Plaintiff's Complaint, Defendant and Plaintiff, on behalf of his company Bayfront LLC ("Bayfront"), signed a $2,700,000 financing agreement on March 11, 2003. Complaint at ¶ 4.

On or about July 22, 2003, Defendant and Bayfront, who is not a party to this lawsuit, closed on the loan in the amount of $1,930,000. *Id.* at ¶ 5. Through the loan, Defendant funded Bayfront's real estate investment by contributing a portion of the purchase price. *See* Affidavit of Michael Edrei at ¶ 2 ("Edrei Affidavit"). [FN1] Plaintiff also signed a Guarantee Agreement. Complaint at ¶ 5. The Loan and Security Agreement and the Note were signed by a duly authorized representative of Defendant, and Plaintiff signed for himself and as a duly authorized agent for Bayfront. *Id.* Plaintiff claims the above loan was paid off and satisfied in full on or about December 4, 2003. *Id.* at ¶ 8. [FN2]

> FN1. Michael Edrei is the Managing Director of Meecorp Capital Markets, LLC.
>
> FN2. In the Complaint, Plaintiff wrote December 4, 2004 as the date by which loan payments were completed. As this date has not yet occurred, the Court assumes Plaintiff intended to write December 4, 2003.

Plaintiff contends that as a condition of making this loan, Defendant knowingly demanded a rate of interest exceeding that allowed by both New Jersey and Pennsylvania usury laws, and exceeding the amount permitted to national banking associations under 12 U.S.C. § 85. *Id.* at ¶ 9(a). Plaintiff claims that the combined excess wrongful interest and illegal charges collected by Defendant total $261,000. *Id.* at ¶ 9. [FN3] Plaintiff claims, pursuant to 12 U.S.C. § 86, that he is entitled to $783,000, which is treble the amount of usurious interest knowingly charged by Defendant and paid by Plaintiff. *Id.* at ¶ 10.

> FN3. Plaintiff marks two paragraphs of the Complaint "9". This cite refers to the second paragraph so marked.

Plaintiff, as guarantor for Bayfront, executed an unconditional guaranty of all of Bayfront's obligations. *Id.* at ¶ 5. Defendant contends that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2677175 (E.D.Pa.)
(Cite as: 2004 WL 2677175 (E.D.Pa.))

Page 2

Plaintiff executed an Assignment of Membership Interest and Security Agreement, assigning to Defendant his 100% interest in Bayfront as part of the financing agreement. Edrei Affadavit at ¶ 7. Defendant claims that the assignment of membership interest and the equity and cash flow provisions survived repayment of the loan, and that Bayfront and Plaintiff have ignored their responsibilities to Defendant under these provisions. *See* Motion to Dismiss at p. 3. On February 23, 2004, Defendant filed a Complaint against Plaintiff and Bayfront in the Superior Court of New Jersey, in which Defendant asserts its rights to cash flow and equity participation pursuant to the loan documents. *See id.* On March 9, 2004, Defendant filed a lis pendens against the property owned by Bayfront. *Id.* at ¶ 15.

*2 While Plaintiff concedes that the Loan and Security Agreement provides for an equitable interest in the real estate that is the subject matter of the loan, he claims the entitlement to such equity was predicated upon Plaintiff receiving $2,700,000, less reasonable costs not to exceed $200,000. Complaint at ¶ 11. However, Plaintiff claims that because the loan was only $1,930,000, he was relieved of any equity obligations. *Id.* at ¶¶ 12-14. Plaintiff thus asks for declaratory judgment that Defendant has no equity interest in the real estate which was the subject matter of the loan, that any lis pendens filed by Defendant in this or any other court be dissolved, and any other relief that the Court deems just and proper. *Id.* at ¶ 15. Defendant responds with this Motion to Dismiss, based in part on a forum selection clause included in the loan agreement and its accompanying documents, and in part on Plaintiff's failure to join an indispensable party.

II. *Legal Standard*

When deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *Angelastro v. Prudential-Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir.1985). A Rule 12(b)(6) motion will be granted

only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). Where parties' agreement contains a valid forum selection clause designating a particular forum for settling disputes arising out of their contract, a Fed.R.Civ.P. 12(b)(6) dismissal is the appropriate way to enforce the clause. *See Salovaara v. Jackson Nat'l Life Ins. Co.,* 246 F.3d 289, 298 (3d Cir.2001); *Crescent Int'l v. Avatar Communities, Inc.,* 857 F.2d 943 (3d Cir.1988).

Federal Rule of Civil Procedure 19 determines when joinder of a particular party is compulsory. A court must first determine whether a party should be joined if "feasible" under Rule 19(a). [FN4] If the party should be joined but joinder is not feasible because it would destroy diversity, the court must then determine whether the absent party is "indispensable" under Rule 19(b). [FN5] If the party is indispensable, the action cannot go forward. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 404 (3d Cir.1993).

> FN4. Fed.R.Civ.P. 19(a) characterizes "feasibility" as follows "a person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party." Fed.R.Civ.P. 19(a).

> FN5. If these parties cannot be joined, then under Fed.R.Civ.P. 19(b), "the court shall determine whether in equity and good conscience the action should proceed

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2677175 (E.D.Pa.)
(Cite as: 2004 WL 2677175 (E.D.Pa.))

among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable ..." Fed.R.Civ.P. 19(b).

III. *Analysis*

A. The Forum Selection Clause

Plaintiff is a Pennsylvania citizen and Defendant is a New Jersey corporation. *See* Edrei Affadavit at ¶ 1. However, Bayfront, who has not been joined, is also a New Jersey corporation, and the real estate purchase this loan agreement financed is located in New Jersey. *See id.* at ¶ 2. The loan and security agreement, and the accompanying documents, contain at least four different provisions assigning jurisdiction in case of a dispute in the federal or state courts of New Jersey. *See Id.* at Exhibits A-D. [FN6]

> FN6. The forum selection clause of the Security and Loan Agreement specifically states: "(b) *Jurisdiction:* ... ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BORROWER OR LENDER, ARISING OUT OF OR RELATING TO THIS NOTE OR THE OTHER LOAN DOCUMENTS SHALL BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN NEW JERSEY ... AND BORROWER IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING." Edrei Affadavit, Exhibit A.

*3 Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). A forum selection clause is unreasonable where a defendant can make a strong showing either that the forum selected is "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court" or that the clause was procured through "fraud or overreaching." *Id.* at 15-18; *see also Foster v. Chesapeake Ins. Co., Ltd.,* 933 F.2d 1207 (3d Cir.1991). Where there has been no fraud,

influence, or "overweening bargaining power," the forum selection clause is valid and the plaintiff bears the burden of demonstrating why they should not be bound by their contractual choice of forum. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 880 (3d Cir.1995). Further, "although not dispositive, a forum selection clause is to be given substantial consideration and overcomes a court's usual deference to the plaintiff's choice of forum." *Id.*

Plaintiff cannot legitimately contend that it would be inconvenient to litigate this case in New Jersey. Bayfront is a New Jersey limited liability company which owns property in New Jersey. New Jersey is geographically proximate to the Eastern District of Pennsylvania, the real estate that was purchased with the loaned money involved in this dispute is located in New Jersey, and the borrower and lender are both New Jersey corporations. Further, Plaintiff has made no claim that the forum selection clauses were the product of fraud. As Defendant demonstrates, this contract was the result of extensive negotiations and it seems clear that "the forum clause was a vital part of the agreement, and [that] it would not be unrealistic to think that the parties did not conduct their negotiations, including fixing the monetary terms, with the consequences of forum clause figuring prominently in their calculations." *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 592, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (citing, *Bremen,* 407 U.S. at 14). Moreover, including a reasonable forum selection clause in a contract is beneficial because it limits the fora in which parties could potentially be subject to suit and dispels any confusion over where suits arising from an agreement may be brought, thus sparing litigants the time and expense of pretrial motions to determine the correct forum and "conserving judicial resources that otherwise would be devoted to deciding these motions." *Carnival,* 499 U.S. at 593-94.

Plaintiff cannot "contest the validity of the forum selection clause 'by questioning the enforceability of the entire contract ... but must show that the clause itself was the product of fraud and coercion." ' *Barbuto v. Med. Shoppe Int'l, Inc.,* 166 F.Supp.2d 341, 346 (W.D.Pa.2001) (citing, *Dentsply Int'l, Inc. v. Benton,* 965 F.Supp. 574, 577 (M.D.Pa.1997). To invalidate a forum selection clause on the grounds of fraudulent inducement, the party challenging the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2677175 (E.D.Pa.)
(Cite as: 2004 WL 2677175 (E.D.Pa.))

Page 4

clause must show that the clause itself was procured through fraud, and fraudulent inducement, as to the entire contract will not invalidate an otherwise valid forum selection clause. *Nemo Associates, Inc. v. Homeowners Marketing Services Int'l, Inc.,* 942 F.Supp. 1025, 1028 (E.D.Pa.1996) (noting that under a different rule, a party could defeat a validly negotiated forum selection clause merely by alleging fraudulent inducement and general allegations of fraud without more are insufficient). The record includes no evidence of "fraud, influence, or overweening bargaining power," *Bremen,* 407 U.S. at 12-13, and the forum selection clause is in capitalized letters and not inconspicuous. *See BABN Techs. Corp. v. Bruno,* 25 F.Supp.2d 593, 496 (E.D.Pa.1998). Any potential inconvenience with this forum was foreseeable at the time the agreement was made.

**\*4** Accordingly, the parties' forum selection clause is valid.

B. An Indispensable Party Cannot Be Joined

In any event, Bayfront is an indispensable party under Fed.R.Civ.P. 19, because it is the only real party-plaintiff in interest. *See* Motion to Dismiss at p. 6. Because this court finds that Bayfront is an indispensable party and cannot be joined without destroying diversity, the action must be dismissed. *See* Fed.R.Civ.P. 19. The Rule outlines four factors a court should consider when determining whether or not to dismiss a case: (1) to what extent a judgment rendered in the party's absence might be prejudicial to the party or to those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder. *See* Fed.R.Civ.P. 19.

The loan documents reveal that the borrower was Bayfront. *See* Edrei Affadavit, Exhibits A-D. Defendant invested in Bayfront and not in Plaintiff as an individual; Plaintiff merely guaranteed the obligations of Bayfront. Thus, any claim that the interest rate charged by Defendant to Bayfront was usurious belongs only to Bayfront. Plaintiff has no right to recover directly for alleged damages caused

to Bayfront. *See Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727, 732-733 (3d Cir.1970); *Crawford v. SAP America Inc.,* 2004 WL 764393, at *1 (E.D.Pa. Mar.2, 2004). Defendant is attempting to obtain cash flow participation from Bayfront, not from Plaintiff, and Defendant has filed a lis pendens against property owned by Bayfront, not owned by Plaintiff personally. The claims that Defendant is not entitled to any equity or cash flow participation in Bayfront and that the lis pendens filed by Defendant against Bayfront is wrongful belong to Bayfront and not Plaintiff.

Because Bayfront is an indispensable party under Fed.R.Civ.P. 19 who can not be joined without destroying diversity, the action will be dismissed.

IV. *Conclusion*

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss pursuant to both Fed.R.Civ.P. 12(b)(6) and 19(a). An appropriate Order follows.

*ORDER*

AND NOW, this 19th day of November, 2004, for the reasons stated in the accompanying Memorandum, IT IS ORDERED that Defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 19(a) (docket no. 2) is GRANTED.

2004 WL 2677175 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

. 2:04CV03335 (Docket)

(Jul. 15, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT F

Westlaw.

Not Reported in F.Supp.2d
2002 WL 32107632 (E.D.Pa.)
(Cite as: 2002 WL 32107632 (E.D.Pa.))

Page 1

c

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
DELAGE LANDEN FINANCIAL SERVICES,
INC., Plaintiff
and
TOSHIBA AMERICA MEDICAL SYSTEMS,
INC., Plaintiff/Intervenor
v.
DESOTO DIAGNOSTIC IMAGING, LLC,
Randon J. Carvel, Lynn T. Carvel, Delta
Radiology, P.C. and Zobar Properties, LLC,
Defendants
No. Civ.A. 02-CV-2810.

Filed May 10, 2002.
Dec. 18, 2002.
represented by Peter J. Boyer, Rosetta B. Packer,
McCarter & English, LLP, Philadelphia, PA, Lead
Attorney, for De Lage Landen Financial Services,
Inc., Plaintiff.

represented by John Chesney, Drinker Biddle &
Reath LLP, Philadelphia, PA, Lead Attorney,
Attorney to be Noticed, Julianne Peck, Drinker
Biddle & Reath LLP, Philadelphia, PA, Lead
Attorney, for Toshiba America Medical System,
Inc., Intervenor Plaintiff.

represented by Brian W. Ray, Holly E. Brady, Kyle
P. Tate, Tate Ray & Brady, Hot Springs, AR, Lead
Attorney, Attorney to be Noticed, William Matthews
, Saul Ewing LLP, Philadelphia, PA, Lead Attorney,
Attorney to be Noticed, for Desoto Diagnostic
Imaging, LLC., Defendant.

represented by Brian W. Ray, Holly E. Brady, Kyle
P. Tate, William Matthews, Lead Attorney,
Attorney to be Noticed, for Randon J. Carvel,
Defendant.

represented by Brian W. Ray, Holly E. Brady, Kyle
P. Tate, William Matthews, Lead Attorney,
Attorney to be Noticed, for Lynn T. Carvel,
Defendant.

represented by Brian W. Ray, Holly E. Brady, Kyle
P. Tate, William Matthews, Lead Attorney,
Attorney to be Noticed, for Delta Radiology, P.C.,
Defendant.

represented by Brian W. Ray, Holly E. Brady, Kyle
P. Tate, William Matthews, (See above for
address), Lead Attorney, Attorney to be Noticed,
for Zobar Properties, LLC., Defendant.

*MEMORANDUM*

BUCKWALTER, J.

*1 Presently before the Court are Defendants'
Motion for Change of Venue for Convenience of
Witnesses and in the Interest of Justice, Plaintiff
DeLage Landen Financial Services, Inc.'s Answer in
Opposition to Defendants' Motion and
Plaintiff/Intervenor Toshiba America Medical
Systems, Inc.'s Answer in Opposition to Defendants'
Motion. For the reasons stated below, Defendants'
Motion is DENIED.

I. BACKGROUND

Defendant DeSoto Diagnostic, Inc. ("DDI") is a
Mississippi corporation with a place of business in
Olive Branch, Mississippi. Pl.'s Compl. at ¶ 2. On
June 9, 2000, through its chief manager, Defendant
Lynn T. Carvel ("Lynn Carvel"), DDI signed a
Lease Agreement ("Master Lease") to lease certain
radiological equipment from Toshiba America
Medical Systems ("TAMS" or
"Plaintiff/Intervenor"). Pl.'s Mem. in Opp'n to Defs.'
Mot. Change Venue at 3; Defs.' Countercl. at ¶ 2.
The Master Lease was for a term of 63 months,
during which time DDI was to make 60 monthly
payments to TAMS. Pl.'s Mem. in Opp'n to Defs.'
Mot. Change Venue at 3. The Master Lease, which
had been drafted solely by TAMS, was signed by

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 32107632 (E.D.Pa.)
(Cite as: 2002 WL 32107632 (E.D.Pa.))

Page 2

TAMS on December 29, 2000. Def.'s Countercl. at ¶¶ 2, 4.

On June 9, 2000, the day Lynn Carvel signed the Master Lease, she and Defendant Randon J. Carvel ("Randon Carvel") each executed and delivered Personal Guarantees of DDI's obligations to TAMS under the Master Lease. On that same day, Defendants Delta Radiology, P.C. ("Delta") and Zobar Properties, LLC ("Zobar") each also executed and delivered Guarantees of DDI's obligations to TAMS under the Master Lease. Pl.'s Mem. in Opp'n to Defs.' Mot. Change Venue at 3. Lynn and Randon Carvel are citizens and residents of Mississippi, who also have a place of residence in Memphis, Tennessee. Delta is a Mississippi corporation with a place of business in Memphis, Tennessee, and Zobar is a Mississippi corporation with a place of business in Olive Branch, Mississippi. Defs.' Mot. Change Venue at ¶ 2.

Following the execution of the Master Lease and the Guarantees, TAMS assigned all of its rights, title and interest under the Master Lease and Guarantees to Plaintiff DeLage Landen Financial Services, Inc. ("DeLage" or "Plaintiff"). Pl.'s Mem. in Opp'n to Defs.' Mot. Change Venue at 4. DeLage is a Michigan corporation with a place of business in Wayne, Pennsylvania. Pl.'s Compl. at ¶ 1. Following this assignment to DeLage, TAMS entered into an agreement with DDI to continue to maintain and service the leased equipment. Pl./Intervenor's Mem. in Opp'n to Defs.' Mot. Change Venue at 5.

On February 1, 2002, DDI defaulted upon its obligations to DeLage by failing to make lease payments when due, and also by dismantling and removing the leased equipment prior to the end of the lease term. Pl.'s Mem. in Opp'n to Defs.' Mot. Change Venue at 4. DDI claims that the equipment never functioned properly, and therefore, it was under no obligation to continue making payments. Defs.' Countercl. at ¶¶ 21, 23. DeLage demanded that DDI pay all amounts due and owing under the Master Lease, but DDI refused. As a result, DeLage filed suit against Defendants. Pl.'s Compl. at ¶ 14.

*2 Subsequent to DeLage filing suit, TAMS joined the action as an Intervenor Plaintiff. TAMS joined the action for several reasons. Among these reasons

are that the assignment agreement between TAMS and DeLage provided that, if DDI defaulted, TAMS has recourse obligations to DeLage. In addition, TAMS is pursuing claims against DDI relating to the alleged breach of the terms of the service agreements it entered into with TAMS. Pl./Intervenor's Answer to Defs.' Mot. Change Venue at ¶ 3.

## II. STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. 1404(a). The purpose of this section is to prevent a waste of time, energy and money, and further, to avoid unnecessary expense and inconvenience which litigants, witnesses and the public may otherwise incur. *Saint-Gobain Calmer, Inc. v. Nat'l Prods. Corp.,* No. Civ.A.02-3626, 2002 U.S. Dist. LEXIS 21741, at *8 (E.D.Pa. Nov. 6, 2002), *citing Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964). Section 1404(a) applies to transfer cases where the original venue and the requested venue are both proper fora. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 878 (3d Cir.1995).

"The burden is on the moving party to establish that a balancing of proper interests weigh[s] in favor of the transfer, and 'unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." ' *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970) (citations omitted). A plaintiff's choice of forum is a "paramount consideration" in a determination as to whether to grant a change in venue and it should not be "lightly disturbed." *Id.* It is within the court's discretion whether to grant a transfer request, but requests are not to be granted liberally. *Id.*

## III. DISCUSSION

Pursuant to 28 U.S.C. § 1404(a), DDI has moved to transfer this action from the Eastern District of Pennsylvania to the Northern District of Mississippi, Delta Division. Defendants believe that both DeLage and TAMS could have originally brought this action in the Northern District of Mississippi, and neither DeLage nor TAMS

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 32107632 (E.D.Pa.)
(Cite as: 2002 WL 32107632 (E.D.Pa.))

disputes this fact. Defs.' Mot. Change Venue at ¶ 2; Pl.'s Answer to Defs.' Mot. Change Venue at ¶ 2; Pl./Intervenor's Answer to Defs.' Mot. Change Venue at ¶ 2. However, for the sake of convenience, DeLage and TAMS believe the best forum for this action is in this District, whereas Defendants believe the Northern District of Mississippi would be a much more convenient forum in which to litigate this dispute. Pl.'s Answer to Defs.' Mot. Change Venue at ¶ 26; Pl/Intervenor's Answer to Defs.' Mot. Change Venue at ¶ 26; Defs.' Mot. Change Venue at ¶ 26.

Defendants allege that this transfer is proper because the subject matter of this controversy arises out of and is in connection with transactions that occurred in Olive Branch, Mississippi. Defs.' Mot. Change Venue at ¶ 1. Defendants claim that the central issue in determining the parties' liability in this action concerns the performance of the equipment which was the subject matter of the Master Lease. Since this equipment was, at all times relevant to this action, located at DDI's facility in Mississippi, this action should be transferred to the Northern District of Mississippi, according to Defendants. Defs.' Mot. Change Venue at ¶¶ 5-10.

*3 Defendants contend that another critical issue in this case is the condition of the equipment from the time it arrived at DDI's facility in Mississippi until DDI removed it from this facility. As the witnesses who can testify to the condition of this equipment are located in Mississippi, Defendants believe the Northern District of Mississippi is the proper forum for this action. Defs.' Mot. Change Venue at ¶¶ 12-14. Defendants claim that most, if not all, of the independent witnesses who will testify about critical events in this case are not subject to service of process in the Eastern District of Pennsylvania, but are subject in the Northern District of Mississippi. Defs.' Mot. Change Venue at ¶ 15. According to Defendants, these witnesses are beyond the reach of this Court and there is no lawful means to compel them to attend a trial in this District. Defendants do not believe these witnesses will voluntarily come to this District because it would be extremely expensive and time consuming for them to travel to Pennsylvania from Mississippi or the states near Mississippi where most of these potential witnesses reside. Defs.' Mot. Change Venue at ¶ 22. In addition to the inconvenience and expense

associated with transporting witnesses to the Eastern District of Pennsylvania, Defendants allege that substantially all of the books, records, documents and exhibits necessary for trial are also located in Mississippi. Defendants believe bringing such evidence to this District would be a substantial burden and an inconvenience to them. Defs.' Mot. Change Venue at ¶ 14.

Defendants contend that the controversies in this matter have no relationship with this District other than the fact that the contracts Defendants signed subject them to personal and subject matter jurisdiction in this District. Defs.' Mot. Change Venue at ¶ 25. In fact, Defendants imply that the Master Lease and the Guarantees were adhesion contracts, and therefore, the clauses subjecting them to jurisdiction in the Eastern District are unenforceable. Defendants provide no support for this allegation in their Motion for Change of Venue, but they have previously supported this contention in their counterclaims against DeLage. In these counterclaims, Defendants allege that, when Lynn Carvel received the contracts from TAMS, she had numerous questions she wanted answered. TAMS informed Lynn Carvel that the agreements were non-negotiable and she should not discuss the matter with her attorney, because TAMS would not alter these contracts in any regard. Defs.' Counterclaims at ¶ 15.

Defendants believe they would suffer substantial hardship if they were forced to defend this case in the Eastern District of Pennsylvania. They argue that the proper and most convenient forum for litigating all the claims in this action is in the Northern District of Mississippi, Delta Division.

DeLage and TAMS, on the other hand, believe that mere inconvenience to the Defendants is not a sufficient basis for transferring this action to the Northern District of Mississippi. DeLage and TAMS argue that the inconvenience that Defendants allege they will suffer by having to litigate in this District is the same inconvenience DeLage and TAMS will suffer if they have to litigate in the Northern District of Mississippi. Pl.'s Mem. in Opp'n to Defs .' Mot. Change Venue at 2. DeLage claims that, given that its principal place of business is in Wayne, Pennsylvania, all of the documents it would need to prosecute this case are

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 32107632 (E.D.Pa.)
(Cite as: 2002 WL 32107632 (E.D.Pa.))

Page 4

located here, in the Eastern District, and will have to be transported to Mississippi if this case is transferred. Ten of the eleven witnesses that DeLage expects to testify maintain offices at DeLage's Wayne, Pennsylvania office. Pl.'s Mem. in Opp'n to Defs.' Mot. Change Venue at 13. TAMS believes it would be more convenient for it to litigate this matter in Pennsylvania, because it can transport witnesses and necessary documents to this District with less difficulty than it could transport these witnesses and documents to Mississippi. Pl./Intervenor's Mem. in Opp'n. to Defs.' Mot. Change Venue at 7.

*4 Most critical to DeLage's and TAMS's case is that the Master Lease and each of the four Guarantees signed by Defendants contain forum selection clauses pursuant to which Defendants consented to personal jurisdiction and subject matter jurisdiction in the United States District Court for the Eastern District of Pennsylvania. The Master Lease and the Guarantees also state that they shall be governed by the laws of Pennsylvania. DeLage and TAMS believe the choice of law provisions protect against transferring this action because a federal court in this District is more likely to be familiar with Pennsylvania law than a federal court in Mississippi. DeLage and TAMS believe the forum selection clauses are enforceable against Defendants and that this Court should defer to DeLage's original choice of forum. Pl.'s Mem. in Opp'n to Defs.' Mot. Change Venue at 4-5; Pl./Intervenor's Mem. in Opp'n to Defs.' Mot. Change Venue at 6.

In deciding whether to transfer a case to another venue, courts consider more than just the convenience of the parties and witnesses and the interest of justice. The Third Circuit has set forth several private and public interests for the courts to evaluate in making a transfer of venue determination. *Jumara,* 55 F.3d at 879-80. The private interests which courts should consider include the plaintiff's original choice of forum, the defendant's forum preference, whether the claim arose in another location, convenience of the parties, convenience of potential witnesses, but only if they will be unavailable in one of the fora, and location of the books and records, again only to the extent such documents cannot be produced in an alternate forum. *Id.* at 879. The public interests

include the enforceability of the judgment, the practical considerations that could make trial easy, expeditious or inexpensive, potential administrative difficulties relating to court congestion, the local interest in deciding the particular controversy, the public policies of the fora and the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80.

When considering all of these public and private factors, "a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." *Jumara,* 55 F.3d at 880. Where the clause is found to be valid, the moving party bears the burden of demonstrating why it should not be bound by the contractual choice of forum. *Id.* A forum selection clause is valid where there is no fraud, influence or overweening bargaining power used to induce the inclusion of such a clause. *Id.* A forum selection clause in a contract between parties is "prima facie valid and should be enforced unless enforcement is shown 'by the resisting party to be unreasonable under the circumstances." *Copperweld Steel Co. v. Demag-Mannesmann-Bohler,* 578 F.2d 953, 965 (3d Cir.1978). "[A] forum selection clause is unjust and unreasonable when obtained fraudulently or where enforcement would violate a strong public policy of the forum or effectively deprive the other party of his day in court." *Cedarbrook Assoc. v. Equitec Sav. Bank,* 678 F.Supp. 107, 108 (E.D.Pa.1987).

*5 Defendants allege that the forum selection clauses in the Master Lease and the Guarantees are unenforceable because the clauses were contained within adhesion contracts. Defendants believe the Master Lease and the Guarantees are adhesion contracts because they were standard form agreements provided by DeLage and because DeLage would not negotiate any of the terms in these agreements. Defs.' Countercl. at ¶ 15. However, even if the Master Lease and the Guarantees are adhesion contracts, the enforcement of the forum selection clause within these contracts is not automatically unreasonable. Defendants must provide evidence to support their contention that the forum selection clause was the product of fraud, coercion or unequal bargaining power. "[A] party cannot contest the validity of a forum selection clause by questioning the enforceability of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 32107632 (E.D.Pa.)
(Cite as: 2002 WL 32107632 (E.D.Pa.))

Page 5

entire contract ... [but] must show that the clause itself was the product of fraud or coercion." *Barbuto v. Medicine Shoppe Int'l, Inc.,* 166 F.Supp.2d 341, 346 (W.D.Pa.2001). *See also Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519 n. 14 (1974).

Defendants have not provided evidence that they were coerced into accepting the entire contract, let alone the forum selection clause. Defendants have not alleged that they were unsophisticated lessees or that they were coerced into signing the agreements because they had significantly less bargaining power than did DeLage. In fact, Defendants provided no support in their Motion for Change of Venue to establish that the Master Lease and the Guarantees were unenforceable adhesion contracts. Since Defendants have not met their burden of showing why they should not be bound by their contractual choice of forum, enforcement of these valid forum selection clauses is reasonable.

The consideration of other public and private factors by this Court is altered because the forum selection clauses are valid. More weight should be given to the parties' pre-litigation choice, and less weight afforded to the other factors. *See W.G. Nichols, Inc. v. Kmart Corp.,* No. Civ.A. 01-3295, 2001 U.S. Dist. LEXIS 24131, at *8 (E.D.Pa. Oct. 1, 2001). However, in this instance, all these other factors also tend to weigh against granting Defendants' Motion for Change of Venue.

"The purpose of transfer is not to shift the inconvenience from one party to another." *Frontier Ins. Co. v. Nat'l Signal Corp.,* No. Civ.A. 98-4265, 1998 U.S. Dist. LEXIS 17562, at *14 (E.D.Pa. Nov. 9, 1998). By agreeing to personal jurisdiction and subject matter jurisdiction in the Eastern District of Pennsylvania, Defendants have contracted to bear the risk of any personal inconvenience of litigating this matter in Pennsylvania. *See Sparks Tune-Up Ctrs., Inc. v. Padussis,* No. Civ.A. 88-9525, 1990 U.S. Dist. LEXIS 7721, at *5 (E.D. Pa. June 19, 1990). Defendants claim that it would be inconvenient for them to transport all of the documents and potential witnesses which they would need to establish their case to the Eastern District of Pennsylvania. However, Defendants would not have to require that all their witnesses physically appear for trial in

Pennsylvania. The witnesses' testimony could be admitted through videotaped depositions or through reading the transcripts from their depositions. As for the documents which Defendants claim are all located in Mississippi and would be burdensome to transport to this District, it is illogical to simply place the inconvenience which Defendants are currently alleging that they would suffer onto DeLage and TAMS by transferring venue to the Northern District of Mississippi. DeLage selected this forum and great weight must be afforded DeLage's preference. *Shutte,* 431 F.2d at 25.

*6 Defendants allege that the condition of the equipment which is the subject matter of this case will be a critical factor in this case. This contention is most likely accurate. However, litigating the case in Mississippi will not make it easier to establish the condition of the equipment, because the equipment is no longer located in Mississippi. All of the equipment is located in either Tennessee or California. Pl.'s Mem. in Opp'n to Defs.' Mot. Change Venue at 4. Accordingly, it is only the individuals who have knowledge of the condition of this equipment that will be necessary for litigating this case. The videotaped or transcribed testimony of these individuals can be presented at trial regardless of where this case is litigated.

Defendants have not offered any evidence that it will be more difficult to enforce the judgment of this case in the Eastern District of Pennsylvania than it would be if the case were decided in the Northern District of Mississippi. Further, Defendants have not shown that public policy favors one jurisdiction over another, that court congestion requires this case be transferred to the Northern District of Mississippi, or that the familiarity of judges with applicable law weighs in favor of transfer. *See Pro Spice Inc. v. Omni Trade Group, Inc.,* 173 F.Supp.2d 336, 342 (E.D.Pa. Sept. 20, 2001). In fact, the Master Lease and the Guarantees contain choice of law provisions indicating that Pennsylvania law governs these contracts. Accordingly, courts in this District are more likely to be familiar with applicable law than courts in Mississippi.

IV. CONCLUSION

For the reasons stated above, Defendants' Motion

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 32107632 (E.D.Pa.)
(Cite as: 2002 WL 32107632 (E.D.Pa.))

Page 6

for Change of Venue is denied. An appropriate
Order follows.

### ORDER

AND NOW, this 18th day of December, upon
consideration of Defendants' Motion for Change of
Venue for Convenience of Witnesses and in the
Interest of Justice (Docket No. 13), Plaintiff
DeLage Landen Financial Services, Inc.'s Answer in
Opposition to Defendants' Motion (Docket No. 23)
and Plaintiff/Intervenor Toshiba America Medical
Systems, Inc.'s Answer in Opposition to Defendants'
Motion (Docket No. 24), it is hereby ORDERED
that Defendants DeSoto Diagnostic Imaging, LLC's,
Randon J. Carvel's, Lynn T. Carvel's, Delta
Radiology, P.C.'s and Zobar Properties, LLC's
Motion for Change of Venue is DENIED.

2002 WL 32107632 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

. 2:02CV02810  (Docket)

(May. 10, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT G

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
2001 WL 299272 (E.D.Pa.)
(Cite as: 2001 WL 299272 (E.D.Pa.))

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
DVI FINANCIAL SERVICES, INC., Plaintiff,
v.
Robert L. KAGAN, M.D., Magnetic Imaging
Systems I, Ltd., and MRI Scan Center,
Inc. Defendants.
**No. Civ.A. 00-CV-1666.**

March 23, 2001.

*MEMORANDUM*

KELLY, J.

*1 Presently before this Court is the Motion for
Leave to Amend the Answer to the Complaint filed
by Defendants Robert L. Kagan, M.D. and MRI
Scan Center, Inc. ("Dr. Kagan" and "MRI Scan" or
"Defendants"). [FN1] Plaintiff, DVI Financial
Services, Inc. ("DVI"), filed this action after
Defendants defaulted on loan payments owed to
DVI, for which Dr. Kagan had signed personal
guarantees. Defendants bring this Motion averring
that amendment to their Answer is necessary as one
of the guaranties signed by Mr. Kagan is not
genuine. For the following reasons, the Motion is
DENIED.

> FN1. Default was entered against the third
> Defendant, Imaging Systems I, Ltd. on
> January 8, 2001 for failure to appear, plead
> or otherwise defend (Dkt. No. 5).

I. BACKGROUND

Since 1983 Dr. Kagan has owned and operated
magnetic resonance imaging ("MRI") centers. In
1996, Dr. Kagan sold his MRI business to
Metropolitan Health Networks, Inc.

("Metropolitan"). Up until that time, Dr. Kagan had
been president of Nuclear Magnetic Imaging, Inc.,
which was the general partner of his MRI business,
Magnetic Imaging Systems I, Ltd. ("Magnetic
Imaging"). In 1999, Dr. Kagan re-acquired his MRI
business from Metropolitan, including liability for
equipment lease payments, and conducted business
under the name MRI Scan Center, Inc.

At various times during 1996, DVI, the Plaintiff,
provided financing for various pieces of
Defendants' MRI equipment. The Master
Equipment Lease ("Lease") identified Magnetic
Imaging as the lessee. Pursuant to this Lease, DVI
financed numerous pieces of equipment under five
separate schedules. DVI also made a loan to
Magnetic Imaging evidenced by a Loan and
Security Agreement ("Loan"). The Lease and Loan
were signed by Dr. Kagan. In connection with the
financing, Dr. Kagan also allegedly signed three
personal unconditional continuing guarantees.

The payment obligations under the Lease and Loan
are currently in default. Despite DVI's demands,
Defendants refuse to make payments. Therefore, on
March 30, 2000, DVI filed this suit demanding
judgment against the Defendants for the amount
owed under the Lease and Loan. Defendants
answered the Complaint on August 9, 2000.
Discovery closed on January 8, 2001, and the
dispositive motion deadline was January 29, 2001.
Defendants filed this current Motion to amend their
Answer on February 9, 2001, in order to change
their answers to seven paragraphs of DVI's
Complaint, add eighteen affirmative defenses and
add three counterclaims. Defendants allege that
their Answer must be amended because it has come
to their attention that one of the guarantees signed
by Dr. Kagan is not genuine.

II. STANDARD

Under Fed. R. Civ. P. 15(a), a party may amend the
answer to their complaint within twenty days after it
is served. Fed. R. Civ . P. 15(a). After that time,
amendment may be made only by leave of court or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 299272 (E.D.Pa.)
(Cite as: 2001 WL 299272 (E.D.Pa.))

Page 2

by written consent of the adverse party. *Id.* In *Foman v. Davis,* 371 U.S. 178 (1962), the court stated that:

> [i]n the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.'

*2 *Foman,* 371 U.S. at 182. The Third Circuit "has interpreted these factors to emphasize that 'prejudice to the non-moving party is the touchstone for the denial of the amendment" '. *Bechtel v. Robinson,* 886 F.2d 644, 652 (3rd Cir.1989) (citations omitted); *see also, Lorenz v. CSX Corp.,* 1 F.3d 1406, 1414 (3rd Cir.1993).

III. DISCUSSION

A. Undue Delay

In their Answer, Defendants admit that Dr. Kagan signed the personal guarantees. Defendants now claim that they have new information showing that one of the guarantees, signed on October 10, 1996, is not genuine. The reason provided by the Defendants for their delay in requesting leave to amend their Answer is that the parties were engaged in settlement negotiations, which ultimately proved unfruitful, and had limited their litigation preparations in order to focus on the negotiations. Defendants assert many reasons for their belief that the October 10, 1996 guarantee is not genuine, including that "Dr. Kagan has learned as a result of litigation with Metropolitan that Metropolitan has a history of submitting forgeries of his signature to DVI for financial transactions." (Def .'s Mot. to Amend, ¶ 28). [FN2]

> FN2. Defendants do not state when this litigation with Metropolitan took place or when they discovered this information.

However, DVI notes that many of the reasons Defendants assert in their Motion were known by them since the inception of this lawsuit, including that Dr. Kagan allegedly had no involvement with Magnetic Imaging after September 1996, a month before the October 10, 1996 guarantee was signed.

DVI further notes that neither fraud nor forgery, nor any other affirmative defenses, were raised in Defendants' Answer nor were they raised at Dr. Kagan's deposition. DVI claims that Defendants have unduly delayed by waiting one month after discovery has closed and six months after filing their Answer to propose this substantial amendment to their Answer.

This Court agrees with DVI that, based on the facts asserted in Defendant's Motion to Amend, sufficient information existed for Defendants to have formed a defense based upon fraud or forgery at a time prior to the close of discovery. Furthermore, this Court is not convinced that Defendants' stated reason for their delay, engagement in settlement negotiations, should have blinded them to the evidence of fraud or forgery listed in their present Motion. Defendants have unduly delayed in raising defenses which could have been raised many months ago. While the passage of time alone will not support denial of leave to amend, undue delay by a movant in seeking leave to amend may support such a denial. *Tarkett Inc. v. Congoleum Corp.,* 144 F.R.D. 289, 291 (E.D.Pa.1992) (citing *Foman,* 371 U.S. at 182).

B. Undue Prejudice

DVI also alleges that it would be severely prejudiced if this Court allows Defendants to alter the theory of their case after the close of discovery and after the dispositive motion deadline. "Prejudice in the context of Fed. R. Civ. P. 15(a) 'means undue difficulty in prosecuting [or defending] a lawsuit as a result of a change in tactics or theories on the part of the other party." ' *Tarkett,* 144 F.R.D. at 291 (quoting *Deakyne v. Comm'rs of Lewes,* 416 F.2d 290, 300 (3d Cir.1969) ). Furthermore,

> *3 A party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time. In most cases, delay alone is not a sufficient reason for denying leave. However, an amendment clearly will not be allowed when the moving party has been guilty of delay in requesting leave to amend and, as a result of the delay, the proposed amendment, if permitted, would have the effect of prejudicing another party to the action.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 299272 (E.D.Pa.)
**(Cite as: 2001 WL 299272 (E.D.Pa.))**

*Furman Lumber, Inc. v. Mountbatten Sur. Co., Inc.,* No. 96-7906, No. 96- 8168, No. 96-8352, 1997 WL 397496, at *4 (E.D.Pa. July 9, 1997).

Defendants, after the close of discovery and after the dispositive motion deadline, wish to change their answers to seven paragraphs of DVI's Complaint and add eighteen affirmative defenses and three counter claims to their Answer. DVI argues that if Defendants are permitted to assert these new defenses and counterclaims at this late state of the case, it would alter DVI's legal tactics and strategies and force it to defend claims of which it has only recently become aware. DVI further argues that allowing Defendants to amend at this time would require it to engage in significant new trial preparation including factual investigation of new and broader claims. In *Furman Lumber,* the court stated that "if the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial." *Furman Lumber,* 1997 WL 397496, at *2 (citations omitted).

This Court agrees that allowing Defendants to amend their Answer at this time would greatly prejudice DVI. The addition of eighteen affirmative defenses and three counter claims, where originally there were none, at this late stage in the proceedings would alter DVI's legal tactics and strategies and would result in the need for significant new trial preparation. *See Elf Atochem N. Am., Inc. v. United States,* 161 F.R.D. 300, 302 (E.D.Pa.1995) (denying leave to add an affirmative defense where discovery was "virtually complete" and where the additional defense was "materially different from the other defenses in place"); *See also Berger v. Edgewater Steel Co.,* 911 F.2d 911, 924 (3rd. Cir.1990), *cert. denied,* 499 U.S. 920 (1991) (upholding the denial of a motion to amend filed after the close of discovery and four and one-half months after the information on which it was based became available, because the amendment would have injected new issues and would have required additional discovery); *Averbach v. Rival Mfg. Co.,* 879 F.2d 1196, 1203 (3rd Cir.Pa.1989), *cert. denied,* 493 U.S. 1023 (1990) (upholding the denial of a motion to amend filed four days before the close of discovery and barely one month before the

trial date because the amendment would have asserted a new cause of action on the eve of trial).

IV. CONCLUSION

*4 Defendants have unduly delayed in filing their Motion for leave to amend their Answer and allowing them to amend at this stage of the action would result in undue prejudice to DVI. Therefore, Defendants' Motion to amend their Answer is denied.

An Appropriate Order follows.

*ORDER*
AND NOW, this 23 nd day of March, 2001, upon consideration of the Motion for Leave to Amend the Answer to the Complaint (Dkt. No. 14), filed by Defendants, Robert L. Kagan, M.D. and MRI Scan Center, Inc. and any Responses and Replies thereto, it is hereby ORDERED that the Motion is DENIED.

2001 WL 299272 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

. 2:00CV01666 (Docket)

(Mar. 30, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.