**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Stephen M. Friedberg, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | No. 02-CV-3193 |
| v. | : | (Judge Yohn) |
| | : | |
| Mutual Holdings Ltd., *et al.* | : | |
| | : | |
| Defendants. | : | |

**MUTUAL DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION**
**TO COMPEL PRODUCTION OF DOCUMENTS**

## I. INTRODUCTION

Plaintiff Stephen Friedberg ("Friedberg") attempts to deprive Defendants Mutual Holdings Ltd., n/k/a IPC Mutual Holdings Ltd., Mutual Holdings (Bermuda) Ltd., Mutual Indemnity Ltd., and Mutual Indemnity (Bermuda) Ltd. (collectively, the "Mutual companies") of fundamental evidence by refusing to produce documents he knows will be fatal to his case.

The issue the Court will deal with at a hearing on September 12 is whether there is a dispute under shareholder agreements that contain forum selection clauses requiring litigation of disputes in Bermuda. Friedberg claims the millions of dollars in certain accounts in the name of and owned by the Mutual companies are in fact his because they constitute dividends that were declared and paid under the shareholders agreements. He admits that under his theory he received income by way of dividends several years ago and that the income has been his and subject to his control in the accounts since then. The Mutual companies claim those monies are not Friedberg's because dividends have not yet been declared under the agreements and the issue of whether dividends were or should be declared are themselves disputes that must be decided in Bermuda.

What is perhaps the most relevant evidence on the issue of whether this money was dividended income to Friedberg? His tax returns and related work papers. If this were dividend income, he would have been required to declare it as such on his state and federal returns. The Mutual companies have requested these documents, but Friedberg refuses to provide them.

Under oath, Friedberg testified that he could not remember whether he declared these millions of dollars of "income" on his returns. The Mutual companies are entitled to establish that he did not declare this income in arguing that no dividends were declared. This Court should order Friedberg to produce his tax returns and the other information described below.

## II. ARGUMENT

### A. Friedberg's Federal and State Tax Returns Must Be Produced Because They Are Relevant To The Claims At Issue And The Information They Contain Cannot Be Obtained From Any Other Source.

On July 20, 2005, the Mutual companies served their Document Requests directed to Friedberg. A true and correct copy of the Mutual companies' Document Requests is attached hereto as Exhibit "A." On August 19, 2005, Friedberg served his Responses and Objections to the Mutual companies' Document Requests. A true and correct copy of Friedberg's Responses is attached hereto as Exhibit "B." Friedberg objects to the Mutual companies' requests for the following documents:

> 3. All financial statements and your federal and state tax returns for the years 1991 through 2004, and all work papers that refer or relate to the computation of your income for those years, as reflected in the tax returns or financial statements.

Specifically, Friedberg claims that the requested tax returns and work papers (a) constitute confidential communications between Friedberg and the United States government, (b) fall

outside the scope of the Court's June 8 Order and (c) qualify as the "work product of a third party witness."

As a preliminary matter, courts in this jurisdiction routinely grant motions to compel production of tax returns where (1) a party's tax returns are relevant to the matter; and (2) the information sought from the tax returns cannot be obtained from other sources. Carnegie Hill Financial, Inc. v. Krieger, et al., Nos. 99-2592 and 99-5511, 2001 WL 869594, at * 2 (E.D. Pa. July 30, 2001); Fort Washington Resources, Inc. v. Tannen, 153 F.R.D. 78, 80 (E.D. Pa. 1994); First Fidelity Bank, N.A. v. Nissenbaum, No. 89-2248, 1991 WL 46456, at *2 (E.D. Pa. March 28, 1991); Amer. Health Systems, Inc. v. Liberty Health System, No. 90-3112, 1991 U.S. Dist. LEXIS 14400, at * 12-17 (E.D. Pa. July 22, 1991); Kravitz v. Jewelry Basics, Inc., No. 89-2657, 1990 WL 44899, at *2-3 (E.D. Pa. April 20, 1990).

Discovery requests are relevant if "there is any possibility that the information may be relevant to the general subject matter of the action." Amer. Health Systems, 1991 U.S. Dist. LEXIS 14400, at *14; see also Emtec, Inc. v. Condor Technology Solutions, Inc., No. 97-6652, 1998 U.S. Dist. LEXIS 6775, at *5 (E.D. Pa. May 14, 1998) ("[M]aterial is relevant if it bears on, or reasonably could bear on, any issue that is or may be involved in the litigation."). In particular, requests for tax returns are relevant where a party has placed into question whether or not he was paid amounts due under a contract. Fort Washington, 153 F.R.D. at 80.

There is no question that the Mutual companies' request for Friedberg's tax returns for the years 1991 to 2004 and related work papers is relevant to this matter and falls under the scope of discovery as it is currently defined by this Court. In its June 8 Order, this Court set the current parameters of discovery as follows: "All discovery on the claim by plaintiff

of an oral agreement with reference to the funds held in the Morgan Stanley account and the claim by defendants that there never was a dividend declared or paid to plaintiff." (emphasis added).

Friedberg claims that the money contained in certain Morgan Stanley accounts belong to him because they were dividended to him under shareholder agreements. See Transcript of July 19, 2005 Deposition of Stephen Friedberg ("Friedberg Tr."), relevant excerpts of which are attached hereto as Exhibit "C," at 66:8 - 68:1. Friedberg acknowledges that if the money contained in the Morgan Stanley accounts were income, he had an obligation to declare it as income on his tax returns. Friedberg Tr. at 323:11-16. Friedberg, however, does not recall whether he declared as income on any state or federal tax return any of the alleged dividends contained in the Morgan Stanley accounts. Friedberg Tr., at 89:4-10, 95:24-96:24. Nor does Friedberg recall whether he declared as income on any tax return any dividends declared in connection with any of the shareholder agreements at issue in this lawsuit, including those paid to Friedberg in November 1997, May 2000 and November 2000. Friedberg Tr., at 91:18-23, 129:14-17.

Friedberg's tax returns for the years 1991 through 2004 reflect Friedberg's assets and/or income for those years. Therefore, if, as Friedberg alleges, the money contained in the Morgan Stanley accounts actually had been declared a dividend to Friedberg, that amount would have been listed as income on Friedberg's tax returns. Furthermore, Friedberg's tax treatment of several dividends declared and paid to Friedberg in November 1997, May 2000 and November 2000 certainly is relevant to an evaluation of whether Friedberg classified the money contained in the Morgan Stanley accounts similarly on his tax returns.

Moreover, the information sought by the Mutual companies - whether or not Friedberg considered the money at issue to be income to him - cannot be obtained from any other source, including Friedberg's own testimony. Under oath, Friedberg acknowledged that if the money allegedly dividended were income, he would have an obligation to declare such dividends on his tax returns. However, Friedberg does not remember whether he declared any money contained in the Morgan Stanley accounts as income on his tax returns, nor does Friedberg remember whether he declared certain dividends that were paid to Friedberg in November 1997, May 2000 and November 2000 as income on his returns. Friedberg does not recall whether he had any conversations with his tax accountants regarding whether he needed to declare as income the alleged dividends contained in the Morgan Stanley accounts, Friedberg Tr., at 92:6-13, and although Friedberg has prepared personal financial statements for the purpose of "do[ing] tax returns," he does not remember whether any of the personal financial statements addressed dividends relating to the shareholder agreements. Friedberg Tr., at 212:14-214:2.

Accordingly, the Mutual companies were unable to ascertain by way of Friedberg's own deposition testimony whether Friedberg declared as income the money Friedberg claims was dividended to him under the shareholder agreements. Friedberg must be directed to produce his tax returns for the years 1991 through 2004 (as well as related work papers) because they are relevant and because the information they contain cannot be obtained elsewhere. [1]

[1] Curiously, Friedberg objects to the Mutual companies' request for tax returns on grounds that such documents are the "work product of third party witness." The work product doctrine, however, only covers documents "prepared in anticipation of litigation." See Fed. R. Civ. P. 26(b)(3). It cannot be said that Friedberg's annual federal and state tax returns and related work papers were prepared in anticipation of any litigation. Therefore, the work product doctrine simply does not apply.

**B. All Communications Between Friedberg And His Accountants Regarding the "Dividended" Monies Must Be Produced Because Friedberg Has Waived Any Accountant-Client Privilege That Might Have Applied To These Documents.**

The Mutual companies also have requested the following documents:

> 14. All documents constituting, memorializing, or accompanying your or your representatives' communications with Messrs. Phil Miller and/or Alan Bates regarding the monies you contend were dividended to you by any defendant at any time, including but not limited to the dividends you refer to in your complaint.

Mr. Miller was Friedberg's tax accountant and attorney from 1991 through about 2003. Friedberg Tr., at 22:11-23:2. Mr. Bates is Friedberg's current accountant. Friedberg Tr., at 23:3-4. Friedberg has stated that he "entrusted" Mr. Miller and Mr. Bates to oversee his finances, including whether the money contained in the Morgan Stanley accounts would be declared as income. See Friedberg Tr. at 97:3-8. Friedberg, however, has reasserted the objections raised in response to the Mutual companies' request for tax returns, as well as objected to this request for communications between Friedberg and his accountants based on the accountant-client privilege.

The Mutual companies, however, are entitled to documents relating to Friedberg's communications with his accountants because Friedberg has waived any accountant-client privilege by bringing a lawsuit with respect to which his accountants possess material information. See Sansom Refining Co. v. Bache Halsey Stuart Shields, Inc., 92 F.R.D. 440, 441 (E.D. Pa. 1981) (finding plaintiff to have waived accountant-client privilege where accountants supervised subject accounts and were in best position to evaluate injuries suffered by plaintiff as a result of alleged unauthorized trading). Moreover, Friedberg has waived the accountant-client privilege, regardless of whether the information possessed by Mr. Miller and Mr. Bates pertains to Friedberg's own claims or the Mutual companies' defenses. Emtec, 1998 U.S. Dist. LEXIS

6775, at *8 (granting defendant's motion to compel accounting firm's compliance with subpoena seeking plaintiff's audited financial statements where affirmative defense relied on allegation of plaintiff's poor financial condition). For this reason, and for the reasons articulated above, Friedberg's objections are unwarranted, and Friedberg must be directed to produce all documents responsive to the Mutual companies' Request No. 14.

### C. Friedberg Must Produce All Communications From Andy Lewis, A Third Party Witness, Because Such Documents Are NOT Protected By The Work Product Doctrine.

Friedberg objects to the following request for production based on the work product doctrine:

> 15. All documents constituting, memorializing, or accompanying your or your representatives' communications with Andy Lewis regarding this lawsuit and/or the monies in the accounts at issue.

Andy Lewis was an employee of Commonwealth Risk Services, Inc. who Friedberg claims promoted and sold rent-a-captive programs to him and/or his predecessors. Friedberg has submitted several revised privilege logs throughout this discovery period.[2] Friedberg's most recent log is attached hereto as Exhibit "D."

Friedberg's privilege log includes two entries listing emails <u>from</u> Andy Lewis <u>to</u> Friedberg. <u>See</u> Ex. D, at p. 1, entry no. 5 and p.2, entry no. 5. Friedberg's privilege log also

[2] Friedberg's privilege log most recently was revised upon undersigned counsel's request for an entry listing a November 15, 2001 fax from Friedberg's counsel Patrick Rega to Gary G. Gentile, Esq., Mr. Rega's opposing counsel in another lawsuit. Astonishingly, Friedberg identified this communication between opposing counsel as protected by the attorney/client privilege and work product doctrine. As a result of undersigned counsel's inquiry, Friedberg has since produced the November 15 fax, as well as one other piece of correspondence between Mr. Rega and Mr. Gentile.

includes six entries listing emails from Andy Lewis to Patrick Rega, Wendy Smith, and/or Han Nguyen (three of Friedberg's attorneys in this matter). See Ex. D, at p. 2, entry nos. 1, 10-14.

Rule 26(b)(3) identifies work product as "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for [a] party or by or for that party's representative (including the . . . party's attorney, consultant, surety, indemnitor, insurer or agent) . . .". Fed. R. Civ. P. 26(b)(3). Andy Lewis is not a party to this action. Andy Lewis is not Friedberg's "representative." In fact, Friedberg himself has contended - albeit incorrectly - that Andy Lewis is an agent of the Mutual companies. See Memorandum of Law in Support of Plaintiff's Motion For Leave To File Amended Complaint. Accordingly, no communications initiated by Andy Lewis (who is neither a party nor a party's representative) can possibly be classified as protected work product.

### D. Friedberg Must Produce The Affidavit Signed By Andy Lewis, As Well As All Drafts Of Such Affidavit and Correspondence Relating to Such Affidavit.

Friedberg's privilege log includes an entry for a "Witness Statement/Affidavit of Andrew A. Lewis (and drafts)" See Ex. D, at p. 3, entry no. 9. Friedberg objects to production of this Affidavit based on the "Work Product Privilege."[3] Mr. Lewis states that he signed and

[3] Friedberg's counsel also have informally objected to the production of Andy Lewis's affidavit in connection with a subpoena duces tecum served by the Mutual companies upon Mr. Lewis. Although Friedberg's counsel failed to file a timely objection to the Mutual companies' subpoena to the extent that it sought production of the affidavit, undersigned counsel honored Friedberg's counsel's verbal request that Mr. Lewis be instructed not to produce this single document, given that a dispute between the parties' existed as to whether it was protected from production. The Mutual companies recently learned from Mr. Lewis's deposition testimony that prior to undersigned counsel's communicating this instruction to Mr. Lewis (and thus, prior to undersigned counsel's receipt of Mr. Lewis's documents), Friedberg's counsel already had visited Mr. Lewis's office, reviewed the documents and directed Mr. Lewis not to produce certain items. See Draft Transcript of August 24, 2005 Deposition of Andrew A. Lewis ("Draft Lewis Tr.), excerpts of which are attached hereto as Exhibit "E," at 18:18 - 20:2, 35:18-40:11.

notarized his affidavit and gave a copy to Friedberg's counsel. Draft Lewis Tr. at 113:17-24, 114:1-12. Mr. Lewis has not objected to the affidavit's production. Id. at 153:24, 154:1-3. Friedberg also has withheld, in addition to the various correspondence from Andy Lewis to counsel for Friedberg, emails from Mr. Rega or Ms. Smith to Andy Lewis, see Ex. D, at p. 1, entry no. 10 and p. 2, entry no. 9, which concern Mr. Lewis's affidavit.

**1. Neither The Affidavit Signed By Andy Lewis Nor Its Drafts Nor Correspondence Between Lewis and Friedberg's Counsel Relating To The Affidavit Are Protected By The Work Product Doctrine.**

The affidavit and drafts referenced in Friedberg's privilege log are not protected by the work product doctrine because they contain the observations of Mr. Lewis himself and not those of Friedberg's counsel. See Dobbs v. Lamonts Apparel, Inc., 155 F.R.D. 650, 652 (D. Alaska 1994). Moreover, questions emailed from Mr. Rega or Ms. Smith to Mr. Lewis (and Mr. Lewis's responses to those questions) concerning facts to be addressed in Mr. Lewis's affidavit are not protected by the work product rule. See i.d. at 654 (finding that the work product rule does not reach a witness's answers to counsel's questionnaires). Indeed, emails exchanged between Mr. Lewis and Mr. Rega or Ms. Smith concerning the factual content of the affidavit simply do not contain the mental impressions that the work product doctrine seeks to protect. Accordingly production of Mr. Lewis's affidavit, all drafts thereto, and all related correspondence between Mr. Lewis and Friedberg's counsel should be compelled.

**2. Even If The Work Product Doctrine Did Apply To The Affidavits And/Or Its Drafts - Which It DOES NOT - The Mutual Companies Are Entitled to Obtain These Documents Due To Substantial Need.**

Rule 26(b)(3) provides for discovery of items classified as protected work product "upon a showing that the party seeking discovery has substantial need of the materials in preparation of the party's case and that the party is unable without due hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). At Mr.

Lewis's deposition, the Mutual companies sought information from Mr. Lewis concerning the information contained in his affidavit. Mr. Lewis generally stated that the affidavit included statements concerning his employment history, Draft Lewis Tr. at 123:5-11, the operation of the E11, E14 and U21 programs, id. at 123:20-23, the procedure by which "excess funds" were to be released under the programs, id. at 126:5-15, 149:19-24, the concept of "dividends on demand," Id. at 150:1-21, and tax considerations related to the subject accounts. Id. at 152:8-21. It is indisputable that all of these issues are relevant to the current scope of discovery as to whether a dividend was declared by Friedberg pursuant to the terms of the E11, E14 and U21 programs. Mr. Lewis spent several months preparing an affidavit relating to these issues; however, Mr. Lewis cannot remember the details of the facts to which he attested. See, e.g., i.d. at 123:12-24, 124:1. Where draft affidavits appear to be factual in nature and content, and the affiant demonstrates a failure of memory as to the contents of such drafts, production of such draft affidavits is warranted. Milwaukee Concrete Studios, Ltd. v. Greeley Ornamental Concrete Prod., Inc., 140 F.R.D. 373 (E.D. Wis. 1991).

Moreover, in light of the recent discovery of a letter (see discussion below) which suggests that Mr. Lewis has a $1 million plus interest in the U21 program (one of the captive insurance arrangements addressed by the shareholder agreements at issue) and, therefore, that he has a personal interest in the outcome of this suit, the Mutual companies should be given the opportunity to read Mr. Lewis' written statement under oath, as well as view all changes Mr. Lewis recommended be made to such affidavit. Mr. Lewis' affidavit and its drafts address the very issues that are to be resolved in the current phase of this litigation, and their production should be mandated.

### E. Friedberg Must Produce All Documents Referenced In Correspondence Dated March 23, 2001 From Gary Gentile, Esq. to Patrick Rega, Esq.

In response to undersigned counsel's inquiries as to the privilege log entry listing a fax communication from Gary G. Gentile to Patrick J. Rega who were opposing counsel in a divorce proceeding between Mark E. Ouimette (an original signatory to the Shareholder Agreements) and his wife, Friedberg has produced certain correspondence between Mr. Gentile and Mr. Rega. In particular, document bates-labeled "Friedberg 1169," attached hereto as Exhibit "F," is a letter dated March 23, 2001 from Mr. Gentile to Mr. Rega (the "March 23 Letter") referencing "Mr. Lewis's alleged $1,000,000+ interest (See U21)" in which Mr. Gentile recommends "segrega[ting] portions of Mr. Lewis's 'interest' in a separate account and release[ing] his share once all funds were repatriated." The March 23 Letter states that certain "forms," "balance sheet" and "account statements" reflect Mr. Lewis's alleged interest in U21. The Mutual companies have requested copies of these documents, but Friedberg has refused to produce them.

If, as the March 23 Letter suggests, Mr. Lewis had any interest or potential interest in the proceeds of the U21 shareholder agreement, Mr. Lewis's credibility as a witness at the September 12 hearing certainly would need to be questioned. The Mutual companies therefore are entitled to copies of the "forms," "balance sheet" and "account statements" referenced in the March 23 Letter that are described as reflecting Mr. Lewis's interest in U21. Friedberg should be directed to produce these documents in advance of the September 12 hearing.

## III. CONCLUSION

For the foregoing reasons, Defendants the Mutual companies respectfully request that the Court enter an Order directing Plaintiff Stephen Friedberg to produce on or before September 8, 2005 (A) all documents responsive to Request Nos. 3, 14, and 15 of the Mutual companies' Document Requests, (B) the documents corresponding to the following entries on Friedberg's privilege log: Page 1 Entry Nos. 5 and 10, Page 2 Entry Nos. 1, 5, and 9-14, and Page 3 Entry No. 9 and (C) all documents referenced in the letter dated March 23, 2001 from Gary Gentile to Patrick Rega, which is bates-labeled "Friedberg 1169."

DATED: August 30, 2005

Respectfully submitted,

s/Brooke J. Hertzer
Douglas Y. Christian (ID No. 41934)
Joshua A. Mooney (ID No. 85945)
Brooke J. Hertzer (ID No. 91999)
BALLARD SPAHR ANDREWS
& INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

Attorneys for Defendants