**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Stephen M. Friedberg

Plaintiff,

v.

Mutual Holdings Ltd., et al.,

Defendants.

Civil Action
Case No. 02-CV-3193
(Judge Yohn)

## DOCUMENT REQUESTS OF DEFENDANTS
## TO PLAINTIFF, STEPHEN M. FRIEDBERG

Defendants, Mutual Holdings Ltd., IPC Mutual Holdings Ltd., Mutual Holdings (Bermuda) Ltd., Mutual Indemnity Ltd., and Mutual Indemnity (Bermuda) Ltd, pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby request that plaintiff, Stephen M. Friedberg, produce the following documents and things for inspection and copying within thirty (30) days of the date hereof, at the offices of Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, 51st Floor, Pennsylvania, 19103.

1. All documents constituting, memorializing or accompanying your or your representatives' communications with Mr. Gitter and/or any firm with which he has been affiliated (including but not limited to Prudential, Dean Witter, and Morgan Stanley) regarding any accounts, including but not limited to the accounts that you contend contained any moneys dividended by any defendant, and/or each alleged dividend and/or oral agreement.

2. All documents referring or relating to your contention that the monies in the accounts at issue or any predecessor accounts were dividended to you.

3.     All financial statements and your federal and state tax returns for the years 1991 through 2004, and all work papers that refer or relate to the computation of your income for those years, as reflected in the tax returns or financial statements.

4.     All documents that state, suggest, and/or support your contention that monies were dividended to you by any defendant at any time, including but not limited to the dividends you refer to in your complaint.

5.     All documents that state, suggest, and/or support your contention that an oral agreement or agreements existed between you and any defendant.

6.     All documents constituting, memorializing or accompanying your or your representatives' communications with any defendant and/or any of its representatives.

7.     All documents that you contend provide you with any rights to direct investments in the Prudential, Dean Witter and Morgan Stanley accounts at issue.

8.     All documents that state, suggest, and/or support your contention that you actually directed and/or had the right to direct the investments in the accounts at issue.

9.     All documents constituting, memorializing or accompanying your or your representatives' communications with any of Messrs. Ouimette, Dallas Krapf, Dale Krapf and/or anyone else regarding any facts you claim support your contention that a dividend was declared or any alleged oral agreement was entered into between or among you and/or any defendant.

10.     All files relating to the litigation you commenced in Bermuda relating to any of the defendants in this case.

2

11.    All documents that state, suggest, and/or support your contention that:

(a)    you elected not to redeem your dividends, as stated in paragraph 15 of the complaint; and

(b)    you are the owner of the money at issue in the complaint.

12.    All documents referring or relating to accounts you or any company with which you have been affiliated have held with Mr. Gitter and/or any company with which he has been affiliated.

13.    All documents, including but not limited to handwritten notes and emails, evidencing your or your representatives' efforts to calculate the amount of dividends you contend were declared.

14.    All documents constituting, memorializing, or accompanying your or your representatives' communications with Messrs. Phil Miller and/or Alan Bates regarding the monies you contend were dividended to you by any defendant at any time, including but not limited to the dividends you refer to in your complaint.

15.    All documents constituting, memorializing, or accompanying your or your representatives' communications with Andy Lewis regarding this lawsuit and/or the monies in the accounts at issue.

16.    All documents that state, suggest, and/or support your contention that you are the successor to and sole remaining shareholder under each of the Shareholder Agreements attached to your complaint.

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of July 2005, a true and correct copy of the foregoing Document Requests of Defendants to Plaintiff, Stephen M. Friedberg was served by hand delivery, on the following:

> Han Nguyen, Esquire
> SCHNADER HARRISON SEGAL
> & LEWIS LLP
> Suite 3600, 1600 Market Street
> Philadelphia, PA 19103
>
> Attorneys for Plaintiff Stephen Friedberg

Brooke J. Hertzer

**EXHIBIT B**

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHEN M. FRIEDBERG,   :
           :
   Plaintiff,     :
           :  CIVIL ACTION
   v.       :
           :  No. 02-CV-3193
MUTUAL HOLDINGS LTD, et al., :  (Judge Yohn)
           :
   Defendants.    :
           :

### PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff Stephen M. Friedberg hereby responds and objects to defendants Mutual Holdings Ltd., IPC Mutual Holdings Ltd., Mutual Holdings (Bermuda) Ltd., Mutual Indemnity Ltd., and Mutual Indemnity (Bermuda) Ltd., ("Mutual")'s request for production of documents.

### GENERAL OBJECTIONS

The following general objections are set forth in order to avoid restating them in their entirety in response to each request. These general objections apply to, and are incorporated in, each response to each individual category and any subparts. Each response is made subject to these objections and without waiving any other objection.

1.    Plaintiff objects to all definitions and document requests to the extent that they call for plaintiff to do more than is required under the Federal Rules of Civil Procedure and the Local Rules or other applicable law.

2.    Plaintiff objects to each document request to the extent it purports to require plaintiff to seek documents in the possession of other persons or entities or to create documents not presently in their possession, custody or control.

3.    Plaintiff objects to each document request to the extent it seeks documents not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence.

4.    Plaintiff objects to each document request to the extent it seeks documents beyond the scope of discovery as limited by the Court.

5.    Plaintiff objects to each document request to the extent that it is unreasonably cumulative or duplicative.

6.    Plaintiff objects to each document request to the extent it requests documents that have been produced thus far in discovery, presented at depositions as exhibits, and/or attached to pleadings, motions and submissions to the Court.

7.    Plaintiff objects to each document request to the extent it seeks information covered by the attorney-client privilege, the work product doctrine or any other privilege or immunity from production.  Documents covered by one or more privilege or immunity will not be produced.

PHDATA 1302425_1

8.    Plaintiff reserves all objections, which may be available to them at any hearing or trial or on any motion to the use or admissibility of any material, produced.  The production of any material does not constitute an admission by plaintiff that such material or the information contained therein is relevant to this action or admissible in evidence.

9.    Inadvertent production of any material subject to the attorney-client privilege, the work product doctrine, prepared in anticipation of litigation or for trial, or otherwise protected or immune from discovery shall not constitute a waiver of any privilege or of any other ground for objecting to discovery of such materials, its subject matter or information contained therein or of plaintiff's right to object to the use of such material during any later proceeding or otherwise seek return of the material.

10.    The failure of plaintiff to make a specific objection to a particular, individual document request is not, and shall not be construed as, an admission that responsive document exists.  Likewise, any statement herein that plaintiff will produce any documents in response to an individual document request does not mean that he in fact have any such documents, or that any such document exists, or that he will search all files maintained by any person, but instead reflects the intention of plaintiff, subject to its objections, to conduct a reasonable search for responsive documents in files maintained by or on behalf of those persons who are believed to have had significant involvement in the transactions at issue.

**RESPONSES AND OBJECTIONS**

3

1.    All documents constituting, memorializing or accompanying you or your representatives' communications with Mr. Gitter and/or any firm with which he has been affiliated (including but not limited to Prudential, Dean Witter, and Morgan Stanly) regarding any accounts, including but not limited to the accounts that you contend contained any moneys dividended by any defendant, and/or each alleged dividend and/or oral agreement.

**RESPONSE:  Plaintiff objects to this document request on the grounds that it is overly broad and unduly burdensome.  Moreover, plaintiff objects to this document request to the extent it seeks documents outside the scope of discovery as determined by the Court.  Subject to and without waiving the above specific and general objections, plaintiff refers Mutual to the documents attached.**

2.    All documents referring or relating to your contention that the monies in the accounts at issue or any predecessor accounts were dividended to you.

**RESPONSE:  Subject to and without waiving the above general objections, plaintiff refers Mutual to the documents attached.**

3.    All financial statements and your federal and state tax returns for the years 1991 through 2004, and all work papers that refer or relate to the computation of your income for those years, as reflected in the tax returns or financial statements.

**RESPONSE:  Plaintiff objects to this document on the grounds that it seeks documents that constitute confidential communications between plaintiff and the United States government.  Plaintiff further objects to this document request to the extent that it seeks documents outside the scope of discovery as determined by the Court.  Moreover, plaintiff objects to this document request to the extent that it requests documents that are the work product of a third party witness and are**

4

available from that witness(es).  Subject to and without waiving the above general and specific objections, plaintiff refers Mutual to the financial statements attached.

4.      All documents that state, suggest, and/or support your contention that monies were dividended to you by any defendant at any time, including but not limited to the dividends you refer to in your complaint.

**RESPONSE:  Subject to and without waiving the foregoing general objections, plaintiff refers Mutual to the documents attached.**

5.      All documents that state, suggest, and/or support your contention that an oral agreement or agreements existed between you and any defendant.

**RESPONSE:  Plaintiff objects to this document request to the extent it seeks documents protected by the work product doctrine.**

6.      All documents constituting, memorializing or accompanying you or your representatives' communications with any defendant and/or any of its representatives.

**RESPONSE:  Plaintiff objects to this document request on the grounds that it is overly broad and unduly burdensome.  Plaintiff further objects to this document request to the extent it seeks documents outside the scope of discovery as determined by the Court.  Moreover, plaintiff objects to this request to the extent it requests pleadings and correspondence (and attachments) that are already in the possession of Mutual and plaintiff will not produce such documents on the grounds that they are duplicative and would incur unnecessary expense.  Subject to and without waiving the above specific and general objections, plaintiff refers Mutual to the documents attached.**

5

7.    All documents that you contend provide you with any rights to

direct investments in the Prudential, Dean Witter and Morgan Stanley accounts at issue.

**RESPONSE:  Subject to the general objections above, plaintiff refers Mutual to the documents attached.**

8.    All documents that state, suggest, and/or support your contention

that you actually directed and/or had the right to direct the investments in the accounts at

issue.

**RESPONSE:  Subject to the general objections above, plaintiff refers Mutual to the documents attached.**

9.    All documents constituting, memorializing or accompanying you

or your representatives' communications with any of Messrs. Ouimette, Dallas Krapf,

Dale Krapf and/or anyone else regarding any facts you claim support your contention that

a dividend was declared or any alleged oral agreement was entered into between or

among you and/or any defendant.

**RESPONSE:  Plaintiff objects to this document request to the extent it seeks documents protected by the work product doctrine and/or the attorney-client privilege. Subject to and without waiving the above specific and general objections, plaintiff refers Mutual to the documents attached.**

10.    All files relating to the litigation you commenced in Bermuda

relating to any of the defendants in this case.

6

**RESPONSE:** Plaintiff objects to this document request to the extent it seeks documents protected by the work product doctrine and the attorney-client privilege. Plaintiff further objects to this document request to the extent it seeks documents outside the scope of discovery as set forth by the Court. Moreover, upon information and belief, all documents responsive to this request not otherwise protected by the privileges asserted above have already been produced or provided to Mutual during the course of litigation in Bermuda and it is unduly burdensome to incur the expense of duplicating these documents. Furthermore, plaintiff objects to this document request to the extent that it requires a privilege log because the litigation file from the multiple lawsuits in Bermuda is voluminous and it is unduly burdensome to require plaintiff to catalog each privileged document, letter, note, memorandum, etc., in those files.

     11.    All documents that state, suggest, and/or support your contention that:

        (a)    you elected not to redeem your dividends, as stated in paragraph 15 of the complaint; and

        (b)    you are the owner of the money at issue in the complaint.

**RESPONSE:** Subject to and without waiving the foregoing general objections, plaintiff refers Mutual to the documents attached. By way of further response, the relevant information responsive to the subject matter of this request was communicated orally.

     12.    All documents referring or relating to accounts you or any company with which you have been affiliated have held with Mr. Gitter and/or any company with which he has been affiliated.

**RESPONSE:** Plaintiff objects to this document request to the extent it seeks documents outside the scope of discovery as determined by the Court. See response to Request #1.

PHDATA 1302425_1

13.    All documents, including but not limited to handwritten notes and emails, evidencing you or your representatives' efforts to calculate the amount of dividends you contend were declared.

**RESPONSE:  Plaintiff objects to this document request on the grounds that it seeks documents protected by the work product doctrine and the attorney client privilege. Subject to and without waiving the above general and specific objections, plaintiff refers Mutual to the documents attached.**

14.    All documents constituting, memorializing, or accompanying you or your representatives' communications with Messrs. Phil Miller and/or Alan Bates regarding the monies you contend were dividended to you by any defendant at any time, including but not limited to the dividends you refer to in your complaint.

**RESPONSE:  Plaintiff objects to this document request to the extent it seeks documents protected by the accountant client privilege.  See response to Request #3.**

15.    All documents constituting, memorializing, or accompanying you or your representatives' communications with Andy Lewis regarding this lawsuit and/or the monies in the accounts at issue.

**RESPONSE:  Plaintiff objects to this document request on the grounds that it seeks documents protected by the work product doctrine.  Subject to and without waiving the above general and specific objections, plaintiff refers Mutual to the documents attached.**

PHDATA 1302425_1

16.   All documents that state, suggest, and/or support your contention
that you are the successor to and sole remaining shareholder under each of the
Shareholder Agreements attached to your complaint.


**RESPONSE:  Subject to the general objections above, plaintiff refers Mutual to the
documents attached.**


/s/ Han Nguyen
David Smith (I.D. No. 21480)
Han Nguyen (I.D. No. 85860)
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103-7286
(215) 751-2000

*Attorney for Plaintiff
Stephen M. Friedberg*

Dated: August 19, 2004

9

## CERTIFICATE OF SERVICE

I, Han Nguyen, hereby certify that a copy of the foregoing Responses and

Objections to Request for Production of Documents was served by hand delivery upon the

following:

>    Brooke J. Hertzer, Esquire
>    Ballard Spahr Andrews & Ingersoll LLP
>    1735 Market Street, 51st Floor
>    Philadelphia, PA 19103


>    /s/ Han Nguyen
>    Han Nguyen


Dated: August 19, 2005

# EXHIBIT C

# CONDENSED TRANSCRIPT

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHEN M. FRIEDBERG,
    Plaintiff,

Vs.                                    NO. 02-CV-3193

MUTUAL HOLDINGS, LTD.,
et al.,
    Defendants.


            Videotaped deposition of
STEPHEN M. FRIEDBERG, taken at the
law offices of BALLARD SPAHR ANDREWS
& INGERSOLL, L.L.P., 1735 Market
Street, 51st Floor, Philadelphia,
Pennsylvania, on Tuesday, July 19,
2005, at 9:46 a.m., before Rosemary
Locklear, Registered Professional
Reporter, Certified Shorthand
Reporter (NJ), Certified Realtime
Reporter and Notary Public, pursuant
to notice.



## James DeCrescenzo Reporting, LLC
INNOVATING LITIGATION
1880 JFK Blvd., 6th Floor • Philadelphia, PA 19103
www.jdreporting.com

215.564.3905
PHONE

215.751.0581
FAX

2 (Pages 2 to 5)

VIDEO DEPOSITION OF STEPHEN M. FRIEDBERG, 7/19/05

## 2

```
1   APPEARANCES:
2   SCHNADER, HARRISON, SEGAL & LEWIS,
    L.L.P.
3     HAN NGUYEN, ESQUIRE
      hnguyen@schnader.com
4     1600 Market Street, Suite 3600
      Philadelphia, Pennsylvania 19103
5     (215) 751-2000
      and
6   HERGENROEDER REGA AND SOMMER, L.L.C.
      PATRICK J. REGA, ESQUIRE
7     prega@hrslaw.com
      WENDY E.D. SMITH, ESQUIRE
8     wsmith@hrslaw.com
      Centre City Tower, Suite 1700
9     650 Smithfield Street
      Pittsburgh, Pennsylvania 15222
10    (412) 281-7724
      Appearing on behalf of the
11    Plaintiff
12  BALLARD SPAHR ANDREWS & INGERSOLL,
    L.L.P.
13    DOUGLAS Y. CHRISTIAN, ESQUIRE
      christiand@ballardspahr.com
14    BROOKE J. HERTZER, ESQUIRE
      hertzerb@ballardspahr.com
15    1735 Market Street, 51st Floor
      Philadelphia, Pennsylvania 19103
16    (215) 665-8500
      Appearing on behalf of the
17    Defendants
18  ALSO PRESENT: MAUREEN WITKOWSKI,
      Video Specialist
19
      MEREDITH SCULL
20    LORENE DELSON
21         EXAMINATION INDEX
22
    STEPHEN M. FRIEDBERG
23    BY MR. CHRISTIAN . . .      7
      BY MR. NGUYEN . . . .     328
24    BY MR. CHRISTIAN . . .    335
```

## 3

```
1         EXHIBIT INDEX
              MARKED
2   1  5-page copy of letter        84
       dated 5/6/03 to The
3      Honorable William H.
       Yohn, Jr., from David
4      Smith
5   2  12-page copy of document    100
       dated 3/19/04 entitled
6      "Judgment"
7
    3  1-page copy of letter       105
8      dated 5/12/00 to David
       Alexander from Patrick J.
9      Rega, Esquire, and Gary
       G. Gentile, Esquire
10
    4  1-page copy of letter       107
11     dated 5/23/00 to Mr. Stan
       Friedberg from David
12     Alexander
13  5  1-page copy of letter       109
       dated 5/26/00 to
14     Amatangelo, Bailey & Rega
       from David Alexander
15
    6  1-page copy of letter to    110
16     Pat Rega from David
       Alexander, plus
17     attachment
18  7  2-page copy of letter       111
       dated 8/14/00 to David
19     Alexander from Patrick J.
       Rega and Gary G. Gentile
20
    8  1-page copy of document     120
21     dated 11/16/95 entitled
       "Receipt"
22
    9  1-page copy of document     127
23     dated 11/13/97 entitled
       "Receipt"
24
```

## 4

```
1         EXHIBIT INDEX (CONTINUED.)
2   10  1-page copy of document    129
        dated 5/29/00 entitled
3       "Confirmation of Receipt"
4   11  1-page copy of document    131
        dated 11/16/00 entitled
5       "Confirmation of Receipt"
6   12  1-page copy of letter      132
        dated 1/6/95 to Mr. Paul
7       Watson from Stephen
        Friedberg, Dale Krapf
8       Dallas Krapf and Mark
        Ouimette
9
    13  1-page copy of             136
10      handwritten letter dated
        7/6/01 to Dale from
11      Stephen Friedberg
12  14  7-page copy of document    141
        dated 8/12/02 entitled
13      "Petition," plus
        attachment
14
    15  7-page copy of document    141
15      dated 8/12/02 entitled
        "Petition," plus
16      attachment
17  16  6-page copy of document    220
        dated 1/1/92 entitled
18      "Shareholder Agreement"
19  17  9-page copy of document    220
        dated 3/1/94 entitled
20      "Shareholder Agreement"
        plus attachments
21
    18  9-page copy of document    220
22      dated 1/1/92 entitled
        "Shareholder Agreement"
23      plus attachments
24
```

## 5

```
1         EXHIBIT INDEX (CONTINUED.)
2   19  13-page copy of document   226
        dated 5/31/05 entitled
3       "Statement of Your
        Account"
4
    20  19-page copy of document   232
5       dated 12/31/98 entitled
        "1998 Consolidated
6       Statement"
7   21  1-page copy of document    235
        dated 12/31/99 entitled
8       "Account Statement," plus
        attachments
9
    22  1-page copy of letter      243
10      dated 3/4/99 to Mr. Steve
        Gitter from Cathryn Towison
11
    23  1-page copy of letter      246
12      dated 1/24/95 to Mr.
        Steve Fischetti from
13      David Alexander
14  24  1-page copy of document    248
        entitled "Gain And Loss
15      Summary"
16  25  1-page copy of letter to   253
        Nick Carter from Stephen
17      Gitter
18  26  1-page copy of document    269
        dated 4/12/02 entitled
19      "Facsimile," MSDW 02148
20  27  1-page copy of document    269
        dated 4/12/02 entitled
21      "Facsimile Transmittal
        Sheet," plus attachments
22      MSDW 02149-MSDW 02151
23  28  4-page copy of document    296
        dated 5/27/02 entitled
24      "Generally Indorsed Writ
```

**JDR**

**James DeCrescenzo Reporting**, LLC

Innovating Litigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                          FAX  215.751.0581

6

1      VIDEO SPECIALIST: We are
2  now on the video record.
3      This is the videotaped
4  deposition of Stephen Friedberg taken
5  by the defendant in the matter of
6  Stephen M. Friedberg vs. Mutual
7  Holdings, Limited, et al., filed
8  under U.S. District Court in the
9  Eastern District of Pennsylvania,
10  Case Number 02-CV-3193, held at the
11  offices of Ballard Spahr Andrews &
12  Ingersoll, L.L.P., 1735 Market
13  Street, 51st Floor, in Philadelphia,
14  Pennsylvania, on July 19th, 2005, at
15  the time indicated on the video
16  screen.
17      My name is Maureen
18  Witkowski. The court reporter is
19  Rosemary Locklear. We are from the
20  firm of James DeCrescenzo Reporting,
21  1880 J.F.K. Boulevard, in
22  Philadelphia, Pennsylvania.
23      The counsel will now
24  introduce themselves.

7

1      MR. NGUYEN: Han Nguyen,
2  Schnader Harrison Segal & Lewis, for
3  the witness, Stephen M. Friedberg.
4      MR. CHRISTIAN: Doug
5  Christian, Ballard Spahr, for the
6  defendants.
7      VIDEO SPECIALIST: Thank
8  you.
9      Would the reporter please
10  swear in the witness.
11      STEPHEN M. FRIEDBERG,
12  having been duly sworn, was examined
13  and testified as follows:
14      EXAMINATION
15  BY MR. CHRISTIAN:
16      Q.  Mr. Friedberg, good
17  morning.
18      As you know, my name is
19  Doug Christian. I represent the
20  defendants in this case, and we're
21  here to ask you some questions
22  relating to certain aspects of a case
23  you've brought against my clients,
24  the defendants in this case.

8

1      By Order of the Court dated
2  June 8, 2005, all discovery is
3  stayed, with the exception of matters
4  relating to whether a dividend was
5  declared or paid to you and whether
6  there was an oral agreement with
7  reference to funds held in the Morgan
8  Stanley accounts.
9      Is that consistent with
10  your understanding?
11      A.  Yes.
12      Q.  Have you given a deposition
13  before, sir?
14      A.  A long time ago.
15      Q.  I know you are represented
16  by three able lawyers here, but I
17  will remind you what I'm sure they've
18  told you already, and that is, if you
19  don't understand a question I ask or
20  if you don't hear it, you should ask
21  me to rephrase it or repeat it.
22      Fair enough?
23      A.  Understand.
24      Q.  You have to answer

9

1  questions with words rather than just
2  a nod or a shake of the head or
3  throwing the ice bag at me or
4  anything else you -- you would care
5  to throw my way.
6      Do you understand that?
7      A.  I do.
8      Q.  Okay. If you would let me
9  finish my question before you answer
10  it, a lot of people will appreciate
11  that, including, of course, Rosemary,
12  the court reporter.
13      Fair enough?
14      A.  Yes.
15      Q.  Do you have any questions
16  before we get started?
17      A.  No.
18      Q.  Why don't you state your
19  full name for the record, please.
20      A.  Stephen Michael Friedberg.
21      Q.  Where do you reside?
22      A.  In Pittsburgh,
23  Pennsylvania.
24      Q.  Address, please.

22

1  insurance in the country.
2      Q.  I just want to know the
3  year, sir.
4      A.  19 -- about 1991.
5      Q.  Okay.  Now, did you have
6  lawyers advising you in 1991?
7      A.  Tony Leech.
8      Q.  Any other counsel advising
9  you in '91?
10     A.  I don't recall.
11     Q.  Did you have an accountant
12  in 1991?
13     A.  We did.
14     Q.  What is or was that
15  person's name?
16     A.  Phil Miller.
17     Q.  Is he still your
18  accountant?
19     A.  No.
20     Q.  Who is your -- who have
21  your accountants been over the years?
22     A.  Phil had been our
23  accountant for approximately 30
24  years, 30 or 40 years.

23

1      Q.  Until when, approximately?
2      A.  Until about two years ago.
3      Q.  Who is it now?
4      A.  Alan Bates.
5      Q.  Where's Mr. Bates's office?
6      A.  In Pittsburgh.
7      Q.  What's the name of his
8  firm?  Do you know?
9      A.  Kind of.
10     Q.  Do you have his phone
11  number?
12     A.  We do.
13     Q.  What is his phone number?
14     A.  His cell phone is 412-551-
15  2000.
16     Q.  Is Mr. Miller still in the
17  area?
18     A.  He is.
19     Q.  Does he have a business?
20     A.  He does.
21     Q.  Is he still an accountant?
22     A.  He may have or is in the
23  process of retiring.
24     Q.  What is the name of his

24

1  business?  Do you know?
2      A.  I don't.
3      Q.  What was the name of his
4  business when he was serving as your
5  accountant?
6      A.  I don't recall.
7      Q.  Do you have his telephone
8  number?
9      A.  It's probably 412-856-6300.
10     Q.  For what reason was
11  Mr. Miller no longer your accountant?
12     A.  We -- Phil was
13  approximately -- was in his mid-70s
14  and we were looking to make a change.
15     Q.  Did it have anything to do
16  with anything relating to this --
17     A.  No.
18     Q.  -- situation?
19     A.  No.  No, it did not.
20     Q.  Did Mr. Miller ever provide
21  any advice to you regarding any
22  aspect of this program over the
23  years?
24     A.  I don't recall.  If so,

25

1  minimal.
2      Q.  Was Mr. Miller your tax
3  attorney?
4      A.  Yes.
5      Q.  Your tax accountant?
6      A.  Uh-huh.
7          MR. NGUYEN:  Yes or no.
8  BY MR. CHRISTIAN:
9      Q.  Is that yes?
10     A.  Yes.  Sorry.
11     Q.  Have you had a tax attorney
12  over the years?
13     A.  An outside tax attorney in
14  addition to Phil Miller?  I'm not
15  sure.
16     Q.  Is Mr. Miller an attorney?
17     A.  Okay.  Have we had a tax
18  attorney?  I don't recall.
19     Q.  I've seen a reference to
20  a -- a -- I think the fellow's name
21  is Bone?
22     A.  Uh-huh.
23     Q.  B-O-N-E; is that correct?
24     A.  Correct.

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905

InnovatingLitigation
1880 JFK Blvd., 6ᵗʰ Floor, Philadelphia, PA 19103
www.JDReporting.com

FAX  215.751.0581

VIDEO DEPOSITION OF STEPHEN M. FRIEDBERG, 7/19/05

---

66

1  want to say?
2     A.  No.
3     Q.  Would you like to take a
4  break?
5     A.  No. I'm fine.
6     Q.  Are you sure?
7     A.  Uh-huh.
8     Q.  All right. You've just
9  told us that that money is yours
10  because it was dividended under the
11  Shareholder's Agreement; correct?
12     A.  That's correct.
13     Q.  Tell me when it was
14  dividended, please.
15     A.  Dividends were calculated
16  annually.
17     Q.  Tell me when the money in
18  these three accounts was dividended
19  to you, please, Mr. Friedberg.
20     A.  It was -- it was in -- it
21  was in the Agreement.
22     Q.  Tell me when the money was
23  dividended to you.
24     A.  Every -- the -- the

---

67

1  Shareholder Agreement called for an
2  annual calculation to be done and a
3  dividend -- and a dividend to be
4  declared every year and that date was
5  either February or March. And any
6  excess funds were -- automatically
7  became dividend.
8     Q.  Have you even attempted to
9  figure out for what years these
10  alleged dividends were paid?
11     A.  It was a -- it was -- it
12  was always -- it was annual and it
13  was always excess funds.
14     Q.  Have you attempted to
15  figure out for what years these
16  annual dividends were paid?
17     A.  I -- I don't understand
18  your question.
19     Q.  Well, Mr. Friedberg, you're
20  claiming that a great deal of money
21  is yours because it's been dividended
22  under the Shareholder's Agreements.
23     A.  Uh-huh.
24     Q.  Correct?

---

68

1     A.  That's correct.
2     Q.  And I want you to tell
3  me -- it seems pretty basic, maybe
4  it's not. I want you to tell me,
5  please, for what years these
6  dividends were paid.
7     A.  Every year that our various
8  programs were profitable.
9     Q.  What years were they paid
10  for?
11     A.  That's a tough question
12  without me having financial
13  statements in front of me.
14     Q.  Well, you want $3.1 million
15  from us and I -- I'd like an answer
16  to that question.
17     A.  The -- I'll -- I will do my
18  best to recall.
19     Q.  That's all I can ask you to
20  do, sir.
21     A.  1991, 1992 and 1993, E-14
22  were extremely profitable.
23     Q.  There were never dividends
24  paid under U-21; is that correct?

---

69

1     A.  That's not correct.
2     Q.  And there were never
3  dividends paid under -- paid to you
4  under E-11; is that correct?
5     A.  No, that's not correct
6  either.
7     Q.  Okay. So, Mr. Friedberg,
8  your position is that dividends are
9  owing under all three of those
10  programs.
11     A.  Very clear in the
12  Shareholder Agreement that the
13  dividends would be calculated on an
14  annual basis.
15     Q.  All right. Let's get back
16  to the years you believe these
17  dividends were declared --
18     A.  Uh-huh.
19     Q.  -- and not paid. And
20  these -- this is for this $3.1
21  million, you understand that?
22     A.  I --
23     Q.  I'm trying to figure out
24  where that 3.1 million came from.

---

**JDR**

**James DeCrescenzo Reporting**, LLC

InnovatingLitigation
1880 JFK Blvd., 6ᵗʰ Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                    FAX  215.751.0581

---

**86**

1  A.  All right.
2  Q.  Is that a true and correct
3  statement?
4  A.  Yes.
5  Q.  You say, Legal and
6  equitable title to those monies
7  passed from Mutual to Friedberg at
8  the time that Friedberg directed the
9  deposit of the monies at Prudential
10  and then later at Dean Witter and
11  Morgan Stanley and has not at any
12  time reverted to Mutual.
13      Do you see that?
14  A.  Yeah, that's true.
15  Q.  You directed the deposit of
16  the monies at Prudential in
17  approximately what year?  Do you
18  know?
19  A.  I believe 1995 and maybe
20  '96 and maybe '97.  The monies would
21  have been transferred approximately
22  those years.
23  Q.  And then if you look at
24  Paragraph 19, sir, on the next page,

---

**87**

1  Page 5 of the Complaint, would you
2  read that to yourself, please, and
3  tell me when you're ready to be
4  questioned about it.
5  A.  (Witness reviews document.)
6  Okay.
7  Q.  In Paragraph 19 you say,
8  However, Friedberg is and always has
9  been the owner or alternatively the
10  beneficial owner of the monies that
11  were deposited at Prudential, Dean
12  Witter and Morgan Stanley, despite
13  the titling of the accounts.
14  A.  That's true.
15  Q.  Now, getting back to
16  Footnote 2, Mr. Smith's letter that's
17  been marked as Exhibit 1 —
18  A.  Right.
19  Q.  — when did you direct the
20  funds be removed from the other
21  capital in his — in your program and
22  invested separately with brokers in
23  Philadelphia?
24  A.  On or about 1996 and '97

---

**88**

1  and maybe '98.
2  Q.  You're saying this is your
3  money; correct?
4  A.  Yes.
5  Q.  And this has been your
6  money since at least the '90s;
7  correct?
8  A.  That's correct.
9  Q.  Now, my question is, have
10  you ever declared on any of your
11  federal or state tax returns these
12  dividends?
13      MR. NGUYEN:  Objection.
14      I'm going to let the
15  witness answer the question if you
16  can recall what your accountants
17  reported or did to your tax returns
18  in the years in question, 199 —
19      MR. CHRISTIAN:  Well —
20      MR. NGUYEN:  Whatever.
21      MR. CHRISTIAN:  Well,
22  obviously, he's here to testify to
23  what he recalls, but I don't want his
24  answer limited to what some tax

---

**89**

1  accountant told him.  I want to
2  know — I'll rephrase.
3  BY MR. CHRISTIAN:
4  Q.  Have you ever declared as
5  income on any state or federal tax
6  return any of the dividends in these
7  Morgan Stanley accounts?
8      MR. NGUYEN:  If you recall.
9      THE WITNESS:  I don't
10  recall.
11  BY MR. CHRISTIAN:
12  Q.  If they were — if they
13  were amounts owed to you under the
14  Shareholder's Agreements you claim
15  were your funds, although in someone
16  else's account, would that, in your
17  mind, trigger a thought that you
18  should have a discussion with one of
19  your tax accountants about whether to
20  declare that?
21  A.  I —
22      MR. NGUYEN:  Objection.
23  BY MR. CHRISTIAN:
24  Q.  You can answer it.

---

**JDR**

**James DeCrescenzo Reporting**, LLC

Innovating Litigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                    FAX  215.751.0581

VIDEO DEPOSITION OF STEPHEN M. FRIEDBERG, 7/19/05

---

90

1     You can either look at me
2   and smile or you can answer the
3   question.
4     A.  Ask the question again.
5     MR. CHRISTIAN:  Would you
6   read the question back, please.
7     (The court reporter read
8   back the following:
9     "Q:  If they were — if
10  they were amounts owed to you under
11  the Shareholder's Agreements you
12  claim were your funds, although in
13  someone else's account, would that,
14  in your mind, trigger a thought that
15  you should have a discussion with one
16  of your tax accountants about whether
17  to declare that?")
18    MR. NGUYEN:  I repeat the
19  objection.
20    THE WITNESS:  So what's
21  next?
22  BY MR. CHRISTIAN:
23    Q.  The answer to the question,
24  sir.

---

91

1     A.  So am I — am I required to
2   answer?
3     MR. NGUYEN:  If you can.
4     THE WITNESS:  I — I don't
5   recall.
6   BY MR. CHRISTIAN:
7     Q.  What was your personal
8   income in 1991?
9     A.  I have no idea.
10    Q.  Give me an estimate of your
11  personal income in any year from '91
12  to '96.
13    A.  My income, I'm going to
14  guesstimate at this, has ranged
15  between 100,000 and maybe 600,000 per
16  year.  And that may be fairly
17  accurate, may not be.
18    Q.  Have you ever included in
19  the — the declaration of your income
20  in any tax return any dividends
21  received relating to any of these
22  programs?
23    A.  I don't recall.
24    MR. NGUYEN:  Objection.

---

92

1     MR. CHRISTIAN:  I'm sorry.
2   I didn't hear.
3     THE WITNESS:  I don't — I
4   don't recall.
5   BY MR. CHRISTIAN:
6     Q.  Have you ever discussed
7   with anyone helping you with your
8   taxes the concept of the dividend or
9   any dividend you've received from any
10  of these programs?
11    MR. NGUYEN:  Objection.
12    THE WITNESS:  I — again, I
13  don't recall.
14  BY MR. CHRISTIAN:
15    Q.  Have you ever been
16  concerned that you did not declare as
17  a dividend — I'm sorry — declare as
18  income any dividends from any of
19  these programs?
20    MR. NGUYEN:  Objection.
21    THE WITNESS:  No.
22  BY MR. CHRISTIAN:
23    Q.  Have you been audited?
24    A.  Yes.

---

93

1     Q.  For what tax years?
2     A.  I don't recall.
3     Q.  Were they tax years in the
4   '90s?
5     A.  I don't know.
6     Q.  And what was the position
7   of the IRS, as you understand it,
8   after the audit?
9     A.  Everything was fine.  I
10  have a number of various business
11  interests and there were no issues.
12    Q.  Was the audit with regard
13  to your personal tax return?
14    A.  I don't recall.
15    Q.  Now, can you give me an —
16  an estimate of how much of the $3.1
17  million — strike that.
18    Do you believe you're
19  entitled to the income from the
20  appreciation in these accounts?
21    A.  Yes.
22    Q.  And you've never declared
23  any of that income as well; correct?
24    MR. NGUYEN:  Objection.

---

**JDR**

**James DeCrescenzo Reporting**, LLC

Innovating Litigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905          FAX  215.751.0581

---

**94**

1  BY MR. CHRISTIAN:
2     Q.  You have to answer the
3  question, if you can.
4     A.  Yes.
5     Q.  You have or have not
6  declared any of the apprec- --
7     A.  I'm sorry.  What was the
8  question?
9     Q.  Yes, sir.  I'll start
10  again.
11        With regard to the
12  appreciation --
13     A.  The answer is no.
14     Q.  But you need to let me
15  finish the question.
16     A.  Okay.
17     Q.  With regard to the
18  appreciation, have you declared as
19  income any of that on any tax return
20  you've signed?
21     A.  No.
22        MR. NGUYEN:  Objection.
23  You answered.
24        THE WITNESS:  Sorry.

---

**95**

1        MR. NGUYEN:  That's fine.
2  BY MR. CHRISTIAN:
3     Q.  But if, as Mr. Smith said,
4  the monies were removed from the
5  program and if, as you've said, this
6  is your money, why have you not
7  declared it as income --
8        MR. NGUYEN:  Objection.
9  BY MR. CHRISTIAN:
10     Q.  -- on either of your -- any
11  of your state or federal tax returns?
12        MR. NGUYEN:  I don't think
13  we've established that he did or if
14  he didn't.  I think he's constantly
15  answered that he doesn't know or
16  doesn't recall.
17        MR. CHRISTIAN:  Would you
18  read the question back, please,
19  Rosemary.
20        Listen to the first word of
21  the question, please, Han.
22        (The court reporter read
23  back the following:
24        "Q:  But if, as Mr. Smith

---

**96**

1  said, the monies were removed from
2  the program and if, as you've said,
3  this is your money, why have you not
4  declared it as income --
5        "MR. NGUYEN:  Objection.")
6        MR. CHRISTIAN:  Okay.  I've
7  heard enough.
8        I assume you still have the
9  objection.
10        MR. NGUYEN:  I repeat my
11  objection.
12        THE WITNESS:  I don't
13  recall.
14  BY MR. CHRISTIAN:
15     Q.  This is an amount five
16  times the $600,000 ceiling you think
17  you've earned --
18     A.  Uh-huh.
19     Q.  -- per year; correct?
20     A.  Correct.
21     Q.  And as you sit here today,
22  you don't know whether that's been
23  declared as income?
24     A.  I don't.

---

**97**

1     Q.  Do you think it's been
2  declared as income?
3     A.  I have accountants and --
4  and advisors that I entrust that to.
5     Q.  And who are they?  Other
6  than Mr. -- I'm sorry -- Mr. Phil
7  Miller and Mr. Alan Bates.
8     A.  That would be all.
9     Q.  Have any of the attorneys
10  in this room advised you with regard
11  to tax matters?
12        MR. NGUYEN:  Objection.
13        You don't have to answer
14  that.
15        MR. CHRISTIAN:  Why not?
16        MR. NGUYEN:  It's
17  privileged.  The answer to that
18  question is privileged.
19  BY MR. CHRISTIAN:
20     Q.  Are you going to follow the
21  direction of your counsel, sir?
22     A.  Probably.
23        MR. CHRISTIAN:  Well, then
24  why don't we do this:  Let's take a

---

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905

Innovating Litigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

FAX  215.751.0581

126

1  him not to answer.
2      MR. CHRISTIAN: On what
3  grounds?
4      MR. NGUYEN: I already
5  stated the grounds for my objection.
6      MR. CHRISTIAN: All right.
7  You have indicated that you'd like to
8  wrap this deposition up in one day
9  and it's very unlikely in light of
10  that instruction that this deposition
11  is going to be wrapped up in one
12  day. Just so the record is crystal
13  clear.
14  BY MR. CHRISTIAN:
15      Q. Mr. Friedberg, with regard
16  to Exhibit 8, the $6,000 payment
17  referenced on Exhibit 8, did you
18  declare that dividend income on your
19  state or federal tax return?
20      MR. NGUYEN: Objection.
21  I instruct the witness not
22  to answer.
23      MR. CHRISTIAN: Okay.
24  Let's go off the record so I can take

127

1  care of this.
2      Thank you.
3      VIDEO SPECIALIST: We're
4  going to go off the video record.
5      (Discussion off the
6  record.)
7      VIDEO SPECIALIST: We are
8  on the video record.
9      (Exhibit 9 was marked for
10  identification.)
11  BY MR. CHRISTIAN:
12      Q. Exhibit 9 is a receipt that
13  you signed dated 11/13/97.
14      A. What's that say? Same
15  thing.
16      MR. NGUYEN: Well, let me
17  see. Thank you.
18  BY MR. CHRISTIAN:
19      Q. Is that another example of
20  documentation relating to a dividend
21  you received under E-14?
22      I don't know what you're
23  waiting for, sir. Are you waiting
24  for an objection or are you waiting

128

1  for an instruction or are you going
2  to answer the question?
3      A. I was waiting.
4      MR. NGUYEN: No.
5      THE WITNESS: Okay. Yes.
6  This is your game. I'm just a —
7  BY MR. CHRISTIAN:
8      Q. This is not a game, sir.
9      Is it an example —
10      A. I'm — I'm just here —
11  this isn't my business is my point.
12      Q. Is it an example —
13      A. So I don't know the rules.
14      MR. NGUYEN: Steve, let him
15  ask the question.
16  BY MR. CHRISTIAN:
17      Q. Exhibit 9 references a
18  $10,000 cash dividend payment to you,
19  you obtained in Bermuda; correct?
20      A. That's correct.
21      Q. And that was income to you;
22  correct?
23      A. Probably.
24      Q. What else would it be?

129

1      A. It may have been used for
2  other expenses.
3      Q. Whatever portion did not
4  relate to travel expenses was income
5  to you; is that right?
6      A. There may have been other
7  expenses affiliated to it.
8      Q. Did you ever keep track of
9  how much of that — any of these
10  dividend payments, 6 or $10,000 along
11  the way, related to deductible
12  expenses as opposed to income?
13      A. I'm not sure.
14      Q. Did you send any of these
15  receipts to the accountant who
16  prepares your tax returns?
17      A. Don't recall.
18      (Exhibit 10 was marked for
19  identification.)
20  BY MR. CHRISTIAN:
21      Q. Exhibit 10 is a 5/29/2000
22  Confirmation of Receipt.
23      That's some — that's a
24  receipt signed by Stan Friedberg; is

JDR

James DeCrescenzo Reporting, LLC

215.564.3905                InnovatingLitigation                FAX 215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

VIDEO DEPOSITION OF STEPHEN M. FRIEDBERG, 7/19/05

---

210

1  with Mr. Lewis and your lawyers?
2      A.  I don't recall. Not very
3  long.
4      Q.  An hour?
5      A.  It wasn't very long.
6      Q.  Was that the reason you
7  came to Philadelphia?
8      A.  No.
9      Q.  Did anyone take notes at
10 the meeting?
11     A.  I don't recall.
12     Q.  Well, tell me what was
13 discussed.
14     A.  I had asked Andy to --
15 I'm -- I had asked Andy to help fill
16 in some holes in my memory.
17     Q.  And did he?
18     A.  Yes.
19     Q.  What did he -- by saying
20 what?
21     A.  I don't recall the
22 specifics.
23     Q.  Generally?
24     A.  The big story here. A lot

---

211

1  of facts. A lot of things I was
2  unsure of or -- or -- or just didn't
3  remember.
4      Q.  So he helped you remember
5  some of them?
6      A.  Some of the people and
7  places, yeah.
8      Q.  Did he bring any documents
9  with him?
10     A.  No.
11     Q.  Was he shown any documents?
12     A.  I don't recall.
13     Q.  Was he told that he might
14 be a witness in the case?
15     A.  Don't think so.
16     Q.  Do you remember any
17 question that was asked of him?
18     A.  No.
19     Q.  With regard to an answer
20 you gave before I got into this
21 correction that you wanted to make,
22 did you raise the tax issue with Andy
23 Lewis?
24     A.  No.

---

212

1      Q.  And I'm not talking about
2  this last meeting. I'm talking about
3  back at the time.
4      A.  No.
5      Q.  Have you ever had personal
6  financial statements?
7      A.  Yes.
8      Q.  Have you since 1992?
9      A.  Yes.
10     Q.  And have you since '92
11 needed personal financial statements
12 to apply for loans?
13     A.  I don't recall.
14     Q.  For what purpose or
15 purposes have you prepared personal
16 financial statements?
17     A.  To do tax returns.
18     Q.  Pardon me?
19     A.  To do tax returns.
20     Q.  To do tax returns.
21     A.  Uh-huh.
22     Q.  Have you prepared them
23 yourself?
24     A.  No.

---

213

1      Q.  Have you prepared tax
2  returns or had them prepared for you
3  for any reason other than tax
4  returns?
5      A.  I don't recall.
6      Q.  Do you know whether any --
7  strike that.
8          Do you still have any such
9  personal financial statements?
10     A.  I would for the period of
11 time you're required to keep them.
12     Q.  Which is how long?
13     A.  I don't know.
14     Q.  Then how do you know when
15 to throw them away?
16     A.  Well, somebody else handles
17 that.
18     Q.  I see. Your accountant?
19     A.  Probably.
20     Q.  Do you have a financial --
21 strike that.
22         Have you ever made
23 provision on any of your personal
24 financial statements for any of the

---

**JDR**

**James DeCrescenzo Reporting**, LLC
Innovating Litigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                    FAX  215.751.0581

VIDEO DEPOSITION OF STEPHEN M. FRIEDBERG, 7/19/05

214

1 dividends we've talked about today?
2 A. Don't recall.
3 Q. Look at Exhibit 2,
4 Paragraph 24.
5 A. Which paragraph?
6 Q. 24.
7 A. Okay.
8 Q. Read that to yourself and
9 let me know when you're ready to be
10 questioned about it.
11 A. (Witness reviews document.)
12 Okay.
13 Q. All right. Paragraph 24 in
14 this Judgment on the winding-up
15 petitions states that these were
16 heard before The Honorable Justice
17 Warner on Wednesday, 11th December
18 and Friday, 13th December, 2003.
19 Do you see that?
20 A. Uh-huh. Yes.
21 Q. And it's -- it's -- you
22 were present on both of those dates;
23 correct?
24 A. I was there. I don't

215

1 recall if I was present for both
2 dates or not.
3 Q. All right. The Court goes
4 on to say, Counsel for both parties
5 made wide range -- wide ranging
6 submissions. In the course of which
7 Mr. Kawaley -- he was your lawyer;
8 correct?
9 A. Correct.
10 Q. -- said on behalf of the
11 petitions, quote, We accept that
12 there is a dispute about the exact
13 amounts that are owing. The question
14 is really, is any money due at all to
15 the petitioner, closed quote.
16 Do you see that?
17 A. Uh-huh.
18 Q. Do you deny that your
19 lawyer said that?
20 A. No.
21 Q. Then you see the quote, at
22 the end of that paragraph, quote, We
23 say there is such a dispute about the
24 existence of those debts, closed

216

1 quote.
2 Do you see that?
3 A. Uh-huh. Yes.
4 Q. Do you deny your lawyer
5 said that?
6 A. No.
7 Q. Your lawyer said on your
8 behalf, We accept that there is a
9 dispute about the exact amounts that
10 are owing; correct?
11 A. Correct.
12 Q. There was such a dispute;
13 correct? Correct?
14 A. There was a dispute in that
15 the losses, the investment income and
16 earned premium were changing on a
17 daily basis, so that at any given
18 point at one moment in time the
19 numbers would -- would be different.
20 Q. Your lawyer accepted the
21 fact that there is a dispute between
22 the parties; isn't that true?
23 A. Yes.
24 Q. And you accepted that fact

217

1 as well; correct?
2 A. Yes.
3 Q. And you accept or you do
4 not accept that there is a dispute in
5 this proceeding regarding how much,
6 if anything, is owing to you?
7 A. You have to ask that one
8 again.
9 Q. Do you accept that there is
10 a dispute in this lawsuit regarding
11 whether you are entitled to receive
12 monies and in what amount?
13 A. At the time that this was
14 prepared, the numbers that we were
15 claiming were the numbers produced by
16 the -- by Mutual's financial
17 statements, so there was no dispute
18 in -- in regards to the numbers. It
19 was generated from Mutual's own
20 financial statements. That's where
21 we got the numbers.
22 So I'm not sure how -- how
23 there could be a dispute in regards
24 to the numbers if it came off their

**JDR**

**James DeCrescenzo Reporting**, LLC

InnovatingLitigation
1880 JFK Blvd., 6ᵗʰ Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                    FAX 215.751.0581

82 (Pages 322 to 325)

Case 2:02-cv-03193    Document 49-3    Filed 08/30/2005    Page 29 of 29

VIDEO DEPOSITION OF STEPHEN M. FRIEDBERG, 7/19/05

**322**

1  name? Why was that convenient to
2  you?
3      A.  It gave us the ability that
4  if an -- an insurance opportunity
5  came along down the road, that we
6  would be able to use those assets.
7      Q.  But, of course, you could
8  have done that even if the -- the
9  money was in your -- your name;
10  correct?
11      A.  It was easier leaving it in
12  Mutual's name and they encouraged us
13  to leave it in their name.
14      Q.  But we're talking about the
15  issue of convenience to you.
16      A.  I -- I understand that.
17      Q.  Would it have been
18  inconvenient to you to have the money
19  in an account you controlled
20  completely and that was in your name
21  solely?
22      A.  A tax occurrence would have
23  taken a -- taken place.
24      Q.  How do you know that?

**323**

1      A.  I assume that.
2      Q.  And you assumed it over the
3  years; correct?
4      A.  No.
5      Q.  When did you first assume
6  that? Just right now in this
7  deposition?
8      A.  No.
9      Q.  When did you first assume?
10      A.  Don't know.
11      Q.  Do you agree with me, sir,
12  that if this money was actually
13  income to you, you had an obligation
14  to declare it as income on your tax
15  returns?
16      A.  Sure.
17      Q.  And you -- you don't know
18  whether you did; correct?
19      A.  Correct.
20      Q.  So you don't know whether
21  it was income to you; correct?
22      A.  Correct.
23      Q.  Have you had any
24  discussions with Mr. Gitter, other

**324**

1  than what we've already discussed,
2  relating to this lawsuit?
3      A.  No.
4      Q.  Have you had any
5  discussions with your father about
6  the lawsuit?
7      A.  Sure.
8      Q.  Are you married?
9      A.  No. I'm separated.
10      Q.  Were you married between
11  1992 and 2004, the entire time?
12      A.  No.
13      Q.  When did you get married?
14      A.  A long time ago. 1970 --
15  1979.
16      Q.  Were you married in 1992?
17      A.  Yes..
18      Q.  What is your wife's name?
19      A.  Lynn. Lynn.
20      Q.  Were the tax returns
21  jointly filed tax returns?
22      A.  They still are.
23      MR. CHRISTIAN:  I have no
24  further questions for you, sir.

**325**

1  Although the -- the, as I think you
2  know, the discovery is limited and,
3  of course, if the case proceeds, we
4  reserve the right to question you
5  regarding issues with regard to those
6  areas of discovery that have been
7  stayed by Court Order.
8      THE WITNESS:  Right.
9      MR. CHRISTIAN:  And I'll
10  make a couple requests to you -- you
11  and/or your counsel. The first is
12  that the witness not have discussions
13  with Mr. Gitter about today's
14  deposition.
15      And the second is that the
16  witness not destroy or otherwise
17  discard any of the documents we've
18  discussed today or, for that matter,
19  any document relating to this
20  lawsuit.
21      MR. NGUYEN:  I can assure
22  you with respect to your second
23  request that will not be a problem.
24      MR. CHRISTIAN:  Thank you.

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905    InnovatingLitigation    FAX 215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com