**EXHIBIT D**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHEN M. FRIEDBERG,

Plaintiff,

v.

MUTUAL HOLDINGS LTD, et al.,

Defendants.

CIVIL ACTION

No. 02-CV-3193
(Judge Yohn)

## PRIVILEGE LOG

| Item No. | Date | Description | Privilege Assertion |
|---|---|---|---|
| | 07/05/01 | Email from Andy Lewis to Pat Rega regarding documents (Friedberg000098) | Work Product – Redacted (handwritten notations) |
| | 09/20/01 | Email from Dale Gawley to Steve Friedberg (Friedberg000100) | Attorney/Client Privilege – Redacted (forwarding email) |
| | 04/10/02 | Email from Roger Bone to Patrick Rega re: Mutual Cessation Critiques | Attorney/Client Privilege |
| | 04/30/02 | Letter from Patrick Rega to Ian Kawaley (with attachments) | Attorney/Client Privilege Work Product Privilege |
| | 09/08/02 | Email from Andy Lewis to Steve Friedberg re: MRM (Friedberg000130 – 131) | Attorney/Client Privilege and Non-Responsive – Redacted (forwarding and attached emails) |
| | 04/02/03 | Email from Roger Bone to Steve Friedberg, Patrick Rega and Ian Kawaley re: Financial Statements | Attorney/Client Privilege Work Product Privilege |
| | 06/25/03 | Fax from Kawaley to Friedberg | Attorney/Client Privilege |
| | 06/25/03 | Email from D. Pickering to A. Lewis re: buyout (Friedberg000160) | Attorney/Client Privilege – Redacted (forwarding email) |
| | 07/07/03 | Email from R. Bone to Andy Lewis re: Comp Advantage Loss Information (Friedberg000190) | Attorney/Client Privilege – Redacted (forwarding email) |
| | 12/09/04 | Email from Patrick Rega to Andy | Work Product |

| Item No. | Date | Description | Privilege Assertion |
|---|---|---|---|
| | | Lewis re: questions w/ attachment. | |
| | 12/09/04 | Email from Andy Lewis to Patrick Rega re: questions w/ attachment. | Work Product |
| | 01/07/05 | Email from Roger Bone re: current billing (Friedberg000101) | Attorney/Client Privilege – Redacted (forwarding email) |
| | 01/07/05 | Email from Roger Bone re: Consulting Services Payment (Friedberg000105) | Attorney/Client Privilege – Redacted (forwarding email) |
| | 04/21/05 | Email from Roger Bone to Steve Friedberg, Delroy Duncan and Patrick Rega | Attorney/Client Privilege |
| | 05/02/05 | Email from Andy Lewis to Roger Bone and Steve Friedberg (Friedberg000203) | Non-Responsive - Redacted |
| | 06/07/05 | Email from Christy Ireland to Andrew Lewis re: Liquidator vs. Research Underwriters | Non-Responsive |
| | 06/07/05 | Email from Christy Ireland to Andrew Lewis re: review of Legion claims | Non-Responsive |
| | 07/05/05 | Chart calculating account totals | Work Product |
| | 07/15/05 | Email from Wendy Smith to Andrew Lewis, Patrick Rega and Han Nguyen with attachment re: affidavit | Work Product |
| | 07/15/05 | Email from Andy Lewis to Wendy Smith, Patrick Rega and Han Nguyen with attachment re: affidavit | Work Product |
| | 07/18/05 | Email from Andy Lewis to Wendy Smith, Patrick Rega and Han Nguyen with attachment re: affidavit | Work Product |
| | 07/20/05 | Email from Andy Lewis to Wendy Smith, Patrick Rega and Han Nguyen with attachment re: affidavit | Work Product |
| | 07/29/05 | Email from Andy Lewis to Wendy Smith and Han Nguyen with attachment re: affidavit | Work Product |
| | 08/10/05 | Email from Andy Lewis to Wendy Smith and Han Nguyen with attachment re: affidavit | Work Product |
| | 08/01/05 | Email from Roger Bone to Han Nguyen with attached emails between Roger Bone, Steve Friedberg, Ian Kawaley and Patrick Reardon | Attorney/Client Privilege |

PHDATA 1305358_2

| Item No. | Date | Description | Privilege Assertion |
|---|---|---|---|
| | 08/02/05 | Email from Roger Bone to Han Nguyen and forwarding email (Friedberg000106) | Attorney/Client Privilege – Redacted |
| | 08/02/05 | Email from Roger Bone to Han Nguyen and forwarding email (Friedberg000110) | Attorney/Client Privilege – Redacted |
| | 08/02/05 | Email from Roger Bone to Han Nguyen and forwarding email (Friedberg000115) | Attorney/Client Privilege – Redacted |
| | 08/02/05 | Email from Roger Bone to Han Nguyen and forwarding email (Friedberg000134) | Attorney/Client Privilege – Redacted |
| | 08/02/05 | Email from Roger Bone to Han Nguyen and forwarding email (Friedberg000183) | Attorney/Client Privilege – Redacted |
| | 08/02/05 | Email from Roger Bone to Han Nguyen and forwarding email (Friedberg000189) | Attorney/Client Privilege – Redacted |
| | 08/02/05 | Email from Roger Bone to Han Nguyen and forwarding email (Friedberg000198) | Attorney/Client Privilege – Redacted |
| | 08/02/05 | Email from Roger Bone to Han Nguyen and forwarding email (Friedberg000200) | Attorney/Client Privilege – Redacted |
| | 08/05 | Witness Statement / Affidavit of Andrew A. Lewis (and drafts) | Work Product Privilege |
| | | Spreadsheet, re: Debit Bordereau Summary, undated | Non-responsive |
| | | Spreadsheet, re: Debit Bordereau Summary, undated. | Non-responsive |
| | | Spreadsheet, re: Uncollected Premium-Detail, undated | Non-responsive |
| | | Spreadsheet, re: Commissions After Rehab - Summary, undated. | Non-responsive |
| | | Spreadsheet, re: Commissions After Rehab - Detail, undated | Non-responsive |
| | | Spreadsheet, re: Total Due From Research Underwriters to Legion Ins. in Liquidation, 3/24/05 | Non-responsive |

Plaintiff is continuing his review of documents and reserves the right to

supplement and/or remove documents from this list.

PHDATA 1305358_2

**EXHIBIT E**

08-24-2005 4309 BMQ

1

| | | |
|---|---|---|
| 1 | ROUGH AND UNEDITED TRANSCRIPT | 09:34:34a |
| 2 | IN THE UNITED STATES DISTRICT COURT | 09:34:34a |
| | FOR THE EASTERN DISTRICT OF PENNSYLVANIA | 09:34:34a |
| 3 | | |
| 4 | - - - | 09:34:34a |
| 5 | | |
| 6 | STEPHEN M. FRIEDBERG, | 09:34:34a |
| 7 | Plaintiff | 09:34:34a |
| 8 | v                         NO. 02-CV-3193 | 09:34:34a |
| 9 | MUTUAL HOLDINGS, LTD., et al., | 09:34:34a |
| 10 | Defendants | 09:34:34a |
| 11 | | |
| 12 | Oral deposition of ANDREW A. LEWIS, | 09:34:34a |
| 13 | taken at the law offices of BALLARD SPAHR ANDREWS & | 09:34:34a |
| 14 | INGERSOLL, L.L.P., 1735 Market Street, 51st Floor, | 09:34:34a |
| 15 | Philadelphia, Pennsylvania, on Wednesday, August 24, | 09:34:34a |
| 16 | 2005, commencing at approximately 9:34 a.m., before | 09:34:34a |
| 17 | Barbara McKeon Quinn, a Registered Merit Reporter, | 09:34:34a |
| 18 | pursuant to notice. | 09:34:34a |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |

2

| | | |
|---|---|---|
| 1 | | |
| 2 | APPEARANCES: | 09:34:34a |
| 3 | WENDY E.D. SMITH, ESQUIRE | 09:34:34a |
| | wsmith@hrslaw.com | 09:34:34a |
| 4 | and | 09:34:34a |
| | PATRICK J. REGA, ESQUIRE | 09:34:34a |
| 5 | prega@hrslaw.com | 09:34:34a |
| | HERGENROEDER REGA AND SOMMER, L.L.C. | 09:34:34a |

08-24-2005 4309 BMQ

```
 6    Centre City Tower, Suite 1700                    09:34:34a
      650 Smithfield Street                            09:34:34a
 7    Pittsburgh, Pennsylvania 15222                   09:34:34a
      412-208-3295                                     09:34:34a
 8    Counsel for Plaintiff                            09:34:34a

 9    DOUGLAS Y. CHRISTIAN, ESQUIRE                    09:34:34a
      christiand@ballardspahr.com                      09:34:34a
10    and                                              09:34:34a
      BROOKE J.  HERTZER, ESQUIRE                      09:34:34a
11    hertzerb@ballardspahr.com                        09:34:34a
      BALLARD SPAHR ANDREWS & INGERSOLL, LLP           09:34:34a
12    1735 Market Street                               09:34:34a
      51st Floor                                       09:34:34a
13    Philadelphia, Pennsylvania  19103                09:34:34a
      215-665-8500                                     09:34:34a
14    Counsel for Defendants                           09:34:34a

15

16

17

18

19

20

21

22

23

24

⬚                                                3
```

```
 1            ANDREW A. LEWIS, having been duly sworn,    09:34:34a

 2    was examined and testified as follows:              09:34:34a

 3            THE COURT REPORTER:  Usual stipulations?     09:34:37a

 4            MR. CHRISTIAN:  Regular stipulations as      09:34:37a

 5    far as I'm concerned.  I would assume -- Mr. Lewis,  09:34:38a

 6    are you represented at this deposition?              09:34:41a

 7            THE WITNESS:  No.                            09:34:43a

 8    BY MR. CHRISTIAN:                                    09:34:44a

 9    Q.   You have the right to read the transcript that  09:34:44a

10    will be prepared at your deposition and to make any  09:34:51a

11    corrections on an errata sheet.  You can avail       09:34:54a

12    yourself of that right or you can decide not to read 09:34:59a
```

08-24-2005 4309 BMQ

| | | |
|---|---|---|
| 8 | Q.    Mr. Lewis, you've had a chance to carefully | 10:02:25a |
| 9 | read again Exhibit A to the subpoena just now; | 10:02:28a |
| 10 | correct? | 10:02:31a |
| 11 | A.    Yes. | 10:02:31a |
| 12 | Q.    And you've done that; correct? | 10:02:32a |
| 13 | A.    Yes. | 10:02:34a |
| 14 | Q.    Other than the documents you've just | 10:02:34a |
| 15 | identified, do you possess any documents responsive to | 10:02:48a |
| 16 | the subpoena you have not produced? | 10:02:55a |
| 17 | A.    I do not believe so. | 10:02:59a |
| 18 | Q.    Did anyone review the documents before they | 10:03:00a |
| 19 | were produced? | 10:03:12a |
| 20 | A.    There was review by an associate of Han who I | 10:03:12a |
| 21 | did not meet and do not remember her name.  It was out | 10:03:26a |
| 22 | of the office and then there was a review by | 10:03:34a |
| 23 | Mr. Rega's firm. | 10:03:39a |
| 24 | Q.    What was the purpose of those reviews as you | 10:03:45a |

| | | |
|---|---|---|
| ▯ | | 19 |
| 1 | understood it? | 10:03:56a |
| 2 | A.    They wanted to see the scope of my information. | 10:03:57a |
| 3 | Q.    Before the documents were produced to us? | 10:04:09a |
| 4 | Correct? | 10:04:11a |
| 5 | A.    Yes.  Yes. | 10:04:12a |
| 6 | Q.    And you left them do that? | 10:04:13a |
| 7 | A.    Yes. | 10:04:14a |
| 8 | Q. | 10:04:15a |
| 9 | A.    I extended the same invitation to Mutual | 10:04:20a |
| 10 | Indemnity.  That I would help them in any way that I | 10:04:22a |
| 11 | could. | 10:04:29a |
| 12 | Q.    Sir, did you tell M I or any of its counsel | 10:04:29a |
| 13 | that you were letting Mr. Friedberg's counsel review | 10:04:31a |

08-24-2005 4309 BMQ

| | | |
|---|---|---|
| 14 | the documents before they were produced? | 10:04:36a |
| 15 | A.    I did not. | 10:04:38a |
| 16 | Q.    Did you offer for us to review the documents | 10:04:39a |
| 17 | before they were produced? | 10:04:43a |
| 18 | A.    I offered to Mr. Pickering, Mr. Alexander, and | 10:04:44a |
| 19 | Mr. Rega on numerous times to help out any way that I | 10:04:51a |
| 20 | could. | 10:04:56a |
| 21 | Q.    Hearings my question though.  With once you got | 10:04:56a |
| 22 | the subpoena, and you obtained documents you thought | 10:04:59a |
| 23 | were responsive to the subpoena, did you make an offer | 10:05:06a |
| 24 | to us for us to review these before they were | 10:05:09a |

| | | |
|---|---|---|
| ⬭ | | 20 |
| 1 | produced? | 10:05:12a |
| 2 | A.    I did not. | 10:05:13a |
| 3 | Q. | 10:05:14a |
| 4 | A.    You were on vacation. | 10:05:14a |
| 5 | Q.    Was Ms. Hertzer on vacation? | 10:05:18a |
| 6 | A.    I don't know her schedule. | 10:05:21a |
| 7 | Q.    All right.  Let's talk about the chronology of | 10:05:22a |
| 8 | your involvement with this subpoena.  You've already | 10:05:31a |
| 9 | testified you accepted service of the subpoena.  Did | 10:05:35a |
| 10 | you have conversations with anyone about the subpoena | 10:05:40a |
| 11 | before you started to obtain documents? | 10:05:44a |
| 12 | A.    The subpoena was served on July 22nd, 2005. | 10:05:51a |
| 13 | Discussions on this case have been going on since | 10:06:06a |
| 14 | 2002. | 10:06:09a |
| 15 | Q.    Mr. Lewis? | 10:06:10a |
| 16 | A.    So the answer to your question. | 10:06:11a |
| 17 | Q.    Mr. Lewis.  Excuse me. | 10:06:12a |
| 18 | A.    I'm not finished my answer. | 10:06:14a |
| 19 | Q.    You are not responding to my question. | 10:06:15a |

08-24-2005  4309  BMQ

| | | |
|---|---|---|
| 16 | testimony? | 10:30:54a |
| 17 | A.    That's the best of my recollection, yes. | 10:30:54a |
| 18 | Q.    So once you you had gathered the documents you | 10:30:57a |
| 19 | pit them in a box and you called Mr. Friedberg's | 10:31:06a |
| 20 | lawyers to tell them you had done so.  Is that what | 10:31:11a |
| 21 | you said? | 10:31:14a |
| 22 | A.    That's what I said. | 10:31:14a |
| 23 | Q.    Why did you call Mr. Friedberg's lawyers strike | 10:31:18a |
| 24 | that.  You did not get the subpoena from | 10:31:24a |

| | | |
|---|---|---|
| 0 | | 36 |
| 1 | Mr. Friedberg, did you? | 10:31:26a |
| 2 | A.    No. | 10:31:27a |
| 3 | Q.    Why did you call Mr. Friedberg's lawyers and | 10:31:29a |
| 4 | tell them that you had the documents ready? | 10:31:32a |
| 5 | A.    Out of courtesy.  I believe I also called | 10:31:35a |
| 6 | Brooke to tell her the documents were ready.  I | 10:31:45a |
| 7 | believe I called Brooke after I called Mr. Friedberg's | 10:31:48a |
| 8 | attorneys. | 10:31:51a |
| 9 | Q.    On the same day? | 10:31:52a |
| 10 | A.    Don't remember. | 10:31:53a |
| 11 | Q.    Well, after you called Mr. Friedberg's lawyers, | 10:31:58a |
| 12 | they took possession of the documents; correct? | 10:32:07a |
| 13 | A.    No.  I don't believe that happened. | 10:32:10a |
| 14 | Q.    Did they come out and review the documents? | 10:32:12a |
| 15 | A.    They did. | 10:32:14a |
| 16 | Q.    Okay.  So you called them and said you had done | 10:32:15a |
| 17 | your search, you had a box of documents.  How did it | 10:32:24a |
| 18 | happen that they came out and looked at them?  Did you | 10:32:27a |
| 19 | invite them to do that? | 10:32:29a |
| 20 | A.    I believe they suggested it and I said that's | 10:32:33a |
| 21 | fine. | 10:32:39a |

08-24-2005 4309 BMQ

22    Q.    Did you tell Ms. Hertzer or did you tell me         10:32:40a
23    that they were going to preview these documents before    10:32:43a
24    they were produced?                                        10:32:45a

⬚                                                                37

1    A.    Did not.                                             10:32:46a
2    Q.    Did you think about it?                              10:32:47a
3    A.    Did not.                                             10:32:49a
4    Q.    You didn't call Ms. Hertzer about the documents     10:32:50a
5    until after the lawyers had looked at them; is that       10:33:03a
6    correct?                                                   10:33:06a
7    A.    I don't remember the chronology.                    10:33:06a
8    Q.    How many hours or days after you contacted          10:33:08a
9    Mr. Friedberg's lawyers did they come look at the         10:33:15a
10   documents?                                                 10:33:18a
11   A.    Was it the same day?                                10:33:18a
12   A.    I don't believe so.                                 10:33:23a
13   Q.    Do you know when it was, how many days after        10:33:28a
14   your conversation that it was when they came out and      10:33:32a
15   looked at the documents?                                   10:33:37a
16   A.    I believe it was the next day.  I'm not             10:33:38a
17   certain, though.                                          10:33:44a
18   Q.    And who came out to look at the documents?          10:33:44a
19   A.    I don't know.  It was one of the employees of I     10:33:47a
20   believe Schnader.  I was not physically there.            10:33:53a
21   Q.    What's your understanding as to what happened?      10:33:58a
22   A.    The box was left in a chair.  The attorney came     10:34:00a
23   in.  Someone from my office put the box in a              10:34:11a
24   conference room.  They looked at it and left.            10:34:16a

⬚                                                                38

1    Q.    Did they tab any or did they indicate they         10:34:19a

08-24-2005 4309 BMQ

| | |
|---|---|
| 2  wanted any copies, to your knowledge? | 10:34:24a |
| 3  A.    There were no copies made to my knowledge.  I | 10:34:27a |
| 4  wasn't there, so I don't know what else they did. | 10:34:38a |
| 5  Q.    What did you hear?  Did you hear anything about | 10:34:41a |
| 6  what they did? | 10:34:43a |
| 7  A.    From my coworkers? | 10:34:44a |
| 8  Q.    From anybody. | 10:34:46a |
| 9  A.    No. | 10:34:47a |
| 10  Q.    What was the next conversation you had with | 10:34:47a |
| 11  anybody about the subpoena or the documents being | 10:34:55a |
| 12  produced pursuant to the subpoena after that person | 10:34:57a |
| 13  reviewed the documents and left? | 10:35:08a |
| 14  A.    The documents were in a box and I would have | 10:35:10a |
| 15  received -- I did receive a phone call from -- I'm not | 10:35:24a |
| 16  sure if it was Mr. Rega or Ms. Smith about the | 10:35:30a |
| 17  documents and they said that certain documents were | 10:35:38a |
| 18  not relevant, those were the accounting documents that | 10:35:43a |
| 19  I alluded to. | 10:35:48a |
| 20  Q.    Are those the only documents they mentioned in | 10:35:50a |
| 21  that call? | 10:35:52a |
| 22  A.    And then there was a document from December of | 10:35:53a |
| 23  2004 with an e-mail covering to Mr. Rega and I cannot | 10:36:02a |
| 24  remember if it was a back and forth or two independent | 10:36:16a |

| | |
|---|---|
| ᐅ | 39 |
| 1  ones, but it was one document. | 10:36:22a |
| 2  Q.    So accounting documents and these December '04 | 10:36:27a |
| 3  e-mails were documents.  Were they the only two types | 10:36:32a |
| 4  of documents mentioned in this phone call that weren't | 10:36:37a |
| 5  relevant? | 10:36:43a |
| 6        MS. SMITH:  Objection.  Mischaracterizes | 10:36:46a |
| 7  his testimony.  He indicated that the first section -- | 10:36:47a |

Page 31

08-24-2005 4309 BMQ

| | | |
|---|---|---|
| 8 | MR. CHRISTIAN:  I don't need a speaking | 10:36:50a |
| 9 | objection.  I'll rephrase the question. | 10:36:51a |
| 10 | MS. SMITH:  Thank you. | 10:36:52a |
| 11 | BY MR. CHRISTIAN: | 10:36:53a |
| 12 | Q.    In the conversation with someone from | 10:36:53a |
| 13 | Mr. Rega's firm, whoever it was indicated that certain | 10:37:00a |
| 14 | documents in the box were not relevant.  Am I right so | 10:37:09a |
| 15 | far? | 10:37:13a |
| 16 | A.    Relevant, sure. | 10:37:15a |
| 17 | Q.    I mean that's what you said.  Which documents | 10:37:21a |
| 18 | in this conversation did they indicate were not | 10:37:24a |
| 19 | relevant?    You've said the accounting documents; | 10:37:27a |
| 20 | correct? | 10:37:30a |
| 21 | A.    There were accounting documents on the -- with | 10:37:30a |
| 22 | Legion Insurance Company and the two December of 2004 | 10:37:40a |
| 23 | e-mail cover notes with the same document behind | 10:37:53a |
| 24 | them.  I do not believe there were any other | 10:37:57a |

| | | |
|---|---|---|
| �box | | 40 |
| 1 | documents. | 10:37:59a |
| 2 | Q.    But that you don't believe you were advised | 10:38:01a |
| 3 | that any other documents were irrelevant in that | 10:38:05a |
| 4 | conversation.  Is that what you meant? | 10:38:08a |
| 5 | A.    Yes. | 10:38:10a |
| 6 | Q.    What did you say in response to that? | 10:38:10a |
| 7 | A.    Okay. | 10:38:17a |
| 8 | Q.    Okay, what?  Did they want you to take them out | 10:38:19a |
| 9 | of the box? | 10:38:22a |
| 10 | A.    They said those were not relevant, take them | 10:38:24a |
| 11 | out of the box.  I said okay. | 10:38:27a |
| 12 | Q.    Did you have any other discussion during that | 10:38:32a |
| 13 | conversation about the subpoena or the documents to be | 10:38:37a |

Page 32

08-24-2005 4309 BMQ

16  A.    You had.                                           11:49:54a

17  Q.    You got an e-mail from Mr. Rega on the ninth       11:49:55a

18  with the attachment and same day after revising it you  11:50:00a

19  sent it back to him; is that correct?                    11:50:04a

20  A.    I don't know.  Potentially.                        11:50:06a

21  Q.    So you don't remember what it was called?  You     11:50:16a

22  don't remember how many pages it was?  You don't         11:50:18a

23  remember any of the questions other than what you've     11:50:21a

24  told us about already; is that correct?                  11:50:24a

0                                                            78

1   A.    Yes.                                               11:50:25a

2   Q.    Do you recall anything else about the              11:50:31a

3   conversation you had with Mr. Rega that you testified    11:50:39a

4   about just a little while ago, other than what you've    11:50:43a

5   told us about already?                                   11:50:46a

6   A.    The meeting?                                       11:50:48a

7   Q.    Yes.  The day long meeting.                        11:50:48a

8   A.    Just that he was commenting how complicated,       11:50:50a

9   convoluted Mutual Risk Management was, how he was --     11:51:00a

10  he commented just that these structures were a true      11:51:10a

11  win for all parties involved, meaning the insurance      11:51:18a

12  companies made out, the reinsurance companies made       11:51:21a

13  out, the agents and the brokers made out, and the        11:51:24a

14  shareholders made out, and how unique that was in the    11:51:28a

15  business world that everybody makes out.                 11:51:33a

16  Q.    And included in those entities was                 11:51:39a

17  Mr. Friedberg's company; correct?                        11:51:41a

18  A.    Yes.                                               11:51:47a

19  Q.    Do you remember anything else about that day       11:51:47a

20  long meeting?                                            11:51:53a

21  A.    Just discussions on my opinion on the current      11:51:54a

08-24-2005 4309 BMQ

| | | |
|---|---|---|
| 5 | A.     They have said numerous times that they would | 02:04:31p |
| 6 | like me to testify and tell everything to the best of | 02:04:39p |
| 7 | my knowledge, and tell the truth, and that would be | 02:04:42p |
| 8 | it. | 02:04:48p |
| 9 | Q.     But they haven't given you any indication at | 02:04:48p |
| 10 | all as to even the general areas of your expected | 02:04:50p |
| 11 | testimony; is that correct? | 02:04:55p |
| 12 | A.     I don't believe they have. | 02:04:57p |
| 13 | Q.     So as you sit here today, you have no idea what | 02:05:09p |
| 14 | they want you to testify about at the hearing.  Is | 02:05:13p |
| 15 | that fair? | 02:05:15p |
| 16 | A.     Did not say that.  I have a fairly good idea of | 02:05:16p |
| 17 | what they want me to testify about. | 02:05:20p |
| 18 | Q.     Well, what do you think they want you to | 02:05:22p |
| 19 | testify about? | 02:05:24p |
| 20 | A.     My understanding of the Mutual Indemnity | 02:05:25p |
| 21 | programs, my role at MRM. | 02:05:32p |
| 22 | Q.     Anything else? | 02:05:45p |
| 23 | A.     That's pretty broad. | 02:05:48p |
| 24 | Q.     Yeah, it is.  Anything else? | 02:05:51p |

113

| | | |
|---|---|---|
| 1 | A.     No. | 02:05:54p |
| 2 | Q.     What's the basis of your understanding as to | 02:05:55p |
| 3 | what they want you to testify about if they haven't | 02:05:58p |
| 4 | told you? | 02:06:01p |
| 5 | A.     I guess it was my assumption, based upon | 02:06:02p |
| 6 | several years of hearing this, these discussions, and | 02:06:14p |
| 7 | so I guess from your discussion with me, when you came | 02:06:27p |
| 8 | out to my office. | 02:06:30p |
| 9 | Q.     Mr. Friedberg has asked you to be available for | 02:06:33p |
| 10 | testimony on the 12th, correct or his lawyers have? | 02:06:37p |

Page 91

08-24-2005 4309 BMQ

| | | |
|---|---|---|
| 11 | A. His lawyers, yes. | 02:06:40p |
| 12 | Q. Getting back real quickly to the question and | 02:06:41p |
| 13 | answer document that you testified about before we | 02:06:54p |
| 14 | took the lunch break, did that -- was that ever | 02:06:57p |
| 15 | revised into an affidavit, to your knowledge? | 02:07:00p |
| 16 | A. Was that -- | 02:07:03p |
| 17 | Q. Have you signed an affidavit in this case? | 02:07:10p |
| 18 | A. I have signed an affidavit. | 02:07:12p |
| 19 | Q. Do you have a copy of the affidavit? | 02:07:14p |
| 20 | A. I have a copy of the affidavit. | 02:07:16p |
| 21 | Q. Signed affidavit? | 02:07:18p |
| 22 | A. Yes. | 02:07:19p |
| 23 | Q. What did you do with the signed affidavit? Did | 02:07:19p |
| 24 | you send it to one of Mr. Friedberg's lawyers or give | 02:07:23p |

114

| | | |
|---|---|---|
| 1 | it to one of Mr. Friedberg's lawyers? | 02:07:27p |
| 2 | A. It's was given to Han. | 02:07:29p |
| 3 | Q. Did you give it to Han? | 02:07:32p |
| 4 | A. I did. | 02:07:33p |
| 5 | Q. For what purpose did you give it to Han? | 02:07:34p |
| 6 | A. It needed to be notarized and he said that he | 02:07:37p |
| 7 | had a notary in his office. I walked it into his | 02:07:46p |
| 8 | office. No, I didn't walk it into his office. It was | 02:07:50p |
| 9 | in his office. They produced the final copy. Han's | 02:07:58p |
| 10 | firm did. And it was -- I executed it and it was note | 02:08:01p |
| 11 | righted in my presence at his office and I got a copy | 02:08:07p |
| 12 | and the original was left with Han. | 02:08:09p |
| 13 | Q. When was strike that. When did you execute the | 02:08:13p |
| 14 | affidavit? | 02:08:16p |
| 15 | A. I don't remember the exact date. I believe it | 02:08:17p |
| 16 | was Thursday of last week. I don't recall what date | 02:08:34p |

Page 92

08-24-2005 4309 BMQ

```
 2  were made by Mr. Friedberg's counsel with regard to        02:19:15p
 3  whether it would be presented; is that correct?           02:19:19p
 4  A.    To whom?                                             02:19:21p
 5  Q.    To you.                                              02:19:22p
 6  A.    Yes.  But I can't recall if they specifically       02:19:24p
 7  said that it would be handed to the judge.  That was      02:19:29p
 8  my understanding and assumption, but as you asked the     02:19:36p
 9  question, I'm not sure they actually said that.  They     02:19:39p
10  may have.                                                 02:19:42p
11  Q.    Well, we've asked for it and they're not giving     02:19:48p
12  it to us.  So I need to ask you, if you can't tell me     02:19:58p
13  just say you can't tell me, tell me what was in the       02:20:04p
14  affidavit.                                                02:20:07p
15  A.    It was -- started with my name.                     02:20:14p
16  Q.    That's a good start.                                02:20:18p
17  A.    I had been employed by Mutual Risk Management       02:20:20p
18  from 1989 until 2001.  Talked about my job description.   02:20:28p
19  Q.    I want you to tell me with as much specificity      02:20:36p
20  as can you what this affidavit said.                      02:20:39p
21  A.    Just that was --                                    02:20:41p
22  Q.    Mr. Lewis, I know you're struggling with this.      02:20:47p
23  I am as well.  But we're not getting this affidavit       02:20:50p
24  from these guys.  So the only way for me to get this      02:20:53p
```

123

```
 1  information is for me to ask you, and I'm going to ask     02:20:58p
 2  you to tell me what was in the affidavit with as much     02:21:02p
 3  specificity as you can.  That's my question.              02:21:05p
 4  A.    That's fine.  And my smile was after my first       02:21:08p
 5  sentence I was going to recite my address, but was --     02:21:10p
 6  I withheld.  I talked about my employment at MRM and      02:21:15p
 7  my job at -- excuse me -- my original employment I        02:21:22p
```

08-24-2005 4309 BMQ

```
 8  think with Legion, and then it was with Commonwealth      02:21:26p
 9  Risk.  My duty as a salesman.  My kind of                 02:21:28p
10  understanding of -- I'm trying to remember at that        02:21:37p
11  point --                                                  02:21:46p
12  Q.    If you can't remember, just tell me.  I don't       02:21:47p
13  want you to guess.                                        02:21:49p
14  A.    I would be guessing.  I cannot give specifics.      02:21:50p
15  Can I talk -- do you want general?                        02:21:53p
16  Q.    Yes, please.  You can tell me the topics if you     02:21:55p
17  can't remember what was specifically said about each      02:21:59p
18  topic.  You can just identify the topics to the extent    02:22:01p
19  you remember them.                                        02:22:05p
20  A.    It talked about the E-11, E-14 and U-21             02:22:08p
21  programs, the opening of the Legg Mason accounts, the     02:22:19p
22  Prudential accounts, and then the Morgan Stanley          02:22:31p
23  accounts.  I guess the --                                 02:22:46p
24  Q.    I don't want you to guess.                          02:23:10p
```

⏸                                                            124

```
 1  A.    Then I'm done.                                      02:23:11p
 2  Q.    Okay.  To the best of your knowledge, as you        02:23:15p
 3  sit here today, you've identified the general areas       02:23:18p
 4  referenced in your affidavit; is that correct?            02:23:23p
 5  A.    Yes.                                                02:23:25p
 6  Q.    Do you remember as you sit here today -- strike     02:23:26p
 7  that.  Was there any reference in the affidavit to        02:23:32p
 8  dividends?                                                02:23:34p
 9  A.    Yes.                                                02:23:37p
10  Q.    Let's mark as Exhibit 37 an e-mail that you         02:23:38p
11  sent to Steve Friedberg.                                  02:23:48p
12          (Exhibit Exhibit 37 was marked for               02:23:51p
13  identification.)                                          02:23:51p
```

08-24-2005 4309 BMQ

14  BY MR. CHRISTIAN:                                          02:24:03p

15  Q.    Would you read that to yourself, please, and       02:24:17p

16  tell me when you are ready to be questioned about it.     02:24:19p

17  A.    Okay.                                                02:24:33p

18  Q.    That's an e-mail from you to Steve Friedberg        02:24:33p

19  dated December 8, 2002; is that correct?                  02:24:37p

20  A.    Yes.                                                 02:24:39p

21  Q.    When was the last time you looked at that           02:24:39p

22  e-mail?                                                    02:24:43p

23  A.    Probably the day I sent it.                         02:24:43p

24  Q.    Do you have any idea what was redacted -- do        02:24:48p

                                                              125

1  you know what the word redacted means?                    02:24:54p

2  A.    Actually I don't.                                    02:24:57p

3  Q.    It means removed.  So there was print on this       02:24:58p

4  page that was removed, and that's what redacted            02:25:01p

5  means.  Do you know why the items before and after        02:25:03p

6  this e-mail were redacted?                                 02:25:07p

7  A.    No, I don't.                                         02:25:13p

8  Q.    Were you responding in this e-mail to an            02:25:14p

9  inquiry or statement Mr. Friedberg had made?              02:25:18p

10  A.    I don't have any recollection of writing this.     02:25:24p

11  So I don't know.                                          02:25:31p

12  Q.    You did write this e-mail, did you not?            02:25:31p

13  A.    It would suggest that I did.                        02:25:33p

14  Q.    It's from your e-mail address at Keystone Risk;    02:25:38p

15  is that right?                                            02:25:42p

16  A.    Yes.                                                 02:25:42p

17  Q.    It's got your name on it, right?                   02:25:43p

18  A.    Yes.                                                 02:25:46p

19  Q.    Is it accurate?  Is the e-mail accurate, not       02:25:47p

20  your name?                                                    02:25:57p

21  A.    Thank you.  I am -- I believe it's accurate.            02:25:57p

22  Q.    Now, in this e-mail you are telling Steve               02:26:05p

23  Friedberg that the moneys in the Morgan Stanley               02:26:11p

24  account were something other than a dividend.  Would          02:26:15p


                                                                  126

1  you agree with that characterization?                          02:26:18p

2  A.    Yes.                                                     02:26:25p

3  Q.    Now, tell me what you said in the affidavit, if         02:26:27p

4  you remember, about the concept of dividends.                  02:26:31p

5  A.    The kind of general comment was that dividends          02:26:36p

6  were used interchangeably -- the term dividends were           02:26:53p

7  used interchangeably with excess funds, redundant              02:27:00p

8  funds, unnecessary collateral, excess collateral, and         02:27:06p

9  that from my perspective after long hard thought I             02:27:13p

10  couldn't come up with an actual scenario where I saw a        02:27:22p

11  dividend being present.  Since there was no formal            02:27:26p

12  committees or processes, that we've generally relied          02:27:33p

13  on the collateral review, which was an internal MRM           02:27:37p

14  accounting and the collateral review determined the           02:27:48p

15  excess funds to be released.  Did I answer you?               02:27:48p

16  Q.    What is collateral review?                              02:27:55p

17  A.    Collateral review is a spreadsheet showing the         02:27:58p

18  funds in Mutual Indemnity outlining the claims that           02:28:06p

19  had been paid, the loss reserves that were posted, and        02:28:16p

20  the incurred but not reported development factors.            02:28:24p

21  The assets were then compared to the liabilities,             02:28:32p

22  which those three components were, and that determined        02:28:35p

23  where the program stood and then that figure was              02:28:39p

24  compared to the aggregate liability to determine,             02:28:45p


                                                                  127

08-24-2005 4309 BMQ

| | | |
|---|---|---|
| 1 | making a move and he was hopeful that not only my | 03:05:43p |
| 2 | funds but the Mutual Indemnity funds and the Friedberg | 03:05:48p |
| 3 | funds would move with him.  And there was paperwork | 03:05:52p |
| 4 | that had to get down to Bermuda to effect the | 03:05:57p |
| 5 | transfer. | 03:06:01p |
| 6 | Q.    You had nothing to do with the preparation of | 03:06:02p |
| 7 | that paperwork, did you?  I'm not talking about for | 03:06:03p |
| 8 | your funds. | 03:06:06p |
| 9 | A.    I don't believe I did.  I think the paperwork | 03:06:10p |
| 10 | was remitted directly from Prudential to Mutual | 03:06:15p |
| 11 | Indemnity. | 03:06:18p |
| 12 | Q.    Did you have any other role in the transfer of | 03:06:20p |
| 13 | these accounts at issue to Dean Witter/Morgan Stanley? | 03:06:22p |
| 14 | A.    Other than what was previously discussed, no. | 03:06:29p |
| 15 | Q.    I take it strike that.  Was the transfer to | 03:06:38p |
| 16 | Dean Witter after you left CRS? | 03:06:46p |
| 17 | A.    I don't believe so. | 03:07:00p |
| 18 | Q.    Someone at Mutual had to approve the transfer | 03:07:01p |
| 19 | obviously; is that correct? | 03:07:04p |
| 20 | A.    Uh-huh.  Yes. | 03:07:06p |
| 21 | Q.    Do you know who did? | 03:07:07p |
| 22 | A.    I don't know.  It would have been one of the | 03:07:09p |
| 23 | signatories I would have to imagine. | 03:07:14p |
| 24 | Q.    Okay we're going to get back to the affidavit | 03:07:33p |

| | | |
|---|---|---|
|  | | 149 |
| 1 | in a minute.  Now let's do that right now. | 03:07:36p |
| 2 |            We took a long detour from the | 03:07:38p |
| 3 | affidavit to talk about dividends and collateral | 03:07:41p |
| 4 | reviews and whatever else we talked about. | 03:07:43p |
| 5 | A.    You asked a question about the accountant.  I | 03:07:46p |
| 6 | said Chuck.  I believe his name was Clarke. | 03:07:49p |

08-24-2005 4309 BMQ

| | | |
|---|---|---|
| 7 | Q. First name or last name? | 03:07:52p |
| 8 | A. Last name. I believe. | 03:07:53p |
| 9 | Q. Pittsburgh based? | 03:07:56p |
| 10 | A. Western PA somewhere. | 03:07:57p |
| 11 | Q. Was he a tax lawyer in addition to being an | 03:08:02p |
| 12 | accountant? Do you know? | 03:08:05p |
| 13 | A. Don't know. Sorry for the interruption. | 03:08:07p |
| 14 | Q. No. That's okay. | 03:08:11p |
| 15 | Back to the affidavit. When you were | 03:08:13p |
| 16 | describing what was in the affidavit you said | 03:08:18p |
| 17 | something to the effect that you never saw a | 03:08:20p |
| 18 | dividend. Do you remember that testimony generally? | 03:08:21p |
| 19 | A. I can't remember in the affidavit. My comment | 03:08:31p |
| 20 | was to the best of my recollection I don't remember | 03:08:35p |
| 21 | seeing a formal dividend. Dividends were talked | 03:08:38p |
| 22 | about, we put them in our literature, put them in the | 03:08:42p |
| 23 | annual reports. But the actual process of a dividend | 03:08:45p |
| 24 | or handing over a dividend, I have no recollection of | 03:08:52p |

150

| | | |
|---|---|---|
| 1 | seeing. Distribution of excess funds, constantly. | 03:08:54p |
| 2 | Q. After a collateral review and approval; | 03:08:59p |
| 3 | correct? | 03:09:02p |
| 4 | A. Yes. | 03:09:08p |
| 5 | Q. Was there anything else in the affidavit about | 03:09:08p |
| 6 | the concept of dividends? | 03:09:10p |
| 7 | A. Yes. The process and kind of name for property | 03:09:12p |
| 8 | says of dividends and/or releases at MRM was | 03:09:23p |
| 9 | internally referred to as dividends on demand. That | 03:09:28p |
| 10 | when customers did I manned or requested a dividends, | 03:09:33p |
| 11 | their request was entertained. | 03:09:40p |
| 12 | Q. Not always acted on favorably, though; correct? | 03:09:41p |

Page 121

08-24-2005 4309 BMQ

| | | |
|---|---|---|
| 13 | A.    No. | 03:09:44p |
| 14 | Q.    What I'm saying is correct? | 03:09:45p |
| 15 | A.    Excuse me.  You are correct. | 03:09:47p |
| 16 | Q.    So if someone demanded a dividend, that demand | 03:09:48p |
| 17 | would be addressed; correct?  Either thumbs up or | 03:09:55p |
| 18 | thumbs down? | 03:10:00p |
| 19 | A.    Yes. | 03:10:01p |
| 20 | Q.    Do you remember anything else in the affidavit | 03:10:02p |
| 21 | about the dividend, concept of a dividend? | 03:10:07p |
| 22 | A.    No, I do not. | 03:10:17p |
| 23 | Q.    Was there anything in the affidavit about who | 03:10:18p |
| 24 | the money in these accounts belonged to or belongs to? | 03:10:20p |

|  |  |  |
|---|---|---|
| □ | | 151 |
| 1 | A.    I'm trying to remember the exact phrase.  I | 03:10:25p |
| 2 | believe I said something to the extent that they were | 03:10:46p |
| 3 | excess funds of Mr. Friedberg's held in an account at | 03:10:52p |
| 4 | either Prudential, Legg Mason or Morgan Stanley. | 03:11:03p |
| 5 | Q.    It will be so much easier if we had the | 03:11:09p |
| 6 | affidavit. | 03:11:13p |
| 7 | A.    I appreciate that. | 03:11:14p |
| 8 | Q.    But I can't get it yet.  Does the affidavit | 03:11:15p |
| 9 | indicate anywhere how it might be used?  Do you say I | 03:11:27p |
| 10 | submit this affidavit for a certain purpose or for use | 03:11:35p |
| 11 | in a certain way, anything along those lines? | 03:11:39p |
| 12 | A.    Don't believe so. | 03:11:44p |
| 13 | Q.    Did anyone tell you why it had to be | 03:11:46p |
| 14 | notarized? | 03:11:51p |
| 15 | A.    I'm trying to remember.  I don't believe so. | 03:12:13p |
| 16 | There was a notary seal and I said this needs to be | 03:12:15p |
| 17 | notarized and yes, it needs to be notarized.  So I'm | 03:12:19p |
| 18 | not sure I inquired or it was offered why it had to be | 03:12:21p |

08-24-2005 4309 BMQ

| | | |
|---|---|---|
| 19 | notarized. | 03:12:25p |
| 20 | Q.    Some affidavits say something to the effect | 03:12:25p |
| 21 | that the name of the affiant, the name of the person | 03:12:27p |
| 22 | giving the affidavit states under oath as follows.  Is | 03:12:33p |
| 23 | there any language such as that in this affidavit? | 03:12:37p |
| 24 | A.    I can't remember. | 03:12:45p |

0                                                                              152

| | | |
|---|---|---|
| 1 | Q.    Did you say anything in the affidavit about the | 03:12:47p |
| 2 | opening of any of these accounts other than what | 03:12:54p |
| 3 | you've told us about already today? | 03:12:56p |
| 4 | A.    I believe I said -- I discussed the accounts | 03:12:58p |
| 5 | opening with Mr. Friedberg and he instructed me to go | 03:13:18p |
| 6 | back to Mutual Indemnity as I was his liaison or point | 03:13:22p |
| 7 | person to open them, to get them opened, to have them. | 03:13:28p |
| 8 | Q.    Was there a reference in the affidavit to tax | 03:13:36p |
| 9 | considerations or tax discussions? | 03:13:39p |
| 10 | A.    Yes.  There we routinely discussed -- we being | 03:13:44p |
| 11 | employees of Mutual Risk Management routinely | 03:13:51p |
| 12 | discussed tax.  I believe but we did not give tax | 03:13:54p |
| 13 | advice. | 03:14:03p |
| 14 | Q.    Anything else about tax discussions or tax | 03:14:04p |
| 15 | considerations in the affidavit? | 03:14:06p |
| 16 | A.    Just that the Legg Mason accounts less making | 03:14:10p |
| 17 | son Prudential Morgan Stanley would offer the same | 03:14:17p |
| 18 | degree of tax deferral that the current or the present | 03:14:21p |
| 19 | structure did. | 03:14:26p |
| 20 | Q.    Anything else about tax in the affidavit? | 03:14:30p |
| 21 | A.    I don't believe so. | 03:14:33p |
| 22 | Q.    I'm sorry? | 03:14:35p |
| 23 | A.    I don't believe so.  Sorry. | 03:14:36p |
| 24 | Q.    Do you have any problem with us having that | 03:14:37p |

08-24-2005 4309 BMQ

153

| | | |
|---|---|---|
| 1 | affidavit? | 03:14:46p |
| 2 | A.    I don't think so. | 03:14:48p |
| 3 | Q.    Is there anything privileged in the affidavit | 03:14:55p |
| 4 | that you think should not be provided to us? | 03:14:57p |
| 5 | MS. SMITH:  Objection as to form. | 03:15:00p |
| 6 | MR. CHRISTIAN:  Just with regard to his | 03:15:02p |
| 7 | thinking.  I'm not asking for a legal conclusion. | 03:15:03p |
| 8 | With regard to whether you have to give it us. | 03:15:06p |
| 9 | THE WITNESS:  I'm not sure I fully | 03:15:08p |
| 10 | understand. | 03:15:09p |
| 11 | MS. SMITH:  May be confidential.  Your | 03:15:09p |
| 12 | word choice is one that is confusing. | 03:15:13p |
| 13 | THE WITNESS:  I'm sorry.  Could you try | 03:15:19p |
| 14 | to rephrase that simpler, more simply? | 03:15:20p |
| 15 | MR. CHRISTIAN:  Look, I'm having a tough | 03:15:24p |
| 16 | day.  There have already references to my appearance | 03:15:25p |
| 17 | and now you're saying I'm using poor words? | 03:15:27p |
| 18 | MS. SMITH:  Only said it once. | 03:15:30p |
| 19 | MR. CHRISTIAN:  This is too much? | 03:15:31p |
| 20 | MS. SMITH:  That's a pretty good day if | 03:15:32p |
| 21 | a lawyer only uses a word once in a deposition that's | 03:15:34p |
| 22 | -- | 03:15:37p |
| 23 | THE WITNESS:  You're using big words. | 03:15:37p |
| 24 | Q.    Do you have any concerns personally sir about | 03:15:39p |

154

| | | |
|---|---|---|
| 1 | providing that affidavit to us? | 03:15:41p |
| 2 | A.    I don't think so.  I'd like to look at it again | 03:15:42p |
| 3 | and then I will let you know. | 03:15:46p |
| 4 | Q.    And just so the record is clear, you have a | 03:15:49p |

08-24-2005 4309 BMQ

5   copy of the signed affidavit?                          03:15:53p

6   A.    And notarized copy, yes.                          03:15:57p

7   Q.    Is there any reference in the affidavit to        03:15:59p

8   shareholders agreements?                                03:16:24p

9   A.    I don't remember.                                 03:16:35p

10  Q.    All right.  Let's get back to the meeting         03:16:43p

11  yesterday to prepare for the deposition.  You said you  03:16:48p

12  looked at two documents, Mutual Holdings articles of    03:16:51p

13  incorporation and a letter from an attorney in New      03:16:58p

14  Mexico.  What's the letter from the attorney in New     03:17:02p

15  Mexico?                                                 03:17:05p

16  A.    There is a Legion Insurance Company customer      03:17:06p

17  and a Mutual Indemnity customer called Messilla Valley  03:17:10p

18  Transportation, that's M E S S I L L A, that does not   03:17:14p

19  have a dispute with Mutual but has a dispute with       03:17:20p

20  Legion over premium, returned premiums, and the        03:17:23p

21  attorney for the customer called to see if I would     03:17:31p

22  help them out and I said yes, I've had numerous         03:17:33p

23  discussions and he sent me a fax with a trial time      03:17:38p

24  line mentioning court appearances, dockets, other      03:17:44p

0                                                          155

1   words which I wasn't familiar with, and I asked        03:17:51p

2   Ms. Smith can you tell me what this means.  So it has  03:17:55p

3   nothing to do with this case.                          03:18:01p

4   Q.    Now, why did you review the articles of          03:18:04p

5   incorporation in the preparation session yesterday?    03:18:04p

6   A.    I was in Bermuda two Saturdays ago and had a     03:18:12p

7   meeting Monday after that Saturday on a customer       03:18:18p

8   completely unrelated to this, who has a rent a captive 03:18:23p

9   completely unrelated to MRM who was requesting         03:18:29p

10  dividends -- actually he was talking about the         03:18:33p

**EXHIBIT F**

# GOLDBERG, GRUENER, GENTILE
# HOROHO & AVALLI, P.C.

MARK J. GOLDBERG
HARRY J. GRUENER
GARY G. GENTILE
KENNETH J. HOROHO, JR.
CHARLES J. AVALLI
VELMA B. HIRSCH
KERRI L. CAPPELLA
SERÉNA M. WILLIAMS
MARK R. ALBERTS

ATTORNEYS AT LAW
SUITE 230 GRANT BUILDING
310 GRANT STREET
PITTSBURGH, PENNSYLVANIA 15219-2200

TELEPHONE (412) 261-9900
FACSIMILE (412) 261-7100

March 23, 2001

Patrick J. Rega, Esquire
AMATANGELO, BAISLEY & REGA
100 Fourth Street
Donora, PA  15033

RE:   <u>OUIMETTE v. OUIMETTE</u>

Dear Pat:

I reviewed the forms, along with the balance sheet.  I offer the following comments: I note that the attached account statements still reflect Mr. Lewis's alleged $1,000,000+ interest (See U21).  If he intends to hold back his full amount, contrary to what we discussed on the phone, then we may have a problem.  As you will recall, it was our intention to make him participate proportionally in the $1.8 million claim of Mutual's.  I believe his number would be something like 20% even without whatever adjustment Mark and Steve deemed appropriate.  I propose distributing payments on an incremental basis to Mr. Lewis as the funds are released, assuming the funds will be released in installments and not in one lump sum.  It is my understanding that $1,000,000 incremental distributions will "stay under the radar" and be less controversial.  In such a case, we would segregate portions of Mr. Lewis's "interest" in a separate account and release his share once all funds were repatriated.

Very truly yours,

Gary G. Gentile

GGG/7676/jep