Exhibit A

LAW OFFICES

## BALLARD SPAHR ANDREWS & INGERSOLL, LLP

1735 MARKET STREET, 51ST FLOOR
PHILADELPHIA, PENNSYLVANIA 19103-7599
215-665-8500
FAX 215-864-8999
WWW.BALLARDSPAHR.COM

BALTIMORE, MD
DENVER, CO
SALT LAKE CITY, UT
VOORHEES, NJ
WASHINGTON, DC
WILMINGTON, DE

DOUGLAS Y. CHRISTIAN
DIRECT DIAL, (215) 864-8404
PERSONAL FAX. (215) 864-9206
E-MAIL: CHRISTIAND@BALLARDSPAHR.COM

August 26, 2005

**Via Facsimile**

Han Nguyen, Esquire
Schnader
1600 Market Street
Suite 3600
Philadelphia, PA 19103-7286

Wendy E.D. Smith, Esquire
Hergenroeder Rega & Sommer LLC
Centre City Tower, Suite 1700
650 Smithfield Street
Pittsburgh, PA 15222

Re:    Friedberg v. Mutual Holdings Ltd., et. al.

Dear Counsel:

    Enclosed is a Notice of Deposition for Pat Rega for 8/30 at 3:00 p.m. As you know, the need for Mr. Rega's testimony relates to Exhibit 36, the March 23, 2001 letter that indicates that Mr. Rega told Mr. Gentile that Andy Lewis had a $1,000,000+ interest in U21 and apparently sent or prepared a document to that effect. We expect that the deposition will be limited and that no matters governed by the attorney client or work product privileges will be implicated. Since you will all be in town for Gary Roche's deposition on that date, I thought that would be a convenient time and date. Please let me know if the time and date are inconvenient and whether Mr. Rega will appear without being subpoenaed. Please also be advised that we intend to question Mr. Rega as a witness at the hearing on September 12.

Very truly yours,

Douglas Y. Christian

DYC/mas
Enclosure

DMEAST #8605395 v1

Exhibit B

# GOLDBERG, GRUENER, GENTILE HOROHO & AVALLI, P.C.

MARK J. GOLDBERG
HARRY J. GRUENER
GARY G. GENTILE
KENNETH J. HOROHO, JR.
CHARLES J. AVALLI
VELMA B. HIRSCH
KERRI L. CAPPELLA
SERENA M. WILLIAMS
MARK R. ALBERTS

ATTORNEYS AT LAW
SUITE 230 GRANT BUILDING
310 GRANT STREET
PITTSBURGH, PENNSYLVANIA 15219-2200

TELEPHONE (412) 261-9900
FACSIMILE (412) 261-7100

March 23, 2001

Patrick J. Rega, Esquire
AMATANGELO, BAISLEY & REGA
100 Fourth Street
Donora, PA 15033

RE:   <u>OUIMETTE v. OUIMETTE</u>

Dear Pat:

I reviewed the forms, along with the balance sheet. I offer the following comments: I note that the attached account statements still reflect Mr. Lewis's alleged $1,000,000+ interest (See U21). If he intends to hold back his full amount, contrary to what we discussed on the phone, then we may have a problem. As you will recall, it was our intention to make him participate proportionately in the $1.8 million claim of Mutual's. I believe his number would be something like 20% even without whatever adjustment Mark and Steve deemed appropriate. I propose distributing payments on an incremental basis to Mr. Lewis as the funds are released, assuming the funds will be released in installments and not in one lump sum. It is my understanding that $1,000,000 incremental distributions will "stay under the radar" and be less controversial. In such a case, we would segregate portions of Mr. Lewis's "interest" in a separate account and release his share once all funds were repatriated.

Very truly yours,

Gary G. Gentile

GGG/7676/jep

Friedberg 1160

Exhibit C

COPY OF TRANSCRIPT

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


STEPHEN M. FRIEDBERG,
Plaintiff

V                                              NO. 02-CV-3193

MUTUAL HOLDINGS, LTD., et al.,
Defendants


Oral deposition of ANDREW A. LEWIS, taken at the law offices of BALLARD SPAHR ANDREWS & INGERSOLL, L.L.P., 1735 Market Street, 51st Floor, Philadelphia, Pennsylvania, on Wednesday, August 24, 2005, commencing at approximately 9:34 a.m., before Barbara McKeon Quinn, a Registered Merit Reporter, pursuant to notice.



**James DeCrescenzo Reporting, LLC**
INNOVATING LITIGATION
1880 JFK Blvd., 6th Floor • Philadelphia, PA 19103
www.jdreporting.com

215.564.3905
PHONE

215.751.0581
FAX

ORAL DEPOSITION OF ANDREW A. LEWIS, 8/24/05

```
 1    Mr. Ouimette's share of the
 2    allocation.
 3         Q.    Used by whom?
 4         A.    I don't think he said by
 5    whom.
 6         Q.    Did you have an
 7    understanding of who used it?
 8         A.    I had assumed it was
 9    Mr. Friedberg.
10         Q.    What other conversation did
11    you have with Mr. Rega last night
12    about Mr. Gentile or the letter or
13    U-21 or our inquiry?
14         A.    He asked was this a
15    surprise and a common kind of
16    occurrence, and I said no, it was not
17    a surprise and no, it's not a common
18    occurrence.  Mark and Steve had,
19    within the U-21 structure, offered me
20    ownership in that, they had offered
21    me ownership in other things, and a
22    number of other clients had offered
23    me ownership as well.
24              My comment to Mr. Rega was
```

James DeCrescenzo Reporting, LLC

215.564.3905          Innovating Litigation          FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

ORAL DEPOSITION OF ANDREW A. LEWIS, 8/24/05

1    that that was something that I had

2    routinely said no, thank you, but it

3    was also evidence of the job that I

4    did as a salesman for -- on their

5    programs and for MRM.

6         Q.    What else was discussed

7    last night with Mr. Rega or anyone

8    else involving Mr. Gentile or the

9    letter or U-21 or our inquiries

10    regarding the letter?

11              MS. SMITH:   Objection as to

12    form.

13              THE WITNESS:   What was that

14    last part of that question?

15    BY MR. CHRISTIAN:

16         Q.    Our inquiry regarding the

17    letter.

18         A.    There was nothing mentioned

19    on the inquiry.   I'm not sure I

20    understand that aspect of it.

21              With the U-21 program, and

22    the offer of the ownership, it was

23    believed by Mr. Friedberg and

24    Mr. Ouimette that during the course

**James DeCrescenzo Reporting**, LLC

215.564.3905          Innovating Litigation          FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

ORAL DEPOSITION OF ANDREW A. LEWIS, 8/24/05

```
 1    of our relationship that -- that they
 2    had a disproportionate benefit of our
 3    relationship; that I did a lot of
 4    work and did not get compensated
 5    fairly.
 6              And my comment to them and
 7    to Mr. Rega last night was that that
 8    was just evidence of a good sales job
 9    and that's how we were trained to do
10    it.  So I told him that I had no
11    ownership; it was repeatedly offered;
12    I had been offered a number of things
13    from Mr. Friedberg and Mr. Ouimette
14    over the years, from vacations, from
15    a Ferrari, numerous other types of
16    gifts, vacations, wines.
17              I have not accepted
18    anything from Mr. Friedberg except
19    for a hundred dollar bill once in
20    Bermuda, which went to a bar tab, and
21    then a pair of I'll say Head skis
22    without bindings, which I gave to my
23    sister.
24         Q.    What other conversation did
```



**James DeCrescenzo Reporting**, LLC

215.564.3905          Innovating Litigation          FAX 215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

ORAL DEPOSITION OF ANDREW A. LEWIS, 8/24/05

1    of me, no.

2         Q.    Have you ever prepared such

3    a document?

4         A.    No.

5         Q.    Do you have any idea what

6    account statements Mr. Gentile is

7    referring to in the second line of

8    this letter?

9         A.    No.  It says See U-21.

10        Q.    Did you ever claim to have

11   an interest in the proceeds in U-21?

12        A.    No.

13        Q.    Did you ever tell anyone

14   you had an interest in any of the

15   proceeds, in any of the accounts at

16   issue in this lawsuit?

17        A.    No.

18        Q.    Do you believe you ever had

19   such an interest?

20        A.    No.

21        Q.    Did you ever have a

22   discussion with regard to your

23   responsibility or potential

24   responsibility for a portion of a

**James DeCrescenzo Reporting**, LLC

215.564.3905      InnovatingLitigation      FAX  215.751.0581
1880 JFK Blvd., 6ᵗʰ Floor, Philadelphia, PA 19103
www.JDReporting.com

ORAL DEPOSITION OF ANDREW A. LEWIS, 8/24/05

1    $1.8 million claim made by Mutual or

2    any of the Mutual companies?

3        A.    I'm sorry.  Can you repeat

4    that question?

5            MR. CHRISTIAN:  Would you

6    read the question back, please.

7                (The reporter read back the

8    following testimony:

9            "Q    Did you ever have a

10   discussion with regard to your

11   responsibility or potential

12   responsibility for a portion of a

13   $1.8 million claim made by Mutual or

14   any of the Mutual companies?")

15           THE WITNESS:  No.

16   BY MR. CHRISTIAN:

17       Q.    Have you ever discussed the

18   subject matter of this letter with

19   Mr. Friedberg?

20       A.    Mr. Friedberg repeatedly

21   offered me a participation in U-21.

22       Q.    Why?

23       A.    Because -- there's two

24   answers.  One, that is the type of

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905                        InnovatingLitigation                        FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

ORAL DEPOSITION OF ANDREW A. LEWIS, 8/24/05

1    person he is.  He shares, he gives

2    the shirt off his back.  Two, he felt

3    I was undercompensated and that I was

4    due.  I said thank you, but no, thank

5    you.

6        Q.    How much of an interest did

7    he propose that you have?

8        A.    I'll say a third.

9        Q.    Did you ever have a

10   discussion with Mr. Ouimette about

11   any such proposed interest?

12       A.    Mr. Friedberg and

13   Mr. Ouimette both made the offer and

14   I said no to both.

15       Q.    And did you ever share your

16   compensation information with

17   Mr. Friedberg, how much money you

18   made?

19       A.    In total or relating to his

20   programs?

21       Q.    Either one.

22       A.    In total, no.

23       Q.    Relating to his programs?

24       A.    I told him how we got

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905    InnovatingLitigation    FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

Exhibit D

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Stephen M. Friedberg

> **SUBPOENA IN A CIVIL CASE**

v.

Case Number:[1] 02-CV-3193

Mutual Holdings Ltd., et al.

TO:  Mr. Patrick J. Rega, Esq.
Hergenroeder, Rega and Sommer, LLC
Centre City Tower
650 Smithfield Street, Suite 1700
Pittsburgh, PA 15222

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify
the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the
above case.

| PLACE OF DEPOSITION<br>Ballard Spahr Andrews & Ingersoll LLP<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103-7599 | DATE AND TIME<br>September 6, 2005 at 9:00 a.m. |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date,
and time specified below (list documents or objects): **All documents listed in Exhibit A, attached hereto.**

| PLACE:<br>Ballard Spahr Andrews & Ingersoll LLP<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103-7599 | DATE AND TIME:<br>September 6, 2005 at 9:00 a.m. |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors,
or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters
on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY<br>FOR PLAINTIFF OR DEFENDANT)<br>*[signature]*<br>Attorney for Defendants | DATE<br>8/30/2005 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Brooke J. Hertzer, Esquire
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
215-665-8500

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] if action is pending in district other than district of issuance, state district under case number

| PROOF OF SERVICE | | |
|---|---|---|
| | DATE | PLACE |
| SERVED | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on_____

DATE

_____

SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

_____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. They court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty and appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this

rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT A

      1.      All documents referenced in the letter dated March 23, 2001 from Gary Gentile to you, a copy of which is attached hereto.

      2.      To the extent not produced in response to the previous Request No. 1, all documents that state, suggest or establish that Andy Lewis has or had an interest or a potential interest in the U21 Shareholder Agreement.

1

# GOLDBERG, GRUENER, GENTILE
## HOROHO & AVALLI, P.C.

MARK J. GOLDBERG
HARRY J. GRUENER
GARY G. GENTILE
KENNETH J. HOROHO, JR.
CHARLES J. AVALLI
VELMA B. HIRSCH
KERRI L. CAPPELLA
SERENA M. WILLIAMS
MARK R. ALBERTS

ATTORNEYS AT LAW
SUITE 230 GRANT BUILDING
310 GRANT STREET
PITTSBURGH, PENNSYLVANIA 15219-2200

TELEPHONE (412) 261-9900
FACSIMILE (412) 261-7100

March 23, 2001

Patrick J. Rega, Esquire
AMATANGELO, BAISLEY & REGA
100 Fourth Street
Donora, PA 15033

RE:   OUIMETTE v. OUIMETTE

Dear Pat:

I reviewed the forms, along with the balance sheet. I offer the following comments: I note that the attached account statements still reflect Mr. Lewis's alleged $1,000,000+ interest (See U21). If he intends to hold back his full amount, contrary to what we discussed on the phone, then we may have a problem. As you will recall, it was our intention to make him participate proportionately in the $1.8 million claim of Mutual's. I believe his number would be something like 20% even without whatever adjustment Mark and Steve deemed appropriate. I propose distributing payments on an incremental basis to Mr. Lewis as the funds are released, assuming the funds will be released in installments and not in one lump sum. It is my understanding that $1,000,000 incremental distributions will "stay under the radar" and be less controversial. In such a case, we would segregate portions of Mr. Lewis's "interest" in a separate account and release his share once all funds were repatriated.

Very truly yours,

Gary G. Gentile

GGG/7676/jep

# Exhibit E

LEXSEE 1995 US DIST LEXIS 14477

**DAVID MUSKO v. EDWARD MCCANDLESS, et al.**

**CIVIL ACTION NO. 94-3938**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1995 U.S. Dist. LEXIS 14477*

**September 29, 1995, Decided**
**September 29, 1995, FILED; October 2, 1995, ENTERED**

**COUNSEL:** [*1] For EDWARD MCCANDLESS, SECRETARY AND TOWNSHIP MANAGER, JOSEPH J. HEIN, CODE ENFORCEMENT OFFICER, MANRICO A. TRONCELLITI, COMMISSIONER/PRESIDENT, ALLEN R. DOWHIE, COMMISSIONER/VICE PRESIDENT, FRANK D. HIGGINS, COMMISSIONER, PHILLIP A. MANDATO, COMMISSIONER, THEODORE C.L. WENZEL, COMMISSIONER, WEST NORRITON TOWNSHIP, DEFENDANTS: JEFFREY P. HOYLE, HOLSTEN & WHITE, MEDIA, PA. ROBERT J. KERNS, LANDIS, KERNS AND ASSOCIATES, LANSDALE, PA. DAVID C. ONORATO, LANDIS, KERNS AND ASSOCIATES, LANSDALE, PA. For DALE R. BUTLER, DETECTIVE, POLICE DETECTIVE, WEST NORRITON TOWNSHIP POLICE DEPT., THEODORE R. MALINOWSKI, DEFENDANTS: JEFFREY P. HOYLE, HOLSTEN & WHITE, MEDIA, PA. For ROCIA NELL, M.D., MONTGOMERY COUNTY EMERGENCY SERVICE, DEFENDANT: JEFFREY P. HOYLE, HOLSTEN & WHITE, MEDIA, PA. JONATHAN B. SPRAGUE, POST & SCHELL, PC., PHILA, PA. JOSEPH J. MC ALEE, POST & SCHELL, P.C., PHILA, PA.

ARTHUR L. GUTKIN, ESQ., MOVANT, [PRO SE], CONSHOHOCKEN, PA.

For DAVID MUSKO, PLAINTIFF: ARTHUR L. GUTKIN, CONSHOHOCKEN, PA. DAVID MUSKO, PLAINTIFF, [PRO SE], NORRISTOWN, PA.

For THEODORE R. MALINOWSKI, CROSS-CLAIMANT: JEFFREY P. HOYLE, HOLSTEN & WHITE, MEDIA, PA. LAWRENCE R. WOEHRLE, MONTEVERDE & [*2] HEMPHILL, PHILA, PA.

For EDWARD MCCANDLESS, JOSEPH J. HEIN,

MANRICO A. TRONCELLITI, ALLEN R. DOWHIE, FRANK D. HIGGINS, PHILLIP A. MANDATO, THEODORE C.L. WENZEL, WEST NORRITON TOWNSHIP, CROSS-DEFENDANTS: JEFFREY P. HOYLE, HOLSTEN & WHITE, MEDIA, PA. ROBERT J. KERNS, LANDIS, KERNS AND ASSOCIATES, LANSDALE, PA. DAVID C. ONORATO, LANDIS, KERNS AND ASSOCIATES, LANSDALE, PA. For DALE R. BUTLER, DETECTIVE, CROSS-DEFENDANT: JEFFREY P. HOYLE, HOLSTEN & WHITE, MEDIA, PA. For ROCIA NELL, M.D., CROSS-DEFENDANT: JEFFREY P. HOYLE, HOLSTEN & WHITE, MEDIA, PA. JONATHAN B. SPRAGUE, POST & SCHELL, PC., PHILA, PA. JOSEPH J. MC ALEE, POST & SCHELL, P.C., PHILA, PA.

**JUDGES:** Robert S. Gawthrop, III, J.

**OPINIONBY:** Robert S. Gawthrop, III

**OPINION:**

MEMORANDUM

Gawthrop, J.

29 September 1995

Plaintiff, David Musko, moves this Court for a protective order pursuant to *Fed. R. Civ. P. 26(c)* to bar defendant, Dr. Rocia Nell, from taking the deposition of plaintiff's counsel, Arthur L. Gutkin, Esquire. Plaintiff asserts that the information defendant seeks in this deposition is protected by the attorney–client privilege, is already in defendant's possession, or can be obtained from plaintiff himself or elsewhere. [*3] Defendant asserts that plaintiff's counsel is a fact witness as to relevant events in this case. Upon the following reasoning I shall deny the motion.

  

In his Amended Complaint plaintiff alleges that Dr. Nell examined him on June 15, 1994 and "without reasonable or legitimate basis" diagnosed plaintiff as a danger to others and involuntarily committed him to Norristown State Hospital. (Amended Complaint PP 58-64) Plaintiff further alleges that Dr. Nell made this diagnosis "to abide by the request of the police rather than viewing the Petition [for commitment] in a neutral and non-biased manner." (Amended Complaint P 62) Defendant contends that plaintiff's counsel was present during the examination on June 16, 1994, and told the defendant that plaintiff was "eccentric," "manic," and "depressed." (Def. Br. in Opp. at 4) These alleged statements n1 and any observations n2 which may have formed the basis for these statements strike at the heart of plaintiff's claim against defendant.

> n1 These statements made to an adverse party are not protected under either the attorney–client privilege or the work product doctrine. *Westinghouse v. Republic of Philippines, 951 F.2d 1414, 1428 (3rd Cir. 1991).*

[*4]

> n2 Facts that attorneys witness or discover through their investigative efforts, as opposed to the impressions and conclusions drawn from them, are not protected by the work product doctrine. *Swarthmore Radiation v. Lapes, 155 F.R.D. 90 (E.D.Pa. 1994).*

Rule 26(c) permits a court to restrict discovery of relevant material upon a showing of good cause by the movant in order to protect "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Plaintiff, as the party seeking the protective order, bears the burden under Rule 26(c) of demonstrating good cause to preclude or limit testimony. *Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3rd Cir. 1986).* Unspecified allegations of harm do not constitute good cause under Rule 26(c). Id.

As a general rule, protective orders prohibiting depositions are rarely issued. *Frideres v. Schiltz, 150 F.R.D.*

153 (S.D. Iowa 1993) (citations omitted). And that defendant has served a deposition notice upon plaintiff's counsel, as opposed to a party or non–party witness, does not itself justify issuance of [*5] a protective order. In re Arthur Treacher's Franchisee *Litigation, 92 F.R.D. 429, 437 (E.D.Pa. 1981).* While the deposition of an attorney can often be burdensome and disruptive, and is not to be entered into unadvisedly or lightly, it is nevertheless appropriate where the attorney is a fact witness. *Doubleday v. Ruh, 149 F.R.D. 601, 613 (E.D.Cal. 1993); Johnston Dev. Group v. Carpenters Local 1578, 130 F.R.D. 348, 352 (D.N.J. 1990); N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83, 85 n. 2 (M.D.N.C. 1987).* In this case Mr. Gutkin appears to be a fact witness.

I recognize that an oral deposition could pose some difficulty in this case, in light of the attorney–client privilege and the work product doctrine. I thus direct that Mr. Gutkin's deposition be taken at a time when the Court is telephonically available, so that – should there arise any apparent overreaching into privileged matters – I can step in and resolve those questions, then and there, to insure that plaintiff's privacy is properly protected, yet the deposition proceed without undue hiatus. I remind counsel that "this judge is but a phone call away." *Hall v. Clifton Precision, 150 F.R.D.* [*6] *525, 531 (E.D.Pa. 1993).*

An order follows.

ORDER

AND NOW, this 29th day of September, 1995, it is hereby ordered that:

1. Plaintiff's Motion for a Protective Order is DENIED;

2. deposition of Plaintiff's counsel shall go forward pursuant to *Fed. R. Civ. P. 30;*

3. the June 8, 1995, Scheduling Order is amended to permit the limited discovery referred to in this Order.

BY THE COURT:

Robert S. Gawthrop, III, J.

  

LEXSEE 1998 US DIST LEXIS 10066

**SANTIAGO ARIAS v. CITY OF PHILADELPHIA, et al.**

**CIVIL ACTION NO. 97–6641**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1998 U.S. Dist. LEXIS 10066*

**June 23, 1998, Decided**
**June 23, 1998, Filed**

**DISPOSITION:** [*1] Defendants' Joint Motion to Compel Discovery and to Stay Depositions Pending Access to Discovery denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For SANTIAGO ARIAS, PLAINTIFF: LAWRENCE S. KRASNER, L. FELIPE RESTREPO, KRASNER & RESTREPO, PHILADELPHIA, PA USA.

For CITY OF PHILADELPHIA, GALLO, LIEUTENANT, KIMBERLY GESSNER, SCARPATO, DEFENDANTS: SHELLEY R. SMITH, CITY OF PHILADELPHIA, LAW DEPT., PHILADELPHIA, PA USA.

For JOHN BOUCHER, DEFENDANT: JEFFREY M. KOLANSKY, KOLANSKY AND STRAUSS, P.C., PHILA, PA USA.

**JUDGES:** JACOB P. HART, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** JACOB P. HART

**OPINION:**

ORDER AND OPINION

JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

DATE: 6/23/98

I. Introduction

Defendants have filed a Joint Motion to Compel Discovery and to Stay Depositions Pending Access to Discovery. For the reasons set forth herein, Defendants'

motion is denied.

II. Factual Background

In this action, filed under *42 U.S.C. § 1983,* plaintiff Santiago Arias ("Arias") claims that his constitutional rights were violated when he was convicted of drug crimes following intentional misrepresentations by Philadelphia Police Officers which led to the issuance of a constitutionally defective search warrant. Arias [*2] also claims that the City of Philadelphia intentionally withheld exculpatory evidence in violation of *Brady v. Maryland, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963).* Arias served approximately thirty–one months of a sentence of 155 months, before the City of Philadelphia vacated the judgment against him on September 19, 1997.

Plaintiff noticed the depositions of certain Philadelphia Police Officers named as defendants in this action, including Officers Boucher, Gallo, Gessner and Scarpato. At their depositions, however, Officers Boucher and Gessner asserted their 5th Amendment rights against self–incrimination, and declined to respond to essentially all of the questions asked of them.

Counsel for defendants noted on the record at both depositions that the Officers' decisions to rely upon the 5th Amendment were provoked primarily by statements made by Arias' attorneys, who, defense counsel claimed, hinted that they knew of some investigation pending against the Officers.

In this joint motion, Defendants seek leave to depose Arias' counsel, and to stay the remaining depositions noticed until counsel is deposed. Defendants argue that they need this discovery so that they [*3] can (a) determine whether they actually need the protection of the 5th Amendment, and, if necessary (b) create a record of statements made by Arias' counsel implying their knowl-

  

edge of an investigation.

In response to this motion, Arias attached an Affidavit sworn by his counsel, in which they explicitly stated that they have no undisclosed direct knowledge of an investigation. After receiving this affidavit, Gallo and Scarpato were deposed and did not invoke the 5th Amendment. Officer Gessner also withdrew her invocation of the 5th Amendment and was deposed. Finally, Officer Boucher now seeks to withdraw his invocation of the 5th Amendment and provide a full deposition. As a result of these developments, Defendants now concede in their reply memorandum that their original request for a stay of discovery is moot.

Defendants still maintain, nevertheless, that they should be permitted to depose Arias' counsel for the second purpose noted above—i.e., to permit Defendants to explain to a jury why Boucher and Gessner originally invoked the 5th Amendment.

III. Discussion

A. Deposing Counsel of Record

The deposing of an attorney of record in a case, while uncommon, [*4] is not predicated upon any heightened evidentiary standard. In re: Arthur Treacher's Franchisee *Litigation, 92 F.R.D. 429 (E.D. Pa. 1981)*. Instead, "if the attorney possesses relevant, non-privileged information, that information ought to be discoverable just as it would be if possessed by a party or a non-party." *Id. at 92 F.R.D. 438–39*. Thus, deposition of an attorney has been permitted where the attorney is a fact witness. *Musko v. McCandless, 1995 U.S. Dist. LEXIS 14477, 1995 WL 580275* (E.D. Pa. Sept. 29, 1995) at *1; see, also, *Fried v. Sungard Recovery Services, 164 F.R.D. 405 (E.D. Pa. 1996)*, where a motion to compel the deposition of counsel was denied where the court determined that he was not a fact witness.

Such depositions are not, however, taken as a matter of routine course. In *Musko v. McCandless, supra,* the court noted that "deposition of an attorney can often be burdensome and disruptive, and is not to be entered into unadvisedly or lightly." 1995 WL at *1. In Arthur Treacher, supra, this Court quoted with approval the observation of the United States District Court for the District of Arizona in *Draney v. Wilson, Morton, Assaf & McElligott, 1980 U.S. Dist. LEXIS 11220, [*5] 30 Fed. R. Serv. 2d (Callaghan) 960 (D. Ariz. 1980),* that:

> The adversarial nature of litigation causes the tempers of counsel to flare all too fre-

quently. Permitting an attorney on one side to become the inquisitor of an attorney on the other side carries a strong risk that another source of fuel is being provided.

*30 Fed. R. Serv. 2d (Callaghan) at 961,* quoted at *92 F.R.D. 429.*

Accordingly, in deciding whether an attorney of record may be deposed, the court in *Frazier v. Southeastern Pennsylvania Transportation Authority, 161 F.R.D. 309 (E.D. Pa. 1995),* considered:

> (1) The extent to which the proposed deposition promises to focus on central factual issues, rather than peripheral concerns; (2) the availability of the information from other sources, viewed with an eye toward avoiding cumulative or duplicative discovery; and (3) the harm to the party's representational rights resulting from the attorney's deposition.

*161 F.R.D. at 313;* quoting, *Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578, 130 F.R.D. 348, 352–53 (D.N.J. 1990)*. This Court will consider the same factors.

B. Defendants Have Not Met the Frazier Factors

Here, the Defendants' deposition [*6] of Arias' counsel will not harm Arias' representational rights in any way, since Defendants have specified that they do not seek counsel's recusal. See, Pennsylvania Rule of Professional Conduct 3.7. However, Defendants have not demonstrated either that their deposition of counsel will focus on factual issues which are central to this case, or that the information they seek is unavailable elsewhere.

Arias' counsel have now sworn that they have no undisclosed direct knowledge of an investigation. At this point, therefore, the issue Defendants seek to explore is no longer whether there is an investigation; it is only whether counsel for Arias led Defendants to believe there was an investigation. This is simply not a central factual issue which the jury will consider in deciding whether Arias' constitutional rights were violated. At best, it is a peripheral issue which may, in theory, affect the credibility of Boucher and Gessner.

Moreover, even without the testimony of Arias' counsel, Boucher and Gessner can testify fully as to their reasons for invoking the Fifth Amendment (if the trial

  

1998 U.S. Dist. LEXIS 10066, *6

court does not reject the entire line of questioning as prejudicial or tangential to the case). [*7] They can testify that they originally invoked the privilege because Arias' counsel suggested that there was a criminal investigation against them, and that they later waived the privilege when the same counsel swore that they had no knowledge of such an investigation.

Defendants argue, nonetheless, that it is not sufficient that Boucher and Gessner can testify. Arias can still benefit from the jury's impermissible inference that, because Boucher and Gessner once asserted their right against self–incrimination they must have something to hide. Defendants argue on their behalf that:

> In the absence of testimony from counsel, cross–examination by plaintiff's counsel at trial will proceed, approximately, as follows:
>
>> Q. Isn't it true that I never told you that I had special knowledge about the pendency of an investigation, and didn't I tell you that you would have to draw your own conclusions about taking the Fifth?

The jury will hear the question and the officers' denial, but will have no means to test the factual representation contained in counsel's question.

Defendants' Reply Memorandum at 3.

While this may be a legitimate strategic concern, it is not [*8] a reason to order the deposition of counsel. There is no reason to believe that a jury will weigh the implication inherent in Arias' counsel's questioning any more heavily than it will weigh the Officers' explanations. Even the least sophisticated juror will be well aware that Arias' counsel is partisan.

As noted above, Officer Boucher has now offered Arias the opportunity to fully depose him. There is no motion before this Court seeking to preclude Officer Boucher from un–taking the Fifth Amendment. Even if Officer Boucher were eventually precluded from un–taking the Fifth Amendment, however, this would not change the Court's decision here.

At the time Officer Boucher took the Fifth Amendment, he was told that the jury could be permitted to draw a negative inference. Deposition of John Boucher at page 5, lines 9–18, attached to Memorandum of Law in Support of Defendants' Motion, as Exhibit E; *Baxter v. Palmigiano, 425 U.S. 308, 318–20, 47 L. Ed. 2d 810, 96 S. Ct. 1551 (1978); United States v. Stelmokas, 100 F.3d 302, 311 (3d Cir. 1996)*.

Boucher nevertheless chose to invoke his privilege against self–incrimination, based upon his belief that some criminal prosecution [*9] awaited him. He has insistently maintained that he formed this belief not because of anything he, himself, knew, but only because Arias' lawyers were hinting that they knew something. Yet, when Boucher made his decision, he could not possibly have expected that Arias' counsel would later be deposed. Accordingly, Boucher cannot now be heard to say that he will be unduly prejudiced by the Court's denying him a specific means of rebuttal to an inference for which he already bargained.

IV. Conclusions

For the reasons stated above, Defendants' Joint Motion to Compel Discovery and to Stay Depositions Pending Access to Discovery is denied.

BY THE COURT:

JACOB P. HART

UNITED STATES MAGISTRATE JUDGE

