**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Stephen M. Friedberg, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | No. 02-CV-3193 |
| v. | : | (Judge Yohn) |
| | : | |
| Mutual Holdings Ltd., *et al.* | : | |
| | : | |
| Defendants. | : | |

## ORDER

AND NOW, this _____ day of _____, 2005, upon consideration of plaintiff Stephen M. Friedberg's Motion for Protective Order to quash the subpoena of Patrick Rega, Esquire and the Response of Mutual Defendants thereto, it is hereby ORDERED and DECREED that Plaintiff's Motion for Protective Order is DENIED.

_____

William H. Yohn, Jr., J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Stephen M. Friedberg, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | No. 02-CV-3193 |
| v. | : | (Judge Yohn) |
| | : | |
| Mutual Holdings Ltd., *et al.* | : | |
| | : | |
| Defendants. | : | |

**RESPONSE OF MUTUAL DEFENDANTS TO**
**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

For more than three years, Mr. Friedberg had been represented in this case solely by various members of the Schnader firm, including its CEO, an accomplished and experienced trial lawyer. Those lawyers represented Mr. Friedberg on all of the papers, in court, in chambers, in depositions and in dealing with counsel for Defendants. But in August, in the very same month Mr. Friedberg belatedly produced an important document that makes Mr. Rega a witness in this case, he entered his appearance as co-counsel for Mr. Friedberg. Now, Mr. Friedberg claims that Mr. Rega cannot be a witness because he is one of his lawyers. Such a tactic should not interfere with an appropriate inquiry of a witness with knowledge of non-privileged facts relevant to this case.

The issue for the Court's determination at a hearing on October 27 is whether this is a dispute governed by the Shareholder Agreements. If it is, the dispute should be decided in Bermuda, as the parties agreed.

Mr. Friedberg identified Andy Lewis as a witness who will support his version of the facts relating to this issue.[1] Mr. Lewis, a former employee of Commonwealth Risk Services, Inc. (a company that is in the same family of companies as Defendants but not a parent or subsidiary of any Defendant),[2] has since 2002 assisted Mr. Friedberg in his lawsuit in Pennsylvania's Commonwealth Court, this action, and one or more of the three suits initiated by Mr. Friedberg against Defendants in Bermuda, and he has had other business dealings with Mr. Friedberg.[3] Mr. Lewis has: met for hours with Mr. Rega and other counsel for Mr. Friedberg relating to Mr. Friedberg's prosecution of this case;[4] provided a signed affidavit that Mr. Friedberg refuses to produce;[5] at the request of counsel for Mr. Friedberg, removed documents that were subpoenaed from his files before the remainder of the files were produced to Defendants;[6] attended meetings in Bermuda and performed analyses on Mr. Friedberg's behalf;[7] reviewed deposition transcripts at the request of counsel for Mr. Friedberg;[8] and received otherwise privileged documents from counsel for Mr. Friedberg in the mirror Bermuda action

---

[1] See Plaintiff's initial disclosures, attached hereto as Exhibit 1.

[2] See Transcript of August 24, 2005 Deposition of Andrew A. Lewis ("Lewis Tr."), excerpts of which are attached hereto as Exhibit 2, at 17:11-14.

[3] See Transcript of July 19, 2005 Deposition of Stephen M. Friedberg ("Friedberg Tr."), excerpts of which are attached hereto as Exhibit 3, at 187:16 - 190:9; Lewis Tr., at 231:4 - 232:4.

[4] Lewis Tr., at 83:14 - 84:22, 94:14 - 96:19, 112:3 - 117:11.

[5] Lewis Tr., at 160:7 - 160:23.

[6] Lewis Tr., at 53:7 - 58:13.

[7] Lewis Tr., at 227:21 - 230:22.

[8] Lewis Tr., at 36: 9 - 39:12.

Mr. Friedberg filed three years ago against Defendants.[9] Mr. Lewis claims he received no compensation for any of these considerable services being rendered on behalf of Mr. Friedberg.[10]

To the extent Mr. Lewis' testimony is relevant to the issue of whether there is a dispute (and Mr. Friedberg certainly thinks it is, as he has asked Mr. Lewis to provide a witness statement and to testify at the hearing),[11] Mr. Lewis' credibility will be a "front-and-center" issue at the hearing. Defendants wondered why Mr. Friedberg and Mr. Lewis were so closely aligned and whether Mr. Lewis was, as he claims, doing all of this for Mr. Friedberg without any compensation. They found out the night before Mr. Lewis' deposition, when the letter attached hereto as Exhibit 4 was faxed to them. Counsel for Mr. Friedberg claimed an "oversight" in not having previously produced this letter.[12] That is a curious statement in light of the obvious importance of the letter and its impact on the credibility of Mr. Lewis.

The letter was from Gary Gentile, a lawyer representing Mark Ouimette, Mr. Friedberg's former partner in some of the programs at issue and the husband of Mr. Friedberg's sister.[13] The letter was to Pat Rega, counsel for Mr. Friedberg's sister in the divorce proceedings involving Mr. Ouimette.[14] He is, of course, as of August, also counsel for Mr. Friedberg in this matter. The letter stated in its entirety:

---

[9]   Lewis Tr., at 231:13 - 232:4.

[10]  Lewis Tr., at 232:5 - 232:10.

[11]  Lewis Tr., at 157:14 - 159:23.

[12]  Lewis Tr., at 143:8-12.

[13]  Lewis Tr., at 129:1 - 130:2.

[14]  Id.

> I reviewed the forms, along with the balance sheet. I offer the following comments: **I note that the attached account statements still reflect Mr. Lewis's alleged $1,000,000+ interest (See U21). If he intends to hold back his full amount, contrary to what we discussed on the phone, then we may have a problem**. As you will recall, it was our intention to make him participate proportionately in the $1.8 million claim of Mutual's. I believe his number would be something like 20% even without whatever adjustment Mark and Steve deemed appropriate. **I propose distributing payments on an incremental basis to Mr. Lewis as the funds are released, assuming the funds will be released in installments and not in one lump sum. It is my understanding that $1,000,000 incremental distributions will "stay under the radar" and be less controversial. In such a case, we would segregate portions of Mr. Lewis's "interest" in a separate account and release his share once all funds were repatriated.**

(Emphasis added). This document establishes that Mr. Lewis has or had a previously undisclosed and significant interest in one of the three accounts at issue in this litigation. It explains why he is, in the Defendants' opinion, so interested in helping Mr. Friedberg.

As Mr. Friedberg pointed out in his brief, Mr. Lewis denied any interest in this account. Defendants think he is not being truthful, and they wish to establish that.[15] Clearly, the best way to do that is to question Mr. Rega as to what he said to Mr. Gentile in the discussion referenced in the letter and what documents he provided to Mr. Gentile. It may be that he provided Mr. Gentile with the document attached hereto as Exhibit 5, which shows a 33% split in account U21 (presumably between Messrs. Ouimette, Friedberg, and Lewis) and a $1 million

---

[15] Of course, Defendants know that Mr. Lewis is not entitled to any of this money, just as this is not Mr. Friedberg's money. Some of it may be once a dividend is declared, but it has not yet been declared or paid. Mr. Friedberg argues otherwise, and that establishes a dispute relating to the Shareholder Agreements that should be decided in Bermuda. However, Defendants believe Mr. Lewis is not being truthful when he says he did not have a claimed interest in this account. If he did, he is certainly not a disinterested witness.

plus difference between potential dividend available and potential dividend available to Mr. Friedberg and Mr. Ouimette.[16] That would be consistent with the Gentile letter as well as the document attached hereto as Exhibit 7, which notes from Mr. Friedberg's file cryptically refer to "Andy U-21" and "1/3 partner-U21."

This is powerful impeachment testimony,[17] but it is more than that. If, as the documents show, Mr. Lewis has an interest in the accounts at issue, this undercuts Mr. Friedberg's main argument -- that the money is his and he can do whatever he wants with it (although, apparently, without paying taxes on such income).

Counsel for Defendants have offered to limit the deposition to non-privileged matters and to take the deposition when Mr. Rega is in Philadelphia. They have offered to travel to Pittsburgh as well. They have made it clear that they think Mr. Rega will be a witness at the hearing. They have not moved to disqualify him or threatened to do so. But Mr. Rega does have knowledge of facts relevant to this case, and his late appearance as the fourth member of Mr.

---

[16] We know that Mr. Rega later provided to Mr. Gentile a copy of an account statement showing a similar 33% split and million dollar difference in account U21. See Exhibit 6.

[17] No case cited by Mr. Friedberg stands for the proposition that one can't depose a lawyer if his testimony solely relates to impeachment. Arias v. City of Philadelphia, 1998 U.S. Dist. LEXIS 10066 (E.D. Pa. June 23, 1998), which Mr. Friedberg cites, is overtly distinguishable from this case because plaintiff's counsel in Arias had sworn by affidavit that they had no undisclosed direct knowledge of the investigation that prompted defendants to plead the Fifth Amendment and about which defendants sought to depose them. Id. at 1998 U.S. Dist. LEXIS 10066, at *6. Furthermore, one of the defendants in Arias sought to withdraw his invocation of the Fifth Amendment, which rendered moot the testimony sought by the defendants. In this case, unlike Arias, the Gentile letter proves that Mr. Rega does have first-hand knowledge of an interest or potential interest held by Mr. Lewis in the U21 program. Moreover, there is no question that Mr. Rega's testimony will provide concrete facts concerning Mr. Lewis's interest in U21, which directly relates to Mr. Lewis's credibility, as well as Mr. Friedberg's argument that the money in the Morgan Stanley accounts exclusively belongs to him.

Friedberg's U.S. legal team should not make him ineligible to tell the parties and the Court what he knows.

The parties are taking the deposition of Mr. Ouimette this week and can certainly take the deposition of Mr. Gentile, but the fact that those witnesses will give testimony should have no effect on whether Defendants can take a limited deposition of Mr. Rega. Even if Mr. Gentile remembered what Mr. Rega told him, and it is unlikely that he will, Defendants would probably face a hearsay objection if they tried to use Mr. Gentile's testimony. The source of the information Defendants need is Mr. Rega. He is the best and perhaps only source for what he told or provided to Mr. Gentile relating to Mr. Lewis' interest in U21.

It may very well be that Mr. Rega was misrepresenting to Mr. Gentile Mr. Lewis' interest in U21 to minimize Mr. Ouimette's share of the U21 account in the divorce proceedings. It appears more likely that Mr. Rega was not being untruthful and that Mr. Lewis actually has an interest. What is clear is that someone is not being truthful about Mr. Lewis' claimed interest in U21 (perhaps Mr. Lewis), and Defendants are entitled to get to the bottom of this issue. If, notwithstanding the forum selection clauses, Mr. Friedberg wants to litigate in this Court and use Mr. Lewis as his "star witness," Defendants should be allowed to appropriately question Mr. Lewis' credibility.

Mr. Friedberg's rights aren't affected. Defendants want to take a short deposition of a person who has relevant facts and who happens to have entered his appearance for Mr. Friedberg last month. The Court should permit this relevant inquiry.

| | |
|---|---|
| Dated:  September 7, 2005 | s/ Brooke J. Hertzer<br>Douglas Y. Christian (ID No. 41934)<br>Joshua A. Mooney (ID No. 85945)<br>Brooke J. Hertzer (ID No. 91999)<br>BALLARD SPAHR ANDREWS<br>& INGERSOLL, LLP<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103-7599<br>(215) 665-8500<br><br>Attorneys for Defendants |

**CERTIFICATE OF SERVICE**

       I, Brooke J. Hertzer, hereby certify that on September 7, 2005, I caused a true and correct copy of the foregoing Response of Mutual Defendants to Plaintiff's Motion for Protective Order to be served via hand delivery, upon the following:

        Han Nguyen, Esquire
        SCHNADER HARRISON SEGAL
        & LEWIS LLP
        Suite 3600, 1600 Market Street
        Philadelphia, PA  19103

        Attorneys for Plaintiff Stephen Friedberg

        s/ Brooke J. Hertzer
        Brooke J. Hertzer