**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEPHEN M. FRIEDBERG, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | No. 02-CV-3193 |
| MUTUAL HOLDINGS LTD, et al., | : | (Judge Yohn) |
| | : | |
| Defendants. | : | |

_____

**ORDER**

_____


        AND NOW, this _____ day of _____, 2005, after

consideration of defendants Mutual Holdings Ltd., et al.'s, Motion to Compel Production of

Documents and plaintiff Stephen M. Friedberg's memorandum of law in opposition thereto, it is

hereby ORDERED and DECREED that defendants' motion to compel is DENIED.



                                        _____
                                              William H. Yohn, Jr., J.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN M. FRIEDBERG, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | No. 02-CV-3193 |
| MUTUAL HOLDINGS LTD, et al., | : | (Judge Yohn) |
| | : | |
| Defendants. | : | |

_____

## PLAINTIFF STEPHEN M. FRIEDBERG'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

_____

Plaintiff Stephen M. Friedberg, by and through his attorneys, hereby submits this memorandum of law in opposition to the motion of defendants Mutual Holdings Ltd., et al.'s (hereinafter "Mutual") to compel the production of selected documents.

Defendants are not entitled to the documents requested in their motion to compel because the documents at issue are protected by the attorney work product privilege, not responsive to any document request, completely irrelevant to the issues of this case, or simply do not exist.

## THE DOCUMENTS REQUESTED

Mutual's motion to compel seeks the production of many documents but the crux of the motion appears to be directed to Mr. Friedberg's personal tax returns (and related accounting documents) and an affidavit signed by a third party witness and related documents.

2

The specific documents at issue can be itemized into the following categories:

1. Mr. Friedberg's financial statements, state and federal tax returns and accompanying work papers from 1991-2004;

2. All communications with Mr. Friedberg's accountants regarding the monies distributed to him by defendants;

3. An affidavit of third party witness Andrew A. Lewis and drafts thereof;

4. Documents referenced in a letter dated March 23, 2001, at FRIEDBERG001169; and

5. All communications with Andrew Lewis relating to this litigation and/or the accounts at Morgan Stanley, which includes:

   • Redacted portions of an email produced at FRIEDBERG000130-131;

   • Emails exchanged between plaintiff's counsel and Andrew Lewis attaching a witness interview;

   • A redacted email from Andrew Lewis to plaintiff and his employee at FRIEDBERG000203;

Mr. Friedberg has produced every non-privileged document responsive to Mutual's requests to the extent he was able to locate such documents. We will address the impropriety of defendants' motion to compel the above-listed documents in turn below.

**ARGUMENT**

**A.    TAX RETURNS:  Plaintiff's Tax Returns Are Irrelevant To The Issues Before This Court And Are Confidential Communications With The Government That Need Not Be Produced.**

It is well-established that tax returns are confidential communications between the taxpayer and the government. Both public policy and privacy concerns militate against their general discoverability. *DeMasi v. Weiss*, 669 F.2d 114, 119-20 (3d Cir. 1982); *United States v. Ehrlich*, No. 95-661, 1996 U.S. Dist. LEXIS 9781, at *4 (E.D. Pa. July 11, 1996); *Terlescki v. E.I. DuPont de Nemours & Co.*, No. 90-6854, 1992 U.S. Dist. LEXIS 4213, at *1-2 (E.D. Pa.

1992).  Tax returns are only discoverable if the requesting party can show their relevance.

*Ehrlich*, 1996 U.S. Dist. LEXIS 9781, at *4; *Terlescki*, 1992 U.S. Dist. LEXIS 4213, at *1-2.  If

relevance can be shown, the burden of proof shifts to the party resisting discovery to show that

there is no compelling need for the tax returns because that same information is available from

other sources.  *Id.*  In the present case, Mr. Friedberg's tax returns are not relevant, nor can

defendants demonstrate a substantial need for them.

1.      **The request for tax returns should be moot because plaintiff acknowledges that he has never declared the Morgan Stanley money on his tax returns.**

The request for Mr. Friedberg's tax returns should be moot.  During a conference

call with the Court on August 30th, Mutual's counsel stated that he would withdraw his request

for Mr. Friedberg's tax returns if he received a representation that Mr. Friedberg has never

declared the money at Morgan Stanley on his tax returns.  Plaintiff's counsel therefore

represented before the Court that Mr. Friedberg indeed has never declared any of the money

currently held at Morgan Stanley as income on his tax returns.  Mr. Friedberg cannot declare

such money on his tax returns because the Morgan Stanley accounts are titled in the name of

defendants.[1]  Despite this representation to counsel and before the Court, Mutual proceeds with

its motion to compel.

2.      **Mr. Friedberg's tax returns are not relevant.**

---

[1] Mutual, through its marketing subsidiary Commonwealth Risk Services, marketed and promoted the rent-a-captive programs as investment opportunities that would return underwriting profit *with tax deferral benefits*.  The money that was transferred out of Bermuda and invested with Morgan Stanley was specifically titled in Mutual's name so that Mr. Friedberg could continue to enjoy tax deferral benefits.  (Lewis Dep., at 200-02, attached hereto as Exhibit A).

Mr. Friedberg's tax returns are not relevant to the issues as outlined by the Court. According to the Court's Order of June 8, 2005, the only issues open to discovery at this time are (1) the existence of an oral agreement transferring the funds of programs E11, E14 and U21 from Bermuda to Morgan Stanley and (2) defendants' claim that dividends were never declared or paid from those programs. Mr. Friedberg's tax returns do not implicate the existence of an oral agreement to transfer money to Morgan Stanley and defendants do not make this argument. With respect to the payment of dividends, Mr. Friedberg's tax returns are similarly irrelevant. The distribution of dividends or other monies from the rent-a-captive insurance programs is wholly separate and distinct from how that money is subsequently treated on Mr. Friedberg's income tax returns. These are two completely separate events – *i.e.*, how a recipient of money elects to treat that money on his tax returns does not change the fact that he received the money in the first place.[2] Moreover, because the Morgan Stanley accounts were created and titled in Mutual's name so that Mr. Friedberg could enjoy tax deferral benefits, his tax returns would not reflect any of the Morgan Stanley monies.

Mr. Friedberg recognizes that there are some situations where discovery of tax returns is appropriate but such discovery is not warranted in this case. Even the cases cited by

---

[2] Mutual also argues that Mr. Friedberg's tax returns are relevant to discover if he declared as income any of the money received in "November 1997, May 2000 and November 2000." (Defs.' Mem., at 4, 5). Again, how Mr. Friedberg treated the money for tax purposes does not change the fact that he received the money in the first place. Moreover, the receipts for these particular payments clearly recite that "it is understood that to the extent that the distribution is not used as reimbursement of traveling expenses, it will be treated as a return of income [or "profits"] from the IPC Program." *See* Receipts, attached hereto as Exhibit B. Mr. Friedberg testified that he did not recall how much of these sums was allocated for reimbursement of expenses versus return of profit. (Friedberg Dep., at 331-335, attached hereto as Exhibit C). To the extent these sums were allocated for reimbursement of expenses, Mr. Friedberg obviously would not have reported them on his tax returns.

Mutual indicate that discovery of tax returns is permitted only when relevant, such as where damages are in dispute.[3]  For example, the cases of *Kravitz v. Jewelry Basics, Inc.*, No. 89-2657, 1990 WL 44899 (E.D. Pa. April 12, 1990), and *Fort Washington Resources, Inc. v. Tannen*, 153 F.R.D. 78 (E.D. Pa. 1994), both concluded that tax returns were discoverable because the amount of damages was specifically at issue.  The court in *Kravitz* noted that, "[b]ecause an accurate accounting of [defendant's] sales is *essential to plaintiff's ability to determine the extent of his alleged damages*, I conclude that this category of documents is relevant and that Pollak must produce his federal tax returns."  *Kravitz*, 1990 WL 44899, at *3 (emphasis added).  *See also Fort Washington*, 153 F.R.D. at 80 ("Defendant's tax returns are relevant to the issue of whether or not Defendant was paid all money he was due under the contract.").

         The other cases cited by Mutual for the proposition that tax returns should be discoverable are easily distinguishable.  The court in *First Fidelity Bank v. Nissenbaum*, No. 89-2248, 1991 WL 46456, at *2 (E.D. Pa. March 28, 1991), permitted a judgment creditor to discover the debtor's tax returns because the judgment creditor was entitled to know if the debtor had funds sufficient to satisfy the judgment.  The court in *American Health Sys. v. Liberty Health Sys.*, No. 90-3112, 1991 U.S. Dist. LEXIS 14400, at * 16 (E.D. Pa. July 22, 1991), permitted discovery of a third party witness' tax returns because it was relevant to determine the potential bias of that witness and to determine if he was receiving side payments from one of the parties.

---

[3] Here, Mr. Friedberg's tax returns are irrelevant because this is not a case where damages are at issue or where damages must be calculated.  The central issue in this case is who owns the money currently held in three separate accounts at Morgan Stanley.  There is no issue of damages here, nor is there a need to conduct an accounting investigation to determine how much money is at issue.  In fact, the money at issue in this case is frozen, easily determinable, and subject to a temporary restraining order.  If Mutual needs to determine how much money is at issue, they can easily contact Morgan Stanley to learn the accounts' value.

The returns were also relevant to determine if the defendants were engaged in a conspiracy, which was central to the case.  *Id.*  And lastly, the court in *Carnegie Hill Financial v. Krieger*, Nos. 99-2592, 99-5511, 2001 WL 869594, at *2 (E.D. Pa. July 30, 2001), permitted discovery of tax returns because the returns were necessary to determine if defendants disgorged business benefits and if defendants breached their employment agreement by engaging in prohibited employment with other companies while employed by plaintiff.  In each of these cases, the tax returns were relevant to the central issues of the case.  Here, Mr. Friedberg's tax returns from 1991-2004 have no bearing on who is entitled to the money currently managed by Morgan Stanley.  Mr. Friedberg has already acknowledged that he has not reported as income the Morgan Stanley monies on his returns because the accounts are not titled in his name – pursuant to the tax deferral program promoted to him by Mutual.

Accordingly, Mr. Friedberg's tax returns are not relevant to the limited scope of discovery and defendants' motion to compel should be denied.[4]  For these same reasons, Mr. Friedberg requests that his accountant's work papers be protected from discovery as well.[5]

### 3.    Defendants cannot demonstrate substantial need for plaintiff's tax returns.

Defendants' request for plaintiff's tax returns should not be granted because defendants cannot demonstrate a substantial need; Mr. Friedberg has already acknowledged that

---

[4] At a minimum, Mr. Friedberg's tax returns from 1991-1994 are not relevant to any issue in this case.  The documents exchanged thus far make clear that these accounts were first opened in the United States in 1995.

[5] As for Mr. Friedberg's personal financial statements, which were included in the request for tax returns, Mr. Friedberg has produced all financial statements in his possession.  Mr. Friedberg continues to search for additional financial statements to the extent they still exist.

he has not reported the Morgan Stanley funds as income on his tax returns; and it is hard to fathom how any other information that could be gleaned from the tax returns would have any relevance to this proceeding. *United States v. Ehrlich*, No. 95-661, 1996 U.S. Dist. LEXIS 9781, at *4 (E.D. Pa. July 11, 1996); *Terlescki v. E.I. Dupont De Nemours & Co.*, No. 90-6854, 1992 U.S. Dist. LEXIS 4213, at *2 (E.D. Pa. 1992). The question at issue in this case is not whether Mr. Friedberg has declared on his tax returns dividends from the programs, but who rightfully owns the money in the Morgan Stanley accounts. That information can be culled from deposition testimony and documents produced thus far. Mr. Friedberg's tax returns are not necessary to determine who rightfully owns the money. Mr. Friedberg therefore respectfully requests that the Court issue a protective order denying Mutual's motion to compel the production of his tax returns for this reason as well.[6]

**B.      COMMUNICATIONS WITH ACCOUNTANT REGARDING DIVIDENDS: The Communications Between Mr. Friedberg and His Accountant Regarding the Tax Treatment of Money Received From Mutual is Equally Irrelevant.**

Mr. Friedberg's communications with his accountant regarding the tax treatment of money received from Mutual is irrelevant to this litigation for the same reasons explained above. In short, how Mr. Friedberg treated the money he received from Mutual on his tax returns does not change the fact that Mutual distributed the money pursuant to the oral agreement at issue.

---

[6] In the alternative, should the Court nevertheless determine that plaintiff's tax returns are discoverable, plaintiff respectfully requests that his tax returns be designated for attorneys' eyes only. Such a designation would minimize the dissemination of these confidential documents to third parties (or internal personnel at Mutual or its affiliates) who have no need or privilege that would justify their access to Mr. Friedberg's tax documents. This would also prevent any prejudice Mr. Friedberg would suffer if unauthorized third parties were to obtain unfettered access to his confidential tax returns.

Regardless, other than the tax returns themselves, Mr. Friedberg represented to Mutual that there are no documents in his possession responsive to Mutual's request for "all documents constituting, memorializing, or accompanying your [sic] or your representatives' communications with Messrs. Phil Miller and/or Alan Bates regarding the monies you contend were dividended to you by any defendant at any time, including but not limited to the dividends you refer to in your complaint." (Mutual's Doc. Req. #14). Thus, not only are the documents requested irrelevant and outside the limited scope of discovery, but this request should be deemed moot.

**C.      AFFIDAVITS AND DRAFTS: The Affidavit of Andrew Lewis and Drafts Thereof Are Protected by the Attorney Work Product Privilege.**

As part of plaintiff's investigation in preparation for litigation, plaintiff's counsel interviewed third party witness Andrew A. Lewis, prepared an outline of anticipated trial testimony in the form of an affidavit, and provided the outline to Mr. Lewis for his review with the expectation that the draft would remain confidential and never be voluntarily provided to Mutual. Mr. Lewis discussed various aspects of the outline with Mr. Friedberg's attorneys, and changes made to the testimony outline were made in consultation with the attorneys in successive drafts. Mr. Lewis executed the final outline as an affidavit which has to date not been made available to anyone other than Mr. Lewis and Mr. Friedberg's attorneys. Mutual now seeks to compel production of the affidavit and any drafts thereof, notwithstanding the fact that all such documents are protected from discovery by the work product doctrine. Plaintiff's counsel advised Mutual of the existence of this affidavit (and drafts) and informed Mutual of his position regarding the withholding of the documents based on applicable case law. Counsel even

PHDATA 1309790_1

provided Mutual with citations to authorities he relied upon in support of his position to withhold the affidavit and its drafts.

"It is settled in this Circuit that statements of non-party witnesses are entitled to the qualified privilege of the 'work product' doctrine, whether they are taken by an attorney himself or by investigating agents on his behalf." *Dingler v. Halycon LIJN*, 50 F.R.D. 211, 211 (E.D. Pa. 1970); *see also EEOC v. Rose Casual Dining, L.P.*, No. 02-7485, 2004 U.S. Dist. LEXIS 1983, *8 (E.D. Pa. Jan. 23, 2004) ("Witness statements prepared at the direction of counsel in anticipation of litigation … are classic examples of attorney work-product, and are immune from discovery absent a showing of substantial need by the party seeking such documents."). Affidavits and statements are often drafted by attorneys and then submitted to the witness for signature. At least one court has noted that if the witness deletes any language from the affidavit or statement, "any language the witness deleted necessarily reflected counsel's views and is protected by the work-product privilege." *Adam v. PMI Industries*, No. 87 Civ. 9272 (WK), 1989 U.S. Dist. LEXIS 13906, at *4-5 (S.D.N.Y. Nov. 22, 1989).

As noted by one court when faced with this exact issue, "the issue here presented is not whether defense counsel have a right to learn the relevant factual information, but whether they have a right to that information in a particular form, namely, a piece of paper prepared by plaintiffs' counsel and signed by a non-party witness." *In re Convergent Tech. Second Half 1984 Sec. Litig.*, 122 F.R.D. 555, 558 (N.D. Calif. 1988). Here, any information Mutual wishes to obtain was readily available through Mr. Lewis's deposition and Mutual indeed questioned Mr. Lewis about the contents of the affidavit. (Lewis Dep., 172-175, 177-78, 213-15, attached hereto as Exhibit A).

At least two courts – including another court within this District – have dealt with the very same issue now before this Court and both courts ruled that a party such as Mutual should not be permitted to discover third party witness statements and affidavits absent a showing of substantial need.  *See Peerless Heater Co. v. Mestek, Inc.*, No. 98-6532, 1999 U.S. Dist. LEXIS 19105 (E.D. Pa. Dec. 6, 1999); *Convergent Tech.*, 122 F.R.D. 555.

In *Convergent Technologies*, the court held that non-party witness statements are not discoverable by means of a third-party subpoena.  In so doing, the court relied on *Hickman v. Taylor*, 329 U.S. 495 (1947), the seminal Supreme Court work product doctrine case, which granted work product immunity to statements taken by a lawyer from non-party witnesses.  The court in *Convergent* also held that the fact that a non-party witness had approved or adopted his or her witness statement did not change the applicability of the work-product immunity.  Not only did the court quash the third-party subpoena, but it also enjoined the non-party witness from sharing copies of his statement with defendants' counsel even if he were willing to do so without a subpoena.  *Convergent Technologies*, 122 F.R.D. at 565-567.

In *Peerless Heater*, the district court for the Eastern District of Pennsylvania applied the reasoning of *Convergent Technologies* and found that third-party witness affidavits and drafts thereof were accorded work product immunity.  In its analysis, the court emphasized that the purpose of the work product immunity is to prevent the disclosure of attorney work product to opposing counsel.  Hence, disclosure of the witness statement to the third-party witness himself does not destroy the privilege.  *Peerless Heater*, 1999 U.S. Dist. LEXIS 19105 at *10-11.  The court noted that waiver did not occur unless the party obtaining the non-party

witness statement took specific steps that it knew or should have known would substantially increase the possibility of disclosure of that statement to opposing counsel.[7]  *Id.* at *9-10.

In *Peerless*, just as here, there was no waiver, and the party issuing the subpoena was unable to make the requisite showing that it had a substantial need for the documents (which the court stated had to be more than merely a showing of relevance, *id.* at *15); more importantly, and quite fatal to its subpoena, the requesting party could not argue around the fact that it had the opportunity to obtain the information contained in the affidavit by other means, namely, by deposition.  Here, the Mutual defendants must make the same requisite showing but they are unable to do so.  There is no substantial need for the production of Mr. Lewis' affidavit because the substance of the affidavit was made available through deposition testimony.  And indeed, Mutual deposed Mr. Lewis and questioned him about the subject matter of the affidavit.[8]

---

[7] The act of communicating work product to a witness or "merely showing alleged work product to a witness" does not amount to waiver of the work product privilege.  *Sporck v. Peil*, 759 F.2d 312, 317 n.6 (3d Cir. 1985).  As stated by another court, "since the purpose of the work-product doctrine is not to protect such information from disclosure to the outside world but rather to protect it only from knowledge of opposing counsel and his client, it follows that mere disclosure of such information to third persons does not waive work-product immunity."  *Morales v. United States*, No. 94-CV-4865, 1997 U.S. Dist. LEXIS 6035, at *3-4 (S.D.N.Y. May 5, 1997).

[8] Mutual attempts to paint a picture of impropriety with respect to plaintiff's involvement with Mr. Lewis' production of documents in response to Mutual's subpoena to Mr. Lewis.  Plaintiff does not dispute that plaintiff's counsel visited Mr. Lewis' office and reviewed documents to ensure that Mr. Lewis did not produce any documents protected by the work product doctrine.  Plaintiff had every right to make sure that his attorneys' work product would not be disclosed to opposing counsel.  Mutual fails to mention, however, that they too have spoken with Mr. Lewis; that Mutual's counsel visited Mr. Lewis' office as well; interviewed Mr. Lewis prior to his deposition; and communicated with him directly regarding his production of documents responsive to their subpoena.  (Lewis Dep., at 32-33, 46-47, 56-57, 235-36, attached hereto as Exhibit A).

Moreover, the fact that Mr. Lewis' affidavit has been executed and notarized does not alter the protection of the work product doctrine. As both the *Peerless* and *Convergent Technologies* made clear, the work product doctrine continues to apply to witness statements and draft affidavits even after formal execution. *Peerless Heater,* 1999 U.S. Dist. LEXIS 19105, at *15 ("[W]ith respect to the . . . affidavits, *both signed and unsigned*, they remain protected by the work product doctrine and need not be produced absent some finding of substantial need or prejudice.") (emphasis added); *Convergent Technologies*, 122 F.R.D. at 564. ("[T]he court concludes that it would offend *Hickman v. Taylor* and Federal Rule of Civil Procedure 26(b)(3) to permit a lawyer to acquire through a non-party witness a copy of an adopted statement that was taken by opposing counsel and that remains in his files.").

It is important to note that Mr. Friedberg does not object to Mutual's discovery of the content or subject matter of the affidavit; however, Mr. Friedberg objects to Mutual's demand to obtain that information in a particular form, namely, the physical document prepared by plaintiffs' counsel and adopted by a non-party witness. Mutual had every opportunity to depose Mr. Lewis regarding the contents of the affidavit. Now that the deposition is over and Mutual is unsatisfied with Mr. Lewis' responses, Mutual should not be given a second bite at the apple.

For these reasons, Mr. Friedberg respectfully requests that the Court deny Mutual's motion to compel the production of Mr. Lewis' affidavit and drafts thereof. Mr. Friedberg requests that the email correspondence between plaintiff's counsel and Mr. Lewis with respect to the draft affidavits be protected from discovery for these same reasons.

PHDATA 1309790_1

**D.**    **MARCH 23, 2001 DOCUMENTS: Plaintiff Has Produced All Documents Relevant To The March 23, 2001 Letter To The Extent They Are In His Possession.**

Mutual's continuing demand that Mr. Friedberg produce "all documents referenced in the letter dated March 23, 2001 from Gary Gentile to Patrick Rega, which is bates labeled 'Friedberg 1169'" should be deemed moot.  Neither Mr. Friedberg or his attorney, Patrick Rega, have any recollection as to the exact documents referenced in that letter.  Mr. Rega recently retrieved his old files from his former law firm and produced those files to Mutual as a representation that plaintiff has produced every document remotely related to the subject matter of that letter – to the extent such documents are in plaintiff's possession.  Plaintiff has even contacted Gary Gentile (the author of that March 23, 2001 letter) asking him if he had the documents that Mutual is requesting.  Mr. Gentile could not recall if he had such documents.  Moreover, Mutual has since contacted Mr. Gentile in search of these purported documents, apparently subpoenaing his files, and obtained numerous documents from Mr. Gentile.

Accordingly, Mutual's motion to compel any documents referenced in that March 23, 2001 letter should be deemed moot because plaintiff has produced every document in his possession that is remotely relevant to the contents of that letter.  To the extent Mutual maintains that the documents requested have not been produced, that is only because they are not within the possession, custody and control of Mr. Friedberg.  Furthermore, Mr. Friedberg is without information or knowledge as to the whereabouts of such documents, if they indeed still exist.

**E.**    **REMAINING COMMUNICATIONS WITH ANDREW LEWIS: The Witness Interview of Andrew Lewis is Protected By The Work Product Privilege.**

Mutual is not entitled to the remaining documents listed in their motion to compel because these documents are either protected by the work product doctrine or are simply not

responsive to any document request. The remaining documents sought by Mutual are communications with third party witness Andrew Lewis.

    1.    **Mutual is not entitled to a witness interview conducted by plaintiff's counsel during the initial investigative and information gathering process.**

Mutual is not entitled to plaintiff's counsel's written interview of Mr. Lewis. Before discovery even commenced, plaintiff's counsel conducted a witness interview of Andrew Lewis on or about December 9, 2004 as part of his investigation and information gathering process. Plaintiff's counsel conducted this interview in the form of a questionnaire that was transmitted to Mr. Lewis via email. Mr. Lewis filled out the questionnaire and transmitted the answers back to counsel by email. Plaintiff withheld this questionnaire and its answers on the basis of attorney work product.

It has been stated that witness interviews are accorded protection from discovery under the work product doctrine. *See, e.g., Hickman v. Taylor,* 329 U.S. 495, 509-511 (1947); *In re: Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979). If this interview were conducted in person rather than by written questionnaire, the information exchanged in the interview would be protected from discovery. Here, the written questionnaire of Mr. Lewis was no different than an in-person interview because it was conducted as part of plaintiff's pre-discovery investigation and information gathering process. The medium in which the interview was conducted should not affect or alter the applicability of the work product doctrine.

Mutual cites to no applicable case law to support its disputed entitlement to this questionnaire. However, Mutual does cite to a non-binding and non-authoritative decision from the District of Alaska for the separate issue of their disputed entitlement to Mr. Lewis' affidavit.

*See Dobbs v. Lamonts Apparel, Inc.*, 155 F.R.D. 650 (D. Alaska 1994).  But the *Dobbs* decision does not pertain to affidavits; rather the District of Alaska decision pertains to questionnaires and therefore warrants a response here.  In *Dobbs*, the plaintiffs moved for a protective order with respect to questionnaires presented to numerous potential class members.  Several witnesses answered the questionnaires with verbatim answers.  During discovery, a copy of the blank questionnaire was somehow produced.  When defendants sought the verbatim answers to the questionnaires, plaintiffs' counsel informed defendants to conduct depositions of each and every witness instead.  The court criticized this proposal because it would require the unnecessary expense of deposing numerous witnesses to obtain verbatim answers to the questionnaires.  *Id.* at 652.  Under the circumstances before that court, it was clearly more efficient to produce the questionnaire with verbatim answers rather than require numerous depositions of witnesses who would all provide the same testimony.  There are no such similar circumstances here.  Mutual has already deposed Mr. Lewis and questioned him of his knowledge of the rent-a-captive programs.  Moreover, counsel for Mutual previously interviewed Mr. Lewis, and Mutual's general counsel has also spoken to Mr. Lewis.  This motion to compel production of plaintiff's counsel's questionnaire is not prompted by any legitimate need for information known to Mr. Lewis but is simply an improper attempt to learn the views of Mr. Friedberg's counsel as to what information is pertinent to his case.  *See In re: Grand Jury*, 599 F.2d at 1231 (stating that the requested interview material is of "limited utility, especially where the witness himself is readily available to the opposing party.").

      Mr. Friedberg recognizes that witness questionnaires may not be accorded absolute work product protection and that the privilege can be overcome by a showing of good cause.  However, Mutual cannot demonstrate good cause to overcome the work product

protection applicable to Mr. Lewis' questionnaire.  The questionnaire was a written interview conducted by plaintiff's counsel.  Significantly, Mutual conducted a witness interview of Mr. Lewis as well.  Mutual subsequently deposed Mr. Lewis and posed additional questions probing Mr. Lewis' knowledge and understanding of the rent-a-captive insurance programs and his role in the transference of the monies at issue from Bermuda to Morgan Stanley.  It is therefore unreasonable for Mutual to argue that they have good cause to obtain the contents of plaintiff's counsel's written interview of Mr. Lewis when they too have already interviewed and deposed him.[9]

Furthermore, Mutual is not entitled to the witness interview with Mr. Lewis because the information provided by Mr. Lewis in the interview was the initial starting point for the affidavit he executed.  As explained above, the affidavit and drafts thereof are protected by the work product doctrine.  Mr. Friedberg submits that the information obtained from Mr. Lewis used in preparation of the affidavit should therefore be accorded the same work product protection as well.

---

[9] Although *Hickman* and *In re: Grand Jury* both noted that witness statements and interviews may be discoverable for purposes of impeachment, the "general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that policy to establish adequate reasons to justify production through a subpoena or court order." *Hickman*, 329 U.S. at 512.  Here, Mutual provides no substantive reason for why they require the questionnaire.  And although nowhere in their memorandum of law does Mutual argue that they seek the questionnaire for purposes of impeaching Mr. Lewis' testimony, if their next argument is that the questionnaire is necessary to question Mr. Lewis' credibility and to determine if he has an ownership interest in one of the accounts at issue, Mutual has already tested Mr. Lewis' credibility by deposing Mark Ouimette and can further test his credibility by interviewing and/or deposing Gary Gentile.  *See* Plaintiff's Mot. for Protective Order, filed Sept. 2, 2005.

Alternatively, even if the Court were to consider the questionnaire by its components – *i.e.*, attorneys' questions and witness' answers – the questionnaire is still protected by the work product doctrine. In particular, the questions themselves are clearly the work product and mental impressions of counsel prepared in the course of the investigative and information gathering process. *Hickman*, 329 U.S. at 511. And as the *Convergent Technologies* and *Peerless* cases made clear, disclosing attorney work product to a third party witness does not constitute a waiver of the doctrine. *Peerless Heaters*, 1999 U.S. Dist. LEXIS 19105, at *5 (citing *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1429 (3d Cir. 1991)); *Convergent Technologies*, 122 F.R.D. at 556; *see also Sporck v. Peil,* 759 F.3d 312, 317 n.6 (3d Cir. 1985); *Morales v. United States*, 94 Civ. 4865 (JSR), 94 Civ. 8773 (JSR), 1997 U.S. Dist. LEXIS 6035, at *3-4 (S.D.N.Y. May 5, 1997). With respect to the witness' written answers, the answers should also be protected by the work product doctrine because they are effectively witness statements obtained by counsel during the investigative and information gathering process. *Hickman*, 329 U.S. at 511.[10] For these reasons, Mutual's motion to compel the witness interview of Mr. Lewis should be denied.

---

[10] The *Hickman* Court explained that:

> [p]roper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interest. *This work is reflected, of course, in interviews, statements*, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways – *aptly though roughly termed by the Circuit Court of Appeals in this case as the "work product of the lawyer*."

*…Continued*

PHDATA 1309790_1

**2.    Mutual is not entitled to the redacted portions of documents FRIEDBERG 000130-131 and FRIEDBERG 000203 because the redacted portions are non-responsive to any document request.**

Mutual is not entitled to the redacted portions of FRIEDBERG000130-131 and FRIEDBERG 000203 because the redacted portions of these documents are not within the scope of discovery (as limited by the Court) and are not responsive to any document request.

The documents identified at FRIEDBERG000130-131 are a collection of three separate emails printed continuously over two pages. Each of these emails was sent by Mr. Lewis and Mr. Friedberg was the recipient or among the recipients. Mr. Friedberg produced one of these emails, which spanned over two pages, because it was responsive to Mutual's document request for "all documents constituting, memorializing, or accompanying your [sic] or your representatives' communications with Andy Lewis regarding this lawsuit and/or the monies in the accounts at issue." Mr. Friedberg redacted the other two emails because, although they constituted communications with Mr. Lewis, the first email was in regard to a comparison of rates between insurance companies in Pennsylvania and Connecticut and the second email pertained to an introduction to prospective customers for Mr. Friedberg's and Mr. Lewis' respective insurance companies. Clearly, these redacted emails did not "regard[] this lawsuit and/or the monies in the accounts at issue." Moreover, the contents of the emails do not fall within the scope of discovery as set forth by the Court's Order of June 8, 2005, which limited discovery to (1) the existence of an oral agreement transferring the funds of programs E11, E14

---

*Continued from previous page*
*Hickman*, 329 U.S. at 511 (emphasis added).

and U21 from Bermuda to Morgan Stanley and (2) defendants' claim that dividends were never

declared or paid from those programs.

Similarly, the document identified as FRIEDBERG 000203 contains two separate

email messages from Mr. Lewis to Mr. Friedberg printed continuously on one page.  Mr.

Friedberg produced one of these emails in response to Mutual's document request because it

constituted a communication with Mr. Lewis "regarding this lawsuit and/or the monies in the

accounts at issue."  The redacted email, however, pertains to the scheduling of a meeting with a

customer that conducted business with Mr. Friedberg's company and Mr. Lewis' company.  That

email is completely unrelated to this lawsuit or the monies in dispute.  Therefore, the redacted

email does not fall within the scope of Mutual's document request and is not within the scope of

discovery as limited by the Court.

Accordingly, Mutual's motion to compel the redacted portions of

FRIEDBERG000130-131 and FRIEDBERG 000203 is improper.

PHDATA 1309790_1

## CONCLUSION

For these reasons, plaintiff Stephen M. Friedberg respectfully requests that the

Court deny in its entirety Mutual's motion to compel the production of selected documents.


Respectfully submitted,


/s/ Han Nguyen
David Smith (I.D. No. 21480)
Han Nguyen (I.D. No. 85860)
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
(215) 751-2000

Attorneys for Plaintiff,
Stephen M. Friedberg

Dated: September 12, 2005.

**CERTIFICATE OF SERVICE**

I certify that on September 12, 2005, I caused a true and correct copy of the

foregoing Memorandum of Law In Opposition To Defendants' Motion to Compel to be served

by first class mail and electronic mail through the Court's ECF filing system upon the following.

This document is available for downloading and review on the Court's ECF filing system.


Brooke J. Hertzer, Esquire
Ballard Spahr Andrews & Ingersoll LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
HertzerB@ballardspahr.com


/s/ Han Nguyen
Han Nguyen

PHDATA 1309790_1