UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN M. FRIEDBERG, : | |
| : | |
| Plaintiff, : | CIVIL ACTION |
| : | |
| v. : | No. 02-CV-3193 |
| : | (Judge Yohn) |
| MUTUAL HOLDINGS LTD, et al., : | |
| : | |
| Defendants. : | |

**PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
PROTECTIVE ORDER**

Plaintiff Stephen M. Friedberg, by and through his attorneys, respectfully submits this Reply in support of his motion for protective order.

**A.   Defendants Cite No Authority In Support Of Their Position Because the Weight Of Legal Authority Compels A Protective Order.**

Mutual's response to plaintiff's Motion for Protective Order is long on rhetoric and short on legal authority. The reason for the lack of legal citation in their response is because the weight of legal authority supports plaintiff's position that Mr. Rega should not be deposed under the given circumstances. In an oft-cited opinion, the Eighth Circuit Court of Appeals provided this strongly worded disapproval of attorney deposition:

> Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the

1

> practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.

*Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). Courts within this district have adopted the Eighth Circuit's reasoning in denying parties' attempts to depose opposing counsel. *See, e.g., Peerless Heater Co. v. Mestek*, No. 98-6532, 2000 U.S. Dist. LEXIS 1409 (E.D. Pa. Feb. 7, 2000); *Orlando v. Opera Co. of Phila.*, No. 95-3860, 1996 U.S. Dist. LEXIS 10341 (E.D. Pa. July 24, 1996), in addition to the cases cited in Mr. Friedberg's Motion. Another court within this district voiced its disapproval of attorney depositions by stating "a deposition of one's attorney by an opposing party is inherently annoying, oppressive, disruptive and burdensome. 'Such a deposition provides a unique opportunity for harassment, it disrupts the opposing attorney's preparation for trial, and could ultimately lead to disqualification of opposing counsel if the attorney is called as a trial witness.'" *Slater v. Liberty Mut. Ins. Co.*, No. 98-1711, 1999 U.S. Dist. LEXIS 275, at *2-3 (E.D. Pa. Jan. 14, 1999) (internal citations omitted).

    The concerns raised in these prior decisions are present in this case. The added burden to the litigation is already evident in the filing of this motion. Further, despite Mutual's counsel's representation that the questioning of Mr. Rega will not infringe upon privileged communications, disputes will surely arise at the deposition because everything Mr. Rega knows about any alleged ownership interest in U21 by Mr. Lewis was obtained through privileged

communications with his client. And to the extent Mr. Rega[1] obtained any knowledge through the review of documents, his review of the documents was conducted during the course of trial preparation for the divorce proceeding involving Mr. Friedberg's sister. This requested deposition will add nothing to the case other than the continuation of these time-consuming collateral issues.

Accordingly, Mutual should not be permitted to depose Mr. Rega. If Mutual insists on deposing opposing counsel for the sole purpose of questioning a third party witness' credibility, Mutual should come forward with some applicable authority persuasive enough to contravene the cases cited above.

**B.       Mutual Fails To Satisfy the Requirements For Deposing Opposing Counsel.**

Mutual does not satisfy any of the requirements for deposing opposing counsel. In fact, Mutual's response is silent with respect to any discussion of the requirements necessary to justify this burdensome and oppressive tactic. The Eighth Circuit's well reasoned opinion in *Shelton* established that the deposition of opposing counsel is permitted only if "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id.* This standard has been adopted and refined by the courts of this district. In particular, Judge Joyner and Magistrate Judge Smith both issued opinions outlining the consideration of three outcome determinative factors:

---

[1] Mutual's insinuation that Mr. Rega was a last minute addition to Mr. Friedberg's trial team is misleading. As counsel to Mutual well knows, Mr. Rega has been counsel for Mr. Friedberg from the very beginning of his disputes with Mutual and its subsidiaries, or at least the last five years, and throughout the entirety of this proceeding. Although Mr. Rega was recently admitted *pro hac vice*, Mr. Rega sat at counsel table during the oral argument on Mutual's motion to dismiss on April 21, 2005, months before his admission. To suggest that he was admitted *pro hac vice* only to shield himself from a deposition is improper.

1. the extent to which the proposed deposition promises to focus on central factual issues, rather than peripheral concerns;

2. the availability of the information from other sources, viewed with an eye toward avoiding cumulative or duplicative discovery; and

3. the harm to the party's representational rights resulting from the attorney's deposition.

*Frazier v. Southeastern Pennsylvania Transportation Authority*, 161 F.R.D. 309, 313 (E.D. Pa. 1995) (Joyner, J.); *Peerless*, 2000 U.S. Dist. LEXIS 1409, at *7-9 (Smith, M.J.). These factors do not support Mutual's position.

As explained in Mr. Friedberg's motion, the proposed deposition of Mr. Rega will not focus on underlying facts central to the case. Mutual even acknowledges in their response that the proposed deposition of Mr. Rega is not to inquire into any facts underlying the claims but rather to question Andrew Lewis' credibility. (*See*, *e.g.*, Defs.' Response, at 4 ("Mr. Lewis denied any interest in this account. Defendants think he is not being truthful, and they wish to establish that. Clearly, the best way to do that is to question Mr. Rega …")). As such, Mutual does not satisfy the first factor of the *Frazier* test.[2]

---

[2] Defendants also cannot navigate around the legal requirement that an attorney must be a fact witness if he or she is to be deposed. *See Arias v. City of Philadelphia*, No. 97-6641, 1998 U.S. Dist. LEXIS 10066, at *4 (E.D. Pa. June 23, 1998); *Musko v. McCandless*, No. 94-3938, 1995 U.S. Dist. LEXIS 14477, at 5 (E.D. Pa. Sept. 29, 1995); *Fried v. Sungard Recovery Services*, 164 F.R.D. 405, 406 (E.D. Pa. 1996). Mutual's attempt to distinguish *Arias* on this basis is unavailing. Mr. Rega is comparable to the attorney in *Arias* who also had no first-hand knowledge of the issue in dispute. *See also Shelton*, 805 F.2d at 1329 ("In house counsel in this case had nothing to do with this lawsuit except to represent her client. She did not design the jeep or have any duties in relation to the design of the jeep; nor, of course, was she a witness to the accident.").

Assuming *arguendo* that Mr. Lewis' credibility is a central factual issue – which it is not – Mutual's request to depose Mr. Rega should still be denied because Mutual concedes that they can test Mr. Lewis' credibility through other sources. In particular, Mutual acknowledges in their response that they "are taking the deposition of Mr. Ouimette this week and can certainly take the deposition of Mr. Gentile …" (Defs.' Response, at 6). This concession is fatal to their position. In fact, Mutual deposed Mark Ouimette on September 8, 2005 and Mr. Ouimette unequivocally testified that Mr. Lewis had no ownership interest in program U21 or any other program for that matter. (Ouimette Dep., at 37-41, 50, attached hereto as Exhibit A, rough ASCII draft).[3]

Additionally, Mutual can depose Mr. Gentile to determine if Mr. Lewis ever had an ownership interest in U21. Since Mutual's interest in this issue was spurred by the March 23, 2001 letter, the best source of information arising from that letter is the author himself, Gary Gentile, and not the recipient, Mr. Rega.[4] Finally, to the extent that counsel's interest is based upon a dividend calculation form which reflects a division of interests in the U21 program (*see* Lewis Dep. Ex. 40, attached as Ex. 6 to Defs.' Response), that document was generated by

---

[3] It is important to note that Mr. Ouimette is the former co-shareholder of U21 and the other accounts; has not spoken to Mr. Friedberg since prior to 2002; and was engaged in an acrimonious divorce from Mr. Friedberg's sister. (Ouimette Dep., at 9, 23-25, 32, attached hereto as Exhibit A). Mr. Ouimette has no reason or incentive to provide favorable testimony for Mr. Friedberg or unfavorable testimony for Mutual. To the extent Mutual should now choose to attack the credibility of another third party witness who happened to provide testimony inconsistent with their theory of the case, such attempts should be summarily dismissed.

[4] Although Mutual quotes the content of the March 23, 2001 letter in its entirety, Mutual proceeds to mischaracterize the letter. In particular, Mutual claims that the letter "*establishes*" that Mr. Lewis has or had an ownership interest in one of three accounts in dispute in the litigation. (Defs.' Response, at 4). The letter, however, does not establish anything of this sort. Rather, the letter expressly states that there is an "*alleged*" interest by Mr. Lewis. Of course, Mr. Lewis stated he has no ownership interest in U21. Mr. Ouimette recently confirmed this fact. (*See* Lewis Dep., at 130-132, 145, 146-147, attached hereto as Exhibit B; Ouimette Dep., at 37-41, 50, attached hereto as Exhibit A).

Mutual itself and counsel can look to his own client as the best source of information regarding the referenced interest.

The fact that there are less intrusive alternate means of discovering the requested information should be dispositive here. In fact, in a case similar to this dispute, the court in *Peerless Heater Co. v. Mestek* denied a party's request for leave to depose opposing counsel – *even though the attorney had first hand knowledge of relevant information crucial to the central issues of the case* – because the requesting party had "several other means of obtaining additional information on the subject." *Peerless*, 2000 U.S. Dist. LEXIS 1409. at *8-11. The defendants in that case sought to take plaintiff's counsel's deposition even though they had already deposed the president of Peerless and his son and had propounded other discovery. Similar to the events in this case, the testimony taken was unfavorable to defendants' position. In denying the request to depose opposing counsel, the court raised two important points: first, "[t]he simple fact that defendants have not yet received the answer they seek does not give them unfettered access to [plaintiff's counsel's deposition] in order to attempt to force from him more favorable testimony," *id.* at *22; and second, the court noted that there were less intrusive alternative options for the requesting party to obtain the sought after information, *id.* at *24.

These factors are equally prevalent here. Mr. Lewis has already expressly testified that he has never had an ownership interest in U21.[5] (Lewis Dep., at 130-132, 145, 146-

---

[5] Mutual mischaracterizes Mr. Lewis' testimony with respect to his role in this litigation. Defendants also insinuate that Mr. Lewis has assisted Mr. Friedberg because he allegedly received an ownership interest in the U-21 program. Mr. Lewis explained in his deposition testimony, however, that he assists all of his "customers, agents, brokers as well as Legion and Mutual." (Lewis Dep., at 235, attached hereto as Exhibit B). Mr. Lewis further explained that he "made an offer to [defendants] that I will help them in any way, shape or form and they have elected not take me up on that offer." (*Id.* at 235-36). Contrary to Mutual's insinuation, Mr. Lewis has not made any trips to Bermuda for the sole purpose of assisting Mr. Friedberg in his

147, attached hereto as Exhibit B). Mutual is not satisfied with this answer and seeks Mr. Rega's deposition to further inquire into Mr. Lewis' ownership interest. This should not be permitted when there are less intrusive means of inquiring into this issue, such as the depositions of Mr. Gentile or Mr. Ouimette, who has since confirmed Mr. Lewis' testimony that no one other than Mr. Ouimette and Mr. Friedberg ever had an ownership interest in U21. (Ouimette Dep., at 37-41, 50, attached hereto as Exhibit A).

Therefore, defendants' request to depose Mr. Rega should be denied and an appropriate protective order is requested. The information sought from Mr. Rega is not related to the underlying facts central to this case. Moreover, the information sought from Mr. Rega is readily available from other sources. Mutual's attempt to depose opposing counsel runs afoul of the stern warning previously issued by another court within this district:

> To require plaintiffs' trial counsel of record to appear for a deposition and face imminent disqualification from this case, despite defendants' minimal need for the information he could provide, would not only disrupt the course of this litigation, but would contravene the very discovery principles underlying the Federal Rules of Civil Procedure.

*Peerless*, 2000 U.S. Dist. LEXIS 1409, at *24-25.

---

litigation; rather, Mr. Lewis testified that traveled to Bermuda once a quarter, met with Mutual during those visits, and agreed to meet with Mutual and Mr. Friedberg while in Bermuda during one of those visits. (*Id.* at 232-33, attached hereto as Ex. D). Additionally, Mutual mischaracterizes the "cryptic" handwritten notes that purportedly refer to "Andy U21" and "1/3 partner U21". These notes, attached to Mutual's response, clearly show that in between the notations "Andy U21" and "1/3 partner U21" is a line running from "1/3 partner U21" to the name "Dale Gawley." (*See* Ex. 7 to Defs.' Response).

7

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Motion for Protective Order, plaintiff Stephen M. Friedberg respectfully requests that the Court enter a protective order and quash the subpoena served upon Patrick Rega, Esq.

                    Respectfully submitted,

                    /s/ Han Nguyen
                    David Smith (I.D. No. 21480)
                    Han Nguyen (I.D. No. 85860)
                    Schnader Harrison Segal & Lewis LLP
                    1600 Market Street, Suite 3600
                    Philadelphia, Pennsylvania 19103
                    (215) 751-2000

                    *Attorneys for Plaintiff,*
                    *Stephen M. Friedberg*

Dated: September 12, 2005.

## CERTIFICATE OF SERVICE

I certify that on September 12, 2005, I caused a true and correct copy of the foregoing Reply to Opposition to Motion for Protective Order with accompanying memorandum of law to be served by first class mail and electronic mail through the Court's ECF filing system upon the following. This document is available for downloading and review on the Court's ECF filing system.

>Brooke J. Hertzer, Esquire
>Ballard Spahr Andrews & Ingersoll LLP
>1735 Market Street, 51st Floor
>Philadelphia, PA 19103
>HertzerB@ballardspahr.com

>/s/ Han Nguyen
>Han Nguyen