# EXHIBIT 1

## SHAREHOLDER AGREEMENT

**THIS AGREEMENT,** made and entered into as of January 1, 1992 by and between

**MUTUAL HOLDINGS LTD.,** a company organized and existing under the laws of the

Islands of Bermuda (hereinafter referred to as "**MUTUAL**") and **ADVANTAGE**

**PARTNERS** (hereinafter referred to individually or collectively as "**SHAREHOLDER**").

### WITNESSETH:

**WHEREAS, SHAREHOLDER** is desirous of purchasing One (1) non-voting preferred

share of **MUTUAL** designated Series "**E14**" preferred share (hereinafter "**PREFERRED**

**SHARE**") for the purchase price hereinafter set forth; and


**WHEREAS, MUTUAL** is desirous of repurchasing the **PREFERRED SHARE** on the

redemption date set forth in Appendix I attached hereto (hereinafter referred to as the

"**REDEMPTION DATE**") for the purchase price hereinafter set forth; and


**WHEREAS,** a subsidiary of **MUTUAL, MUTUAL INDEMNITY LTD.** (hereinafter

referred to as "**INDEMNITY**") has entered into one or more Reinsurance Agreements

(hereinafter referred to individually or collectively as the "**TREATY**") as shown in Appendix

I with the insurance company(ies) as shown in Appendix I (hereinafter referred to

individually or collectively as the "**INSURANCE COMPANY**") pursuant to which

**INDEMNITY** has reinsured certain of the liability of **INSURANCE COMPANY** on

policies of insurance issued to **SHAREHOLDER** and its affiliates.

-1-

**NOW, THEREFORE,** in consideration of the mutual promises and undertakings set forth herein the parties do hereby agree as follows:

1.    **SHAREHOLDER** agrees to purchase the **PREFERRED SHARE** and agrees to pay to **MUTUAL** the amount of One Thousand Dollars ($1,000.00). This amount shall be paid within thirty (30) days of the execution of this Agreement.

2.    On the dates shown in Appendix I (hereinafter referred to as the "**DIVIDEND DATE**") **MUTUAL** agrees to cause a dividend to be declared to the owner of record on such date(s) of the **PREFERRED SHARE** in an amount equal to the sum of the following:

(A)    The amount of investment income, if any, earned by **MUTUAL** during the 12 months ending 31 December immediately preceding such **DIVIDEND DATE** resulting from the investment of the cash funds received by **MUTUAL** as the purchase price of the **PREFERRED SHARE** as set forth in paragraph (1) hereof, less the applicable Administrative Fee as shown in Appendix I equal to a percentage per annum of the average amount of investment funds held by MUTUAL as a result of the purchase price of the **PREFERRED SHARE.**

(B)    Plus the amount of investment income earned by **INDEMNITY** during the 12 months ending 31 December preceding the **DIVIDEND DATE**, resulting from the investment of funds received by **INDEMNITY** under the **TREATY** with **INSURANCE COMPANY** less the applicable Administrative Fee as shown in

-2-

Appendix I equal to a percentage per annum of the average amount of such funds held by **INDEMNITY** during the preceding year. It is understood and agreed that such funds may be held by **INDEMNITY** as loss reserves and premium reserves and may be repaid to **INSURANCE COMPANY** pursuant to the terms of the **TREATY**.

(C)    Plus or minus the amount of underwriting gain or loss realized by **INDEMNITY** on the **TREATY** during the policy year preceding the **DIVIDEND DATE**. Underwriting gain shall be computed by the following formula:

Net Premium received by **INDEMNITY** after all deductions made by or paid to the **INSURANCE COMPANY** including ceding commissions, expenses and taxes (including the actual final cost of licenses, fees, assigned risk charges, guarantee funds etc.) as provided in the **TREATY**; minus all losses and loss expenses incurred including loss and loss expense reserves for unpaid reported losses and for losses incurred but not reported; minus the applicable Underwriting Fee as shown in Appendix I; minus the actual cost incurred by **INDEMNITY** in establishing and maintaining a letter of credit in favour of **INSURANCE COMPANY** as required by the **TREATY**.

3.(A)    **SHAREHOLDER** hereby indemnifies and holds **MUTUAL** and **INDEMNITY** harmless against the cumulative sum of paragraphs 2(A), 2(B) and 2(C) minus the cumulative amount of dividends paid, being less than zero at any point in time.

On receipt of each written demand by **MUTUAL** or **INDEMNITY**, **SHAREHOLDER** agrees to pay **MUTUAL** or **INDEMNITY** within 30 days, the amount by which the cumulative sum of the amounts calculated under paragraphs

2(A), 2(B) and 2(C) minus the cumulative amounts of dividends paid pursuant to this Agreement, are less than zero minus all previous payments under this paragraph provided however that the definition of incurred losses and loss expenses in paragraph 2(C) shall for this purpose only include losses and loss expenses which have been paid or are likely to be paid within the following ninety (90) days.

(B)     As security for this obligation **SHAREHOLDER** hereby agrees to provide **INDEMNITY,** upon execution of this Agreement collateral (hereinafter referred to as the "**SECURITY DEPOSIT**") in the form of a clean irrevocable letter of credit in the amount as shown in Appendix I drawn on a bank acceptable to **INDEMNITY** or substitute cash collateral. Thereafter, **SHAREHOLDER** agrees, during the period of the Policy and for so long thereafter as **INDEMNITY** has any outstanding or potential liability to **INSURANCE COMPANY** under the terms of the **TREATY** to keep such letter of credit in force or to substitute cash collateral prior to the expiration of such letter of credit. If cash collateral is provided, interest earned on such collateral, less the applicable Administrative Fee as shown in Appendix I, will be included as a dividend pursuant to Sections 2 (B) and 4 hereof. The provisions of this paragraph (3) shall survive the redemption of the **PREFERRED SHARE** and the termination of this Agreement.

4.     If on the **REDEMPTION DATE**, as defined in this Agreement, **INDEMNITY** continues to hold funds pursuant to the **TREATY** with **INSURANCE COMPANY, MUTUAL** agrees to annually pay **SHAREHOLDER** on 28 February of each year as additional dividends the amount of investment income earned by **INDEMNITY** during the preceding year resulting from the investment of such funds less an Administrative Fee as shown in Appendix I equal to a percentage per

annum of the average amount of such funds plus or minus the amount of additional

underwriting gain or loss realized by **INDEMNITY** on the **TREATY** calculated in

accordance with paragraph 2(C) hereof until such time as the amount of funds held

by **INDEMNITY** is less than Five Thousand Dollars ($5,000) at which point liability

under this paragraph shall cease.

5.     On the **REDEMPTION DATE, MUTUAL** agrees to repurchase from the

**SHAREHOLDER** the **PREFERRED SHARE** upon presentation of the share

certificate representing the **PREFERRED SHARE** duly endorsed for cancellation

for the price of One Thousand Dollars ($1,000.00) by repaying the amount of cash

paid by **SHAREHOLDER** as purchase price for the **PREFERRED SHARE.**


6.     It is agreed that the **PREFERRED SHARE** issued to **SHAREHOLDER** pursuant

to this Agreement is being purchased by the **SHAREHOLDER** for purposes of

investment only. The said **PREFERRED SHARE** has not been registered under

the United States Securities Act of 1933, as amended. The said **PREFERRED**

**SHARE** shall not be sold, transferred, hypothecated, pledged or otherwise assigned

or encumbered and will bear the following legend:-

> "These securities have not been registered under the Securities
> Act of 1933, as amended. These Securities have been
> acquired for investment and may not be sold, transferred,
> hypothecated, pledged or otherwise assigned or encumbered."

7.     This Agreement may not be modified, amended or changed in any manner except in

writing signed by all the parties hereto. It may, however, be terminated by written notice

from either party to the other at least sixty (60) days prior to the proposed termination

date. In such event all existing obligations from each party to the other or to third parties

shall remain in force as of the time of termination.

8.  All notices, requests, demands or other communications provided for herein shall be in writing, shall be delivered by hand or by first-class mail, postage prepaid and shall be addressed to the parties hereto at their respective addresses listed below or to such other persons or addresses as the relevant party shall designate as to itself from time to time in a writing delivered in like manner:

If to **MUTUAL HOLDINGS LTD,** to it at:

> Barclays International Building
> 44 Church Street
> P.O. Box HM 2064
> Hamilton HM HX, Bermuda.

If the **SHAREHOLDER,** to it at:

> 4240 Greensburg Pike
> Pittsburg, PA 15221
> U.S.A.

9.  This Agreement has been made and executed in Bermuda and shall be exclusively governed by and construed in accordance with the laws of Bermuda and any dispute concerning this Agreement shall be resolved exclusively by the courts of Bermuda.

10.  All amounts referred to herein are expressed in United States Dollars and all payments shall be made in such dollars.

11.  The purchase of the **PREFERRED SHARE** by **SHAREHOLDER** and any subsequent transfers of the **PREFERRED SHARE** are subject to the prior consent of the Bermuda Monetary Authority (Foreign Exchange Control) which agency must approve all transfers of shares in Bermuda companies.

**IN WITNESS WHEREOF,** the parties have set their hand.

At _Hamilton, Bermuda_

on the _8_ day of _November_ , 1993.

**COMP ADVANTAGE PARTNERS**

BY: _Dallas Krapf_

     **Mr. Dallas Krapf**

BY: _(signature)_

     **Mr. Steven Freidburg**
        _Stephen Friedberg_

BY: _(signature)_

     **Mr. Mark Ouimette**

BY: _Dale N. Krapf_

     **Mr. Dale Krapf**

At _Hamilton Bermuda_

on the _17_ day of _Nov_ , 1993.

**MUTUAL HOLDINGS LTD.**

BY: _(signature)_

     Paul Watson, President

G:SHAG-E14.GM/rss/3-93

-7-

## APPENDIX NO. I

### PREFERRED SHARE SERIES "E14"

**REDEMPTION DATE**

Close of business on the 1st day of March, 1998.

**DIVIDEND DATE**

Commencing on the 28th day of February, 1993 and annually thereafter on the 28th day of February of each succeeding year up to and including the 28th day of February, 1998.

**TREATY**

| **Underwriting Period** | **Insurance Company** |
|---|---|
| January 1, 1992 - December 31, 1992 | Legion Insurance Company |

**UNDERWRITING FEE**

| **Underwriting Period** | **Underwriting Fee** |
|---|---|
| January 1, 1992 - December 31, 1992 | 3.5% |

The Underwriting Fee is expressed as a percentage of the gross premium written under the **TREATY.**

**ADMINISTRATIVE FEE**

During the term of the Underwriting Period  1.25% per annum

After expiration of the Underwriting Period 1.75% per annum

The administrative fee is calculated as a percentage of the average amount of funds held pursuant to Section 2 of the Agreement.

The Underwriting Period will be extended accordingly for each renewal.

## SECURITY DEPOSIT

Two Hundred and Sixty-six Thousand United States Dollars ($266,000).

### COMP ADVANTAGE PARTNERS

BY: _____
Mr. Dallas Krapf

BY: _____
Mr. Steven Freidburg

BY: _____
Mr. Mark Ouimette

BY: _____
Mr. Dale Krapf

### MUTUAL HOLDINGS LTD.

BY: _____
Paul Watson, President

G:SHAG-E14.GM/rss/3-93

## AMENDMENT No. 1
## TO
## SHAREHOLDER AGREEMENT
## PREFERRED SHARE SERIES "E14"

This is Amendment No. 1, to a certain Shareholder Agreement made and entered

into as of the 1st day of January, 1992 by and between **MUTUAL HOLDINGS LTD.,** a

company organised and existing under the laws of the Islands of Bermuda (hereinafter

"MUTUAL") and **ADVANTAGE PARTNERS** (hereinafter "**SHAREHOLDER**") a

corporation organised and existing under the laws of the State of Pennsylvania.

### <u>WITNESSETH</u>

**WHEREAS,** both **SHAREHOLDER** and **MUTUAL** are desirous of amending this

Agreement to provide for the renewal of the **PROGRAM**; and

**WHEREAS,** this **AGREEMENT,** the **POLICY** and the **TREATY** together

constitute a single insurance program (hereinafter the "**PROGRAM**") which is a uniquely

negotiated single contract and no part of the **PROGRAM** would have been entered into

without the other parts being in force.

**NOW, THEREFORE,** in consideration of the mutual promises and undertakings

set forth herein the parties do hereby agree as follows:

1.    The policies of insurance issued to **SHAREHOLDER** and affiliates by

**INSURANCE COMPANY** shall hereinafter be referred to individually or

collectively as the "**POLICY**".

-1-

2.    **SHAREHOLDER** agrees to pay all premium due to **INSURANCE COMPANY** promptly and in full.  Any failure to pay such premium to **INSURANCE COMPANY** promptly when due shall consitute a material breach of this Agreement.   In addition to all other remedies which **MUTUAL** and **INSURANCE COMPANY** may have from such non-payment or delay in payment, **MUTUAL** may, but shall not be required to, pay such premium to **INSURANCE COMPANY** on behalf of the **SHAREHOLDER** and if **MUTUAL** shall so elect then the full amount of such payment, plus interest, shall be deducted from any dividends due to **SHAREHOLDER** under this Agreement.

3.    Appendix No. I shall be deleted in its entirety and replaced with Appendix No. I-a attached hereto.  All references to Appendix I-a in the Agreement shall now refer to Appendix I-a.

4.    All other terms and conditions shall remain unchanged.

5.    The effective date of this Amendment No. 1 shall be the 1st day of January, 1992.

-2-

**IN WITNESS WHEREOF,** the parties have set their hand.

AT _Hamilton, Bermuda_

on the 8º day of _November_ 1993.

**COMP. ADVANTAGE**

BY: _Dallas Krapf_
 Mr. Dallas Krapf

BY: _Steven M Freidberg_
 **Mr. Steven Freidburg**
 STEVEN FRIEDBERG

BY: _Mark F. O___
 Mr. Mark Quimette

BY: _Dale N. Krapf_
 Mr. Dale Krapf

AT _Hamilton, Bermuda_

on the 1 day of _Nov_, 1993.

**MUTUAL HOLDINGS LTD.**

BY: _Paul Watson_
 Paul Watson, President

G:AMEN-E14.GM/rss/3-93

-3-

## APPENDIX NO. I-a
## PREFERRED SHARE SERIES "E14"

### REDEMPTION DATE

Close of business on the 1st day of March, 1999.

### DIVIDEND DATE

Commencing on the 28th day of February, 1994 and annually thereafter on the 28th day of February of each succeeding year up to and including the 28th day of February, 1999.

### TREATY

| Underwriting Period | Insurance Company |
|---|---|
| January 1, 1992 - December 31, 1992 | Legion Insurance Company |
| January 1, 1993 - December 31, 1993 | Legion Insurance Company |

### UNDERWRITING FEE

| Underwriting Period | Underwriting Fee |
|---|---|
| January 1, 1992 - December 31, 1992 | 3.5% |
| January 1, 1993 - December 31, 1993 | 3.5% |

The Underwriting Fee is expressed as a percentage of the gross premium written under the **TREATY**.

### ADMINISTRATIVE FEE

During the term of the Underwriting Period  1.25% per annum

After expiration of the Underwriting Period 1.75% per annum

The administrative fee is calculated as a percentage of the average amount of funds held pursuant to Section 2 of the Agreement.

The Underwriting Period will be extended accordingly for each renewal.

-4-

## SECURITY DEPOSIT

Four Hundred and Ninety-five Thousand Two Hundred and Thirty-seven United States Dollars ($495,237).

BY: _____
    Mr. Dallas Krapf

BY: _____
    Mr. Steven Freidburg
    STEPHEN FRIEDBERG

BY: _____
    Mr. Mark Quimette

BY: _____
    Mr. Dale Krapf

MUTUAL HOLDINGS LTD.

BY: _____
    Paul Watson, President

## AMENDMENT NO. 2

## TO

## SHAREHOLDER AGREEMENT

## PREFERRED SHARE SERIES "E14"

This is Amendment No. 2 to a certain Shareholder Agreement made and entered into the 1st day of January 1992 by and between **MUTUAL HOLDINGS LTD.,** a company organized and existing under the laws of the Islands of Bermuda (hereinafter **"MUTUAL"**) and **ADVANTAGE PARTNERS** (hereinafter **"SHAREHOLDER"**), a corporation organized and existing under the laws of the Commonwealth of Pennsylvania.

## W I T N E S S E T H:

**WHEREAS, SHAREHOLDER** is desirous of obtaining a Performance Bond from Legion Insurance Company (hereinafter **"LEGION"**) in the amount of $47,487; and

**WHEREAS, LEGION** is desirous of reinsuring the Performance Bond to **INDEMNITY**; and

**WHEREAS, SHAREHOLDER** is desirous of using the assets accruing to Preferred Share Series "E14" to pay any losses incurred under the Performance Bond.

**NOW, THEREFORE,** in consideration of the mutual promises and undertakings set forth herein, the parties do hereby agree as follows:

1.      **TREATY** shall hereinafter additionally include **INDEMNITY'S** reinsurance of **LEGION** relating to the Performance Bond.

-2-

2.    All other terms and conditions shall remain unchanged.

**IN WITNESS WHEREOF**, the parties have set their hand at Hamilton Bermuda on the 8th day of November, 1993.

**MUTUAL HOLDINGS LTD.**

By:_____

_____
Paul Watson, President

Title:_____

AMENDMENT No. 3

TO

SHAREHOLDER AGREEMENT
PREFERRED SHARE SERIES "E14"

This is Amendment No. 3, to a certain Shareholder Agreement made and entered into as of the 1st day of January, 1992 by and between MUTUAL HOLDINGS LTD., a company organised and existing under the laws of the Islands of Bermuda (hereinafter "MUTUAL") and ADVANTAGE PARTNERS (hereinafter "SHAREHOLDER") a corporation organised and existing under the laws of the Commonwealth of Pennsylvania.

WITNESSETH

WHEREAS, both SHAREHOLDER and MUTUAL are desirous of amending this Agreement to provide for the renewal of the PROGRAM; and

WHEREAS, this AGREEMENT, the POLICY and the TREATY together constitute a single insurance program (hereinafter the "PROGRAM") which is a uniquely negotiated single contract and no part of the PROGRAM would have been entered into without the other parts being in force.

-1-

NOW, THEREFORE, in consideration of the mutual promises and undertakings set forth herein the parties do hereby agree as follows:

1. The policies of insurance issued to SHAREHOLDER and affiliates by INSURANCE COMPANY shall hereinafter be referred to individually or collectively as the "POLICY".

2. SHAREHOLDER agrees to pay all premium due to INSURANCE COMPANY promptly and in full. Any failure to pay such premium to INSURANCE COMPANY promptly when due shall consitute a material breach of this Agreement. In addition to all other remedies which MUTUAL and INSURANCE COMPANY may have from such non-payment or delay in payment, MUTUAL may, but shall not be required to, pay such premium to INSURANCE COMPANY on behalf of the SHAREHOLDER and if MUTUAL shall so elect then the full amount of such payment, plus interest, shall be deducted from any dividends due to SHAREHOLDER under this Agreement.

3. Appendix No. I-a shall be deleted in its entirety and replaced with Appendix No. I-b attached hereto. All references to Appendix I-a in the Agreement shall now refer to Appendix I-b.

4. All other terms and conditions shall remain unchanged.

5.    The effective date of this Amendment No. 3 shall be the 1st day of January, 1992.

IN WITNESS WHEREOF, the parties have set their hand.

AT _____

on the    day of    , 1994.

ADVANTAGE PARTNERS

BY: _Dallas F Krapf_    At West Chester, Pennsylvania
Mr. Dallas Krapf    on April 14, 1995

BY: _____    At Pittsburgh, PA
Mr. Stephen Friedberg    on April 17, 1995

BY: _____    At Pittsburgh, PA
Mr. Mark Ouimette    on April 17, 1995

BY: _Dale N. Krapf_    At West Chester, Pennsylvania
Mr. Dale Krapf    on April 14, 1995

AT _Hamilton Bermuda_

on the 8 day of May    , 1994.

MUTUAL HOLDINGS LTD.

BY: _____

Paul Watson, President

G:AMEND314.GM/ns/1-94

-3-

APPENDIX NO. I-b
PREFERRED SHARE SERIES "E14"

REDEMPTION DATE

Close of business on the 1st day of March, 2000.

DIVIDEND DATE

Commencing on the 28th day of February, 1995 and annually thereafter on the 28th day of February of each succeeding year up to and including the 28th day of February, 2000.

TREATY

| Underwriting Period | Insurance Company |
|---|---|
| January 1, 1992 - December 31, 1992 | Legion Insurance Company |
| January 1, 1993 - December 31, 1993 | Legion Insurance Company |
| January 1, 1994 - December 31, 1994 | Legion Insurance Company |

UNDERWRITING FEE

| Underwriting Period | Underwriting Fee |
|---|---|
| January 1, 1992 - December 31, 1992 | 3.5% |
| January 1, 1993 - December 31, 1993 | 3.5% |
| January 1, 1994 - December 31, 1994 | 3.5% |

The Underwriting Fee is expressed as a percentage of the gross premium written under the TREATY.

ADMINISTRATIVE FEE

During the term of the Underwriting Period  1.25% per annum

After expiration of the Underwriting Period 1.75% per annum

The administrative fee is calculated as a percentage of the average amount of funds held pursuant to Section 2 of the Agreement.

The Underwriting Period will be extended accordingly for each renewal.

-4-

<u>SECURITY DEPOSIT</u>

No Security Deposit is currently required.

BY: _____
  Mr. Dallas Krapf

BY: _____
  Mr. Stephen Friedberg

BY: _____
  Mr. Mark Ouimette

BY: _____
  Mr. Dale Krapf

         MUTUAL HOLDINGS LTD.

       BY: _____
        Paul Watson, President

AMENDMENT NO. 4 TO SHAREHOLDER AGREEMENT

PARTIAL REDEMPTION AND RELEASE AGREEMENT

This Agreement, effective as of the 1st day of January, 1992, between MUTUAL HOLDINGS LTD., a company organized under the laws of the Islands of Bermuda (hereinafter "Mutual") and DALE N. KRAPF ("DNK"), DALLAS L. KRAPF ("DLK"), STEPHEN FRIEDBERG ("SF") and MARK OUIMETTE ("MO") (hereinafter collectively referred to as the "Shareholders").

BACKGROUND

WHEREAS, the Shareholders, under the name Comp Advantage Partners, jointly purchased one (1) non-voting preferred share of Mutual designated preferred share Series "E14" (the "Preferred Share"), and entered into a Shareholder Agreement effective January 1, 1992 (the "Shareholder Agreement");

WHEREAS, Mutual will declare a stock split of the Preferred Share on a four-for-one basis, the result of which will be that this date each Shareholder owns one (1) Preferred Share;

WHEREAS, each of DNK and DLK are desirous of cancelling and Mutual is desirous of redeeming one (1) Preferred Share owned by DNK and one (1) Preferred Share owned by DLK effective as of January 1, 1992;

WHEREAS, Mutual has agreed to redeem each Preferred Share as set forth in this Agreement; and

WHEREAS, after the redemption of the two (2) Preferred Shares as set forth herein, SF and MO shall each own one (1) Preferred Share, and shall be the sole shareholders of Series "E14";

NOW, THEREFORE, in consideration of the mutual promises contained herein, the parties agree as follows:

1. <u>Stock Split</u>. Mutual will declare a stock split of the Preferred Share on a four-for-one basis to be reflected on the shareholder books and records of Mutual, which will result in a distribution of three-quarters of one share to each of the Shareholders, which together with the one-quarter of the share theretofore owned, such shareholder records will reflect that each of the Shareholders owned one Preferred Share.

2. <u>Redemption</u>. Mutual agrees to redeem the one (1) Preferred Share of DNK and the one (1) Preferred Share of DLK (the "Redeemed Shares") as of the effective date of this Agreement in accordance with the terms and conditions hereof.

3.  <u>Redemption Price</u>.  The redemption price ("Redemption Price") for two (2) Redeemed Shares shall be $1,156,378, payable to as follows:

(a)  $543,189 each to DNK and DLK on or before April 15, 1995; and

(b)  $70,000 shall be retained as a reserve (the "Krapf Reserve") provided in Paragraph 4 of this Agreement.

The Redemption Price includes all dividends heretofore declared but unpaid to DLK AND DNK.

4.  <u>Review of Reserves</u>.

(a)  At each December 31 for the years 1995 through 1999, the liabilities of Series E14 shall be reviewed to determine whether the reserve for outstanding losses, the reserve for IBNR losses, and any other reserves reasonably applicable to the business of E14 are adequate with respect to the premiums theretofore written by Series E14.  To the extent that Mutual from time to time determines that the reserves are not adequate, Mutual shall be entitled to apply that portion or all of the Krapf Reserve up to an amount equal to fifty percent (50%) of the reserve inadequacy.

(b)  To the extent that the review of the reserves at each year end are determined to be in excess of those reasonably related to the premiums written by Series E14, an amount equal to fifty percent (50%) thereof, together with any of the Krapf Reserve previously applied by Mutual to reserves, shall be added to the Krapf Reserve.

(c)  The amount of the Krapf Reserve remaining on December 31, 2000 or on any Termination Date (as hereinafter defined), plus the investment income earned thereon, shall be paid one-half to DLK and one-half to DNK.  For the purposes hereof, the term "Termination Date" shall mean the date prior to December 31, 2000, if any, on which the business operations of Series E14 shall for any reason be terminated, or a date prior to December 31, 2000 when all of the Preferred Shares of Series E14 are no longer owned fifty percent (50%) by SF and fifty percent (50%) by MO.

5.  <u>Amendment to Dividend Formula</u>.  The parties hereto entered into a Shareholder Agreement dated as of January 1, 1992, as amended (the "Shareholder Agreement").  The dividend set forth in Paragraph 2 of the Shareholder Agreement shall be amended by adding the following provisions to Paragraph 2:

"(D)  Minus $1,086,378.

(E)  Minus any portion of the funds paid from the Krapf Reserve to Dale N. Krapf and Dallas L. Krapf on or about December 31, 2000 pursuant to the terms of the Redemption and Release Agreement dated January 1, 1992.

(F)  Minus investment income earned on the Krapf Reserve."

- 2 -

6.   <u>Consent</u>.  SF and MO, jointly and severally, hereby consent and agree to the terms and conditions of this Agreement, including the redemption, the Redemption Price, the Krapf Reserve, and the amendment of the dividend formula.

7.   <u>Representations and Indemnity</u>.  DNK, DLS, SF and MO represent and warrant that they are the only parties holding any interest of any kind in and to Preferred Share Series E14, and that since January 1, 1992 none of DKN, DLK, SF and MO hereby agree to indemnify and hold Mutual harmless from any claim, loss, expense, damages or any cost whatsoever, including attorneys' fees, arising out of any claim by any person to any ownership interest in Preferred Share E14.

8.   <u>Releases</u>.

(a)  Mutual releases and agrees to defend and hold DNK and DLK harmless from any claim, expense, liability or cost of any liability under the Shareholder Agreement, except to the extent set forth herein.

(b)  DNK and DLK hereby release Mutual from any claim for dividends, redemption, or other rights arising out of the Shareholder Agreement, except as may be set forth herein.

(c)  SF and MO release Mutual from any claim for dividends, redemption or other rights arising out of the sums paid to DNK and DLK hereunder.

(d)  Except as set forth herein, DNK, DLK, SF and MO hereby release each other from all liabilities, damages, claims or demands in any manner related to the ownership of a Preferred Share or the operation of Series E14, except as set forth in this Agreement.

9.   <u>Effective Date</u>.  This Agreement shall be effective as of January 1, 1992.

10.  <u>Miscellaneous</u>.

(a)  <u>Successors and Assigns</u>.  The Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, administrators, successors and assigns.

(b)  <u>Notice</u>.  Any notices hereunder, if mailed, shall be deemed given and received 72 hours after mailing, and if sent by professional express service, notice shall be deemed given and received at the time of actual delivery.  Notices shall be sent to the parties at the addresses set forth herein, or such other addresses as the parties shall designate in writing from time to time.

(c)  <u>Records</u>.  Mutual agrees that the business records of Series E14 shall be available for inspection by the parties hereto during normal business hours and upon reasonable notice.  Further, Mutual agrees to

— 3 —

provide a copy to the parties hereto of the results of operation of Series E14 for each calendar year during which the Krapf Reserve is being maintained.

(d) <u>Shareholders' Agreement</u>. Except to the extent that the terms and conditions of this Agreement require otherwise, the Shareholder Agreement shall no longer be applicable to DNK and DLK, and neither shall have have any liability of any kind whatsoever thereunder. All other terms and conditions of the Shareholder Agreement shall remain unchanged as to the other parties.

(e) <u>Expenses</u>. Each party hereto shall pay its own expenses including, without limitation, legal and accounting fees and expenses, incident to the negotiation and preparation of this Agreement and to its performance and compliance with the provisions contained herein.

(f) <u>Entire Agreement; Amendments; and Waivers</u>. This Agreement constitutes the entire understanding and agreement among the parties hereto relative to the subject matter hereof. Any amendments to the Agreement must be in writing, signed by each party hereto. The failure of any party hereto to enforce at any time any provision of this Agreement shall not be construed to be a waiver of the provision, nor in any way to affect the validity of this Agreement or any part hereof or the right of such party thereafter to enforce each and every such provision. No waiver of any breach of this Agreement shall be held to constitute a waiver of any other or subsequent breach.

(g) <u>Partial Invalidity</u>. In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein, unless the deletion of the provision or provisions would result in such a material change as to cause completion of the transactions contemplated herein to be unreasonable.

(h) <u>Execution in Counterparts</u>. This Agreement may be executed by the parties hereto signing the same instrument, or by each party hereto signing a separate counterpart or counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

(i) <u>Titles and Headings</u>. Titles and headings to Paragraphs herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

(j) <u>Assignment</u>. This Agreement shall not be assignable by any party without the prior written consent of all parties.

IN WITNESS WHEREOF, the parties hereto have executed this Redemption and Release Agreement as of the date set forth above.

At West Chester, Pennsylvania

on April 14, 1995

_Dale N. Krapf_
Dale N. Krapf

At West Chester, Pennsylvania

on April 14, 1995

_Dallas L. Krapf_
Dallas L. Krapf

At Pittsburgh, Pennsylvania

on April 14, 1995

_____
Stephen Friedberg

At Pittsburgh, Pennsylvania

on April 14, 1995

_____
Mark Ouimette

At Hamilton, Bermuda

on    8 May    , 1995

MUTUAL HOLDINGS LTD.

By: _____
Paul Watson, President

- 5 -

## AMENDMENT NO. 5 TO SHAREHOLDER AGREEMENT,

## PARTIAL REDEMPTION AND RELEASE AGREEMENT

This Amendment and Agreement, effective as of the 31 day of January, 2002, among MUTUAL HOLDINGS LTD., a company organized under the laws of the Islands of Bermuda (hereinafter **"Mutual"**) Stephen Friedberg (**"Friedberg"**) and Mark Ouimette (**"Ouimette"**) (Friedberg and Ouimette collectively referred to as the **"Shareholders"**).

## BACKGROUND

WHEREAS, Ouimette and Friedberg and Dale N. Krapf and Dallas L. Krapf (together, the **"Krapfs"**), jointly purchased, under the name Advantage Partners (hereinafter **"Adavantage"**), one (1) non-voting preferred share of Mutual designated preferred share Series E-14 (the **"Preferred Share"**) and entered into that a Shareholder Agreement as of January 1, 1992 between Mutual and Advantage (the **"Shareholder Agreement"**);

WHEREAS, the parties desired to directly reflect the ownership of the Preferred Share and did so by way of Amendment 4 to Shareholder Agreement as of January 1, 1992 between Mutual and Ouimette and Friedberg and the Krapfs (**"Amendment 4"**);

WHEREAS, Mutual did declare, pursuant to Amendment 4, a stock split of the Preferred Share on a four-for-one basis, the result of which was that Ouimette, Friedberg and Dale N. Krapf and Dallas L. Krapf each owned one (1) Preferred Share;

WHEREAS, Ouimette is desirous of canceling and Mutual is desirous of redeeming the Preferred Share owned by Ouimette effective as of the date hereof;

WHEREAS, Mutual has agreed to redeem such Preferred Share as set forth in this Agreement; and

WHEREAS, after the redemption of the Preferred Share as set forth herein, Friedberg shall own one Preferred Share and shall be the sole shareholder of Series "E-14";

NOW, THEREFORE, in consideration of the mutual promises contained herein, the parties agree as follows:

      1.    Redemption.  Mutual agrees to redeem the one (1) Preferred Share of Ouimette (the **"Redeemed Share"**) as of the effective date of this Agreement in accordance with the terms and conditions hereof.

2.    <u>Redemption Price</u>.  The redemption price (**"Redemption Price"**) for the Redeemed Share shall be $250,000, payable in immediately available funds within five business days of the date hereof.

3.    <u>Amendment to Shareholder Agreement</u>.  The Shareholder Agreement shall be amended as follows:

      (i)  Ouimette shall be deleted as a Shareholder under the Shareholder Agreement.

      (ii)  The dividend set forth in Paragraph 2 of the Shareholder Agreement shall be amended by adding the following provisions to Paragraph 2:

        "(D)    Minus $250,000."

4.    <u>Consent</u>.  Friedberg and Ouimette, jointly and severally, hereby consent and agree to the terms and conditions of this Agreement, including the redemption, the Redemption Price, and the amendment of the dividend formula.

5.    <u>Representations and Indemnity</u>.  Friedberg and Ouimette represent and warrant that they are the only parties holding any interest of any kind in and to Preferred Share, and that since January 1, 1992 none of Friedberg or Ouimette has transferred any interest in the Preferred Share to any person.  Friedberg and Ouimette hereby agree to indemnify and hold Mutual harmless from any claim, loss, expense, damages or any cost whatsoever, including attorneys' fees, arising out of any claim by any person to any ownership interest in the Preferred Share.

6.    <u>Releases</u>.

      (a)    Mutual releases and agrees to defend and hold Ouimette harmless from any claim, expense, liability or cost of any liability under the Shareholder Agreement, except to the extent set forth herein.

      (b)    Ouimette hereby releases Mutual from any claim related to the ownership of the Preferred Share for dividends, redemption or other rights arising out of the Shareholder Agreement, except as may be set forth herein.  Furthermore, Ouimette hereby specifically releases and agrees to defend and hold Mutual harmless from any and all claims, actions, causes, suits· and demands whatsoever made in law or equity which Robin F. Ouimette ever had, now has or hereafter can, shall or may have for, upon or by reason of any matter, cause or thing arising out of or from an Order entered by the Court of Common Pleas of Fayette County, Pennsylvania [USA], Civil Division, dated July 26, 1999 in the action titled, <u>Robin F. Ouimette v. Mark E. Ouimette</u>, No. 1211 of 1999, G.D., which adopted a certain Consent Agreement entered into by Robin F. Ouimette and Ouimette in that action.

      Amendment and Partial Redemption and Release Agreement

(c)     Friedberg releases Mutual from any claim for dividends, redemption or other rights arising out of the sums paid to Ouimette hereunder.

(d)     Except as set forth herein, Friedberg and Ouimette hereby release each other from all liabilities, damages, claims or demands in any manner related to the ownership of a Preferred Share or the operation of Series E-14, except as set forth in this Agreement.

7.     Effective Date.  This Agreement shall be effective as of the date hereof.

8.     Miscellaneous.

(a)     Successors and Assigns.  The Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, administrators, successors and assigns.

(b)     Notice.  Any notices hereunder, if mailed, shall be deemed given and received 72 hours after mailing, and if sent by professional express service, notice shall be deemed given and received at the time of actual delivery.  Notices shall be sent to the parties at the addresses set forth herein, or such other addresses as the parties shall designate in writing from time to time.

(c)     Records.  Mutual agrees that the business records of Series E-14 shall be available for inspection by the parties hereto during normal business hours and upon reasonable notice.

(d)     Shareholders' Agreement.  Except to the extent that the terms and conditions of this Agreement require otherwise, the Shareholder Agreement shall no longer be applicable to Ouimette, and neither shall have any liability of any kind whatsoever thereunder. Except as modified by this Amendment, the terms and provisions of the Shareholder Agreement are hereby ratified and confirmed by Friedberg and Mutual and shall remain in full force and effect.

(e)     Expenses.  Each party hereto shall pay its own expenses including, without limitation, legal and accounting fees and expenses, incident to the negotiation and preparation of this Agreement and to its performance and compliance with the provisions contained herein, notwithstanding, Mutual shall be entitled to its fees and expenses for administration of the subject redemption.

(f)     Entire Agreement; Amendments; and Waivers.  This Agreement constitutes the entire understanding and agreement among the parties hereto relative to the subject matter hereof.  Any amendments to the Agreement must be in writing, signed by each party hereto.  The failure of any party hereto to enforce at any time any provision of this Agreement shall not be construed to be a waiver of the provision, nor in any way to affect the validity of this Agreement or any part hereof or the right of such party thereafter to enforce each

and every such provision. No waiver of any breach of this Agreement shall be held to constitute a waiver of any other or subsequent breach.

(g)     · Partial Invalidity.  In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein, unless the deletion of the provision or provisions would result in such a material change as to cause completion of the transactions contemplated herein to be unreasonable.

(h)     Execution in Counterparts.  This Agreement may be executed by the parties hereto signing the same instrument, or by each party hereto signing a separate counterpart or counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

(i)     Titles and Headings.  Titles and headings to Paragraphs herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

(j)     Assignment.  This Agreement shall not be assignable by any party without the prior written consent of all parties.

[THE REMAINDER OF THIS PAGE HAS INTENTIONALLY BEEN LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have executed this Amendment and Agreement as of the date set forth above.

At Pittsburgh Pennsylvania

on _____ 3/6 _____, 2002

_____
Stephen Friedberg

At Pittsburgh, Pennsylvania

on _____ 3/5 _____, 2002

_____
Mark Ouimette

At Hamilton, Bermuda

on _____ 30\1\1 _____, 2002

MUTUAL HOLDINGS LTD.

By: _____
David Alexander, President