# EXHIBIT 2

## SHAREHOLDER AGREEMENT

THIS **AGREEMENT**, made and entered into as of March 1, 1994, by and between **MUTUAL HOLDINGS (BERMUDA) LTD.**, a company organized and existing under the laws of Bermuda (hereinafter referred to as "**MUTUAL**") and **MARK E. OUIMETTE** (hereinafter referred to as "**SHAREHOLDER**"), of 4240 Greensburg Pike, Pittsburgh, PA, 15221.

## W I T N E S S E T H:

WHEREAS, **SHAREHOLDER** is desirous of purchasing One (1) non-voting preferred share of **MUTUAL** designated Series "**U21**" preferred share (hereinafter "**PREFERRED SHARE**") for the purchase price hereinafter set forth; and

WHEREAS, **MUTUAL** is desirous of repurchasing the **PREFERRED SHARE** on the redemption date set forth in Appendix I attached hereto (hereinafter referred to as the "**REDEMPTION DATE**") for the purchase price hereinafter set forth; and

WHEREAS, a subsidiary of **MUTUAL**, **MUTUAL INDEMNITY (BERMUDA) LTD.** (hereinafter referred to as "**INDEMNITY**") entered into one or more Reinsurance Agreements (hereinafter referred to individually or collectively as the "**TREATY**") with the insurance company as shown in Appendix I (hereinafter referred to individually or collectively as the "**INSURANCE COMPANY**"), all as set forth in Appendix I, pursuant to which **INDEMNITY** has reinsured certain of the liability of **INSURANCE COMPANY** on policies of insurance (hereinafter referred to individually or collectively as the "**POLICY**") issued to **SHAREHOLDER** and its affiliates.

WHEREAS, the AGREEMENT, the POLICY and the TREATY together constitute a single insurance program (hereinafter the "PROGRAM") which is a uniquely negotiated single contract and no part of the PROGRAM would have been entered into without the other parts being in force.

NOW, THEREFORE, in consideration of the mutual promises and undertakings set forth herein the parties do hereby agree as follows:

1.    SHAREHOLDER agrees to purchase the PREFERRED SHARE and agrees to pay to MUTUAL the amount of One Thousand Dollars ($1,000.00). This amount shall be paid within thirty (30) days of the execution of this Agreement.

2.    On the dates shown in Appendix I (hereinafter referred to as the "DIVIDEND DATE") MUTUAL agrees to cause a dividend to be declared to the owner of record on such date(s) of the PREFERRED SHARE in an amount equal to the sum of the following:

(A)    The amount of investment income, if any, earned by MUTUAL during the period ending March 31 immediately preceding such DIVIDEND DATE resulting from the investment of the cash funds received by MUTUAL as the purchase price of the PREFERRED SHARE as set forth in paragraph (1) hereof, less the applicable Administrative Fee as shown in Appendix I equal to a percentage per annum of the average amount of investment funds held by MUTUAL as a result of the purchase price of the PREFERRED SHARE.

(B)    Plus/(minus) the amount of investment income/(loss) earned by INDEMNITY during the period ending March 31 preceding the DIVIDEND DATE, resulting from the investment of funds received by INDEMNITY under the TREATY less the applicable Administrative Fee as shown in Appendix I equal to a percentage per annum of the average amount of such funds held by INDEMNITY during the preceding year. It is understood and agreed that such funds may be held by INDEMNITY as loss reserves and premium reserves and may be repaid to INSURANCE COMPANY pursuant to the terms of the TREATY.

-2-

(C)     Plus or minus the amount of underwriting gain or loss realized by **INDEMNITY** on the **TREATY** during the policy year preceding the **DIVIDEND DATE**. Underwriting gain shall be computed by the following formula:

Net Premium received by **INDEMNITY** after all deductions made by or paid to the **INSURANCE COMPANY** including ceding commissions, expenses and taxes (including the actual final cost of licenses, fees, assigned risk charges, guarantee funds etc. related to the **POLICY**) as provided in the **TREATY**; minus all losses and loss expenses incurred including loss and loss expense reserves for unpaid reported losses and for losses incurred but not reported; minus the applicable Underwriting Fee as shown in Appendix I; minus the actual cost incurred by **INDEMNITY** in establishing and maintaining a letter of credit in favor of **INSURANCE COMPANY** as required by the **TREATY**.

3.(A)   **SHAREHOLDER** hereby indemnifies and holds **MUTUAL** and **INDEMNITY** harmless against the cumulative sum of paragraphs 2(A), 2(B) and 2(C) minus the cumulative amount of dividends paid, being less than zero at any point in time.

On receipt of each written demand by **MUTUAL** or **INDEMNITY**, **SHAREHOLDER** agrees to pay **MUTUAL** or **INDEMNITY** within 30 days, the amount by which the cumulative sum of the amounts calculated under paragraphs 2(A), 2(B) and 2(C) minus the cumulative amounts of dividends paid pursuant to this Agreement, are less than zero minus all previous payments under this paragraph provided however that the definition of incurred losses and loss expenses in paragraph 2(C) shall for this purpose only include losses and loss expenses which have been paid or are likely to be paid within the following ninety (90) days.

(B)     As security for this obligation **SHAREHOLDER** hereby agrees to provide **INDEMNITY,** upon execution of this Agreement collateral (hereinafter referred to as the "**SECURITY DEPOSIT**") in the form of a clean irrevocable letter of credit in the amount as shown in Appendix I drawn on a bank acceptable to **INDEMNITY** or substitute cash collateral. Thereafter, **SHAREHOLDER** agrees, during the period of the **POLICY** and for so long thereafter as

INDEMNIT\_ as any outstanding or potential liability \_ er the terms of the **TREATY** to keep such letter of credit in force or to substitute cash collateral prior to the expiration of such letter of credit.  If cash collateral is provided, interest earned on such collateral, less the applicable Administrative Fee as shown in Appendix I, will be included as a dividend pursuant to Sections 2 (B) and 4 hereof.

The provisions of this paragraph (3) shall survive the redemption of the **PREFERRED SHARE** and the termination of this Agreement.

4.      **SHAREHOLDER** agrees to pay all premium due to **INSURANCE COMPANY** promptly and in full.  Any failure to pay such premium to **INSURANCE COMPANY** promptly when due shall consitute a material breach of this Agreement.  In addition to all other remedies which **MUTUAL** and **INSURANCE COMPANY** may have from such non-payment or delay in payment, **MUTUAL** may, but shall not be required to, pay such premium to **INSURANCE COMPANY** on behalf of the **SHAREHOLDER** and if **MUTUAL** shall so elect then the full amount of such payment, plus interest, shall be deducted from any dividends due to **SHAREHOLDER** under this Agreement.

5.      If on the **REDEMPTION DATE**, as defined in this Agreement, **INDEMNITY** continues to hold funds pursuant to the **TREATY**, **MUTUAL** agrees to annually pay **SHAREHOLDER** on May 31 of each year as additional dividends, the amount of investment income earned by **INDEMNITY** during the preceding year resulting from the investment of such funds, less an Administrative Fee as shown in Appendix I equal to a percentage per annum of the average amount of such funds, plus or minus the amount of additional underwriting gain or loss realized by **INDEMNITY** on the **TREATY**, calculated in accordance with paragraph 2(C) hereof, until such time as the amount of funds held by **INDEMNITY** is less than Five Thousand Dollars ($5,000), at which point liability under this paragraph shall cease.

6.    On the **REDEMPTION DATE, MUTUAL** agrees to repurchase from the **SHAREHOLDER** the **PREFERRED SHARE** upon presentation of the share certificate representing the **PREFERRED SHARE** duly endorsed for cancellation for the price of One Thousand Dollars ($1,000.00) by repaying the amount of cash paid by **SHAREHOLDER** as purchase price for the **PREFERRED SHARE**.

7.    It is agreed that the **PREFERRED SHARE** issued to **SHAREHOLDER** pursuant to this Agreement is being purchased by the **SHAREHOLDER** for purposes of investment only. The said **PREFERRED SHARE** has not been registered under the United States Securities Act of 1933, as amended. The said **PREFERRED SHARE** shall not be sold, transferred, hypothecated, pledged or otherwise assigned or encumbered and will bear the following legend:-

> "These securities have not been registered under the Securities Act of 1933, as amended. These Securities have been acquired for investment and may not be sold, transferred, hypothecated, pledged or otherwise assigned or encumbered."

8.    This Agreement may not be modified, amended or changed in any manner except in writing signed by all the parties hereto. It may, however, be terminated by written notice from either party to the other at least sixty (60) days prior to the proposed termination date. In such event all existing obligations from each party to the other or to third parties shall remain in force as of the time of termination.

9.    All notices, requests, demands or other communications provided for herein shall be in writing, shall be delivered by hand or by first-class mail, postage prepaid and shall be addressed to the parties hereto at their respective addresses listed below or to such other persons or addresses as the relevant party shall designate as to itself from time-to-time in a writing delivered in like manner:

-5-

If to **MUTU** to it at:

    44 Church Street
    P.O. Box HM 2064
    Hamilton HM HX, Bermuda

    Attn:  Paul D. Watson, President

If to **SHAREHOLDER**, to it at:

    The Franklin Centre
    4240 Greensburg Pike
    Pittsburgh, PA   15221
    U.S.A.

    Attn:  Mark E. Ouimette

10.    This Agreement has been made and executed in Bermuda and shall be exclusively governed by and construed in accordance with the laws of Bermuda and any dispute concerning this Agreement shall be resolved exclusively by the courts of Bermuda.

11.    All amounts referred to herein are expressed in United States Dollars and all payments shall be made in such dollars.

12.    The purchase of the **PREFERRED SHARE** by **SHAREHOLDER** and any subsequent transfers of the **PREFERRED SHARE** are subject to the prior consent of the Bermuda Monetary Authority (Foreign Exchange Control), which agency must approve all transfers of shares in Bermuda companies.

-6-

IN WITNESS WHEREOF, the parties have set their hand.

At ___4:00 PM.___

on the _12_ day of _SEPTEMBER_ , 1994

**MARK E. OUIMETTE**

BY: _____

At ___Hamilton, Bermuda___

on the _20_ day of _Sept_ , 1994

**MUTUAL HOLDINGS (BERMUDA) LTD.**

BY: _____
Paul Watson, President

PREFERRED SHARE SERIES "21"
APPENDIX NO. I

## REDEMPTION DATE

Close of business on the 1st day of June 2001.

## DIVIDEND DATE

Commencing on the 31st day of May 1996 and annually thereafter on the 31st day of May of each succeeding year up to and including the 31st day of May 2001.

## TREATY

| Underwriting Period | InsuranceCompany |
|---|---|
| February 21, 1994 to April 1, 1995 | Credit General Insurance Company |

## UNDERWRITING FEE

| Underwriting Period | Underwriting Fee |
|---|---|
| February 21, 1994 to April 1, 1995 | 3.5% |

The Underwriting Fee is expressed as a percentage of the net ceded premium under the **POLICY**

## ADMINISTRATIVE FEE

During the term of the Underwriting Period  1.25% per annum

After expiration of the Underwriting Period 1.75% per annum

The administrative fee is calculated as a percentage of the average amount of funds held pursuant to Section 2 of the Agreement.

The Underwriting Period will be extended accordingly for each renewal.

**SECURITY DEPOSIT**

   No security deposit is currently required.

**MARK E. OUIMETTE**

BY:

**MUTUAL HOLDINGS (BERMUDA) LTD.**

BY:

   Paul Watson, President

G:\SHAG\SHAG-U21.SS\ns\6-94

U21
Shareholder

## AMENDMENT NO. 1
## TO
## SHAREHOLDER AGREEMENT
## PREFERRED SHARE SERIES "U21"

This is Amendment No. 1, to a certain Shareholder Agreement made and entered into as of the 1st day of March, 1994 by and between **MUTUAL HOLDINGS (BERMUDA) LTD.**, a company organized and existing under the laws of the Islands of Bermuda (hereinafter **"MUTUAL"**) and **MARK E. OUIMETTE** (hereinafter **"SHAREHOLDER"**) of 4240 Greensburg Pike, Pittsburgh, PA 15221.

### WITNESSETH

**WHEREAS,** both **SHAREHOLDER** and **MUTUAL** are desirous of amending this Agreement to provide for the renewal of the **PROGRAM**; and

**WHEREAS,** this **AGREEMENT**, the **POLICY** and the **TREATY** together constitute a single insurance program (hereinafter the **"PROGRAM"**) which is a uniquely negotiated single contract and no part of the **PROGRAM** would have been entered into without the other parts being in force.

**NOW, THEREFORE,** in consideration of the mutual promises and undertakings set forth herein the parties do hereby agree as follows:

1.      Appendix No. I shall be deleted in its entirety and replaced with Appendix No. I-a attached hereto.  All references to Appendix I in the Agreement shall now refer to Appendix I-a.

2.      All other terms and conditions shall remain unchanged.

3.   The effective date of this Amendment No. 1 shall be the 1st day of March, 1994.

**IN WITNESS WHEREOF,** the parties have set their hand.

At _Hamilton BDA_

on the *17* day of _Nov._ , 1995.

BY: _____
MARK E. OUIMETTE

At _Hamilton Bermuda_

on the *17* day of _Nov_ , 1995.

**MUTUAL HOLDINGS (BERMUDA) LTD.**

BY: _____

Paul Watson, President



## APPENDIX NO. I-a
## PREFERRED SHARE SERIES "U21"

### REDEMPTION DATE

Close of business on the 1st day of June, 2002.

### DIVIDEND DATE

Commencing on the 31st day of May, 1996 and annually thereafter on the 31st day of May of each succeeding year up to and including the 31st day of May, 2002.

### TREATY

| Underwriting Period | Insurance Company |
|---|---|
| February 21, 1994 - April 1, 1995 | Credit General Insurance Company |
| April 1, 1995 - April 1, 1996 | Credit General Insurance Company |

### UNDERWRITING FEE

| Underwriting Period | Underwriting Fee |
|---|---|
| February 21, 1994 - April 1, 1995 | 3.5% |
| April 1, 1995 - April 1, 1996 | 3.5% |

The Underwriting Fee is expressed as a percentage of the net ceded premium under the **POLICY**.

### ADMINISTRATIVE FEE

During the term of the Underwriting Period  1.25% per annum

After expiration of the Underwriting Period 1.75% per annum

The administrative fee is calculated as a percentage of the average amount of funds held pursuant to Section 2 of the Agreement.

The Underwriting Period will be extended accordingly for each renewal.

## SECURITY DEPOSIT

No Security Deposit is presently required.


MARK E. OUIMETTE                    MUTUAL HOLDINGS (BERMUDA) LTD.


BY: _____       BY: _____
                                        Paul Watson, President


G:ADD-SHAG/AMEN-U21.NC/mpw/11.95

-4-

# AMENDMENT NO. 2
## TO
## SHAREHOLDER AGREEMENT
## PREFERRED SHARE SERIES "U21"

This is Amendment No. 2, to a certain Shareholder Agreement made and entered into as of the 1st day of March, 1994 by and between **MUTUAL HOLDINGS (BERMUDA) LTD.**, a company organized and existing under the laws of the Islands of Bermuda (hereinafter **"MUTUAL"**) and **MARK E. OUIMETTE** (hereinafter **"SHAREHOLDER"**) of 4240 Greensburg Pike, Pittsburgh, PA 15221.

## WITNESSETH

**WHEREAS,** both **SHAREHOLDER** and **MUTUAL** are desirous of amending this Agreement to provide for the renewal of the **PROGRAM**; and

**WHEREAS,** this **AGREEMENT**, the **POLICY** and the **TREATY** together constitute a single insurance program (hereinafter the **"PROGRAM"**) which is a uniquely negotiated single contract and no part of the **PROGRAM** would have been entered into without the other parts being in force.

**NOW, THEREFORE,** in consideration of the mutual promises and undertakings set forth herein the parties do hereby agree as follows:

1.    Appendix No. I-a shall be deleted in its entirety and replaced with Appendix No. I-b attached hereto. All references to Appendix I-a in the Agreement shall now refer to Appendix I-b.

2.    All other terms and conditions shall remain unchanged.

3.    The effective date of this Amendment No. 2 shall be the 1st day of March, 1994.

**IN WITNESS WHEREOF,** the parties have set their hand.

At    _Hamilton BDA_

on the *17* day of    *May*    , 1996.

BY:    _____
      **MARK E. OUIMETTE**

            At    _Hamilton Bermuda_

            on the *17* day of    *May*    , 1996.

            **MUTUAL HOLDINGS (BERMUDA) LTD.**

            BY:    _____
                    Gary Roche, Vice President

G:ADD-SHAG/AMEN2-U21.NC/sgr/5-96

**APPENDIX NO. I-b**
**PREFERRED SHARE SERIES "U21"**

## REDEMPTION DATE

Close of business on the 1st day of June, 2003.


## DIVIDEND DATE

Commencing on the 31st day of May, 1996 and annually thereafter on the 31st day of May of each succeeding year up to and including the 31st day of May, 2003.


## TREATY

| Underwriting Period | Insurance Company |
|---|---|
| February 21, 1994 - April 1, 1995 | Credit General Insurance Company |
| April 1, 1995 - April 1, 1996 | Credit General Insurance Company |
| April 1, 1996 - April 1, 1997 | Credit General Insurance Company |


## UNDERWRITING FEE

| Underwriting Period | Underwriting Fee |
|---|---|
| February 21, 1994 - April 1, 1995 | 3.5% |
| April 1, 1995 - April 1, 1996 | 3.5% |
| April 1, 1996 - April 1, 1997 | 3.5% |

The Underwriting Fee is expressed as a percentage of the net ceded premium under the **POLICY** for underwriting periods commencing prior to April 1, 1996. For the underwriting period commencing April 1, 1996, the Underwriting Fee is expressed as a percentage of the gross written premium under the **POLICY**.


## ADMINISTRATIVE FEE

During the term of the Underwriting Period 1.25% per annum

After expiration of the Underwriting Period 1.75% per annum

The administrative fee is calculated as a percentage of the average amount of funds held pursuant to Section 2 of the Agreement.

The Underwriting Period will be extended accordingly for each renewal.

## SECURITY DEPOSIT

    No Security Deposit is presently required.

**MARK E. OUIMETTE**             **MUTUAL HOLDINGS (BERMUDA) LTD.**

BY: _____       BY: _____

                                                      Gary Roche, Vice President

G:ADD-SHAG/AMEN2-U21.NC/sgr/5-96

**AMENDMENT NO. 3**
**TO**
**SHAREHOLDER AGREEMENT**
**PREFERRED SHARE SERIES "U21"**

This is Amendment No. 3, to a certain Shareholder Agreement made and entered into as of the 1st day of March, 1994 by and between **MUTUAL HOLDINGS (BERMUDA) LTD.**, a company organized and existing under the laws of the Islands of Bermuda (hereinafter **"MUTUAL"**) and **MARK E. OUIMETTE** (hereinafter **"SHAREHOLDER"**) of 4240 Greensburg Pike, Pittsburgh, PA 15221.

**WITNESSETH**

**WHEREAS**, both **SHAREHOLDER** and **MUTUAL** are desirous of amending this Agreement to provide for the renewal of the **PROGRAM**; and

**WHEREAS**, this **AGREEMENT**, the **POLICY** and the **TREATY** together constitute a single insurance program (hereinafter the **"PROGRAM"**) which is a uniquely negotiated single contract and no part of the **PROGRAM** would have been entered into without the other parts being in force.

**NOW, THEREFORE**, in consideration of the mutual promises and undertakings set forth herein the parties do hereby agree as follows:

1. Appendix No. I-b shall be deleted in its entirety and replaced with Appendix No. I-c attached hereto. All references to Appendix I-b in the Agreement shall now refer to Appendix I-c.

-1-

2.      All other terms and conditions shall remain unchanged.

3.      The effective date of this Amendment No. 3 shall be the 1st day of March, 1994.

**IN WITNESS WHEREOF,** the parties have set their hand.

At      _____

on the     day of                , 1998.

BY:     _____
          MARK E. OUIMETTE

At      _Hamilton, Bermuda_

on the 22ⁿᵈ day of     _June_          , 1998.

**MUTUAL HOLDINGS (BERMUDA) LTD.**

BY:     _____
          Gary Roche, Vice President

g:\wpfiles\add-shng\u21-3.doc

## APPENDIX NO. I-c
## PREFERRED SHARE SERIES "U21"

### REDEMPTION DATE

Close of business on the 1st day of June, 2005.

### DIVIDEND DATE

Commencing on the 31st day of May, 1996 and annually thereafter on the 31st day of May of each succeeding year up to and including the 31st day of May, 2005.

### TREATY

| Underwriting Period | Insurance Company |
|---|---|
| February 21, 1994 - April 1, 1995 | Credit General Insurance Company |
| April 1, 1995 - April 1, 1996 | Credit General Insurance Company |
| April 1, 1996 - April 1, 1997 | Credit General Insurance Company |
| April 1, 1997 - April 1, 1998 | Credit General Insurance Company |
| April 1, 1998 - April 1, 1999 | Credit General Insurance Company |

### UNDERWRITING FEE

| Underwriting Period | Underwriting Fee |
|---|---|
| February 21, 1994 - April 1, 1995 | 3.5% |
| April 1, 1995 - April 1, 1996 | 3.5% |
| April 1, 1996 - April 1, 1997 | 3.5% |
| April 1, 1997 - April 1, 1998 | 3.5% |
| April 1, 1998 - April 1, 1999 | 3.5% |

The Underwriting Fee is expressed as a percentage of the net ceded premium under the **POLICY** for underwriting periods commencing prior to April 1, 1996. For the underwriting period commencing April 1, 1996 and thereafter, the Underwriting Fee is expressed as a percentage of the gross written premium under the **POLICY**.

### ADMINISTRATIVE FEE

During the term of the Underwriting Period 1.25% per annum

After expiration of the Underwriting Period 1.75% per annum

The administrative fee is calculated as a percentage of the average amount of funds held pursuant to Section 2 of the Agreement.

The Underwriting Period will be extended accordingly for each renewal.

-3-

**SECURITY DEPOSIT**

No Security Deposit is presently required.

**MARK E. OUIMETTE**                    **MUTUAL HOLDINGS (BERMUDA) LTD.**


BY: _____    BY: _____
                                        Gary Roche, Vice President


g:\wpfiles\add-shag\u21-3.doc



## AMENDMENT NO. 4 TO SHAREHOLDER AGREEMENT,

## PARTIAL REDEMPTION AND RELEASE AGREEMENT

This Amendment and Agreement, effective as of the 30th day of January, 2002, among MUTUAL HOLDINGS LTD., a company organized under the laws of the Islands of Bermuda (hereinafter **"Mutual"**) Stephen Friedberg (**"Friedberg"**) and Mark Ouimette (**"Ouimette"**) (Friedberg and Ouimette collectively referred to as the **"Shareholders"**).

### BACKGROUND

WHEREAS, Ouimette, as agent and nominee on behalf of Ouimette and Friedberg, purchased one (1) nonvoting preferred share of Mutual designated preferred shares Series U-21 (the **"Preferred Share"**) and entered into that certain Shareholder Agreement as of March 31, 1994 between Mutual and Ouimette (the **"Shareholder Agreement"**);

WHEREAS, the parties desire to directly reflect the ownership of the Preferred Share;

WHEREAS, Mutual will declare a stock split of the Preferred Share on a two-for-one basis to be reflected on the shareholder books and records of Mutual, which will result in a distribution of one share to Friedberg. As a result, the shareholder records will reflect that Friedberg owns one (1) Preferred Share and Ouimette owns one (1) Preferred Share;

WHEREAS, Ouimette is desirous of canceling and Mutual is desirous of redeeming the Preferred Share owned by Ouimette effective as of the date hereof;

WHEREAS, Mutual has agreed to redeem such Preferred Share as set forth in this Agreement; and

WHEREAS, after the redemption of the Preferred Share as set forth herein, Friedberg shall own one Preferred Share and shall be the sole shareholder of Series "U-21";

NOW, THEREFORE, in consideration of the mutual promises contained herein, the parties agree as follows:

1.     <u>Stock Split</u>.  Mutual will declare a stock split of the Preferred Share on a two-for-one basis to be reflected on the shareholder books and records of Mutual, which will result in a distribution of one (1) share to Friedberg.  As a result, the shareholder records will reflect that Friedberg owns one (1) Preferred Share and Ouimette owns one (1) Preferred Share.

2.     <u>Redemption</u>.  Mutual agrees to redeem the one (1) Preferred Share of Ouimette (the **"Redeemed Share"**) as of the effective date of this Agreement in accordance with the terms and conditions hereof.

3.     <u>Redemption Price</u>.  The redemption price (**"Redemption Price"**) for the Redeemed Share shall be $500,000, payable in immediately available funds within five business days of the date hereof.

4.   <u>Amendment to Shareholder Agreement</u>.  The Shareholder Agreement shall be amended as follows:

(i)   Friedberg shall be added as a Shareholder under the Shareholder Agreement.

(ii)   Ouimette shall be deleted as a Shareholder under the Shareholder Agreement.

(iii)   The dividend set forth in Paragraph 2 of the Shareholder Agreement shall be amended by adding the following provisions to Paragraph 2:

"(D)   Minus $500,000."

5.   <u>Consent</u>.  Friedberg and Ouimette, jointly and severally, hereby consent and agree to the terms and conditions of this Agreement, including the stock split, the issuance of a Preferred Share to Friedberg, the redemption, the Redemption Price, and the amendment of the dividend formula.

6.   <u>Representations and Indemnity</u>.  Friedberg and Ouimette represent and warrant that they are the only parties holding any interest of any kind in and to Preferred Share, and that since March 31, 1994 none of Friedberg or Ouimette has transferred any interest in the Preferred Share to any person.  Friedberg and Ouimette hereby agree to indemnify and hold Mutual harmless from any claim, loss, expense, damages or any cost whatsoever, including attorneys' fees, arising out of any claim by any person to any ownership interest in the Preferred Share.

7.   <u>Releases</u>.

(a)   Mutual releases and agrees to defend and hold Ouimette harmless from any claim, expense, liability or cost of any liability under the Shareholder Agreement, except to the extent set forth herein.

(b)   Ouimette hereby releases Mutual from any claim related to the ownership of the Preferred Share for dividends, redemption or other rights arising out of the Shareholder Agreement, except as may be set forth herein. Furthermore, Ouimette hereby specifically releases and agrees to defend and hold Mutual harmless from any and all claims, actions, causes, suits  and demands whatsoever made in law or equity which Robin F. Ouimette ever had, now has or hereafter can, shall or may have for, upon or by reason of any matter, cause or thing arising out of or from an Order entered by the Court of Common Pleas of Fayette County, Pennsylvania [USA], Civil Division, dated July 26, 1999 in the action titled, <u>Robin F. Ouimette v. Mark E. Ouimette</u>, No. 1211 of 1999, G.D., which adopted a certain Consent Agreement entered into by Robin F. Ouimette and Ouimette in that action.

(c)   Friedberg releases Mutual from any claim for dividends, redemption or other rights arising out of the sums paid to Ouimette hereunder.

(d)     Except as set forth herein, Friedberg and Ouimette hereby release each other from all liabilities, damages, claims or demands in any manner related to the ownership of a Preferred Share or the operation of Series U-21, except as set forth in this Agreement.

8.     <u>Effective Date</u>.  This Agreement shall be effective as of the date hereof.

9.     <u>Miscellaneous</u>.

(a)     <u>Successors and Assigns</u>.  The Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, administrators, successors and assigns.

(b)     <u>Notice</u>.  Any notices hereunder, if mailed, shall be deemed given and received 72 hours after mailing, and if sent by professional express service, notice shall be deemed given and received at the time of actual delivery.  Notices shall be sent to the parties at the addresses set forth herein, or such other addresses as the parties shall designate in writing from time to time.

(c)     <u>Records</u>.  Mutual agrees that the business records of Series U-21 shall be available for inspection by the parties hereto during normal business hours and upon reasonable notice.

(d)     <u>Shareholders' Agreement</u>.  Except to the extent that the terms and conditions of this Agreement require otherwise, the Shareholder Agreement shall no longer be applicable to Ouimette, and neither shall have any liability of any kind whatsoever thereunder. Except as modified by this Amendment, the terms and provisions of the Shareholder Agreement are hereby ratified and confirmed by Friedberg and Mutual and shall remain in full force and effect.

(e)     <u>Expenses</u>.  Each party hereto shall pay its own expenses including, without limitation, legal and accounting fees and expenses, incident to the negotiation and preparation of this Agreement and to its performance and compliance with the provisions contained herein, notwithstanding, Mutual shall be entitled to its fees and expenses for administration of the subject redemption.

(f)     <u>Entire Agreement; Amendments; and Waivers</u>.  This Agreement constitutes the entire understanding and agreement among the parties hereto relative to the subject matter hereof.  Any amendments to the Agreement must be in writing, signed by each party hereto.  The failure of any party hereto to enforce at any time any provision of this Agreement shall not be construed to be a waiver of the provision, nor in any way to affect the validity of this Agreement or any part hereof or the right of such party thereafter to enforce each and every such provision.  No waiver of any breach of this Agreement shall be held to constitute a waiver of any other or subsequent breach.

(g)     <u>Partial Invalidity</u>.  In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision

hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein, unless the deletion of the provision or provisions would result in such a material change as to cause completion of the transactions contemplated herein to be unreasonable.

(h)     Execution in Counterparts.  This Agreement may be executed by the parties hereto signing the same instrument, or by each party hereto signing a separate counterpart or counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

(i)     Titles and Headings.  Titles and headings to Paragraphs herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

(j)     Assignment.  This Agreement shall not be assignable by any party without the prior written consent of all parties.

[THE REMAINDER OF THIS PAGE HAS INTENTIONALLY BEEN LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have executed this Amendment and Agreement as of the date set forth above.

At Pittsburgh Pennsylvania

on ___3|6___ ,2002

_____
Stephen Friedberg

At Pittsburgh, Pennsylvania

on ___3/5___ , 2002

_____
Mark Ouimette

At Hamilton, Bermuda

on ___30|11___ , 2002

MUTUAL HOLDINGS LTD.

By:_____
David Alexander, President